```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -
      POWER INTEGRATIONS, INC.,         : CIVIL ACTION NO.
 4    a Delaware corporation,           :
                                        :
 5              Plaintiff,              :
                                        :
 6         v.                           :
                                        :
 7    FAIRCHILD SEMICONDUCTOR INTERNATIONAL, :
      INC., a Delaware corporation; FAIRCHILD :
 8    SEMICONDUCTOR CORPORATION, a Delaware  :
      Corporation; and SYSTEM GENERAL   :
 9    CORPORATION, a Taiwanese corporation,  :
                                        :
10              Defendants.             : 08-309 (JJF-LPS)
                                - - -
11

                                 Wilmington, Delaware
12              Thursday, January 22, 2009 at 3:08 p.m.
                       TELEPHONE CONFERENCE
13
                               - - -
14
      BEFORE:   HONORABLE LEONARD P. STARK, U.S. MAGISTRATE JUDGE
15
                               - - -
16    APPEARANCES:

17

18              FISH & RICHARDSON, P.C.
                BY:  KYLE WAGNER COMPTON, ESQ.
19
                    and
20
                FISH & RICHARDSON, P.C.
21              BY:  HOWARD G. POLLACK, ESQ., and
                    MICHAEL R. HEADLEY, ESQ.
22              (Redwood City, California)

23                  Counsel for Plaintiff

24
                                Brian P. Gaffigan
25                              Registered Merit Reporter
```

```
 1   APPEARANCES:  (Continued)

 2

 3              ASHBY & GEDDES, P.A.
               BY:  JOHN G. DAY, ESQ.
 4
                    and
 5
               ORRICK, HERRINGTON & SUTCLIFFE, LLP
 6             BY:  G. HOPKINS GUY, III, ESQ., and
                    BAS de BLANK, ESQ.
 7                  (Menlo Park, California)

 8                  Counsel for Defendants

 9

10

11                     - oOo -

12               P R O C E E D I N G S

13              (REPORTER'S NOTE:  The following telephone

14   conference was held in chambers, beginning at 3:08 p.m.)

15              THE COURT:  Good afternoon, counsel.  This is

16   Judge Stark.  I have a court reporter here with me so let's

17   start by identifying who is here, please.

18              MR. COMPTON:  Good afternoon, Your Honor.  For

19   plaintiff Power Integrations, this is Kyle Wagner Compton

20   from the firm of Fish & Richardson.  With me, I also have

21   Howard Pollack and Michael Headley from our Fish &

22   Richardson office in Silicon Valley.

23              THE COURT:  Good afternoon to you, all.

24              (The attorneys respond, "Good afternoon, Your

25   Honor.")
```

1            MR. DAY:  Good afternoon, Your Honor.  On behalf

2       of Fairchild, as Delaware counsel you have John Day at Ashby

3       & Geddes; and with me on the phone are Hopkins Guy and Bas

4       de Blank from the Menlo Park office of Orrick Herrington &

5       Sutcliffe.

6            THE COURT:  Good afternoon to all of you as

7       well.

8            MR. GUY:  Good afternoon, Your Honor.

9            THE COURT:  For the record, this is our

10      scheduling teleconference in Power Integrations v Fairchild

11      Semiconductor.  It's our Civil Action 08-309-JJF-LPS.

12            I have reviewed the joint proposal regarding

13      scheduling order, and I see there are some significant

14      differences in the parties positions.  What I want to do is

15      give you a chance each to weigh in on what you think are the

16      most salient points in the dispute.

17            So, Mr. Compton, if you or one of your

18      colleagues could begin, that would be great.

19            MR. POLLACK:  Your Honor, this is Howard Pollack

20      on behalf of Power Integrations.  I see there is, at least

21      in my mind, three main issues that are disputed that kind of

22      all overlap with one another.

23            The first issue is to what extent prior

24      discovery between the various parties can be reused from

25      prior litigation because that will certainly affect some of

1   the other issues, and we set forth our position on that.  We

2   believe that certainly a tremendous amount of time and money

3   from the parties as well as resources of the Court can be

4   saved by allowing the parties to make legitimate use of

5   materials that have already been produced and exchanged in

6   various prior litigations.  To the extent they are relevant,

7   they should be able to be used in this case.  Whether or not

8   they're all relevant or admissible when we get to trial is

9   something that will shake out later.  It's not a reason not

10  to have it.  For purposes of discovery, it will not need to

11  be redone.

