IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Civ. No. 08-309-JJF-LPS |
| : | |
| FAIRCHILD SEMICONDUCTOR : | |
| INTERNATIONAL, INC., FAIRCHILD : | |
| SEMICONDUCTOR CORPORATION, and : | |
| SYSTEM GENERAL CORPORATION : | |
| Defendant. : | |

## MEMORANDUM ORDER

Pending before the Court are cross-motions for partial summary judgment. Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and System General Corporation (collectively, "Fairchild") seek an order of summary judgment with respect to 106 Fairchild devices ("the 106 Accused Products") that were adjudged in earlier litigation to infringe two of the same patents Plaintiff Power Integrations ("PI") is alleging are infringed here. Fairchild argues that in this suit PI is engaged in impermissible "claim splitting," and that it is entitled to judgment with respect to matters that were at issue in the parties' earlier litigation. Not only does PI disagree, but it also seeks partial summary judgment for itself, asking the Court to order as a matter of law that the 106 Accused Products infringe U.S. Patent No. 6,107,851 ("the '851 patent") and U.S. Patent No. 6,249,876 ("the '876 patent"), and further to order that the appropriate measure of damages for this infringement is PI's lost profits.

1

## BACKGROUND

**PI Sues Fairchild for Infringement in *Fairchild I*; 106 Accused Products Found to Infringe**

On October 20, 2004, PI brought suit in this Court alleging that Fairchild infringed PI patents[1] – including the '851 and '876 patents – through its incorporation of PI's patented technology into the 106 Accused Products, which are "off-line" power supply controller integrated circuit devices. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp.*, Civil Action No. 04-1371-JJF (D. Del.) ("*Fairchild I*"). On October 10, 2006, the jury returned a verdict of willful infringement with respect to each of the patents at issue. (*Fairchild I*, D.I. 415)  On September 21, 2007, a separate jury returned a verdict that all of the patents at issue were valid. (*Fairchild I*, D.I. 555)

**PI Moves for an Accounting of Fairchild's Post-Verdict Sales in *Fairchild I***

On October 22, 2007, PI moved for an accounting of Fairchild's "continued infringing sales following the October 10, 2006 jury verdict of willful infringement and . . . awarding [PI] damages for Fairchild's sales of the infringing products for the period of time since October 21, 2006." (*Fairchild I*, D.I. 570)

---

[1] The other two patents at issue in *Fairchild I* were U.S. Patent No. 4,811,075 ("the '075 patent") and U.S. Patent No. 6,229,366 B1 ("the '366 patent").

**PI Files *Fairchild II*, in Part as Fallback in
the Event an Accounting is Denied in *Fairchild I***

On May 23, 2008, PI brought the instant action, *Fairchild II*. (D.I. 1) Its Complaint alleges that Fairchild "ha[s] been and [is] now infringing, inducing infringement, and contributing to the infringement" of the '851 and '876 patents through its manufacture and sale of "devices, including integrated circuit devices" covered by the patents' claims. *Id.* ¶¶ 13, 19. PI further accuses Fairchild of infringing another of its patents, U.S. Patent No. 7,110, 270 ("the '270 patent"), that was not at issue in *Fairchild I*. *Id.* ¶¶ 23-27.

In its responses to Fairchild's first set of interrogatories, PI clarified that among the products it is accusing of infringing its patents are the same 106 Accused Products the jury found to infringe in *Fairchild I*. (D.I. 71, Ex. B at 5) (identifying accused products including the 106 Accused Products, which "have already been determined to infringe or are admittedly not colorably different from products determined to infringe" various claims of the '876 and '851 patents in *Fairchild I*). PI explained that the remainder of the suit asserts the '876, '851, and '270 patents against 22 other Fairchild products that were not accused in *Fairchild I*.[2] (D.I. 71, Ex. B at 6) Thus, the 106 Accused Products account for over 80% of the products at issue in the instant action.

On October 3, 2008, the undersigned judge held a status conference in *Fairchild II*, during which PI acknowledged that it filed the part of this case involving the 106 Accused Products because of the possibility that Judge Farnan might not grant PI's then-pending motion for an accounting in *Fairchild I*:

---

[2]Because the remaining 22 products were not part of the earlier litigation, they are not a part of either party's motion for summary judgment.

