IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,

          Plaintiff,

   v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., et al.,

          Defendants.

C.A. No. 08-309-JJF-LPS

**JURY TRIAL DEMANDED**

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL,
INC., FAIRCHILD SEMICONDUCTOR CORPORATION AND SYSTEM
GENERAL CORPORATION'S AMENDED ANSWER AND AMENDED
COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT
FOR PATENT INFRINGEMENT**

      Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor

Corporation, and System General Corporation (collectively "Defendants") answer the Complaint

of Plaintiff Power Integrations, Inc. ("PI") as follows:

      Defendants deny each and every allegation contained in the Complaint, except as

hereinafter specifically admitted or explained.  To the extent that the headings, or any other non-

numbered statements in PI's Complaint contain any allegations, Defendants deny each and every

allegation therein.

**THE PARTIES**

     1.     In response to paragraph 1 of the Complaint, Defendants lack sufficient

knowledge or information to admit or deny the allegations set forth therein and therefore deny

each and every allegation contained in paragraph 1.

     2.     Admitted.

     3.     Admitted.

4.      Admitted.

5.      Paragraph 5 does not contain any factual allegations.

### JURISDICTION AND VENUE

6.      In response to paragraph 6 of the Complaint, Defendants deny that they have infringed or now infringe any patent properly asserted against Defendants in the Complaint. Defendants admit that the Complaint purports to state a cause of action under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq.*  Defendants admit that the Complaint purports to state a cause of action over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      In response to paragraph 7 of the Complaint, Defendants do not dispute that this Court has personal jurisdiction over Defendants.

8.      In response to paragraph 8 of the Complaint, Defendants admit, for the purpose of this action only, that venue is proper in this judicial district.

### GENERAL ALLEGATIONS

9.      In response to paragraph 9 of the Complaint, Defendants lack sufficient knowledge or information to admit or deny the allegations set forth therein and therefore deny each and every allegation contained in paragraph 9.

10.      In response to paragraph 10 of the Complaint, Defendants admit to manufacturing outside of the United States pulse width modulation controller integrated circuit devices. Defendants deny any and all remaining allegations of paragraph 10.

### FIRST CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 6,107,851

11.      In response to paragraph 11 of the Complaint, Defendants reallege its answers as set forth in paragraphs 1-10 above as though fully set forth in this paragraph.

12.      In response to paragraph 12 of the Complaint, Defendants admit that the title page of United States Patent No. 6,107,851 ("the '851 patent") states on its face that the patent was issued on August 22, 2000.  Defendants admit that on its face the '851 patent is entitled "Offline

Converter with Integrated Softstart and Frequency Jitter." Defendants admit that on its face the '851 patent lists "Power Integrations, Inc." as the assignee. Defendants admit that a copy of the '851 patent was attached to PI's original Complaint as Exhibit A. Defendants deny any and all remaining allegations of paragraph 12.

13.     In response to paragraph 13 of the Complaint, Defendants deny any and all allegations contained therein.

14.     In response to paragraph 14 of the Complaint, Defendants deny any and all allegations contained therein.

15.     In response to paragraph 15 of the Complaint, Defendants deny any and all allegations contained therein.

16.     In response to paragraph 16 of the Complaint, Defendants deny any and all allegations contained therein.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,249,876

17.     In response to paragraph 17 of the Complaint, Defendants reallege its answers as set forth in paragraphs 1-10 above as though fully set forth in this paragraph.

18.     In response to paragraph 18 of the Complaint, Defendants admit that the title page of United States Patent No. 6,249,876 ("the '876 patent") states on its face that the patent was issued on June 19, 2001. Defendants admit that on its face the '876 patent is entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply." Defendants admit that on its face the '876 patent lists "Power Integrations, Inc." as the assignee. Defendants admit that a copy of the '876 patent was attached to PI's original Complaint as Exhibit B. Defendants deny any and all remaining allegations of paragraph 18.

19.     In response to paragraph 19 of the Complaint, Defendants deny any and all allegations contained therein.

20.     In response to paragraph 20 of the Complaint, Defendants deny any and all allegations contained therein.

21.     In response to paragraph 21 of the Complaint, Defendants deny any and all allegations contained therein.

22.     In response to paragraph 22 of the Complaint, Defendants deny any and all allegations contained therein.

## THIRD CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 7,110,270

23.     In response to paragraph 23 of the Complaint, Defendants reallege its answers as set forth in paragraphs 1-10 above as though fully set forth in this paragraph.

24.     In response to paragraph 24 of the Complaint, Defendants admit that the title page of United States Patent No. 7,110,270 ("the '270 patent") states on its face that the patent was issued on September 19, 2006.  Defendants admit that on its face the '270 patent is entitled "Method and Apparatus for Maintaining a Constant Load Current with Line Voltage in a Switch Mode Power Supply."  Defendants admit that on its face the '270 patent lists "Power Integrations, Inc." as the assignee.  Defendants admit that a copy of the '270 patent was attached to PI's original Complaint as Exhibit C.  Defendants deny any and all remaining allegations of paragraph 24.

