IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

  v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, FAIRCHILD SEMICONDUCTOR
CORPORATION, a Delaware corporation, and
SYSTEM GENERAL CORPORATION, a
Taiwanese corporation,

        Defendants.

C.A. No. 08-309 JJF-LPS

**JURY TRIAL REQUESTED FOR
PLAINTIFF'S COUNTERCLAIMS**

## PLAINTIFF'S THIRD AMENDED ANSWER AND COUNTERCLAIMS

      Plaintiff and Counter-defendant Power Integrations, Inc. ("Power Integrations") answers and counterclaims to the allegations set forth in the Amended Counterclaims ("Counterclaims") of Defendants and Counterclaimants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and System General Corporation (collectively "Defendants") (D.I. 136). Except as expressly admitted below, Power Integrations denies each and every allegation in Defendants' Counterclaims. To the extent any heading or non-numbered statements in Defendants' Counterclaims contains an allegation, Power Integrations denies each and every allegation therein.

      Specifically, Power Integrations answers as follows:

### ANSWER TO DEFENDANTS' COUNTERCLAIMS

### THE PARTIES

      1.      Upon information and belief, Power Integrations admits the allegations of Paragraph 1 of the Counterclaims.

2.      Upon information and belief, Power Integrations admits the allegations of Paragraph 2 of the Counterclaims.

3.      Upon information and belief, Power Integrations admits the allegations of Paragraph 3 of the Counterclaims.

4.      Admitted.

## ANSWER ON JURISDICTION AND VENUE

5.      Power Integrations admits that the Counterclaims purport to bring an action under Title 35 U.S.C. § 1 *et seq.*, but Power Integrations expressly denies any liability thereunder. Power Integrations also admits that the Counterclaims purport to state a cause of action over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Power Integrations admits that this Court has personal jurisdiction over Power Integrations.

7.      Power Integrations admits that, for the purpose of this action only, venue is proper in this district.

## ANSWER TO GENERAL ALLEGATIONS

8.      Power Integrations admits that it has manufactured, for it, pulse width modulation ("PWM") controller integrated circuit devices.  Power Integrations admits that these PWM controller integrated circuit devices are imported, used, sold, and offered for sale throughout the United States including Delaware.  Power Integrations admits that it supports and encourages its customers to use Power Integrations' devices by incorporating them in other products made by those customers and, on information and belief, that some of those customers' products are imported, used, sold, and offered for sale throughout the United States, including Delaware. Power Integrations denies all other allegations of Paragraph 8.

## ANSWER TO FIRST COUNTERCLAIM
### Infringement of U.S. Patent No. 7,259,972

9.      Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

10.     Power Integrations admits that on its face United States Patent No. 7,259,972 is entitled "Primary-Side-Control Power Converter Having [A] Switching Controller Using Frequency Hopping and Voltage and Current Control Loops."[1]   Power Integrations also admits that, on its face, the '972 patent was issued on August 21, 2007 and was assigned to System General Corporation.  Power Integrations further admits that Exhibit A purports to be the '972 patent.  Power Integrations denies that the '972 patent was duly and legally issued.  Power Integrations is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies the same.

11.     To the extent that "Counterclaim-Plaintiffs"[2] refers only to System General Corp. ("SG"), Power Integrations denies the allegations of Paragraph 11.  To the extent that the term "Counterclaim-Plaintiffs" includes either Fairchild Semiconductor International, Inc. or Fairchild Semiconductor Corporation (collectively "Fairchild"), Power Integrations also further denies the allegations of Paragraph 11 because Fairchild lacks standing.

12.     Power Integrations denies the allegations of Paragraph 12.  Power Integrations also denies the allegations of Paragraph 12 further specifically with respect to Fairchild because Fairchild lacks standing.

13.     Power Integrations denies the allegations of Paragraph 13.  Power Integrations also denies the allegations of Paragraph 13 further specifically with respect to Fairchild because Fairchild lacks standing.

**ANSWER TO SECOND COUNTERCLAIM**
**Infringement of U.S. Patent No. 7,352,595**

14.     Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

---

[1]   Power Integrations notes, however, that the allegations contained in Defendants' Counterclaim paragraph 9 incorrectly list the full title of the '972 patent by failing to leave out the article "a" which is bracketed in Power Integrations' Answer.

[2]   Power Integrations notes that Defendants failed to define the term "Counterclaim-Plaintiffs" in their complaint and thus the term is ambiguous and vague at best.  Power Integrations will respond as if Counterclaim-Plaintiffs refers to all Defendants and not just SG, although SG is the only party with apparent standing to complain of infringement.

15.     Power Integrations admits that on its face United States Patent No. 7,352,595 is entitled "Primary-Side Controlled Switching Regulator."  Power Integrations also admits that on its face, the '595 patent was issued on April 1, 2008 and was assigned to System General Corporation.  Power Integrations further admits that Exhibit B purports to be the '595 patent.  Power Integrations denies that the '595 patent was duly and legally issued.  Power Integrations is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies the same.

16.     Power Integrations denies the allegations of Paragraph 16.  Power Integrations also denies the allegations of Paragraph 16 further specifically with respect to Fairchild because Fairchild lacks standing.

17.     Power Integrations denies the allegations of Paragraph 17.  Power Integrations also denies the allegations of Paragraph 17 further specifically with respect to Fairchild because Fairchild lacks standing.

18.     Power Integrations denies the allegations of Paragraph 18.  Power Integrations also denies the allegations of Paragraph 18 further specifically with respect to Fairchild because Fairchild lacks standing.

## ANSWER TO THIRD COUNTERCLAIM
### Infringement of U.S. Patent No. 7,061,780

19.     Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

20.     Power Integrations admits that on its face United States Patent No. 7,061,780 is entitled "Switching Control Circuit with Variable Switching Frequency for Primary-Side-Controlled Power Converters."  Power Integrations also admits that on its face, the '780 patent was issued on June 13, 2006 and was assigned to System General Corporation.  Power Integrations further admits that Exhibit C purports to be the '780 patent.  Power Integrations denies that the '780 patent was duly and legally issued.  Power Integrations is without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies the same.

21.     Power Integrations denies the allegations of Paragraph 21.  Power Integrations also denies the allegations of Paragraph 21 further specifically with respect to Fairchild because Fairchild lacks standing.

22.     Power Integrations denies the allegations of Paragraph 22.  Power Integrations also denies the allegations of Paragraph 22 further specifically with respect to Fairchild because Fairchild lacks standing.

23.     Power Integrations denies the allegations of Paragraph 23.  Power Integrations also denies the allegations of Paragraph 23 further specifically with respect to Fairchild because Fairchild lacks standing.

**ANSWER TO FOURTH COUNTERCLAIM**
**<u>Declaratory Judgment of Non-Infringement</u>**

24.     Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

25.     Admitted.

26.     Admitted.

27.     Power Integrations is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same.

28.     Power Integrations is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same.

29.     Power Integrations is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same.

30.     Power Integrations has alleged in its complaint that Fairchild and SG are infringing Power Integrations' patents-in-suit by making, using, selling, and/or offering to sell in the U.S., or importing into the U.S., integrated circuit controller products that are covered by one or more claims of the Power Integrations patents, and by contributing to and inducing others to

do the same.  As part of discovery in this matter, Power Integrations has generally identified all Fairchild and SG controller products currently known to it which include the patented frequency jitter and output power limit features as infringing devices and, further, has provided a non-limited list of specific part numbers believed by Power Integrations at the time of its discovery responses to correspond to parts that contain either or both of the infringing features.  Power Integrations admits that, as of the date of this pleading, the part numbers listed in Paragraph 30 of the Counterclaims have not been identified by Power Integrations as corresponding to infringing products based on presently known, publicly available information, and Power Integrations' present information and belief is that these part numbers correspond to products that either do not exist, or do not contain either of the infringing features.

31. Power Integrations denies the allegations of Paragraph 31.

32. Power Integrations denies the allegations of Paragraph 32.

33. Admitted.

**ANSWER TO FIFTH COUNTERCLAIM**
**Declaratory Judgment of Invalidity of the '851 Patent**

34. Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

35. Power Integrations denies the allegations of Paragraph 35.

36. Admitted.

**ANSWER TO SIXTH COUNTERCLAIM**
**Declaratory Judgment of Invalidity of the '876 Patent**

37. Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

38. Power Integrations denies the allegations of Paragraph 38.

39. Admitted.

## ANSWER TO SEVENTH COUNTERCLAIM
### Declaratory Judgment of Invalidity of the '270 Patent

40.     Power Integrations realleges its answers as set forth in paragraphs 1-8 above as though fully set forth in this Paragraph.