12         So that's sort of the first main issue I see.

13  That also reflects on the next issue I see which is the

14  scope of discovery in terms of limits on discovery.

15  Fairchild wants much broader leeway to take a much larger

16  number of deposition hours, have substantially more

17  interrogatories, et cetera.  We disagree given that we

18  believe a lot of the ground has already been plowed.

19  Obviously, two of the three patents that we're asserting

20  have been litigated before.  Therefore, things like the

21  inventors' depos, the prosecution attorney depos, all of

22  that has already been done.

23         The other issues that are overlapping relate

24  to Power Integrations' licensing history, its sales of the

25  products that use these inventions.  Because all of that has

1    already been done and depositions have already been taken,

2    we don't see the need for the kind of numbers that Fairchild

3    is talking about, and certainly we don't see the need or why

4    either party should be allowed to take the same depositions

5    over again that have already happened.  In the prior case,

6    Fairchild deposed our inventors for multiple days each.  We

7    just don't think they should be allowed to do that again

8    this time around.

9            In addition, in the other direction, there is a

10   substantial overlap in terms of products of System General

11   that were the subject of discovery in prior disputes both of

12   the ITC and in the Northern District of California.  All of

13   that material can also be reused, we believe, and that would

14   also limit the number of depositions that would need to be

15   taken with regard to those products.  So that's the scope of

16   the discovery.

17           Interrogatories is the same idea.  I mean the

18   questions have been asked and answered.  Certainly to the

19   extent there is new information, the parties will update

20   that information.  It doesn't seem like we need that many

21   new interrogatories to move this case forward.

22           And that gets to my third main point, which is

23   the schedule.  The proposals, at the initial stages, aren't

24   that different.  Where they really diverge is when a claim

25   construction hearing should occur and then how the schedule

1    should progress thereafter.

2           We strongly believe that the Court should

3    actually enter a schedule that has definitive dates in it

4    for when things happen.  We built the schedule that presumes

5    a significant amount of time between the claim construction

6    hearing and expert reports.  We expect that the Court will

7    get to the claim construction order as expeditiously as

8    possible, and certainly we hope we would get an order before

9    three months later when we say expert reports are due, but

10   the worry is that we don't want to hold the rest of the case

11   and our trial date hostage to your schedule when it really

12   isn't necessary.

13          We could do expert reports based on alternative

14   claim construction proposals.  We've done it many times,

15   and there is no reason to effectively hold the rest of the

16   case hostage to when you might get to claim construction,

17   although we understand you will get to it as soon as your

18   schedule allows.

19          The difference in dates for getting to claim

20   construction I think are on the order of about four or five

21   months difference.  We think we can get to it substantially

22   quicker than Fairchild partly because, as I said, I think we

23   have a disagreement on how much of the work has already been

24   done before.

25          And just to remind the Court, the dispute

1   between the parties is already one that has been ongoing.

2   Obviously, there are new issues, new claims that have been

3   raised, but we want to get this case to trial as expeditiously

4   as possible, and we would expect Fairchild would feel the

5   same way in view of the fact that they have counterclaims

6   that they have asserted against Power Integrations.

7           Those are the three main issues I wanted to

8   raise.  There was one other issue which I thought was

9   relatively minor on the question of a tutorial.  They have

10  asked for an in-person tutorial.  We've stated our preference

11  for doing it via video.  The preference there is that it

12  allows the Court to have it throughout the remainder of the

13  case, and it's easier for the Court to go back and refresh

14  yourself on what the tutorial said, and I think in the long

15  run it's less expensive for the parties to do it that way

16  than to have a live presentation where people have to

17  travel, et cetera.

18          The other point I would raise with the tutorial,

19  given that it's typically limited in time, is we would

20  suggest there wouldn't be any need to do a tutorial again on

21  the two patents that have been litigated prior.  Your Honor

22  actually already has a tutorial on that from a prior case

23  and we don't see any need to sort of redo that again.  Of

24  course, we'll address it if Your Honor would like us to.  We

25  think it would be better for the Court and better use of the

1   limited amount of time to focus on the new patent on our

2   side and the new patents obviously on Fairchild's side.