3

> I mean, we brought the case because there are new products, different products . . . we can't count on them being within the scope of the prior case, because they're being represented to be different and have different numbers.
>
> So, fundamentally, that's why we brought the case. There is sort of a footnote to that. Between the time that we finished discovery essentially in the first case and the time of the trial, time passed, and we actually asked Judge Farnan to give us an accounting for that period. That request is out there. He may grant it, he may deny it.
>
> <u>If he denies that, there is a possibility that we would have to address that period, even for the old products, in the new case. So, as a practical matter, that's why we brought this other case.</u>

(D.I. 70, Ex. D, Tr. at 3-4) (emphasis added)

### The Court Denies PI's Motion for an Accounting in *Fairchild I*

On December 12, 2008, the Court issued a memorandum order denying PI's post-trial motion for an accounting. (*Fairchild I*, D.I. 696) In doing so, Judge Farnan noted that "[i]t is not disputed that [PI] did not request an accounting in either its Amended Complaint or the Final Joint Pretrial Order. . . . The fact that [PI] failed to do so is, in the Court's view, dispositive of the question of whether [PI] is entitled to an accounting." *Id.* at 2.

### The Court Grants, Then Stays, Then Reinstates Permanent Injunction Enjoining Sales of the 106 Accused Products in *Fairchild I*

Also on December 12, 2008, the Court granted PI a permanent injunction in *Fairchild I* with respect to the 106 Accused Products and "those not more than colorably different." (*Fairchild I*, D.I. 700) Following an e-mail from Fairchild pointing to the U.S. Patent and Trademark Office's recent rejections of certain claims covered by the permanent injunction, the Court entered a temporary stay of injunction on December 22, 2008 – but it denied a permanent stay pending appeal. (*Fairchild I*, D.I. 703) On May 5, 2009, the Federal Circuit dismissed Fairchild's appeal for lack of jurisdiction. (*Fairchild I*, D.I. 717) On May 13, 2009, this Court denied Fairchild's renewed request for a

permanent stay and reinstated the permanent injunction, effective immediately. (*Fairchild I*, D.I. 722)

**The Instant Motions are Filed in *Fairchild II***

In the meantime, on March 6, 2009, Fairchild moved for partial summary judgment with respect to the 106 Accused Products in *Fairchild II*, and PI filed a cross-motion on March 23, 2009. (D.I. 69, D.I. 77) Briefing was completed on April 21, 2009. (D.I. 82) The Court held oral argument on the motions on June 26, 2009. (D.I. 106)

## DISCUSSION

Having considered the parties' briefing and oral argument, the Court concludes that the most appropriate course of action is to stay the portion of the instant case dealing with PI's allegations that the 106 Accused Products infringe the '851 and '876 patents. This stay will remain in effect until after resolution of *Fairchild I*.

One reason for this conclusion is that it appears that at least some portion of the instant case – which accuses the same 106 Accused Products at issue in *Fairchild I* – amounts to impermissible claim-splitting. This portion of PI's Complaint would seem to be barred by the "rule against duplicative litigation, also referred to as 'claim-splitting,' [which] is the 'other action pending' facet of the res judicata doctrine." *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 329 F.Supp. 2d 574, 579 (D. Md. 2004). Just as res judicata applies to a second action filed after a final adjudication of the first action, the rule against claim splitting applies "when, like here, two suits are pending at the same time." *Id.* at 579 n.4. PI has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same

defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1997); *see also Stark v. Starr*, 94 U.S. 477, 485 (1876) ("It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable . . . is not at liberty to . . . present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail."). Because PI's pre-trial requests for damages for infringement in *Fairchild I* sought damages only for the period through the jury verdict (which turned out to be October 2006), the Court determined that PI failed to preserve its right to an accounting necessary for obtaining damages for any period post-October 2006. To allow PI to present the same waived claim – involving the very same infringement of the very same patents by the very same 106 Accused Products – in a new lawsuit would seem to permit claim-splitting.

Even if PI is not engaged in impermissible claim-splitting within the meaning of *Walton*,[3] the considerable overlap in the relief sought in the two pending cases weighs heavily in favor of staying this portion of the instant action. With respect to the portion of the instant case which seeks damages for sales of the 106 Accused Products during the period for which PI sought damages in *Fairchild I* by its motion for an accounting, PI is essentially asking me to sit as an appellate court and reverse Judge Farnan's denial of that motion. PI's motion sought "an accounting for Fairchild's sales of infringing products from October 1, 2006 through the present [October 22, 2007], and an award of damages sufficient to compensate [PI] for Fairchild's continued infringing sales [of the 106 Accused Products] since the cut-off date of October 20, 2006 used in the first trial."[4] (*Fairchild I*,

---

[3]While recognizing that Fairchild is enjoined by the Court's order in *Fairchild I* from selling the 106 Accused Products, I am not prepared to find on the record before me that a patentee that waives its right to a post-verdict accounting is absolutely prohibited from seeking damages from the same alleged infringer for later acts of infringement in a second suit, particularly in such situations where the accused products may not be covered by an injunction.