25.     In response to paragraph 25 of the Complaint, Defendants deny any and all allegations contained therein.

26.     In response to paragraph 26 of the Complaint, Defendants deny any and all allegations contained therein.

27.     In response to paragraph 27 of the Complaint, Defendants deny any and all allegations contained therein.

## AFFIRMATIVE AND OTHER DEFENSES

Further Answering the Complaint, Defendants assert the following defenses.  Defendants reserve the right to amend its answer with additional defenses as further information is obtained.

## First Defense:  Noninfringement of the Asserted Patents

28.      Defendants have not infringed and do not infringe, directly or indirectly, willfully or otherwise, any valid claim of the '851 Patent, the '876 Patent, or the '270 Patent, and are not liable for infringement thereof.

29.      No product made by Defendants or process used by Defendants infringes the '851 Patent, the '876 Patent, the '270 Patent because PI's Complaint fails to state a claim that meets the requirements of 35 U.S.C. § 271.

## Second Defense:  Invalidity of the Asserted Patents

30.      The '851 Patent, the '876 Patent, the '270 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 U.S.C, including without limitation 35 U.S.C §§ 102, 103, 112, 121, and/or under the doctrine of obviousness-type double patenting.

## Third Defense:  Unavailability of Relief

31.      PI has failed to plead and meet the requirements of 35 U.S.C. § 271(b) and (c) and is not entitled to any alleged damages from Defendants.

## Fourth Defense:  Unavailability of Relief (Marking and Notice)

32.      PI has failed to plead and meet the requirements of 35 U.S.C. § 287 on marking and notice, and has otherwise failed to show that it is entitled to any damages prior to the filing date of the Complaint.

## Fifth Defense:  Limitation on Damages (Past Damages)

33.      PI's claim for relief and prayer for damages are limited by 35 U.S.C. § 286.

## Sixth Defense:  Limitation on Damages (Increased Damages and Attorney Fees)

34.      PI has failed to plead and meet the requirements of 35 U.S.C. § 284 and 285 for increased damages and attorney fees and is not entitled to any such increased damages or attorney fees.

## Seventh Defense: Prosecution History Estoppel

35.      PI is precluded under the doctrine of prosecution history estoppel from asserting any construction of any of the claims of the patents-in-suit to cover any accused product or

activity by Defendants based on arguments made by PI during the prosecution and reexamination of the '851 Patent, the '876 Patent, the '270 Patent and/or any related patents, including, but not limited to, U.S. Patent No. 6,229,366 and/or U.S. Patent No. 6,781,357.

### Eighth Defense:  Estoppel

36.      PI's claims for relief are barred and unenforceable, in whole or in part, under the doctrine of estoppel.

### Ninth Defense:  Laches

37.      PI's claims for relief are barred and unenforceable, in whole or in part, under the doctrine of laches.

### Tenth Defense:  Waiver

38.      PI's claims for relief are barred and unenforceable, in whole or in part, under the doctrine of waiver.

### Eleventh Defense:  Res Judicata

39.      PI's claims are barred and unenforceable, in whole or in part, under the doctrine of res judicata.

### Twelth Defense:  Unclean hands

40.      PI's claims for relief are barred and unenforceable, in whole or in part, due to unclean hands.

### Thirteenth Defense:  Patent Misuse

41.      PI's claims for relief are barred and unenforceable, in whole or in part, due to patent misuse.

42.      On November 9, 2006, Fairchild filed a Request for *Ex Parte* Reexamination of U.S. Patent No. 6,107,851.  Specifically, Fairchild requested that the United States Patent and Trademark Office (the "USPTO") determine the patentability of claims 1, 2, 4, 7, 9-11, 13, 16, and 17 of the '851 Patent.

43.      On December 19, 2006, the USPTO issued an Order Granting Request For *Ex Parte* Reexamination of all requested claims of the '851 Patent.

44.     On April 7, 2008, the USPTO issued an Office Action in *Ex Parte* Reexamination rejecting all claims of the '851 Patent subject to reexamination.

45.     On June 9, 2008, Power Integrations responded to the April 7, 2008 Office Action but did not amend or cancel any claims of the '851 Patent.

46.     On December 4, 2008, the USPTO issued a Final Office Action in *Ex Parte* Reexamination rejecting claims 1, 2, 7, 9-11, 16, and 17 of the '851 Patent and confirming claims 4 and 13 of the '851 Patent.

47.     By letter to the USPTO dated January 16, 2008, Power Integrations submitted proposed amendments to original claims 1, 3, 5, 7, 9, 11, and 17 of the '851 Patent.

48.     On January 30, 2009, Power Integrations submitted an Amendment and Response Pursuant To 37 C.F.R. § 1.116 & 37 C.F.R. § 1.530 and Patent Owner's Statement of Interview Pursuant to 37 C.F.R. § 1.560 in which Power Integrations voluntarily proposed to amend claims 1 and 11 and cancel claims 9 and 17 of the '851 Patent.

49.     On May 19, 2009, Power Integrations submitted a Second Amendment and Response After Final in which Power Integrations voluntarily proposed that claims 1 and 11 of the '851 Patent be cancelled and that claims 2, 7, 9, 10, 16, and 17 of the '851 Patent be amended.