41.     Power Integrations denies the allegations of Paragraph 41.

42.     Admitted.

## ANSWER TO EIGHTH COUNTERCLAIM
### Declaratory Judgment of Unenforceability of the '851 Patent

43.     Power Integrations realleges its answers as set forth in Paragraphs 1-8 above as though fully set forth in this Paragraph.

44.     Power Integrations denies the allegations of Paragraph 44.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Power Integrations admits that the Applicants filed a response to the April 7, 2008 Office Action; the arguments made therein speak for themselves.  Power Integrations disputes and denies the remaining allegations of Paragraph 48, including Fairchild's characterizations of the statements made in the Applicants' response.

49.     Power Integrations admits that the USPTO issued a "Final Office Action" on December 4, 2008 and that the PTO withdrew its prior rejection of claims on the basis of the TEA2262 at that time.  Power Integrations disputes and denies the remaining allegations of Paragraph 49, including Fairchild's characterizations of the USPTO's actions during prosecution of the '851 Patent.

50.     Power Integrations denies the allegation and characterizations of Paragraph 50, including subparagraphs A - D and the alleged partial statements that are provided without citation to any specific prior testimony therein.  Power Integrations cannot further respond to allegations and characterizations of partial statements in the absence of specific citations or the complete context.

51.     Power Integrations denies the allegations of Paragraph 51.

52.     Power Integrations denies the allegations of Paragraph 52.

(A) Power Integrations admits that Mr. Go signed a June 9, 2008 response during the reexamination of the '851 patent.  Power Integrations denies the remaining allegations of Paragraph 52, subparagraph (A).

(B) Power Integrations admits that Mr. Balakrishnan testified during the parties' prior litigation; the transcript of Mr. Balakrishnan's testimony speaks for itself.  Power Integrations disputes and denies the remaining allegations of Paragraph 52, subparagraph B, including Fairchild's characterization of uncited portions of Mr. Balakrishnan's testimony.

(C) Power Integrations admits that Mr. Balakrishnan and Mr. Go participated in a January 23, 2009 interview with the USPTO in which they discussed the '851 Patent Reexamination; the *Ex Parte* Reexamination Interview Summary speaks for itself.  Power Integrations disputes and denies the remaining allegations of Paragraph 52, subparagraph C.

53.     Power Integrations disputes and denies the allegations of Paragraph 53, including subparagraphs A – D and Fairchild's characterizations of the parties' prior litigation and the prosecution and reexamination histories.  The record of the parties' prior litigation and the prosecution and reexamination histories speak for themselves.  Further, Fairchild is precluded from re-litigating Power Integrations' alleged inequitable conduct in obtaining the '851 patent in this case because Fairchild raised the identical legal and factual issues and failed to prove its claim during the prior litigation between the parties.

54.     Power Integrations admits that the Applicants had a duty to conduct themselves with good faith, candor, and honesty before the USPTO.  Power Integrations denies the remaining allegations and characterizations of Paragraph 54.

55.     Power Integrations denies the allegations of Paragraph 55.

## ANSWER TO PRAYER FOR RELIEF

Power Integrations denies that Defendants are entitled to any relief whatsoever, either as requested in Defendants' prayer for relief or otherwise.  In addition, Power Integrations denies that Fairchild is entitled to any relief with respect to the '972, '595, or '780 patents because it lacks standing to sue.

## AFFIRMATIVE AND OTHER DEFENSES

Further responding to Defendants' Counterclaims, Power Integrations asserts the following defenses.  Power Integrations reserves the right to amend its answer with additional defenses as further information is obtained.

### First Affirmative Defense
### (Non-Infringement)

56.     Power Integrations does not infringe and has not infringed (literally, under the doctrine of equivalents, contributorily, or by inducement) any valid and enforceable claim of the '972, '595, or '780 patents.

### Second Affirmative Defense
### (Invalidity)

57.     The '972, '595, and '780 patents are invalid because each fails to satisfy the conditions for patentability specified in Title 35 of the United States Code, including but not limited to §§ 102, 103 and 112.

### Third Affirmative Defense
### (Unenforceability-Unclean Hands)

58.     SG is barred by SG's unclean hands from enforcing the '972, '595, and '780 patents against Power Integrations.

### Fourth Affirmative Defense
### (Unavailability of relief – Marking and Notice)

9

59.     SG has failed to plead and meet the requirements of 35 U.S.C. § 287 on marking and notice, and has otherwise failed to show that it is entitled to any damages prior to the filing date of the complaint.

**Fifth Affirmative Defense**
**(Unenforceability-Patent Misuse)**

60.     SG's claims against Power Integrations are barred by SG's patent misuse.

**Sixth Affirmative Defense**
**(Infringement-Res Judicata and Collateral Estoppel)**

61.     Defendants are barred by the doctrine of res judicata and/or collateral estoppel from denying infringement for those parts previously adjudicated to infringe the '851 and '876 patents.

62.     Defendants are also barred by the doctrine of res judicata and/or collateral estoppel from denying infringement of those parts not colorably different from those previously adjudicated to infringe the '851 and '876 patents.

**Seventh Affirmative Defense**
**(Validity-Res Judicata and Collateral Estoppel)**

63.     Defendants are barred by the doctrine of res judicata and/or collateral estoppel from denying the validity of those claims of the '876 and '851 patents previously adjudicated valid by a jury and for those additional claims for which the legal and factual underpinnings of the validity issue are substantially identical.

**Eighth Affirmative Defense**

**(Unenforceability– Inequitable Conduct)**

64.     The asserted Yang '972, '780, and '595 patents are each unenforceable as a result of inequitable conduct committed during prosecution before the United States Patent and Trademark Office ("PTO").  As specifically set forth in detail below, at least one of the named inventors and at least one of the patent agents of record, with knowledge of the withheld material

information and the specific intent to deceive, failed to disclose to the PTO material, non-cumulative prior art known to them during prosecution of the Yang '972, '780, and '595 patents.

### Inequitable conduct during prosecution of the Yang '972 patent

65.     The Yang '972 patent issued on August 21, 2007 as a result of Application No. 10/959,188, filed on October 7, 2004.

66.     Ta-yung "Tom" Yang ("Mr. Yang") is the only named inventor on the Yang '972 patent.

67.     In addition to being the only named inventor on the '972 Patent, Mr. Yang is also the first named inventor on a number of other United States patents, including at least three related to frequency jitter (i.e. frequency hopping) that were filed before the application for the '972 Patent and were co-pending before the PTO during prosecution of the '972 Patent:  United States Patent No. 7,026,851 entitled "PWM Controller Having Frequency Jitter for Power Supplies," filed on May 12, 2004 and issued on April 11, 2006 ("the Yang '851 patent"); United States Patent No. 7,203,079 entitled "Switching Controller Having Frequency Hopping for Power Supplies," filed on July 23, 2004 and issued on April 10, 2007 ("the Yang '079 patent"); and United States Patent No. 7,184,283 entitled "Switching Frequency Jitter Having Output Ripple Cancel for Power Supplies," filed on August 9, 2004 and issued on February 27, 2007 ("the Yang '283 patent") (collectively, "the earlier co-pending Yang patents").

68.     Upon information and belief, SG has been the assignee and owner of all three of the earlier co-pending Yang patents since issuance, and became the assignee of all three during prosecution.  Power Integrations reserves its right to amend this pleading to add the names of other SG employees or agents associated with the prosecution of the Yang patents who knowingly withheld material, non-cumulative information from the PTO with the intent to deceive once Power Integrations has conducted discovery sufficient to allow it to specifically identify such individuals.

69.     The three earlier co-pending Yang patents and two of the three SG patents-in-suit here (the Yang '780 and '595 patents), which were co-pending before the PTO during

prosecution of the Yang '972 patent, were prosecuted on behalf of Mr. Yang and SG by J.C.

Patents, Inc. ("J.C. Patents"), located at 4 Venture, Suite 250, Irvine CA 92618, including at least

J.C. Patents employee and patent agent Jiawei Huang ("Mr. Huang").  Power Integrations

reserves its right to amend this pleading to add the names of other J.C. Patents attorneys or

agents associated with the prosecution of the Yang patents who knowingly withheld material,

non-cumulative information from the PTO with the intent to deceive once Power Integrations has

conducted discovery sufficient to allow it to specifically identify such individuals.