3            And those are really the issues I thought we

4   should flag or we want to flag for Your Honor.

5            THE COURT:  Okay.  Thank you very much for that,

6   Mr. Pollack.

7            Mr. Day, if you or one of your colleagues could

8   respond, please.

9            MR. GUY:  Your Honor, this is Hopkins Guy.

10  I'm calling in from California and I'll be responding for

11  Fairchild.  Let me just go through them in pretty much the

12  same order.  I may add a few other things but let me just

13  respond.

14           With respect to the prior discovery, once we

15  formed the claims, we have no issue with sharing discovery

16  between the two cases.  We certainly do not want to repeat

17  prior discovery.  Our concern, however, with the protective

18  order is that the prior discovery on these parts and our

19  confidential information will be used in violation of the

20  protective order for other cases, which would be this one.

21           There is a protection in the protective order to

22  stop that so that confidential information regarding our

23  products and specifications that were produced in the first

24  case are not used as a way for them to go in and mine new

25  claims in this case.  So to the extent there is a protection

1      and we have a date in which they can respond -- I believe

2      we have an April date with respect to infringement contention

3      interrogatories, and we have those formed -- we can

4      certainly share discovery after that date.  It's just that

5      we believe it's unfair to produce evidence in one case and

6      then have it being used to trump up evidence or charges in

7      another case.

8                    THE COURT:  Okay.  Let me stop up there.  I'm

9      not sure I follow.  Are you saying that if the plaintiff

10     waits until after the exchange of contention interrogatories,

11     then you are in agreement with them?

12                   MR. GUY:  Yes, Your Honor.  Yes, Your Honor.

13                   THE COURT:  Notwithstanding whatever protections

14     are in the protective order in the first case; correct?

15                   MR. GUY:  That's correct, as long as they're

16     bound to those contention interrogatories.

17                   THE COURT:  Okay.  Before you move on then,

18     Mr. Pollack, what would be wrong with what Mr. Guy is

19     proposing?

20                   MR. POLLACK:  Well, because, first of all, it

21     kind of puts the normal case, turns it on its head.  In any

22     normal case, we'd get discovery before our final contentions

23     were due anyway and, therefore, would be in a position to

24     use all the same materials to establish our contentions that

25     had already been produced.  And so to artificially say,

```
 1    well, no, you can only do contentions based on publicly

 2    available information about their products and then

 3    after that you can get discovery but you can't change the

 4    discovery or supplement them once you have confidential

 5    information is kind of backwards from how any of these

 6    cases are ever done.

 7                    THE COURT:  Okay.  I understand that point.

 8                    Mr. Guy, why don't you respond to that, please.

 9                    MR. GUY:  Your Honor, the ITC protective order

10    is very clear.  It's not to be used for any other case

11    except for the ITC case.  And, furthermore, the protective

12    order I believe in the Fairchild/POWI I case similarly is

13    they were not to be used except for purposes of that case.

14                    What we see is that they want all of this

15    discovery that they currently have at their offices, to

16    then be able to mine that for purposes of any additional

17    claims that they want to make against those products using

18    our confidential information, and we think that that is

19    unfair.  It's a violation of the protective order.  Once we

20    have the claims formed for this case, we're fine to share.

21                    THE COURT:  Okay.  So then the implication of

22    what you are suggesting, if I'm following, is that I should

23    make you turn over all your documents in this case; if they're

24    repetitive, they're repetitive; and then the plaintiff will

25    do its contention interrogatories.  Is that correct?
```

1          MR. GUY:  If they have done their homework in

2     the Fairchild/POWI II case, this case, and they've made a

3     claim as to certain products, then they can proceed with

4     discovery as to those, independent of anything that was

5     produced in the other case.  Once we have their contention

6     interrogatories, based upon their prefiling investigation

7     that was presumably done properly, then we don't mind

8     sharing.  But that would be after, certainly after the

9     infringement contention interrogatories, which are due

10    April 20th of this year.

11          THE COURT:  All right.  Why don't you move on to

12    the other issues.

13          MR. GUY:  Okay.  The second issue was number of

14    depositions, number of interrogatories.  This case right

15    now has six patents in it.  Our request I believe is for 65

16    interrogatories and for 150 hours of depositions.  In terms

17    of interrogatories, if they have -- if the same answer is

18    still true from the last case, they can give that answer to

19    us again, and it presumably is not a great burden to do so.