[4]Counsel for PI argued at the hearing that the relief it seeks here differs from the accounting it sought in *Fairchild I* because "damages is a different remedy than [an] accounting" and "the Court

D.I. 578 at 9) PI's motion was denied, and PI has not sought reconsideration of that ruling. Here, PI again seeks essentially the same remedy with respect to the same 106 Accused Products: "an accounting for infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales." (D.I. 1 at 5) Thus, at a minimum, the overlap is with respect to the 106 Accused Products for the period from October 20, 2006 until at least October 22, 2007 (the date PI filed its motion for an accounting). It is not at all clear that PI can be granted in *Fairchild II* precisely what it asked for and was denied in *Fairchild I*.

Further counseling in favor of staying this portion of the case is the fact that issues relating to the 106 Accused Products – including evidence implicating the market for the 106 Accused Products between October 2006 and October 2007 – are currently pending before Judge Farnan as part of the ongoing proceedings in *Fairchild I*.[5] Indeed, as PI acknowledged at the hearing in the instant action (*see* D.I. 106, Tr. at 42), it is not without remedies in *Fairchild I*; PI may yet file a motion for reconsideration regarding the accounting motion, or at least seek leave to do so.

A federal court faced with a duplicative second suit "has the discretion to take the most

---

[in *Fairchild I*] could not have taken into account the changed circumstances and weighed whether that means inducement continued or weighed whether that means lost profits continued and so forth," in using an accounting to calculate lost profits. (D.I. 106, Tr. at 22-23) While courts have described "an accounting of profits for the purpose of recovering lost profits [as] an equitable remedy," *Mikohn Gaming v. Acres Gaming, Inc.*, 2001 WL 34778689, at *19 (D. Nev. Aug. 2, 2001), it is clear that in *Fairchild I* PI sought both an accounting and an award of damages. *See Fairchild I*, D.I. 578 at 3 (PI: the "practice of awarding additional damages for post-verdict infringement [is] described alternately as an accounting or an amendment of judgment" and requesting post-verdict damages).

[5]After determining that the Federal Circuit's new standard for willful infringement required that the parties retry that issue (*Fairchild I*, D.I. 693), Judge Farnan held a bench trial on the issue of willful infringement in *Fairchild I* on June 22, 2009, at which the Court heard evidence involving Fairchild's alleged post-verdict sales of the 106 Accused Products and the bearing, if any, of the PTO's re-examination of the '851 and '876 patents on the proceedings in this Court. (*Fairchild I*, D.I. 740)

7

appropriate action," which might involve "stay[ing] the second suit, dismiss[ing] it without prejudice, enjoin[ing] the parties from proceeding with it, or consolidat[ing] the two actions." *In re Porter*, 295 B.R. 529, 543 (E.D. Pa. 2003). In order to preserve scarce judicial resources, it is appropriate to give the parties an opportunity to resolve all outstanding issues with respect to the 106 Accused Products as part of the ongoing litigation in *Fairchild I*. "The power of a federal court to prevent duplicative litigation is intended to foster judicial economy and the comprehensive disposition of litigation, and to protect parties from the vexation of concurrent litigation over the same subject matter." *Porter*, 295 B.R. at 543 (internal quotation marks omitted). There is no compelling reason why these issues should be addressed by the undersigned judge in the context of a second case when they are already largely before Judge Farnan in connection with the pending, first action.

Therefore, IT IS HEREBY ORDERED THAT:

1. The portion of the instant case involving allegations that the 106 Accused Products infringe the '851 and '876 patents is STAYED until 15 days after the entry of final judgment in *Fairchild I*. The parties shall advise the Court by joint letter within five days of the entry of final judgment in *Fairchild I* and provide the Court their proposal(s) for proceeding with the instant action.

2. All other portions of the instant case shall proceed according to the schedule previously entered.

Dated: July 9, 2009

_____
Leonard P. Stark
United States Magistrate Judge