50.     After voluntarily cancelling and amending the original claims in response to the rejections by the USPTO, Power Integrations has continued to seek to enforce such claims in this litigation.  This includes at least original claims 1 and 11 of the '851 Patent (which Power Integrations has voluntarily cancelled) and claims 16 and 17 (which Power Integrations has voluntarily amended).

51.     By asserting against Defendants original claims that it voluntarily amended or cancelled during reexamination, PI is impermissibly broadening the scope of its patent rights. This has the anticompetitive effect of forcing Defendants to incur litigation costs associated with defending against claims that have been cancelled or amended during reexamination.  Further, if Defendants are found liable for infringing original claims that PI has voluntarily amended or

canceled, and are enjoined from practicing those amended or canceled claims or required to pay royalties or other damages, it would place Defendants at an unfair disadvantage compared to its competitors who will be free to practice the original claims.

52.     On November 9, 2006, Fairchild filed a Request for *Ex Parte* Reexamination of U.S. Patent No. 6,249,876.  Specifically, Fairchild requested that the USPTO determine the patentability of claims 1, 17, 18, and 19 of the '876 Patent.

53.     On December 21, 2006, the USPTO issued an Order Granting Request For *Ex Parte* Reexamination of all requested claims of the '876 Patent.

54.     On April 7, 2008, the USPTO issued an Office Action in *Ex Parte* Reexamination rejecting all claims of the '876 Patent subject to reexamination.

55.     On June 9, 2008, Power Integrations responded to the April 7, 2008 Office Action but did not amend or cancel any claims of the '876 Patent.

56.     On December 3, 2008, the USPTO issued a Final Office Action in *Ex Parte* Reexamination rejecting claims 1, 17, 18, and 19 of the '876 Patent.

57.     By letter to the USPTO dated January 16, 2008, Power Integrations submitted proposed amendments to original claims 1, 17, and 18 of the '851 Patent.

58.     On January 30, 2009, Power Integrations submitted an Amendment and Response Pursuant To 37 C.F.R. § 1.116 & 37 C.F.R. § 1.530 and Patent Owner's Statement of Interview Pursuant to 37 C.F.R. § 1.560 in which Power Integrations voluntarily proposed to amend claims 1, 17, and 18 of the '876 Patent.

59.     After voluntarily amending the original claims in response to the rejections by the USPTO, Power Integrations has continued to seek to enforce such claims in this litigation.  This includes at least original claim 1 of the '876 Patent, which Power Integrations has voluntarily amended.

60.     By asserting against Defendants claims that it voluntarily amended during reexamination, PI is impermissibly broadening the scope of its patent rights.  This has the anticompetitive effect of forcing Defendants to incur litigation costs associated with defending

against claims that have been cancelled or amended during reexamination.  Further,

if Defendants are found liable for infringing original claims that PI has voluntarily

amended, and are enjoined from practicing those amended claims or required to pay royalties or

other damages, it would place Defendants at an unfair disadvantage compared to its

competitors who will be free to practice the original claims.

61.     As a result of the foregoing patent misuse, the '851 Patent and the '876 Patent are

unenforceable.

### Fourteenth Defense:  Inequitable Conduct

62.     The '851 Patent is unenforceable as a result of inequitable conduct committed

during reexamination prosecution before the United States Patent and Trademark Office

("USPTO").  During reexamination of the '851 Patent, the inventors of the '851 Patent – Balu

Balakrishnan, Leif Lund, and Alex Djenguerian (the "Named Inventors") – through their

attorney – James Go (collectively, Mr. Go and the Named Inventors are referred herein as the

"Applicants") – made materially misleading representations to the USPTO, which led to the

USPTO allowing Claims 1, 2, 4, 7, 9-11, 13, 16, and 17 of the '851 Patent over the prior art

reference SGS-Thomson Microelectronics TEA 2262, "Switched Mode Power Supply

Controller," (April 1996), pages 1 through 9 (hereinafter referred to as the "TEA2262.")  At least

Balu Balakrishnan knew of these material misrepresentations and failed to correct them.  Thus,

Mr. Balakrishnan breached his duty of candor, good faith, and honesty.

63.     On November 9, 2006, Fairchild filed a Request for *Ex Parte* Reexamination of

U.S. Patent No. 6,107,851.  Specifically, Fairchild requested that the USPTO determine the

patentability of claims 1, 2, 4, 7, 9-11, 13, 16, and 17 of the '851 Patent.

64.     On December 19, 2006, the USPTO issued an Order Granting Ex Parte

Reexamination for claims 1, 2, 4, 7, 9, 10, 11, 13, 16 and 17 of the '851 Patent.

65.     On April 7, 2008, the USPTO issued an Office Action rejecting claims 1, 2, 4, 7,

9, 10, 11, 13, 16 and 17 of the '851 Patent as anticipated by the TEA2262.

66.     On June 9, 2008, the Applicants filed a response to the April 7, 2008 Office Action.  The response made three separate arguments in an attempt to distinguish the TEA2262 from the claims of the '851 Patent – (i) that the TEA2262's frequency variation signal was not "internal", (ii) that the TEA2262 disclosed a fixed frequency oscillator, and (iii) that "the oscillator of the TEA2262 does not provide a maximum duty cycle as expressly claimed."