70.     The Yang '972 patent, however, which shares twelve identical figures with the

'780 patent, was prosecuted on behalf of Mr. Yang and SG by a different law firm, Finnegan,

Henderson, Farabow, Garrett & Dunner LLP ("Finnegan"), located at 901 New York Avenue

NW, Washington, DC 20001, including at least Finnegan attorney Richard Burgujian.  Power

Integrations reserves its right to amend this pleading to add the names of other Finnegan

attorneys or agents associated with the prosecution of the Yang patents who knowingly withheld

material, non-cumulative information from the PTO with the intent to deceive once Power

Integrations has conducted discovery sufficient to allow it to specifically identify such

individuals.

71.     The earlier co-pending Yang '283 and '851 patents, under the heading

"Description of Related Art," disclose three prior art references' teachings of the use of

"frequency jitter" to reduce electromagnetic interference ("EMI"):  (a) Power Integrations'

United States Patent No. 6,249,876, entitled "Frequency Jittering Control for Varying the

Switching Frequency of a Power Supply," by Balu Balakrishnan, Leif Lund, and Alex

Djenguerian, which issued on June 19, 2001 ("the '876 patent"); (b) Power Integrations' United

States Patent No. 6,229,366 entitled "Off-line Converter with Integrated Softstart and Frequency

Jitter," by Balu Balakrishnan, Leif Lund, and Alex Djenguerian, which issued on May 8, 2001

("the '366 patent"); and (c) M. Rahkala, T. Suntio and K. Kalliomaki, "Effects of Switching

Frequency Modulation on EMI Performance of a Converter Using Spread Spectrum Approach,"

Proceedings 17th Annual Applied Power Electronics Conference, Dallas, Texas, March 10-14,

2002, Vol. 1, pp. 93-99 (IEEE 2002) ("the Rahkala article").  (Yang '283 patent at 1:29-42; Yang '851 patent at 1:25-37.)  Power Integrations is the assignee of the '366 and '876 patents disclosed in the earlier co-pending Yang '283 and Yang '851 patents.  In the Yang '283 and Yang '851 patent specifications, inventor Tom Yang explained that the Power Integrations patents described frequency jitter circuits and attempted to distinguish the purported inventions of the Yang '283 and Yang '851 patents on the basis of additional circuitry rather than the specific features of the jitter circuits themselves.  (Yang '283 patent at 1:42-2:38, independent claim 1 (claiming an additional attenuator and programmable resistor); Yang '851 patent at 1:37-2:35, independent claims 1 and 5 (claiming an additional attenuator and variable-resistance circuit).)

72.     Despite being filed between the filing dates of the Yang '283 and Yang '851 patents, the earlier co-pending Yang '079 patent discloses only the Rahkala article as prior art, and describes the article as proposing reduction of EMI by "frequency hopping" or "modulation" (Yang '079 patent at 1:26-33) (described as "frequency jitter" in the Yang '283 and Yang '851 patents (Yang '283 patent at 1:30; Yang '851 patent at 1:26)).  The Yang '079 patent does not disclose the Power Integrations '876 and '366 patents that the Yang '283 and Yang '851 patents disclosed and attempted to distinguish, and the Yang '079 patent includes claims lacking the additional circuitry asserted in the Yang '283 and Yang '851 patents to distinguish over the Power Integrations prior art.  (*Compare* Yang '079 patent claim 5 (no claimed attenuator, programmable resistor, or variable-resistance circuit) *with* Yang '283 patent at 1:42-2:38, independent claim 1, *and* Yang '851 patent at 1:37-2:35, independent claims 1 and 5.)

73.     Mr. Yang and J.C. Patents' Mr. Huang knew about Power Integrations' '876 and '366 patents before and during prosecution of the Yang '972 patent, as evidenced by their citation of these Power Integrations patents for their frequency jitter functionality in the specifications of the earlier co-pending Yang '283 and Yang '851 patents.

74.     Mr. Yang and J.C. Patents' Mr. Huang also knew about Power Integrations' prior art TinySwitch Plus (TNY256) and TinySwitch-II (TNY264/266-268) products before and

during prosecution of the Yang '972 Patent, including the fact that these Power Integrations products incorporate frequency jitter circuits, as evidenced by the discussion of these products in the Rahkala article cited and discussed as prior art in the earlier co-pending Yang '283 and Yang '851 patents (*see* Rahkala article at 93, 99).

75.     Mr. Yang and SG were also involved in a patent litigation with Power Integrations during the entire period of time in which the application that became the Yang '972 patent was being prosecuted, and Mr. Yang knew of Power Integrations' patents and products that practice Power Integrations' frequency jitter inventions at least in part as a result of that litigation.

76.     Power Integrations' '876 and '366 patents, and its TNY256 and TNY264/266-268 products, would have been highly material to the patentability of all of the independent claims of the Yang '972 patent, including claims 1, 11, 12, 15, 22, and 32, because they disclose and incorporate frequency jitter (i.e. frequency hopping) circuitry.  Power Integrations' '876 and '366 patents, and its TNY256 and TNY264/266-268 products, would have been particularly highly material to claim 12 of the Yang '972 patent because each provides *prima facie* evidence of anticipation of claim 12 in view of the broad and generic recitation of frequency hopping in claim 12.  Attached as Appendix A is a claim chart excerpted from Power Integrations' invalidity contentions demonstrating the anticipation of claim 12 of the Yang '972 patent by Power Integrations own prior art, including a diagram matching up the elements of claim 12 against the disclosure in Power Integrations' '876 patent.

77.     Mr. Yang knew that Power Integrations' '876 and '366 patents, and its TNY256 and TNY264/266-268 products that practiced Power Integrations' frequency jitter inventions, were material to the patentability of the claims of the Yang '972 patent, at least based on the close similarity of the disclosure of "frequency jitter" in the earlier co-pending Yang '283 and Yang '851 patents and issued claim 12 (original claim 22) of the Yang '972 patent, which recites "a controller to generate the switching signal and to allow the switching frequency to hop from frequency to frequency according to a digital pattern."  Mr. Yang knew that "frequency jitter" at

14

least relates to "frequency hopping" as claimed in the Yang '972 patent, if in fact any differences between them exist, at least because Mr. Yang used the terms interchangeably to describe the prior art Rahkala article in the earlier co-pending Yang '079, '283, and '851 patents. Specifically, the earlier co-pending Yang '079 patent describes the Rahkala article as prior art that "[has] been proposed to reduce the EMI by using frequency modulation or frequency hopping" (Yang '079 patent at 1:27-28); similarly, the earlier co-pending Yang '283 and Yang '851 patents describe the Rahkala article as prior art that "[has] been proposed to reduce the EMI by using frequency jitter." (Yang '283 patent at 1:30; Yang '851 patent at 1:26.) Mr. Yang also knew that Power Integrations' '876 and '366 patents, and its TNY256 and TNY264/266-268 products that practiced Power Integrations' frequency jitter inventions, were not cumulative to the art of record during the prosecution of the Yang '972 patent because none of the art of record disclosed anything resembling the "frequency jitter" in this Power Integrations art, which bears a close facial similarity to at least issued claim 12 (original claim 22) of the Yang '972 patent.

78.    Despite knowing about Power Integrations' prior art patents and products, and also knowing that such references were material and not cumulative to the information already of record, Mr. Yang deliberately withheld this material information and did not disclose the Power Integrations '876 or '366 prior art patents, or the Power Integrations TNY256 and TNY264/266-268 prior art products, during prosecution of the Yang '972 patent at issue here. Instead, Mr. Yang, through his patent counsel Mr. Burgujian, represented to the Patent Office that

> With regard to the remaining rejections listed above in items (d) – (h), **Applicant submits that each of the amended independent claims 1, 13, 25, 35, and 55 patentably distinguish over each of the cited references.** In particular, Applicant has amended each of the independent claims directed to a power converter to additionally recite that the claimed controller includes "a pattern generator to generate a digital pattern" and that "the controller uses the digital pattern for use in generating the switching signal as a **frequency-hopping** switching signal to the switch," as for example recited in claim 1. Similarly, Applicant has amended method claim 13 to additionally recite "generating a **frequency-hopping** signal switching signal" and "generating a digital pattern for use in generating the **frequency-hopping** switching signal." **Applicant asserts that none of the cited references discloses such features.** These features incorporated into the independent claims correspond to features recited in

15

canceled claims 2, 3, 14 and 15. **Applicant notes that the Examiner did not reject any of dependent claims 2, 3, 14 and 15 that recited these features in any of the claim rejections under 35 U.S.C. § 102(a), (b), and (e), and thereby acknowledged that none of the cited references teaches these features.** Applicant therefore requests the withdrawal of § 102(e), § 102(a), and § 102(b) rejections set forth in the above-listed items (d) – (h).