20    At 65 interrogatories, it's only about 11 per patent.  That

21    certainly seems reasonable.

22          Furthermore, in the last case, there were a

23    total of -- let me get the numbers out.  There were a total

24    of 60 -- I think it was 68 days of depositions -- 69 days of

25    depositions.  Fourteen of those days were expert depositions,

1    and so there were a total of 55 days of fact discovery in

2    that case.  At a modest six hours per day, that is well

3    over 300, and actually Power Integration took more days of

4    deposition than Fairchild did.

5              So we certainly believe with four new patents

6    in this case, 150 hours is actually empirically correct,

7    using the last case as a guide and with four patents.  There

8    were four patents in the prior case.  So we certainly

9    believe that the 150 hours is reasonable and the number of

10   interrogatories is reasonable.

11             Hopefully, we won't have to use all of them.

12   That is certainly our goal.  As you might imagine, Your Honor,

13   with today's economic climate, none of the clients involved

14   in this case, I'm sure -- and Howard can agree with me or

15   not -- but no one is interested in spending money on

16   depositions that don't need to be taken.

17             THE COURT:  And I think you said earlier you

18   have no interest in making everybody repeat discovery, if

19   that is not necessary.

20             MR. GUY:  That's correct.  And to the extent an

21   inventor needs to be taken, I believe there were inventors

22   that were not taken in the last case I believe because of

23   health reasons, but if there is an additional inventor or

24   that we need additional questions related to the additional

25   '270 patent that is asserted for the first time in this

1    case, we'll ask questions on that.  But we certainly are

2    not interested in repeating and asking the same questions.

3    If anything, we will try to avoid that.  And I will

4    specifically -- I have done this in many cases.  I'll refer

5    a witness back:  You testified XY&Z in the prior case, if

6    you recall, let me ask you one or two more questions, and

7    then move on.

8             THE COURT:  Is it possible, though, that you

9    won't need to depose some of the people because you have

10   deposed them previously?

11            MR. GUY:  It's possible, and I'm sure my client

12   will be interested in saving every nickel.  So I can't give

13   you a complete discovery plan today of the witnesses we will

14   not ask for, but I can tell you that there will probably

15   be -- we're not going to go through the same list.  That's

16   for sure.

17            THE COURT:  Okay.  Do you want to move on?

18            MR. GUY:  Yes.  Let's see.  In terms of

19   schedule, the two key points, Your Honor, I think that need

20   to be made are the fact discovery cutoff.  We're about three

21   months different there between an August date proposed by

22   Power Integrations and a November 27th date proposed by

23   Fairchild.

24            The three months I believe is necessary to

25   complete discovery with regards to six patents.  Although

1    two patents are repeated from Fairchild I, there are at

2    least four new patents in this case.  And, again, I remind

3    the Court we had four patents in the last case.  And I think

4    it took us between October 2004 and the first trial date was

5    a three-year period, I believe.  So there was certainly that

6    amount of discovery.

7            The second thing is that we are certainly not

8    opposed to assigning a hard date following claim construction

9    but the big issue there and the difference in our schedule

10   with regard to initial expert testimony, expert rebuttal

11   reports, expert discovery and so forth and dispositive

12   motions is that, again, this is a cost-cutting issue for

13   us and trying to keep it lean.  If everyone has the claim

14   construction and then can proceed with their expert reports,

15   then the experts do not have to argue in the alternative,

16   and with as many claims as we have and patents, that

17   actually ends up doubling and tripling the work.  So by

18   having the claim construction in hand before you begin the

19   expert work, it makes it far more efficient.  That's why we

20   framed it that way.

21           So this can be resolved.  I know that we'll be

22   asking for a report and recommendation from Your Honor.

23   Anything in there, that as long as we have the order for

24   claim construction and at least the report and recommendation

25   and can proceed with that in time to get to the first expert

1  report, that is agreeable with us.  But you have control of

2  those dates more so than we do.

3              So with that, Your Honor, I would --

4              THE COURT:  The tutorial issue.  Do you want to

5  address that?