67.     On December 4, 2008, the USPTO issued a Final Office Action rejecting Applicants' first two arguments but accepting their third.  In the December 4, 2008 Final Office Action, the USPTO withdrew all of the rejections based on the TEA2262 reference because "the Patent Owner argues that TEA2262 reference does not teach the claimed limitation 'said oscillator further providing a maximum duty cycle signal comprising a first state and a second state.'"  As a result, the PTO withdrew the TEA2262 as a basis for rejecting claims 1, 2, 4, 7, 9, 10, 11, 13, 16 and 17 of the '851 Patent, and claims 4 and 13 of the '851 Patent were deemed patentable and/or confirmed.

68.     The Applicants' argument that the prior art did not teach the claimed limitation "said oscillator further providing a maximum duty cycle signal comprising a first state and a second state" was a material and misleading misrepresentation.  The Applicants knew that the prior art did teach an oscillator that provides a maximum duty cycle signal as evidenced by at least the following:

A   During the parties' prior litigation, Mr. Balakrishnan conceded that the element "an oscillator further providing a maximum duty cycle signal comprising a first state and a second state" was not novel, that "maximum duty cycle has been used in many, many products", and that "it is very well known in the art."

B   Mr. Balakrishnan admitted that he was aware of prior art devices that included oscillators that generated maximum duty cycle signals more than a year before filing the application leading to the '851 Patent on May 18, 1998.  Mr. Balakrishnan admitted that these prior art devices included Power Integrations' own pulse width modulation products such as the SMP3, SMP240, and SMP260 devices.

C   While representing Balu Balakrishnan, the other Applicants, and Power Integrations during the parties earlier trial, PI's lead trial attorney, Frank Scherkenbach, admitted that oscillators providing a maximum duty cycle signals were "as old as the hills."

D   In one Court order, this Court explicitly recognized that PI had made such a concession, finding that "PI contends that an 'oscillator further providing a maximum duty cycle' was well known in the art…."

69.   The misleading misrepresentation that the prior art did not disclose an oscillator that generated a maximum duty cycle signal was material because had the Examiner realized that the prior art disclosed an oscillator that generated a maximum duty cycle signal, he would not have withdrawn his rejection of claims 4 and 13 of the '851 Patent.

70.   On information and belief, the Applicants, including Mr. Balakrishnan and Mr. Go, participated in the reexamination of the '851 Patent and were aware of the misleading misrepresentation that the prior art did not disclose an oscillator that generated a maximum duty cycle signal.  Evidence proving that Mr. Balakrishnan and Mr. Go were aware of these misleading misrepresentation includes at least the following:

A   Mr. Go signed the response June 9, 2008 response in which the misleading misrepresentation was made.

B   During the parties' prior litigation, Mr. Balakrishnan testified that he participated in the prosecution of patents for which he is named as an inventor.  Specifically, Mr. Balakrishnan testified that he reviews patent applications and proposed claim amendments for patents for which he is a named inventor.  Mr. Balakrishnan testified that he typically reads a patent application, reviews the drawings, and reviews the claims prior to signing the inventor's declaration.  When he submits a patent application, Mr. Balakrishnan looks at PI's products and other information PI is aware of regarding the prior art.  If a claim is amended during the prosecution of a patent, Mr. Balakrishnan reviews it.  During the prosecution of one of his patents, Mr. Balakrishnan would review any amendment that added or removed elements of a

claim.  Mr. Balakrishnan testified that he believes that he "almost certainly" would have reviewed any changes to the claims during the prosecution of his patents.

      C   Mr. Balakrishnan and Mr. Go both participated in a January 23, 2009 interview in which they discussed with the '851 Patent reexamination with the USPTO.  On information and belief, neither Mr. Balakrishnan, Mr. Go, nor any of the other Applicants ever disclosed to the USPTO that the USPTO's sole basis for distinguishing the reexamined claims from the TEA2262 prior art – that "the Patent Owner argues that TEA2262 reference does not teach the claimed limitation 'said oscillator further providing a maximum duty cycle signal comprising a first state and a second state'" – was incorrect and that the Applicants knew that oscillators providing a maximum duty cycle signal were well known in the prior art.

      71.    On information and belief, Applicants' misleading misrepresentation was deliberate and intentional.  Evidence proving that deceptive intent includes at least the following:

      A   During the original prosecution, Applicants made a similar misleading misrepresentation in which they stated that the prior art "fails to disclose, teach, or suggest such limitations [plural]" as "[i] an oscillator that provides a maximum duty cycle signal and [ii] on oscillation signal having a frequency range that is varied according to a frequency variation signal."