('972 Patent, April 30, 2007 Office Action Response at 19 (emphasis added).)  When Mr. Yang made that material misrepresentation suggesting the state of the prior art, Mr. Yang knew the statement was false.

79.    The failure of Mr. Yang to disclose Power Integrations' '876 and '366 patents and TNY256 and TNY264/266-268 products during prosecution of the Yang '972 patent was done with deceptive intent and constituted a breach of the duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56(a), rendering the Yang '972 patent unenforceable for inequitable conduct.

80.    Evidence of deceptive intent during prosecution of the Yang '972 patent is apparent from the pattern of selective disclosure exhibited by Mr. Yang, including: (a) the withholding Power Integrations' '876 and '366 patents and TNY256 and TNY264/266-268 products that practiced Power Integrations' frequency jitter inventions, which were highly material to the patentability of the '972 patent; (b)  the failure  to cite the Power Integrations '876 and '366 patents in the earlier co-pending Yang '079 patent that claims a switching controller having frequency hopping; (c) the selective disclosure of Mr. Yang's own prior art and work to Finnegan during prosecution of the '972 patent, including providing Finnegan with certain prior Yang and SG patents and published applications while withholding the earlier co-pending Yang '283, '851, and '079 patents and Power Integrations' patents and products that disclosed and discussed frequency jitter; (d) the misleading assertions made during prosecution of the '972 patent that "none of the cited references" disclosed frequency hopping ('972 Patent, April 30, 2007 Office Action Response at 19), when Mr. Yang knew that Power Integrations' patents and products did so, had not been cited by or to the PTO, and that such references were not

16

cumulative to the information of record; (e) the inability of Mr. Yang to explain during his June 11, 2009 deposition in this case why the Yang '972 patent was the only Yang patent selected to be prosecuted by Finnegan, at the same time as at least two related and co-pending applications (which became the Yang '780 and '595 patents) were being prosecuted by J.C. Patents; and (f) the inability of Mr. Yang to explain during his deposition why Power Integrations' patents and products were not disclosed during prosecution of the '972 application.

81.     As a result of the foregoing inequitable conduct by Mr. Yang, the Yang '972 patent is unenforceable.

**Inequitable conduct during prosecution of the Yang '780 patent**

82.     The Yang '780 patent issued on June 13, 2006 as a result of Application No. 10/938,463, filed on September 9, 2004.

83.     Mr. Yang is the first named inventor on the Yang '780 patent.

84.     The Yang '780 Patent was prosecuted on behalf of Mr. Yang, his co-inventors, and SG by J.C. Patents, including at least J.C. Patents' Mr. Huang.

85.     Claim 4 of the Yang '780 patent recites a controller comprising a pattern generator and first and second programmable capacitors.  Claim 4 of the Yang '780 patent includes substantively the same limitations as claim 26 of the Yang '972 patent, which claims the same controller comprising a pattern generator and first and second programmable capacitors as claim 4 of the Yang '780 patent.

86.     In this case, although they have not asserted claim 4 of the Yang '780 patent itself, Defendants have asserted that claim 26 of the Yang '972 patent reads on Power Integrations' LinkSwitch-II products.  By asserting claim 26 of the Yang '972 patent against Power Integrations' LinkSwitch-II products, Defendants have implicitly construed this claim to cover the LinkSwitch-II's frequency jitter circuit.  The frequency jitter component of the accused LinkSwitch-II products, however, is substantially identical to the frequency jitter component of the prior art TNY256 and TNY264/266-268 products and to the frequency jitter circuit disclosed in Power Integrations' '876 patent.  Given the proposed construction of this claim language

17

implicit in Defendants' infringement contentions and assertion of infringement with respect to the LinkSwitch-II products (a construction Power Integrations contends is improper), Mr. Yang knew that Power Integrations' TNY256 and TNY264/266-268 products and '876 patent were material to the patentability of at least claim 4 of the '780 patent.

87.    Mr. Yang, his co-inventor Guo-Kiang Hung ("Mr. Hung"), and J.C. Patents' Mr. Huang knew about Power Integrations' '876 patent before and during prosecution of the Yang '780 patent, including the fact that the '876 patent discloses frequency jitter circuits, as evidenced by the citation of this patent in the specification of the earlier co-pending Yang '283 and Yang '851 patents, both of which name Mr. Hung as a co-inventor and were prosecuted by J.C. Patents' Mr. Huang.  (Yang '283 patent at 1:42; Yang '851 patent at 1:37.)

88.    Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang knew about Power Integrations' prior art TNY256 and TNY264/266-268 products before and during prosecution of the Yang '780 patent, including the fact that these Power Integrations products incorporate frequency jitter circuits, as evidenced by the discussion of these products in the Rahkala article cited and discussed as prior art in the earlier co-pending Yang '283 and Yang '851 patents (*see* Rahkala article at 93, 99).

89.    Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang did not submit any art related to frequency jitter or frequency hopping to the PTO during prosecution of the application that became the Yang '780 patent, and no such frequency jitter or frequency hopping art was cited by the PTO during prosecution.  Therefore, as discussed above, Power Integrations' TNY256 and TNY264/266-268 products and '876 patent were not cumulative to the art of record, and at the very least they render obvious at least claim 4 of the '780 patent.

90.    Despite knowing about Power Integrations' TNY256 and TNY264/266-268 products and '876 patent, Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang deliberately withheld this material, non-cumulative information and did not disclose any of this prior art to the PTO during prosecution of the Yang '780 patent at issue here.

91.     The failure of Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang to disclose Power Integrations' TNY256 and TNY264/266-268 products and the '876 patent to the PTO during prosecution of the Yang '780 patent was done with deceptive intent and constituted a breach of the duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56(a), rendering the Yang '780 patent unenforceable for inequitable conduct.  Evidence of deceptive intent during prosecution of the Yang '780 patent is apparent from the pattern of selective nondisclosure exhibited by Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang during prosecution of the '780 patent (disclosing Power Integrations' TNY256 and TNY264/266-268 products and '876 patent in connection with the earlier co-pending Yang '283 and Yang '851 patents, but not during prosecution of the '780 patent), in addition to their failure to cite the Power Integrations '876 and '366 patents in the earlier co-pending Yang '079 patent that claims a switching controller having frequency hopping.

92.     Based on Defendants' apparent construction of the language contained in claim 4 of the '780 patent (implicit in their assertion of infringement of substantively identical language from the Yang '972 patent against Power Integrations' LinkSwitch-II products), the intentionally deceptive failure of Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang to disclose to the PTO Power Integrations' TNY256 and TNY264/266-268 products and '876 patent, known to them during prosecution of the Yang '780 patent, renders the Yang '780 patent unenforceable for inequitable conduct.

93.     In addition, because the disclosures of the Yang '780 and Yang '972 patents are so closely related and share identical figures, because many of the claims of each patent include substantively the same limitations, and because both patents have been asserted against the same Power Integrations products, the inequitable conduct committed during prosecution of the Yang '972 patent detailed above also infects the Yang '780 and renders it unenforceable.

**Inequitable conduct during prosecution of the Yang '595 patent**

94.     The Yang '595 patent issued on April 1, 2008 as a result of Application No. 11/270,867, filed on November 8, 2005.

19

95.     Mr. Yang is the first named inventor on the Yang '595 patent.

96.     The Yang '595 Patent was prosecuted on behalf of Mr. Yang, his co-inventors, and SG by J.C. Patents, including at least J.C. Patents' Mr. Huang.

97.     United States Patent No. 6,480,399, entitled "Switched Mode Power Supply Responsive to Current Derived from Voltage Across Energy Transfer Element Input," by Balu Balakrishnan and David Michael Hugh Matthews, issued on November 12, 2002 and was assigned to Power Integrations ("the '399 patent"). The '399 patent is cited in at least two additional earlier co-pending Yang patents prosecuted by J.C. Patents: United States Patent No. 6,862,194 entitled "Flyback Power Converter Having A Constant Voltage and a Constant Current Output Under Primary-Side PWM Control," filed on June 18, 2003 and issued on March 1, 2005 ("the Yang '194 patent"), and United States Patent No. 6,853,563 entitled "Primary-Side Controlled Flyback Power Converter," filed on July 28, 2003 and issued on February 8, 2005 ("the Yang '563 patent"). (Yang '194 patent at 2:7; Yang '563 patent at 1:66-67.)