6              MR. GUY:  Sure.  The tutorial issue, the reason

7  we like it in person is because we want to make sure the

8  Court has an opportunity to ask questions.  And if you just

9  ship off a video, I'm sure we can we make a nice video and

10  the Court can refer back to it.  I tend to think that we do

11  a better job when we interact with the Court and are able to

12  answer specifically the questions the Court has in mind and

13  actually focus the tutorial in a direction that the Court

14  may have questions.

15              THE COURT:  Okay.  Is there anything else?

16              MR. GUY:  The two other issues that I would

17  like to raise at this point is that, in addition to

18  addressing those that Mr. Pollack raised, is that this

19  case, Fairchild/POWI II as we're calling it, it really has

20  two components.  One of them is the holdover.  They want

21  to retry as to at least two of the patents, approximately I

22  believe as many as 100 products that were previously tried

23  in Fairchild I.  In Fairchild I, they failed to ask for an

24  accounting, and so there is a period of time between the

25  first trial and when Fairchild exited the market with

1    respect to these in terms of U.S. sales and importation.

2              So they failed to ask for that accounting, and

3    the judge denied that accounting saying they waived it.

4    It's our view this is now res judicata and claims splitting

5    and under the appropriate law, we don't believe that they

6    can raise that issue.  So we would like to present the

7    Court with an early motion to carve that out as quickly as

8    possible, and we believe it's a purely legal issue as to

9    whether they can re-raise and retry the very same claims

10   that they had in the prior case and certainly had an

11   opportunity to but instead waived according to Judge Farnan's

12   order.  So we would like to be able to get that on and have

13   the Court's guidance in that in terms of narrowing the case.

14             The second point is that we certainly appreciate

15   the assignment to the settlement magistrate and we look

16   forward to that.  I would like to advise the Court -- I

17   know in our stay motion I believe we raised this but I just

18   want to raise it again -- this is not the first time Power

19   Integrations has filed a lawsuit against System General

20   which is now a Fairchild subsidiary.  They actually launched

21   a lawsuit some years ago in I believe it was 2004 as well.

22   And that case was actually dismissed after they went to the

23   ITC and, in large part, it was dismissed because SG is a

24   Chinese company.  It sells to Chinese customers and does

25   not do business in the United States.

1          So we look forward to that.  We believe that the

2     same issues will apply here in our initial investigation

3     shows that the U.S. sales and importation are extremely de

4     minimis, certainly less than $100,000 and maybe even less

5     than $20,000.

6          So I want to give the Court that guidance

7     because certainly Power Integrations already knows this

8     because they dismissed a case.  I guess that other case was

9     dismissed May 2008, less than a year ago.  And we believe

10    the same result may be here.  So we look forward to paring

11    this case down and hopefully avoid the necessity of trying

12    those products.

13          THE COURT:  Let me take you up on your ADR

14    point.  Because the parties are not consenting to my

15    jurisdiction here, if there is going to be any mediation,

16    it's going to be in front of me.  Is Fairchild interested

17    in me scheduling some type of mediation in the near future?

18          MR. GUY:  Absolutely, Your Honor.  I did not

19    know that.  I thought we had an order that just came down

20    today in which Judge Farnan had assigned it to Magistrate

21    Judge Thynge.

22          THE COURT:  Okay.  Well, that may well be.  I'm

23    not aware of that.

24          MR. GUY:  But with all due respect to Your

25    Honor, we look forward to it any way possible, whether it's

1   you or Judge Thynge.  In fact, since you will probably

2   become more familiar with the issues, we would be very

3   interested in scheduling with Your Honor.

4            THE COURT:  Okay.  Well, we'll get that

5   straightened out here.

6            Mr. Pollack, do you want to respond to anything

7   Mr. Guy just spoke to?

8            MR. POLLACK:  Yes, I would.  And I will take

9   them in reverse order.

10           First.  With regard to the SG case being

11  dismissed and the reasons therefor, I have to respectfully

12  say that it has nothing to do with what Mr. Guy just

13  insinuated.  The case was dismissed in lieu of -- it was

14  dismissed without prejudice in lieu of a stay pending a

15  reexamination.  It had nothing to do with the size of the

16  infringement or in fact jurisdiction because the Court in

17  California had already ruled that it had jurisdiction over

18  SG despite its being a foreign entity.  So that issue is

19  completely separate.  Those patents are completely separate.