      B   During the parties' prior litigation, Fairchild argued that this misleading misrepresentation during the original prosecution of the '851 Patent constituted inequitable conduct.  In response, PI argued that Fairchild misinterpreted this statement.  As summarized by the Court: "Power Integrations contends that an 'oscillator for generating a maximum duty cycle' was well known in the art and disclosed in at least three prior art references that the Examiner had before him; however 'an oscillator that both generated a maximum duty signal **and** a second signal, and did so 'with a frequency range dependent on a frequency variation circuit' was novel and not obvious.'  Stated another way, Power Integrations' argument is that the Examinenr allowed the claims because '***the combination*** of features of a single oscillator generating multiple signals whose frequency varied in a range based on a frequency variation signal,

together with the other recited elements… was novel and non-obvious.'" (citations omitted, original emphasis).  The Court accepted Power Integrations argument because "the Court is not persuaded that Power Integrations was claiming that an oscillator with a maximum duty cycle signal was a separate per se novel limitation."

     C   During reexamination, Power Integrations intentionally made the argument that it (i) represented to the Court that it had not and would not make and (ii) knew to be false – namely, "that an oscillator with a maximum duty cycle signal was a separate per se novel limitation."

     D   On information and belief, during the January 23, 2009 interview with the USPTO, Messrs. Go and Balakrishnan discussed the December 4, 2008 Final Office Action in which the PTO withdrew all of the claims rejections based on the TEA2262 reference but failed to inform the USPTO that the USPTO's sole basis for distinguishing the reexamined claims from the TEA2262 prior art – that "the Patent Owner argues that TEA2262 reference does not teach the claimed limitation 'said oscillator further providing a maximum duty cycle signal comprising a first state and a second state'" – was incorrect and that the Applicants knew that oscillators providing a maximum duty cycle signal were well known in the prior art.

    72.    The Applicants, including Messrs. Balakrishnan and Go, had a duty to conduct themselves with good faith, candor, and honesty before the USPTO.  Their materially misleading statement concerning the patentability of the reexamined claims over the TEA2262 – coupled with their failure to notify the USPTO that this was not a basis to distinguish the prior art from the reexamined claims – was done with deceptive intent, and constituted a breach of their duty of good faith, candor, and honesty, rendering the '851 Patent unenforceable due to inequitable conduct.

## COUNTERCLAIMS

### THE PARTIES

1.      Fairchild Semiconductor Corporation is a corporation duly incorporated under the laws of the State of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106.

2.      System General Corporation ("SG") is a corporation duly incorporated under the laws of Taiwan, with its headquarters located at 5F, No. 9, Alley 6, Lane 45 Bao Shing Road, Shin Dian, Taipei, Taiwan.

3.      SG is a wholly owned subsidiary of Fairchild Semiconductor Corporation.

4.      Upon information and belief, defendant Power Integrations, Inc. ("Power Integrations") is incorporated under the laws of the state of Delaware, and has a regular and established place of business at 5245 Hellyer Avenue, San Jose, California, 95138.

### JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq*.  This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a).

6.      Upon information and belief, this Court has personal jurisdiction over Power Integrations because Power Integrations has purposely availed itself of the privilege of conducting activities within this State and District.

7.      Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400 because Power Integrations is subject to personal jurisdiction in this judicial District.

### GENERAL ALLEGATIONS

8.      Upon information and belief, Power Integrations manufactures, or has manufactured for it, pulse width modulation ("PWM") controller integrated circuit devices (*e.g*., devices intended for use in power conversion applications such as LCD monitor power supplies, off-line power supplies or battery chargers for portable electronics), and directly, and through its affiliates, make, use, import, sell, and offer to sell the same throughout the United States,

including Delaware.  Power Integrations also supports and encourages others to import, use,

offer for sale, and sell throughout the United States, including Delaware, products incorporating

Defendant's integrated circuit devices.

### FIRST COUNTERCLAIM

### INFRINGEMENT OF U.S. PATENT NO. 7,259,972

9.      The allegations of paragraphs 1-8 are incorporated as though fully set forth

herein.

10.     SG is now, and has been since its issuance, the assignee and sole owner of all

right, title, and interest in United States Patent No. 7,259,972, entitled "Primary-Side-Control

Power Converter Having Switching Controller Using Frequency Hopping and Voltage And

Current Control Loops" (the '972 patent"), which was duly and legally issued on August 21,

2007.  A true and correct copy of the '972 patent is attached hereto as Exhibit A.

11.     On information and belief, Power Integrations has been and is now infringing,

inducing infringement, and contributing to the infringement of the '972 patent in this District and

elsewhere by making, using, selling, or offering to sell in the United States and/or importing into

the United States devices, including PWM integrated circuit devices, covered by one or more

claims of the '972 patents, and/or contributing to or inducing the same by third parties, all to the

injury of Plaintiffs.

12.     Power Integrations' acts of infringement have injured and damaged Plaintiffs.

13.     Power Integrations' infringement has caused irreparable injury to Plaintiffs and

will continue to cause irreparable injury until Power Integrations is enjoined from further

infringement by this Court.

### SECOND COUNTERCLAIM

### INFRINGEMENT OF U.S. PATENT NO. 7,352,595

14.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as

though fully set forth herein.

15.     SG is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 7,352,595 entitled "Primary-Side Controlled Switching Regulator" (the '595 patent"), which was duly and legally issued on April 1, 2008.  A true and correct copy of the '595 patent is attached hereto as Exhibit B.