98.     The earlier co-pending Yang '194 and '563 patents, under the heading "Description of Related Art," describe Power Integrations' '399 patent as proposing the use of reflected voltage as a means of primary-side control.

99.     The Power Integrations '399 patent also discloses on its face and in the specification members of the TinySwitch family of products—the same family that includes the TNY256 and TNY264/266-268 prior art products discussed above. ('399 patent at 3:50-55.) Power Integrations' prior art TNY256 and TNY264/266-268 products in combination with Power Integrations' '399 patent were material to the patentability of the claims of the Yang '595 patent, including at least claim 16 of the Yang '595 patent, because they contain essentially the same circuitry Defendants are now accusing of infringement. Mr. Yang and J.C. Patents' Mr. Huang knew that Power Integrations' prior art TNY256 and TNY264/266-268 products in combination with Power Integrations' '399 patent were material to patentability, and that such references were not cumulative to the information already of record, because the cited prior art did not show a circuit like the circuit Defendants have presently accused of infringement.

Appendix A, attached, contains a claim chart excerpted from Power Integrations' invalidity contentions demonstrating the materiality of Power Integrations' own prior art with respect to claim 16 of the Yang '595 patent.

100.    Mr. Yang and J.C. Patents' Mr. Huang knew about Power Integrations' prior art TNY256 and TNY264/266-268 products and '399 patent before and during prosecution of the Yang '595 patent, including that the '399 patent teaches using the TinySwitch in primary side applications, as evidenced by the citation of this patent in the specifications of the earlier co-pending Yang '194 and '563 patents.  (Yang '194 patent at 2:7; Yang '563 patent at 1:66-67.)

101.    Despite knowing about Power Integrations' prior art TNY256 and TNY264/266-268 products and '399 patent, Mr. Yang and J.C. Patents' Mr. Huang deliberately withheld this material, non-cumulative information and did not disclose any of this prior art to the PTO during prosecution of the Yang '595 patent.

102.    The failure of Mr. Yang and J.C. Patents' Mr. Huang to disclose Power Integrations' prior art TNY256 and TNY264/266-268 products and '399 patent to the PTO during prosecution of the Yang '595 patent was done with deceptive intent and constituted a breach of the duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56(a), rendering the Yang '595 patent unenforceable for inequitable conduct.  Evidence of deceptive intent during prosecution of the Yang '595 patent is apparent from the pattern of selective disclosure exhibited by Mr. Yang and J.C. Patents' Mr. Huang, including their failure to cite the Power Integrations '399 patent and prior art TNY256 and TNY264/266-268 products during prosecution of the Yang '595 patent despite this art having been cited in the earlier co-pending Yang '194 and '563 patents.

103.    As a result of the foregoing inequitable conduct by Mr. Yang and J.C. Patents' Mr. Huang, the Yang '595 patent is unenforceable.

104.    In addition, because the disclosures of the Yang '595 and Yang '972 patents are so closely related and share at least three identical figures, because many of the claims of each patent include substantively the same limitations, and because both patents have been asserted

21

against the same Power Integrations products, the inequitable conduct committed during prosecution of the '972 Yang patent detailed above also infects the Yang '595 patent and renders it unenforceable.

## PLAINTIFF POWER INTEGRATIONS' DECLARATORY JUDGMENT COUNTERCLAIMS

Plaintiff Power Integrations, Inc. hereby alleges as follows:

## THE PARTIES

105.    Power Integrations, Inc. ("Power Integrations") is incorporated under the laws of the state of Delaware, and has a regular and established place of business at 5245 Hellyer Avenue, San Jose, California, 95138.

106.    Upon information and belief, defendant Fairchild Semiconductor International, Inc. is incorporated under the laws of the state of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106.

107.    Upon information and belief, defendant SG is incorporated under the laws of Taiwan, with its headquarters located at 5F, No. 9, Alley 6, Lane 45 Bao Shing Road, Shin Dian, Taipei, Taiwan.  Upon information and belief, SG is a wholly owned subsidiary of Fairchild Semiconductor International, Inc.

## JURISDICTION AND VENUE

108.    This action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, Title 35 U.S.C. § 271 *et seq.*  An actual, substantial and continuing justiciable controversy exists between Power Integrations and SG with respect to which Power Integrations requires a declaration of its rights by this Court.  At present the controversy relates to the noninfringement and invalidity of U.S. Patent Nos. 7,259,972 ("the '972 patent"), 7,352,595 ("the '595 patent"), and 7,061,780 ("the '780 patent") and SG's right to threaten and/or maintain a suit for infringement on the same.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

109.     This Court has personal jurisdiction over SG because SG has purposely availed itself of the privilege of conducting activities within the State and District.

110.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(c) and because SG is subject to personal jurisdiction in this judicial district

## GENERAL ALLEGATIONS

111.     On October 14, 2008, SG filed a complaint for patent infringement against Power Integrations, alleging that Power Integrations infringes the '972, '595, and '780 patents.

112.     SG purports to be the sole owner of the '972, '595, and '780 patents.

## FIRST COUNTERCLAIM
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF U.S. PATENT NO. 7,259,972

113.     The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

114.     Power Integrations has not infringed and does not infringe the '972 patent.

115.     Power Integrations is entitled to a judicial determination and declaration that it does not infringe the '972 patent.

**SECOND COUNTERCLAIM**
**DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 7,259,972**

116.    The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

117.    The claims of the '972 patent are invalid because of a failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, including §§ 102, 103, and 112.

118.    Power Integrations is entitled to a judicial determination and declaration that the '972 patent is invalid.

**THIRD COUNTERCLAIM**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
**OF U.S. PATENT NO. 7,352,595**

119.    The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

120.    Power Integrations has not infringed and does not infringe the '595 patent.

121.    Power Integrations is entitled to a judicial determination and declaration that it does not infringe the '595 patent.

**FOURTH COUNTERCLAIM**
**DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 7,352,595**

122.    The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

123.    The claims of the '595 patent are invalid because of a failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, including §§ 102, 103, and 112.

124.    Power Integrations is entitled to a judicial determination and declaration that the '595 patent is invalid.

**FIFTH COUNTERCLAIM**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
**OF U.S. PATENT NO. 7,061,780**

125.    The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

126.    Power Integrations has not infringed and does not infringe the '780 patent.

127.    Power Integrations is entitled to a judicial determination and declaration that it does not infringe the '780 patent.

**SIXTH COUNTERCLAIM**
**DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 7,061,780**

128.    The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

129.    The claims of the '780 patent are invalid because of a failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*, including §§ 102, 103, and 112.

130.    Power Integrations is entitled to a judicial determination and declaration that the '780 patent is invalid.

**SEVENTH COUNTERCLAIM**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY**
**OF US. PATENT NO. 7,259,972**

131.    The allegations of paragraphs 92-99 are incorporated as though fully set forth herein.

132.    The asserted Yang '972 patent is unenforceable as a result of inequitable conduct committed during prosecution before the United States Patent and Trademark Office ("PTO"). As specifically set forth in detail below, at least the named inventor, with knowledge of the withheld material information and the specific intent to deceive, failed to disclose to the PTO material, non-cumulative prior art known to him during prosecution of the Yang '972 patent.

133.    The Yang '972 patent issued on August 21, 2007 as a result of Application No. 10/959,188, filed on October 7, 2004.

134.    Ta-yung "Tom" Yang ("Mr. Yang") is the only named inventor on the Yang '972 patent.

135.    In addition to being the only named inventor on the '972 Patent, Mr. Yang is also the first named inventor on a number of other United States patents, including at least three related to frequency jitter (i.e. frequency hopping) that were filed before the application for the '972 Patent and were co-pending before the PTO during prosecution of the '972 Patent:  United States Patent No. 7,026,851 entitled "PWM Controller Having Frequency Jitter for Power Supplies," filed on May 12, 2004 and issued on April 11, 2006 ("the Yang '851 patent"); United States Patent No. 7,203,079 entitled "Switching Controller Having Frequency Hopping for Power Supplies," filed on July 23, 2004 and issued on April 10, 2007 ("the Yang '079 patent"); and United States Patent No. 7,184,283 entitled "Switching Frequency Jitter Having Output Ripple Cancel for Power Supplies," filed on August 9, 2004 and issued on February 27, 2007 ("the Yang '283 patent") (collectively, "the earlier co-pending Yang patents").