20           We have a ruling from the judge when he granted

21  that dismissal, again, pending the reexam, that if claims

22  were going to be brought on those patents, they be re-brought

23  back in California.  So I don't think that that case has

24  anything to do with the dispute we have here on different

25  patents.  And so I think that is all I want to say about

1    that.

2         With regard to this issue about retrial of

3    issues that were tried before, obviously, Power Integrations

4    doesn't believe it needs to retry "issues that were already

5    the subject of successful jury verdicts" and that therefore

6    collateral estoppel will apply to the parties in this case.

7         The question of whether or not Power

8    Integrations is entitled to damages for sales that occurred

9    after the trial in Fairchild I and therefore could not have

10   been the subject of a jury verdict is one that we believe

11   we're entitled to pursue in a subsequent action because the

12   infringement, in fact, did not stop.  And Your Honor is

13   aware of that.  That case is still ongoing.  The Court has

14   temporarily stayed the injunction, and it's not yet in

15   effect although it was in effect for a short period of time,

16   but there are several years worth, we believe, of sales of

17   parts that were adjudged to infringe the patent for which

18   damages were not the subject of the trial because in fact

19   it hadn't occurred yet.

20        We do not believe that the Court's decision on

21   the accounting, which is an equitable remedy, really has

22   anything to do with our legal entitlement to bring a claim

23   for a continuing tort.  Obviously, it's a legal issue.  It

24   apparently will be the subject of a motion that the Court

25   will have to decide, but we don't understand the legal basis

1    for the assertion that we're not entitled to maintain those

2    claims here in the subsequent suit given that we could not

3    have tried them in the prior trial.

4            Mean that's what I will say on that.  We will

5    certainly oppose any motion to limit our ability to have

6    those claims adjudicated in this subsequent suit if, and

7    when, Fairchild files one.

8            THE COURT:  Okay.  Thank you, both of you, for

9    that.

10           I'm not going to be able to give you definitive

11   rulings on the phone here.  I will need to give a little

12   more thought to some of these issues as I come up with a

13   schedule for you.  But I can give you some thoughts on some

14   of what you will see in the order when I issue it.

15           Specifically, in terms of the schedule, I am

16   going to have hard specific dates in the schedule.  And

17   while I can't certainly promise this far in advance, I

18   will certainly do everything I can to get you a claim

19   construction, report and recommendation in time that you

20   hopefully will be able to avoid some of the contingency and

21   arguing in the alternative in your expert reports.  So I

22   will do my best, but whether I do what I need to do or not,

23   I am going to have specific dates to make sure this case

24   keeps moving as best it can towards trial, if that is going

25   to be the ultimate resolution of it.

1          With respect to the tutorial, the tutorial

2     will be in person, but given that Power has prepared video

3     tutorials on at least some of the patents, I'll be giving

4     Power the opportunity, if you wish, to rely on those

5     tutorials in whole or in part with respect to those patents,

6     but you will need to be here in person because I'm at least

7     going to get a tutorial in person from Fairchild.

8          With respect to the legal issue that was raised.

9     If Fairchild wants to present that in a motion, that would

10    be fine, you know, as soon as you think you are ready to tee

11    that issue up.  Obviously, once it's briefed, we'll turn our

12    attention to it.

13         The other issues I'm going to have to give a

14    little bit more thought to.  And as I say, I will get you a

15    scheduling order which will encompass our view on all of

16    those issues.

17         Anything further at this point, Mr. Pollack?

18         MR. POLLACK:  Nothing from Power Integrations,

19    Your Honor.

20         THE COURT:  Okay.  Mr. Guy?

21         MR. GUY:  Nothing further, Your Honor.  But,

22    again, Fairchild takes great interest in any way to mediate

23    the case.  And the only near term conflict that I have is

24    at the end of April and the beginning of May, I'm before the

25    ITC and have a hearing there.  Otherwise, I will make myself

1    available and will certainly want to push this forward.  We

2    are certainly interested in mediating.

3                    THE COURT:  Okay.  I appreciate that.  And I'll

4    make sure, whether it's me or whether it's Judge Thynge, and

5    we'll proceed accordingly.  Thank you, all for your time.

6                    (The attorneys respond, "Thank you, Your Honor.")

7                    (Telephone conference ends at 3:38 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25