16.     On information and belief, Power Integrations has been and is now infringing, inducing infringement, and contributing to the infringement of the '595 patent in this District and elsewhere by making, using, selling, or offering to sell in the United States and/or importing into the United States devices, including PWM integrated circuit devices, covered by one or more claims of the '595 patents, and/or contributing to or inducing the same by third parties, all to the injury of Plaintiffs.

17.     Power Integrations' acts of infringement have injured and damaged Plaintiffs.

18.     Power Integrations' infringement has caused irreparable injury to Plaintiffs and will continue to cause irreparable injury until Power Integrations is enjoined from further infringement by this Court.

## THIRD COUNTERCLAIM

## INFRINGEMENT OF U.S. PATENT NO. 7,061,780

19.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as though fully set forth herein.

20.     SG is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 7,061,780, entitled "Switching Control Circuit with Variable Switching Frequency for Primary-Side-Controlled Power Converters" (the '780 patent"), which was duly and legally issued on June 13, 2006.  A true and correct copy of the '780 patent is attached hereto as Exhibit C.

21.     On information and belief, Power Integrations has been and is now infringing, inducing infringement, and contributing to the infringement of the '780 patent in this District and elsewhere by making, using, selling, or offering to sell in the United States and/or importing into the United States devices, including PWM integrated circuit devices, covered by one or more

claims of the '780 patents, and/or contributing to or inducing the same by third parties, all to the injury of Plaintiffs.

22.     Power Integrations' acts of infringement have injured and damaged Plaintiffs.

23.     Power Integrations' infringement has caused irreparable injury to Plaintiffs and will continue to cause irreparable injury until Power Integrations is enjoined from further infringement by this Court.

## FOURTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT

24.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as though fully set forth herein.

25.     Power Integrations purports to be the owner of the '851, '876, and '270 Patents.

26.     Power Integrations alleges that Defendants have infringed the '851 Patent, the '876 Patent, and the '270 Patent.

27.     Defendants do not manufacture within the United States any products accused of infringing the '851 Patent.

28.     Defendants do not manufacture within the United States any products accused of infringing the '876 Patent.

29.     Defendants do not manufacture within the United States any products accused of infringing the '270 Patent.

30.     Power Integrations has not accused the following Fairchild devices of infringing claims of the '851 Patent, the '876 Patent, or the '270 Patent:

| | | | |
|---|---|---|---|
| FAN7602B | FSQ0165R | FSQ0265R | FSQ0365R |
| FSQ0465R | FSQ0565R | FSQ0765R | FSQ100 |
| FSQ110 | FSQ311 | FSQ321 | FSQ510 |
| FSQ31111 | FSQ0170RNA | FSQ0270RNA | FSQ0370RNA |
| FSDM311A | FSDM0465 | FSDM0565 | FSDM07652 |

31.     No activity by Defendants comes within the requirements of 35 U.S.C. § 271 with respect to the '851 Patent, the '876 Patent, or the '270 Patent, and Defendants are not liable for infringement of the '851 Patent, the '876 Patent, or the '270 Patent under 35 U.S.C. § 271.

32.     Defendants' activities that are outside of the United States do not come within the requirements of 35 U.S.C. § 271 with respect to the '851 Patent, the '876 Patent, or the '270 Patent, and do not constitute infringement.

33.     An actual controversy, within the meaning of 28 U.S.C. § 2201 and 2202, exists between Defendants, on the one hand, and Power Integrations, on the other hand, with respect to the infringement or noninfringement of the '851 Patent, the '876 Patent, and/or the '270 Patent.

## FIFTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '851 PATENT

34.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as though fully set forth herein.

35.     The '851 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

36.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Defendants, on the one hand, and PI, on the other hand, with respect to whether the claims of the '851 Patent are valid or invalid.

## SIXTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '876 PATENT

37.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as though fully set forth herein.

38.     The '876 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

39.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Defendants, on the one hand, and PI, on the other hand, with respect to whether the claims of the '876 Patent are valid or invalid.

## SEVENTH COUNTERCLAIM

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '270 PATENT

40.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as though fully set forth herein.

41.     The '270 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

42.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Defendants, on the one hand, and PI, on the other hand, with respect to whether the claims of the '270 Patent are valid or invalid.

## EIGHTH COUNTERCLAIM

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '851 PATENT

43.     The allegations of paragraphs 1-8 of these Counterclaims are incorporated as though fully set forth herein.

44.     The '851 Patent is unenforceable as a result of inequitable conduct committed during reexamination prosecution before the United States Patent and Trademark Office ("USPTO").  During reexamination of the '851 Patent, the inventors of the '851 Patent – Balu Balakrishnan, Leif Lund, and Alex Djenguerian (the "Named Inventors") – through their attorney – James Go (collectively, Mr. Go and the Named Inventors are referred herein as the "Applicants") – made materially misleading representations to the USPTO, which led to the USPTO allowing Claims 1, 2, 4, 7, 9-11, 13, 16, and 17 of the '851 Patent over the prior art reference SGS-Thomson Microelectronics TEA 2262, "Switched Mode Power Supply Controller," (April 1996), pages 1 through 9 (hereinafter referred to as the "TEA2262.")  At least Balu Balakrishnan knew of these material misrepresentations and failed to correct them.  Thus, Mr. Balakrishnan breached his duty of candor, good faith, and honesty.