136.    Upon information and belief, SG has been the assignee and owner of all three of the earlier co-pending Yang patents since issuance, and became the assignee of all three during prosecution.  Power Integrations reserves its right to amend this pleading to add the names of other SG employees or agents associated with the prosecution of the Yang patents who knowingly withheld material, non-cumulative information from the PTO with the intent to deceive once Power Integrations has conducted discovery sufficient to allow it to specifically identify such individuals.

137.    The three earlier co-pending Yang patents and two of the three SG patents-in-suit here (the Yang '780 and '595 patents), which were co-pending before the PTO during prosecution of the Yang '972 patent, were prosecuted on behalf of Mr. Yang and SG by J.C. Patents, Inc. ("J.C. Patents"), located at 4 Venture, Suite 250, Irvine CA 92618, including at least J.C. Patents employee and patent agent Jiawei Huang ("Mr. Huang").  Power Integrations

reserves its right to amend this pleading to add the names of other J.C. Patents attorneys or agents associated with the prosecution of the Yang patents who knowingly withheld material, non-cumulative information from the PTO with the intent to deceive once Power Integrations has conducted discovery sufficient to allow it to specifically identify such individuals.

138.    The Yang '972 patent, however, which shares twelve identical figures with the '780 patent, was prosecuted on behalf of Mr. Yang and SG by a different law firm, Finnegan, Henderson, Farabow, Garrett & Dunner LLP ("Finnegan"), located at 901 New York Avenue NW, Washington, DC 20001, including at least Finnegan attorney Richard Burgujian.  Power Integrations reserves its right to amend this pleading to add the names of other Finnegan attorneys or agents associated with the prosecution of the Yang patents who knowingly withheld material, non-cumulative information from the PTO with the intent to deceive once Power Integrations has conducted discovery sufficient to allow it to specifically identify such individuals.

139.    The earlier co-pending Yang '283 and '851 patents, under the heading "Description of Related Art," disclose three prior art references' teachings of the use of "frequency jitter" to reduce electromagnetic interference ("EMI"):  (a) Power Integrations' United States Patent No. 6,249,876, entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply," by Balu Balakrishnan, Leif Lund, and Alex Djenguerian, which issued on Jun. 19, 2001 ("the '876 patent"); (b) Power Integrations' United States Patent No. 6,229,366 entitled "Offline Converter with Integrated Softstart and Frequency Jitter," by Balu Balakrishnan, Leif Lund, and Alex Djenguerian, which issued on May 8, 2001 ("the '366 patent"); and (c) M. Rahkala, T. Suntio and K. Kalliomaki, "Effects of Switching Frequency Modulation on EMI Performance of a Converter Using Spread Spectrum Approach," Proceedings 17th Annual Applied Power Electronics Conference, Dallas, Texas, March 10-14, 2002, Vol. 1, pp. 93-99 (IEEE 2002) ("the Rahkala article").  (Yang '283 patent at 1:29-42; Yang '851 patent at 1:25-37.)  Power Integrations is the assignee of the '366 and '876 patents disclosed in the earlier co-pending Yang '283 and Yang '851 patents.  In the Yang '283 and

Yang '851 patent specifications, inventor Tom Yang explained that the Power Integrations patents described frequency jitter circuits and attempted to distinguish the purported inventions of the Yang '283 and Yang '851 patents on the basis of additional circuitry rather than the specific features of the jitter circuits themselves.  (Yang '283 patent at 1:42-2:38, independent claim 1 (claiming an additional attenuator and programmable resistor); Yang '851 patent at 1:37-2:35, independent claims 1 and 5 (claiming an additional attenuator and variable-resistance circuit).)

140.    Despite being filed between the filing dates of the Yang '283 and '851 patents, the earlier co-pending Yang '079 patent discloses only the Rahkala article as prior art, and describes the article as proposing reduction of EMI by "frequency hopping" or "modulation" (Yang '079 patent at 1:26-33)  (described as "frequency jitter" in the Yang '283 and Yang '851 patents (Yang '283 patent at 1:30; Yang '851 patent at 1:26)).  The Yang '079 patent does not disclose the Power Integrations '876 and '366 patents that the Yang '283 and Yang '851 patents disclosed and attempted to distinguish, and the Yang '079 patent includes claims lacking the additional circuitry asserted in the Yang '283 and Yang '851 patents to distinguish over the Power Integrations prior art.  (*Compare* Yang '079 patent claim 5 (no claimed attenuator, programmable resistor, or variable-resistance circuit) *with* Yang '283 patent at 1:42-2:38, independent claim 1, *and* Yang '851 patent at 1:37-2:35, independent claims 1 and 5.)

141.    Mr. Yang and J.C. Patents' Mr. Huang knew about Power Integrations' '876 and '366 patents before and during prosecution of the Yang '972 patent, as evidenced by their citation of these Power Integrations patents for their frequency jitter functionality in the specifications of the earlier co-pending Yang '283 and Yang '851 patents.

142.    Mr. Yang and J.C. Patents' Mr. Huang also knew about Power Integrations' prior art TinySwitch Plus (TNY256) and TinySwitch-II (TNY264/266-268) products before and during prosecution of the Yang '972 Patent, including the fact that these Power Integrations products incorporate frequency jitter circuits, as evidenced by the discussion of these products in

the Rahkala article cited and discussed as prior art in the earlier co-pending Yang '283 and Yang

'851 patents (the Rahkala article at 93, 99).

143.    Mr. Yang and SG were also involved in a patent litigation with Power

Integrations during the entire period of time in which the application that became the Yang '972

patent was being prosecuted, and Mr. Yang knew of Power Integrations' patents and products

that practice Power Integrations' frequency jitter inventions at least in part as a result of that

litigation.

144.    Power Integrations' '876 and '366 patents, and its TNY256 and TNY264/266-268

products, would have been highly material to the patentability of all of the independent claims of

the Yang '972 patent, including claims 1, 11, 12, 15, 22, and 32, because they disclose and

incorporate frequency jitter (i.e. frequency hopping) circuitry.  Power Integrations' '876 and

'366 patents, and its TNY256 and TNY264/266-268 products, would have been particularly

highly material to claim 12 of the Yang '972 patent because each provides *prima facie* evidence

of anticipation of claim 12 in view of the broad and generic recitation of frequency hopping in

claim 12.  Attached as Appendix A is a claim chart excerpted from Power Integrations' invalidity

contentions demonstrating the anticipation of claim 12 of the Yang '972 patent by Power

Integrations own prior art, including a diagram matching up the elements of claim 12 against the

disclosure in Power Integrations' '876 patent.

145.    Mr. Yang knew that Power Integrations' '876 and '366 patents, and its TNY256

and TNY264/266-268 products that practiced Power Integrations' frequency jitter inventions,

were material to the patentability of the claims of the Yang '972 patent, at least based on the

close similarity of the disclosure of "frequency jitter" in the earlier co-pending Yang '283 and

Yang '851 patents and issued claim 12 (original claim 22) of the Yang '972 patent, which recites

"a controller to generate the switching signal and to allow the switching frequency to hop from

frequency to frequency according to a digital pattern."  Mr. Yang knew that "frequency jitter" at

least relates to "frequency hopping" as claimed in the Yang '972 patent, if in fact any differences

between them exist, at least because Mr. Yang used the terms interchangeably to describe the

prior art Rahkala article in the earlier co-pending Yang '079, '283, and '851 patents. Specifically, the earlier co-pending Yang '079 patent describes the Rahkala article as prior art that "[has] been proposed to reduce the EMI by using frequency modulation or frequency hopping" (Yang '079 patent at 1:27-28); similarly, the earlier co-pending Yang '283 and Yang '851 patents describe the Rahkala article as prior art that "[has] been proposed to reduce the EMI by using frequency jitter." (Yang '283 patent at 1:30; Yang '851 patent at 1:26.) Mr. Yang also knew that Power Integrations' '876 and '366 patents, and its TNY256 and TNY264/266-268 products that practiced Power Integrations' frequency jitter inventions, were not cumulative to the art of record during the prosecution of the Yang '972 patent because none of the art of record disclosed anything resembling the "frequency jitter" in this Power Integrations art, which bears a close facial similarity to at least issued claim 12 (original claim 22) of the Yang '972 patent.