45.     On November 9, 2006, Fairchild filed a Request for *Ex Parte* Reexamination of U.S. Patent No. 6,107,851.  Specifically, Fairchild requested that the USPTO determine the patentability of claims 1, 2, 4, 7, 9-11, 13, 16, and 17 of the '851 Patent.

46.     On December 19, 2006, the USPTO issued an Order Granting Ex Parte Reexamination for claims 1, 2, 4, 7, 9, 10, 11, 13, 16 and 17 of the '851 Patent.

47.     On April 7, 2008, the USPTO issued an Office Action rejecting claims 1, 2, 4, 7, 9, 10, 11, 13, 16 and 17 of the '851 Patent as anticipated by the TEA2262.

48.     On June 9, 2008, the Applicants filed a response to the April 7, 2008 Office Action.  The response made three separate arguments in an attempt to distinguish the TEA2262 from the claims of the '851 Patent – (i) that the TEA2262's frequency variation signal was not "internal", (ii) that the TEA2262 disclosed a fixed frequency oscillator, and (iii) that "the oscillator of the TEA2262 does not provide a maximum duty cycle as expressly claimed."

49.     On December 4, 2008, the USPTO issued a Final Office Action rejecting Applicants' first two arguments but accepting their third.  In the December 4, 2008 Final Office Action, the USPTO withdrew all of the rejections based on the TEA2262 reference because "the Patent Owner argues that TEA2262 reference does not teach the claimed limitation 'said oscillator further providing a maximum duty cycle signal comprising a first state and a second state.'"  As a result, the PTO withdrew the TEA2262 as a basis for rejecting claims 1, 2, 4, 7, 9, 10, 11, 13, 16 and 17 of the '851 Patent, and claims 4 and 13 of the '851 Patent were deemed patentable and/or confirmed.

50.     The Applicants' argument that the prior art did not teach the claimed limitation "said oscillator further providing a maximum duty cycle signal comprising a first state and a second state" was a material and misleading misrepresentation.  The Applicants knew that the prior art did teach an oscillator that provides a maximum duty cycle signal as evidenced by at least the following:

A   During the parties' prior litigation, Mr. Balakrishnan conceded that the element "an oscillator further providing a maximum duty cycle signal comprising a first state and a second state" was not novel, that "maximum duty cycle has been used in many, many products", and that "it is very well known in the art."

B   Mr. Balakrishnan admitted that he was aware of prior art devices that included oscillators that generated maximum duty cycle signals more than a year before filing the application leading to the '851 Patent on May 18, 1998.  Mr. Balakrishnan admitted that these prior art devices included Power Integrations' own pulse width modulation products such as the SMP3, SMP240, and SMP260 devices.

C   While representing Balu Balakrishnan, the other Applicants, and Power Integrations during the parties earlier trial, PI's lead trial attorney, Frank Scherkenbach, admitted that oscillators providing a maximum duty cycle signals were "as old as the hills."

D   In one Court order, this Court explicitly recognized that PI had made such a concession, finding that "PI contends that an 'oscillator further providing a maximum duty cycle' was well known in the art…."

51.     The misleading misrepresentation that the prior art did not disclose an oscillator that generated a maximum duty cycle signal was material because had the Examiner realized that the prior art disclosed an oscillator that generated a maximum duty cycle signal, he would not have withdrawn his rejection of claims 4 and 13 of the '851 Patent.

52.     On information and belief, the Applicants, including Mr. Balakrishnan and Mr. Go, participated in the reexamination of the '851 Patent and were aware of the misleading misrepresentation that the prior art did not disclose an oscillator that generated a maximum duty cycle signal.  Evidence proving that Mr. Balakrishnan and Mr. Go were aware of these misleading misrepresentation includes at least the following:

A   Mr. Go signed the response June 9, 2008 response in which the misleading misrepresentation was made.

B   During the parties' prior litigation, Mr. Balakrishnan testified that he participated in the prosecution of patents for which he is named as an inventor.  Specifically, Mr. Balakrishnan testified that he reviews patent applications and proposed claim amendments for patents for which he is a named inventor.  Mr. Balakrishnan testified that he typically reads a patent application, reviews the drawings, and reviews the claims prior to signing the inventor's

declaration.  When he submits a patent application, Mr. Balakrishnan looks at PI's products and other information PI is aware of regarding the prior art.  If a claim is amended during the prosecution of a patent, Mr. Balakrishnan reviews it.  During the prosecution of one of his patents, Mr. Balakrishnan would review any amendment that added or removed elements of a claim.  Mr. Balakrishnan testified that he believes that he "almost certainly" would have reviewed any changes to the claims during the prosecution of his patents.

       C  Mr. Balakrishnan and Mr. Go both participated in a January 23, 2009 interview in which they discussed with the '851 Patent reexamination with the USPTO.  On information and belief, neither Mr. Balakrishnan, Mr. Go, nor any of the other Applicants ever disclosed to the USPTO that the USPTO's sole basis for distinguishing the reexamined claims from the TEA2262 prior art – that "the Patent Owner argues that TEA2262 reference does not teach the claimed limitation 'said oscillator further providing a maximum duty cycle signal comprising a first state and a second state'" – was incorrect and that the Applicants knew that oscillators providing a maximum duty cycle signal were well known in the prior art.