146.     Despite knowing about Power Integrations' prior art patents and products, and also knowing that such references were material and not cumulative to the information already of record, Mr. Yang deliberately withheld this material information and did not disclose the Power Integrations '876, or '366 prior art patents, or the Power Integrations TNY256 and TNY264/266-268 prior art products, during prosecution of the Yang '972 patent at issue here. Instead, Mr. Yang, through his patent counsel Mr. Burgujian, represented to the Patent Office that

> With regard to the remaining rejections listed above in items (d) – (h), **Applicant submits that each of the amended independent claims 1, 13, 25, 35, and 55 patentably distinguish over each of the cited references.** In particular, Applicant has amended each of the independent claims directed to a power converter to additionally recite that the claimed controller includes "a pattern generator to generate a digital pattern" and that "the controller uses the digital pattern for use in generating the switching signal as a **frequency-hopping** switching signal to the switch," as for example recited in claim 1. Similarly, Applicant has amended method claim 13 to additionally recite "generating a **frequency-hopping** signal switching signal" and "generating a digital pattern for use in generating the **frequency-hopping** switching signal." **Applicant asserts that none of the cited references discloses such features.** These features incorporated into the independent claims correspond to features recited in canceled claims 2, 3, 14 and 15. **Applicant notes that the Examiner did not reject any of dependent claims 2, 3, 14 and 15 that recited these features in any of the claim rejections under 35 U.S.C. § 102(a), (b), and (e), and thereby acknowledged that none of the cited references teaches these features.**

Applicant therefore requests the withdrawal of § 102(e), § 102(a), and § 102(b) rejections set forth in the above-listed items (d) – (h).

('972 Patent, April 30, 2007 Office Action Response at 19 (emphasis added).)  When Mr. Yang made that material misrepresentation suggesting the state of the prior art, Mr. Yang knew the statement was false.

147.    The failure of Mr. Yang to disclose Power Integrations' '876 and '366 patents and TNY256 and TNY264/266-268 products during prosecution of the Yang '972 patent was done with deceptive intent and constituted a breach of the duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56(a), rendering the Yang '972 patent unenforceable for inequitable conduct.

148.    Evidence of deceptive intent during prosecution of the Yang '972 patent is apparent from the pattern of selective disclosure exhibited by Mr. Yang, including (a) the withholding Power Integrations' '876 and '366 patents and TNY256 and TNY264/266-268 products that practiced Power Integrations' frequency jitter inventions, which were highly material to the patentability of the '972 patent; (b) the failure to cite the Power Integrations '876 and '366 patents in the earlier co-pending Yang '079 patent that claims a switching controller having frequency hopping; (c) the selective disclosure of Mr. Yang's own prior art and work to Finnegan during prosecution of the '972 patent, including providing Finnegan with certain prior Yang and SG patents and published applications while withholding the earlier co-pending Yang '283, '851, and '079 patents and Power Integrations' patents and products that disclosed and discussed frequency jitter; (d) the misleading assertions made during prosecution of the '972 patent that "none of the cited references" disclosed frequency hopping ('972 Patent, April 30, 2007 Office Action Response at 19), when Mr. Yang knew that Power Integrations' patents and products did so, had not been cited by or to the PTO, and that such references were not cumulative to the information of record; (e) the inability of Mr. Yang to explain during his June 11, 2009 deposition in this case why the Yang '972 patent was the only Yang patent selected to be prosecuted by Finnegan, at the same time as at least two related and co-pending applications

(which became the Yang '780 and '595 patents) were being prosecuted by J.C. Patents; and (f) the inability of Mr. Yang to explain during his deposition why Power Integrations' patents and products were not disclosed during prosecution of the '972 application.

149.     As a result of the foregoing inequitable conduct by Mr. Yang, Power Integrations is entitled to a judicial determination and declaration that the Yang '972 patent is unenforceable.

## EIGHTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF UNENFORCEABILITY
## OF US. PATENT NO. 7,061,780

150.     The allegations of paragraphs 92-99 and 119-136 are incorporated as though fully set forth herein.

151.     The asserted Yang '780 patent is unenforceable as a result of inequitable conduct committed during prosecution before the PTO.  As specifically set forth in detail below, at least one of the named inventors and at least one of the patent agents of record, with knowledge of the withheld material information and the specific intent to deceive, failed to disclose to the PTO material, non-cumulative prior art known to them during prosecution of the '780 patent.

152.     The Yang '780 patent issued on June 13, 2006 as a result of Application No. 10/938,463, filed on September 9, 2004.

153.     Mr. Yang is the first named inventor on the Yang '780 patent.

154.     The Yang '780 Patent was prosecuted on behalf of Mr. Yang, his co-inventors, and SG by J.C. Patents, including at least J.C. Patents' Mr. Huang.

155.     Claim 4 of the Yang '780 patent recites a controller comprising a pattern generator and first and second programmable capacitors.  Claim 4 of the Yang '780 patent includes substantively the same limitations as claim 26 of the Yang '972 patent, which claims the same controller comprising a pattern generator and first and second programmable capacitors as claim 4 of the Yang '780 patent.

156.     In this case, although they have not asserted claim 4 of the Yang '780 patent itself, Defendants have asserted that claim 26 of the Yang '972 patent reads on Power

Integrations' LinkSwitch-II products.  By asserting claim 26 of the Yang '972 patent against Power Integrations' LinkSwitch-II products, Defendants have implicitly construed this claim to cover the LinkSwitch-II's frequency jitter circuit.  The frequency jitter component of the accused LinkSwitch II product, however, is substantially identical to the frequency jitter component of the prior art TNY256 and TNY264/266-268 products and to the frequency jitter circuit disclosed in Power Integrations' '876 patent.  Given the proposed construction of this claim language implicit in Defendants' infringement contentions and assertion of infringement with respect to the LinkSwitch-II products (a construction Power Integrations contends is improper), Mr. Yang knew that Power Integrations' TNY256 and TNY264/266-268 products and '876 patent were material to the patentability of at least claim 4 of the '780 patent.

157.    Mr. Yang, his co-inventor Guo-Kiang Hung ("Mr. Hung"), and J.C. Patents' Mr. Huang knew about Power Integrations' '876 patent before and during prosecution of the Yang '780 patent, including the fact that the '876 patent discloses frequency jitter circuits, as evidenced by the citation of this patent in the specification of the earlier co-pending Yang '283 and Yang '851 patents, both of which name Mr. Hung as a co-inventor and were prosecuted by J.C. Patents' Mr. Huang.  (Yang '283 patent at 1:42; Yang '851 patent at 1:37.)

158.    Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang knew about Power Integrations' prior art TNY256 and TNY264/266-268 products before and during prosecution of the Yang '780 patent, including the fact that these Power Integrations products incorporate frequency jitter circuits, as evidenced by the discussion of these products in the Rahkala article cited and discussed as prior art in the earlier co-pending Yang '283 and Yang '851 patents (*see* Rahkala article at 93, 99).

159.    Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang did not submit any art related to frequency jitter or frequency hopping to the PTO during prosecution of the application that became the Yang '780 patent, and no such frequency jitter or frequency hopping art was cited by the PTO during prosecution.  Therefore, as discussed above, Power Integrations' TNY256 and

33

TNY264/266-268 products and '876 patent were not cumulative to the art of record, and at the very least they render obvious at least claim 4 of the '780 patent.

160.   Despite knowing about Power Integrations' TNY256 and TNY264/266-268 products and '876 patent, Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang deliberately withheld this material, non-cumulative information and did not disclose any of this prior art to the PTO during prosecution of the Yang '780 patent at issue here.

161.   The failure of Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang to disclose Power Integrations' TNY256 and TNY264/266-268 products and the '876 patent to the PTO during prosecution of the Yang '780 patent was done with deceptive intent and constituted a breach of the duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56(a), rendering the Yang '780 patent unenforceable for inequitable conduct and entitling Power Integrations to a judicial determination and declaration that the Yang '780 is unenforceable. Evidence of deceptive intent during prosecution of the Yang '780 patent is apparent from the pattern of selective nondisclosure exhibited by Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang during prosecution of the '780 patent (disclosing Power Integrations' TNY256 and TNY264/266-268 products and '876 patent in connection with the earlier co-pending Yang '283 and Yang '851 patents, but not during prosecution of the '780 patent), in addition to their failure to cite the Power Integrations '876 and '366 patents in the earlier co-pending Yang '079 patent that claims a switching controller having frequency hopping.