       53.  On information and belief, Applicants' misleading misrepresentation was deliberate and intentional.  Evidence proving that deceptive intent includes at least the following:

       A  During the original prosecution, Applicants made a similar misleading misrepresentation in which they stated that the prior art "fails to disclose, teach, or suggest such limitations [plural]" as "[i] an oscillator that provides a maximum duty cycle signal and [ii] on oscillation signal having a frequency range that is varied according to a frequency variation signal."

       B  During the parties' prior litigation, Fairchild argued that this misleading misrepresentation during the original prosecution of the '851 Patent constituted inequitable conduct.  In response, PI argued that Fairchild misinterpreted this statement.  As summarized by the Court: "Power Integrations contends that an 'oscillator for generating a maximum duty cycle' was well known in the art and disclosed in at least three prior art references that the Examiner had before him; however 'an oscillator that both generated a maximum duty signal **and** a second

signal, and did so 'with a frequency range dependent on a frequency variation circuit' was novel and not obvious.'  Stated another way, Power Integrations' argument is that the Examienr allowed the claims because '***the combination*** of features of a single oscillator generating multiple signals whose frequency varied in a range based on a frequency variation signal, together with the other recited elements… was novel and non-obvious.'" (citations omitted, original emphasis).  The Court accepted Power Integrations argument because "the Court is not persuaded that Power Integrations was claiming that an oscillator with a maximum duty cycle signal was a separate per se novel limitation."

C   During reexamination, Power Integrations intentionally made the argument that it (i) represented to the Court that it had not and would not make and (ii) knew to be false – namely, "that an oscillator with a maximum duty cycle signal was a separate per se novel limitation."

D   On information and belief, during the January 23, 2009 interview with the USPTO, Messrs. Go and Balakrishnan discussed the December 4, 2008 Final Office Action in which the PTO withdrew all of the claims rejections based on the TEA2262 reference but failed to inform the USPTO that the USPTO's sole basis for distinguishing the reexamined claims from the TEA2262 prior art – that "the Patent Owner argues that TEA2262 reference does not teach the claimed limitation 'said oscillator further providing a maximum duty cycle signal comprising a first state and a second state'" – was incorrect and that the Applicants knew that oscillators providing a maximum duty cycle signal were well known in the prior art.

54.    The Applicants, including Messrs. Balakrishnan and Go, had a duty to conduct themselves with good faith, candor, and honesty before the USPTO.  Their materially misleading statement concerning the patentability of the reexamined claims over the TEA2262 – coupled with their failure to notify the USPTO that this was not a basis to distinguish the prior art from the reexamined claims – was done with deceptive intent, and constituted a breach of their duty of good faith, candor, and honesty, rendering the '851 Patent unenforceable due to inequitable conduct.

55.     As a result of the foregoing inequitable conduct by the Applicants, including Messrs. Balakrishnan and Go, Defendants are entitled to a judicial determination and declaration that the '851 Patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for the following relief:

1.     The Court enters judgment against PI, and dismiss with prejudice, any and all claims of PI's Complaint for Patent Infringement; and order that Plaintiff take nothing as a result of the Complaint;

2.     The Court enters judgment declaring that Defendants have not infringed, contributed to infringement of, or induced infringement of the '851 Patent, the '876 Patent, or the '270 Patent;

3.     The Court enters judgment declaring that the '851 Patent, the '876 Patent, and the '270 Patent are invalid;

4.     The Court enters judgment that Power Integrations infringes of the '972 patent;

5.     The Court enters judgment that Power Integrations infringes of the '595 patent;

6.     The Court enters judgment that Power Integrations infringes of the '780 patent;

7.     The Court enters a permanent injunction preventing Power Integrations and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, offering to sell, or selling in the United States or importing into the United States any devices that infringe any claims of the '972, '595, or '780 patents, or contributing to or inducing the same by others;

8.     The Court enters a judgment against Power Integrations for money damages sufficient to compensate Plaintiffs for Power Integrations' infringement of the '972, '595, and '780 patents in an amount to be determined at trial;

9.     The Court orders an accounting for infringing sales not presented at trial and awards additional damages for any such infringing sales;

10.     The Court awards to Defendants its reasonable costs and attorneys' fees against Power Integrations pursuant to the provisions of 35 U.S.C. § 285;

11.     The Court awards to Defendants pre-judgment interest and costs of this action;

12.     The Court grants to Defendants such other and further relief as may be deemed just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38.1 of the Local Rules of the United States District Court for the District of Delaware, Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and System General Corporation hereby demand a trial by jury on this action.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

_____
Steven J. Balick (I.D. 2114)
John G. Day (I.D. 2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC.,  and
FAIRCHILD SEMICONDUCTOR
CORPORATION and SYSTEM
GENERAL CORP.

Of Counsel:

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Bas de Blank (#191487)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  August 21, 2009