162.   Based on Defendants' apparent construction of the language contained in claim 4 of the '780 patent (implicit in their assertion of infringement of substantively identical language from the Yang '972 patent against Power Integrations' LinkSwitch-II products), the intentionally deceptive failure of Mr. Yang, Mr. Hung, and J.C. Patents' Mr. Huang to disclose to the PTO Power Integrations' TNY256 and TNY264/266-268 products and '876 patent, known to them during prosecution of the Yang '780 patent, entitles Power Integrations to a judicial determination and declaration that the '780 patent is unenforceable for inequitable conduct.

34

163.     In addition, because the disclosures of the Yang '780 and Yang '972 patents are so closely related and share identical figures, because many of the claims of each patent include substantively the same limitations, and because both patents have been asserted against the same Power Integrations products, the inequitable conduct committed during prosecution of the Yang '972 patent detailed above also infects the Yang '780 patent, and Power Integrations is entitled to a judicial determination and declaration that the '780 patent is unenforceable.

### NINTH COUNTERCLAIM
### DECLARATORY JUDGMENT OF UNENFORCEABILITY
### OF US. PATENT NO. 7,352,595

164.     The allegations of paragraphs 92-99, 119-136, and 138-150 are incorporated as though fully set forth herein.

165.     The asserted Yang '595 patent is unenforceable as a result of inequitable conduct committed during prosecution before the PTO.  As specifically set forth in detail below, at least one of the named inventors and at least one of the patent agents of record, with knowledge of the withheld material information and the specific intent to deceive, failed to disclose to the PTO material, non-cumulative prior art known to them during prosecution of the '595 patent.

166.     The Yang '595 patent issued on April 1, 2008 as a result of Application No. 11/270,867, filed on November 8, 2005.

167.     Mr. Yang is the first named inventor on the Yang '595 patent.

168.     The Yang '595 Patent was prosecuted on behalf of Mr. Yang, his co-inventors, and SG by J.C. Patents, including at least J.C. Patents' Mr. Huang.

169.     United States Patent No. 6,480,399, entitled "Switched Mode Power Supply Responsive to Current Derived from Voltage Across Energy Transfer Element Input," by Balu Balakrishnan and David Michael Hugh Matthews, issued on November 12, 2002 and was assigned to Power Integrations ("the '399 patent").  The '399 patent is cited in at least two additional earlier co-pending Yang patents prosecuted by J.C. Patents:  United States Patent No. 6,862,194 entitled "Flyback Power Converter Having A Constant Voltage and a Constant

35

Current Output Under Primary-Side PWM Control," filed on June 18, 2003 and issued on March 1, 2005 ("the Yang '194 patent"), and United States Patent No. 6,853,563 entitled "Primary-Side Controlled Flyback Power Converter," filed on July 28, 2003 and issued on February 8, 2005 ("the Yang '563 patent"). (Yang '194 patent at 2:7; Yang '563 patent at 1:66-67.)

170.    The earlier co-pending Yang '194 and '563 patents, under the heading "Description of Related Art," describe Power Integrations' '399 patent as proposing the use of reflected voltage as a means of primary-side control.

171.    The Power Integrations '399 patent also discloses on its face and in the specification members of the TinySwitch family of products—the same family that includes the TNY256 and TNY264/266-268 prior art products discussed above. ('399 patent at 3:50-55.) Power Integrations' prior art TNY256 and TNY264/266-268 products in combination with Power Integrations' '399 patent were material to the patentability of the claims of the Yang '595 patent, including at least claim 16 of the Yang '595 patent, because they contain essentially the same circuitry Defendants are now accusing of infringement. Mr. Yang and J.C. Patents' Mr. Huang knew that Power Integrations' prior art TNY256 and TNY264/266-268 products in combination with Power Integrations' '399 patent were material to patentability, and that such references were not cumulative to the information already of record, because the cited prior art did not show a circuit like the circuit Defendants have presently accused of infringement. Appendix A, attached, contains a claim chart excerpted from Power Integrations' invalidity contentions demonstrating the materiality of Power Integrations' own prior art with respect to claim 16 of the Yang '595 patent.

172.    Mr. Yang and J.C. Patents' Mr. Huang knew about Power Integrations' prior art TNY256 and TNY264/266-268 products and '399 patent before and during prosecution of the Yang '595 patent, including that the '399 patent teaches using the TinySwitch in primary side applications, as evidenced by the citation of this patent in the specifications of the earlier co-pending Yang '194 and '563 patents. (Yang '194 patent at 2:7; Yang '563 patent at 1:66-67.)

36

173.    Despite knowing about Power Integrations' prior art TNY256 and TNY264/266-268 products and '399 patent, Mr. Yang and J.C. Patents' Mr. Huang deliberately withheld this material, non-cumulative information and did not disclose any of this prior art to the PTO during prosecution of the Yang '595 patent.

174.    The failure of Mr. Yang and J.C. Patents' Mr. Huang to disclose Power Integrations' prior art TNY256 and TNY264/266-268 products and '399 patent to the PTO during prosecution of the Yang '595 patent was done with deceptive intent and constituted a breach of the duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56(a), rendering the Yang '595 patent unenforceable for inequitable conduct and entitling Power Integrations to a judicial determination and declaration that the '595 patent is unenforceable for inequitable conduct.  Evidence of deceptive intent during prosecution of the Yang '595 patent is apparent from the pattern of selective disclosure exhibited by Mr. Yang and J.C. Patents' Mr. Huang, including their failure to cite the Power Integrations '399 patent and prior art TNY256 and TNY264/266-268 products during prosecution of the Yang '595 patent despite this art having been cited in the earlier co-pending Yang '194 and '563 patents.

175.    As a result of the foregoing inequitable conduct by Mr. Yang and J.C. Patents' Mr. Huang, Power Integrations is entitled to a judicial determination and declaration that the '595 patent is unenforceable for inequitable conduct.

176.    In addition, because the disclosures of the Yang '595 and Yang '972 patents are so closely related and share at least three identical figures, because many of the claims of each patent include substantively the same limitations, and because both patents have been asserted against the same Power Integrations products, the inequitable conduct committed during prosecution of the '972 Yang patent detailed above also infects the Yang '595 patent, and Power Integrations is entitled to a judicial determination and declaration that the '595 patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief with regard to its Answer and Declaratory Judgment Counterclaims:

(a)     That the Court enter judgment against SG and Fairchild and dismiss with prejudice any and all of their counterclaims and order that counterclaim-plaintiffs take nothing as a result of the counterclaims;

(b)     declaratory judgment that Power Integrations does not infringe the '972 patent;

(c)     declaratory judgment that the '972 patent is invalid;

(d)     declaratory judgment that Power Integrations does not infringe the '595 patent;

(e)     declaratory judgment that the '595 patent is invalid;

(f)     declaratory judgment that Power Integrations does not infringe the '780 patent;

(g)     declaratory judgment that the '780 patent is invalid;

(h)     declaratory judgment that the '972 patent is unenforceable;

(i)     declaratory judgment that the '595 patent is unenforceable;

(j)     declaratory judgment that the '780 patent is unenforceable;

(k)     declaring this an exceptional case under 35 U.S.C. § 285;

(l)     awarding Power Integrations its costs in this action and its reasonable attorneys' fees; and

(m)     such other and further relief as this Court finds just and proper.

## JURY DEMAND

Plaintiff Power Integrations requests trial by jury.

Dated:  September 4, 2009        FISH & RICHARDSON P.C.

By:  */s/ William J. Marsden, Jr.*
      William J. Marsden, Jr. (#2247)
      Kyle Wagner Compton (#4693)
      222 Delaware Avenue, 17th Floor
      P.O. Box 1114
      Wilmington, DE 19899-1114
      Telephone: (302) 652-5070
      Facsimile:  (302) 652-0607
      Email:  marsden@fr.com
            kcompton@fr.com

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA 02110-2804
      Telephone: (617) 542-5070
      Facsimile:  (617) 542-8906

      Howard G. Pollack
      Michael R. Headley
      Scott Penner
      500 Arguello Street, Suite 500
      Redwood City, CA 94063
      Telephone: (650) 839-5070
      Facsimile:  (650) 839-5071

    Attorneys for Plaintiff
    POWER INTEGRATIONS, INC.