## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,     :
                                   :

        Plaintiff,           :
                                   :

        v.                 :     Civ. No. 08-309-JJF-LPS
                                   :

FAIRCHILD SEMICONDUCTOR     :
INTERNATIONAL, INC.,            :
FAIRCHILD SEMICONDUCTOR     :
CORPORATION, and SYSTEM      :
GENERAL CORPORATION,        :
                                   :

        Defendants.         :

## REPORT AND RECOMMENDATION

Pending before the Court in this patent case is the Motion to Strike and Dismiss

Plaintiff's Third Amended Defenses and Counterclaims of Inequitable Conduct and Patent

Misuse filed by Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor

Corporation, and System General Corporation (collectively, "Fairchild"). For the reasons that

follow, I recommend that Fairchild's motion be granted in part and denied in part.

## BACKGROUND

### A.    Procedural Background

Plaintiff, Power Integrations, Inc. ("Power"), filed its complaint against Fairchild on May

23, 2008, alleging that Fairchild infringed three of Power's patents, namely U.S. Patent No.

6,107,851 ("the '851 patent"), U.S. Patent No. 6,249,876 ("the '876 patent"), and U.S. Patent No.

7,110,270 ("the '270 patent").[1]  (D.I. 1)  On November 7, 2008, Fairchild answered and

---

[1]The '851, '876, and '270 patents will be referred to as the "asserted Power patents."

counterclaimed that Power had infringed three of Fairchild's patents: U.S. Patent No. 7,259,972 ("the '972 patent"), U.S. Patent No. 7,061,780 ("the '780 patent"), and U.S. Patent No. 7,352,595 ("the '595 patent").[2] (D.I. 49) Power answered Fairchild's counterclaims and counterclaimed for declaratory judgements of non-infringement and invalidity against the asserted Fairchild patents. (D.I. 50) Fairchild answered Power's declaratory judgment counterclaims on December 12, 2008. (D.I. 51)

On August 5, 2009, Power amended its pleadings to include defenses and counterclaims based on Fairchild's allegedly inequitable conduct during the prosecution of the asserted Fairchild patents. (D.I. 117) That same day, the Federal Circuit issued an opinion in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), addressing the standard for pleading inequitable conduct. Power timely filed a Second Amended Answer with Second Amended Counterclaims on August 31, 2009. (D.I. 135) Fairchild also filed an Amended Answer and Amended Counterclaims, alleging that Power had committed inequitable conduct during prosecution of the asserted Power patents. (D.I. 136) On September 4, 2009, Power filed a Third Amended Answer with Third Amended Counterclaims ("Counterclaims") that responded to Fairchild's new allegations. (D.I. 144)

Fairchild's pending Motion to Strike and Dismiss, which was filed on September 24, 2009, is directed at Power's Counterclaims. (D.I. 149) The matter was fully briefed as of October 22, 2009. (D.I. 176)

_____

[2]The '972, '780, and '595 patents will be referred to as the "asserted Fairchild patents."

**B.     Power's Counterclaims**

Generally, Power's Counterclaims allege that the asserted Fairchild patents ('972, '780, and '595) are unenforceable due to inequitable conduct committed during prosecution before the PTO. The alleged inequitable conduct is that "at least one of the named inventors and at least one of the patent agents of records, with knowledge of the withheld material information and the specific intent to deceive, failed to disclose to the PTO material, non-cumulative prior art known to them during prosecution" of the asserted Fairchild patents. (D.I. 144 ¶ 64) Power's contentions are described more fully below.

**1.     The '972 Patent**

The '972 patent, entitled "Primary-Side-Control Power Converter Having a Switching Controller Using Frequency Hopping and Voltage and Current Control Loops," was issued on August 21, 2007, stemming from an application filed on October 7, 2004. (*Id.* ¶ 65) Ta-yung "Tom" Yang is the only named inventor on the '972 patent. (*Id.* ¶ 66) Yang is also the first named inventor of three other patents relating to frequency jitter or "frequency hopping"[3] that were filed prior to the filing of the application for the '972 patent; Yang's applications for the other three patents were pending before the PTO during the prosecution of the '972 patent. (*Id.* ¶

---

[3]These three patents are: United States Patent No. 7,026,851, entitled "PWM Controller Having Frequency Jitter for Power Supplies," which was filed on May 12, 2004 and issued on April 11, 2006 ("the '851 patent"); United States Patent No. 7,203,079, entitled "Switching Controller Having Frequency Hopping for Power Supplies," which was filed on July 23, 2004 and issued on April 10, 2007 ("the '079 patent"); and United States Patent No. 7,184,283, entitled "Switching Frequency Jitter Having Output Ripple Cancel for Power Supplies," which was filed on August 9, 2004 and issued on February 27, 2007 ("the '283 patent") (collectively, "the three earlier co-pending Fairchild patents"). (D.I. 144 ¶ 67) Defendant Systems General has been the assignee and owner of the three earlier co-pending Fairchild patents since issuance and through prosecution. (D.I. 144 ¶ 68)

67) The '972 patent was prosecuted by the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner LLP ("Finnegan"), including at least Finnegan attorney Richard Burgujian. (*Id.* ¶ 70) The three earlier co-pending Fairchild patents, as well as the other two asserted Fairchild patents in this case ('780 and '595), were prosecuted by J.C. Patents, Inc. ("J.C. Patents"), through at least its employee and patent agent Jiawei Huang, on behalf of Yang and Systems General. (*Id.* ¶ 69)

Two of the three earlier co-pending Fairchild patents – the '283 and the '851 patents – disclose three prior art references that teach the use of "frequency jitter" to reduce electromagnetic interference (EMI): (1) Power's '876 patent, (2) Power's U.S. Patent No. 6,229,366 ("the '366 patent"), and (3) an article by M. Rahkala et al. ("the Rahkala article"), which refers in its footnotes to datasheets of two products in Power's "TinySwitch" product family that use frequency jitter. (D.I. 144 ¶¶ 71-72, 74; D.I. 149 Ex. E at 93, 99) In the '283 and '851 patents, inventor Yang distinguished Power's '876 patent and '366 patent by focusing on his own patents' additional circuitry. (D.I. 144 ¶ 73 (citing '283 patent, col. 1 line 42 to col. 2 line 38; '851 patent, col. 1 line 37 to col. 2 line 35)) The '283 and '851 patents also discuss the Rahkala article.

It is undisputed that these three prior art references (Power's '876 and '366 patents and the Rahkala article) were not cited during prosecution of Fairchild's '972 patent. Because the '283 and the '851 patents cite all three of these prior art references, Power alleges that "Mr. Yang and Mr. Huang knew" about these prior art references during prosecution of the '972 patent. (D.I. 144 ¶¶ 73-74) Power further alleges that these three prior art references would have been highly material to claims 1, 11, 12, 15, 22, and 32 of the Fairchild '972 patent because these prior

4

art references disclose frequency jitter circuitry. (*Id.* ¶ 76) Power attaches a claim chart to its Counterclaims detailing how Power's '876 patent, Power's '366 patent, and the two Power TinySwitch products referenced in the Rahkala article anticipate claim 12 of the '972 patent, which recites "a controller to generate the switching signal and to allow the switching frequency to hop from frequency to frequency according to a digital pattern." (D.I. 144 ¶¶ 76-77 & Appendix A at 1-6)

Power also alleges that Yang "knew" that these three prior art references were material to the patentability of the Fairchild '972 patent, "at least based on the close similarity of the disclosure of 'frequency jitter' in the earlier co-pending '283 and '851 patents and issued claim 12 . . . of the [Fairchild] '972 patent." (D.I. 144 ¶ 77) Claim 12 of the '972 patent discloses circuitry that allows "the switching frequency to hop from frequency to frequency according to a digital pattern." (*Id.*) Yang knew that the "frequency hopping" described in claim 12 of the '972 patent relates to "frequency jittering" because he used those terms interchangeably to describe the Rahkala article in the three earlier co-pending Fairchild patents. (*Id.* (citing '079 patent, col. 1 lines 27-28; '283 patent, col. 1 line 30; '851 patent, col. 1 line 26)) According to Power, Yang also knew that Power's '876 and '366 patents and the two TinySwitch products cited in the Rahkala article "were not cumulative to the art of record during the prosecution of the [Fairchild] '972 patent because none of the art of record disclosed anything resembling the 'frequency jitter' in [the] Power Integrations art, which bears a close facial similarity to at least issued claim 12 . . . of the [Fairchild] '972 patent." (D.I. 144 ¶ 77)

Power further alleges that despite knowing of these material, non-cumulative prior art references, Yang "deliberately withheld this material information and did not disclose" it during

prosecution of the '972 patent.  (D.I. 144 ¶ 78)  Power alleges that Yang made a material

misrepresentation in his description of the state of the art, through his attorney Burgujian, that he

knew was false.  (*Id.*)  According to Power, Yang's deceptive intent "is apparent from the pattern

of selective disclosure exhibited by Mr. Yang," including:

> • "withholding Power Integrations' '876 and '366 patents
> and [TinySwitch] products that practiced Power
> Integrations' frequency jitter inventions, which were highly
> material to the patentability of the '972 patent;"
>
> • "the failure to cite the Power Integrations '876 and '366
> patents in the earlier co-pending [Fairchild] '079 patent that
> claims a switching controller having frequency hopping;"
>
> • "the selective disclosure of Mr. Yang's own prior art and
> work to Finnegan during prosecution of the '972 patent,
> including providing Finnegan with certain prior Yang and
> [Systems General] patents and published applications while
> withholding the earlier co-pending [Fairchild] '283, '851,
> and '079 patents and Power Integrations' patents and
> products that disclosed and discussed frequency jitter;"
>
> • "the misleading assertions made during prosecution of the
> '972 patent that 'none of the cited references' disclosed
> frequency hopping ('972 Patent, April 30, 2007 Office
> Action Response at 19), when Mr. Yang knew that Power
> Integrations' patents and products did so, had not been cited
> by or to the PTO, and that such references were not
> cumulative to the information of record;"
>
> • "the inability of Mr. Yang to explain during his June 11,
> 2009 deposition in this case why the [Fairchild] '972 patent
> was the only [Fairchild] patent selected to be prosecuted by
> Finnegan, at the same time as at least two related and
> co-pending applications (which became the [Fairchild]'780
> and '595 patents) were being prosecuted by J.C. Patents;"
> and
>
> • "the inability of Mr. Yang to explain during his deposition
> why Power Integrations' patents and products were not

disclosed during prosecution of the '972 application."

(D.I. 144 ¶ 80)

## 2. The '780 Patent

The '780 patent, entitled "Switching Control Circuit With Variable Switching Frequency For Primary-Side-Controlled Power Converters," was issued by the PTO on June 13, 2006, as a result of an application filed September 9, 2004. (D.I. 144 ¶ 82) Yang is the first named inventor of the '780 patent, which was prosecuted by J.C. Patents and Huang on behalf of Yang, his co-inventors, and Systems General. (*Id.* ¶¶ 83-84)

According to Power, Claim 4 of the '780 patent "includes substantively the same limitations as claim 26 of the [Fairchild] '972 patent." (*Id.* ¶ 85) Fairchild has not asserted claim 4 of the '780 patent in the instant litigation. However, Fairchild has asserted that claim 26 of the Fairchild '972 patent reads on Power's LinkSwitch-II products; to Power, Fairchild has "implicitly construed" claim 26 of the '972 patent to cover the LinkSwitch-II's frequency jitter circuit. (*Id.* ¶ 86)

Power additionally asserts that the frequency jitter component found in the LinkSwitch-II products is "substantially identical" to the frequency jitter component of the TinySwitch products cited in the Rahkala article as well as to the frequency jitter circuit disclosed in Power's '876 patent. (*Id.*) Due to Fairchild's purported construction of claim 26 of the'972 patent – and, implicitly, claim 4 of the '780 patent – to read on the LinkSwitch-II products, "Mr. Yang knew that Power Integrations' [TinySwitch products cited in the Rahkala article] and '876 patent were material to the patentability of at least claim 4 of the '780 patent." (*Id.*)

7

Because two of the three earlier co-pending Fairchild patents – the '283 and '851 patents – cite Power's '876 patent and the Rahkala article, Power alleges that Yang, his co-inventor Guo-Kiang Hung, and patent agent Huang knew about these prior art references before and during prosecution of the '780 patent.[4]  (D.I. 144 ¶¶ 87-88 (citing '283 patent, col. 1 line 42; '851 patent, col. 1 line 37))  Power alleges that Yang, Hung, and Huang did not submit to the PTO any prior art references relating to frequency jitter or frequency hopping during prosecution of the '780 patent, meaning the three withheld references were not cumulative to the art of record.  (D.I. 144 ¶ 89)

Power further alleges that Yang, Hung, and Huang "deliberately withheld this material, non-cumulative information and did not disclose any of this prior art to the PTO during prosecution of the [Fairchild] '780 patent."  (*Id.* ¶ 90)  This failure to disclose was allegedly done with deceptive intent,

> apparent from the pattern of selective nondisclosure exhibited by [Yang, Hung, and Huang] during prosecution of the '780 patent (disclosing Power Integrations' [TinySwitch products cited in the Rahkala article] and '876 patent in connection with the earlier co-pending [Fairchild] '283 and [Fairchild] '851 patents, but not during prosecution of the '780 patent), in addition to their failure to cite the Power Integrations '876 and '366 patents in the earlier co-pending [Fairchild] '079 patent that claims a switching controller having frequency hopping.

(*Id.* ¶ 91)  Finally, Power contends that "because the disclosures of the ['780 and '972 patents] are so closely related and share identical figures, because many of the claims of each patent

---

[4]Both the '283 and '851 patents name Hung as a co-inventor and were prosecuted by Huang.  (D.I. 144 ¶ 87)

include substantively the same limitations, and because both patents have been asserted against the same Power Integrations products, the inequitable conduct committed during prosecution of the [Fairchild] '972 patent detailed above also infects the [Fairchild] '780 [patent] and renders it unenforceable." (*Id.* ¶ 93)

### 3. The '595 Patent

The '595 patent, entitled "Primary-Side Controlled Switching Regulator," was issued on April 1, 2008, as a result of an application filed on November 8, 2005. (D.I. 144 ¶ 94) Yang is the first named inventor of the '595 patent. (*Id.* ¶ 95) It was prosecuted on behalf of Yang, his co-inventors, and Systems General by J.C. Patent's Huang. (*Id.* ¶ 96)

Two other "Yang patents" (not already mentioned in this Report and Recommendation) – U.S. Patent No. 6,862,194 ("the '194 patent") and U.S. Patent No. 6,853,563 ("the '563 patent") – were issued in March and February 2005, respectively, shortly before the '595 application was filed. (D.I. 144 ¶ 97) The '194 and '563 patents both describe, under the heading "Description of Related Art," another of Power's patents – U.S. Patent No. 6,480,399 ("the '399 patent") – as "proposing the use of reflected voltage as a means of primary-side control." (*Id.* ¶ 98) Power's '399 patent "also discloses on its face and in the specification members of the TinySwitch family of products," a family which includes the products cited in the Rahkala article. (*Id.* ¶ 99 (citing '399 patent, col. 3 lines 50-55)) Power thus alleges that the '399 patent and the TinySwitch products cited in the Rahkala article "were material to the patentability of . . . at least claim 16 of the [Fairchild] '595 patent, because they contain essentially the same circuitry [Fairchild is] now accusing of infringement." (D.I. 144 ¶ 99) Further, Yang and Huang "knew that [the '399 patent and the TinySwitch products cited in the Rahkala article] were material to patentability, and that

9

such references were not cumulative to the information already of record, because the cited prior art did not show a circuit like the circuit [Fairchild has] presently accused of infringement." (*Id.*) Power attaches a claim chart to its Counterclaims "demonstrating the materiality of Power Integrations' own prior art with respect to claim 16 of the [Fairchild] '595 patent." (*Id.*; D.I. 144 Appendix A at 7-10)

Power also alleges that Yang and Huang knew about Power's '399 patent and the TinySwitch products cited by the Rahkala article "before and during prosecution of the [Fairchild] '595 patent, including that the '399 patent teaches using the TinySwitch in primary side applications, as evidenced by the citation of [the '399] patent in the specifications of the earlier co-pending Yang '194 and '563 patents." (*Id.* ¶ 100 (citing '194 patent, col. 2 line 7; '563 patent, col. 1 lines 66-67)) Despite knowing about Power's '399 patent and the TinySwitch products cited by the Rahkala article, Yang and Huang "deliberately withheld this material, non-cumulative information and did not disclose any of this prior art to the PTO during prosecution of the [Fairchild] '595 patent." (*Id.* ¶ 101) This failure to disclose was done with deceptive intent, "apparent from the pattern of selective disclosure exhibited by [Yang and Huang], including their failure to cite the Power Integrations '399 patent and [TinySwitch] prior art during prosecution of the [Fairchild] '595 patent despite this art having been cited in the earlier co-pending Yang '194 and '563 patents." (*Id.* ¶ 102) Finally, Power contends that "because the disclosures of the ['595 and '972 patents] are so closely related and share at least three identical figures, because many of the claims of each patent include substantively the same limitations, and because both patents have been asserted against the same Power Integrations products, the inequitable conduct committed during prosecution of the ['972 patent] detailed

above also infects the ['595 patent] and renders it unenforceable." (*Id.* ¶ 103)

## LEGAL STANDARDS

### A.   **Motion to Strike**

Federal Rule of Civil Procedure 12(f) states, in relevant part, that "[a] court may order

stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter." "[T]he purpose of a motion to strike is to clean up the pleadings, streamline

litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber*

*and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E. D. Pa. 2002). Motions to strike are generally

disfavored and "usually will be denied unless the allegations have no possible relation to the

controversy and may cause prejudice to one of the parties." *Id.*; *see also Seidel v. Lee*, 954 F.

Supp. 810, 812 (D. Del. 1996).

### B.   **Pleading Inequitable Conduct Under Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake,

the circumstances constituting fraud or mistake shall be stated with particularity." Inequitable

conduct, "while a broader concept than fraud, must be pled with particularity" pursuant to Rule

9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*,

350 F.3d 1327, 1344 (Fed. Cir. 2003). An individual associated with the filing and prosecution

of a patent application engages in inequitable conduct when he or she makes an affirmative

misrepresentation of a material fact, fails to disclose material information, or submits false

material information to the PTO, with a specific intent to deceive the PTO. *See Star Scientific,*

*Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008); 37 C.F.R. § 1.56

(2008). Thus, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Exergen*, 575 F.3d at 1326.

Additionally, while Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally, . . . 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009). "Although 'knowledge' and 'intent' may be averred generally, [Federal Circuit] precedent . . . requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327. "In sum, to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific *who, what, when, where and how* of the material misrepresentation or omission committed before the PTO." *Id*. at 1327 (emphasis added).

## C.    **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss requires a court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, a court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the

12

complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Bell Atlantic*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321-22 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## DISCUSSION

A.   **Power's Counterclaims and the Pleading
     Standards of Rule 9(b) and *Exergen***

Fairchild argues that Power's Counterclaims fail to meet the heightened pleading standard

required by Rule 9(b) and *Exergen* because Power has not provided a particularized factual basis

for its claims of inequitable conduct or the inferences that must be drawn with respect to

knowledge and intent. (D.I. 149 at 4) I agree with Fairchild to a limited extent, as explained

below.

### 1.   The '972 Patent

With respect to the '972 patent, most of Power's inequitable conduct Counterclaims

satisfy both Rule 9(b) and the pleading standard articulated by the Federal Circuit in *Exergen*.

Power's allegations against inventor Yang sufficiently allege the who, what, where, when, and

how of his purported inequitable conduct. The "who" is Tom Yang, who is the sole named

inventor of the '972 patent and was also a participant in the prosecution of that patent. (D.I. 144

¶¶ 66, 69, 78, 80) The "what" of Yang's allegedly inequitable conduct is his alleged failure to

disclose material prior art – Power's '876 and '366 patents and the Rahkala article, with its

references to two of Power's TinySwitch products – to the PTO during prosecution. (D.I. 144 ¶¶

78-81) The claim charts Power appended to the Counterclaims clearly identify "where" in the

alleged prior art the material references can be found, and further identify the limitations in the

'972 patent to which they correspond. *See Exergen*, 575 F.3d at 1330. Finally, Fairchild

concedes that Power has satisfied the "when" and "how" requirements.

Fairchild contends, nevertheless, that Power has not alleged sufficient facts to give rise to

14

a reasonable inference that Yang had knowledge of the three prior art references and an intent to deceive the PTO. (D.I. 149 at 15-18)  However, Power has alleged that at the time Yang was participating in the prosecution of the '972 patent and did not disclose the three prior art references, he had also filed co-pending patent applications (for what became his '283 and '851 patents) that expressly distinguished these same prior art references.  (D.I. 144 ¶¶ 71, 73-74 (citing '283 patent, col. 1 line 42 to col. 2 line 38; '851 patent, col. 1 line 37 to col. 2 line 35))  These allegations are sufficient at the pleading stage; it is reasonable to infer that Yang would have actually known of the three pieces of prior art since he explicitly distinguished them in the background sections of two co-pending patent applications.  The allegations also provide a reasonable basis to infer that Yang knew of the materiality of these prior art references and that his failure to disclose them in connection with prosecution of the '972 patent was done with deceptive intent.  Accordingly, I recommend that the Power's Counterclaims with respect to Yang's conduct in connection with prosecution of the '972 patent remain in the case.

I reach a different conclusion regarding Power's '972 patent Counterclaims against Huang and Burgujian.  Huang was not the patent agent who prosecuted the '972 patent on Yang's behalf, and Power does not allege any facts to show that Huang was otherwise an "individual associated with the filing or prosecution of" the '972 patent. *Exergen*, 575 F.3d at 1329.  Although Power did allege that attorney Burgujian of the Finnegan law firm prosecuted the '972 patent on Yang's behalf, Power does not allege any facts to show that Burgujian was aware that any of the statements he made to the PTO were false or misleading.  Thus, I recommend that the Court grant Fairchild's Motion to Strike and Dismiss with respect to Power's '972 Counterclaims against Huang and Burgujian.

15

## 2.  "Infectious Unenforceability"

The Federal Circuit has held that when inequitable conduct surrounding the prosecution of one patent has an "immediate and necessary relation" to the enforcement of other patents-in-suit, a court may find the other patents-in-suit unenforceable. *Consol. Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990). I recommend that the Court strike Power's allegations that inequitable conduct allegedly committed in connection with prosecution of the '972 patent "infects" the enforceability of the '780 and '595 patents. Power's asserted connections among the three patents – that their specifications are related and share some figures, that "many of the claims of each patent include substantively the same limitations," and that all three patents have been asserted against the same Power products (D.I 144 ¶¶ 93, 103) – are not sufficient to establish the required "immediate and necessary relation."

## 3.  The '780 Patent

Power's allegations of inequitable conduct during the prosecution of the '780 patent are inadequate under *Exergen*. Power has failed to allege the "what" and "where" of its inequitable conduct allegations because it has not identified the specific limitations in Power's '876 patent or TinySwitch products cited in the Rahkala article that are allegedly material to the '780 patent. Power's allegations of Yang's knowledge of the prior art and deceptive intent in withholding it from the PTO are also deficient, especially as they rely on an attenuated chain of logic (involving claim 4 of the '780 patent, which Fairchild is not asserting in this litigation, and an assertion about Fairchild's "implicit" construction of claim 26 of the '972 patent). I recommend that Power's Counterclaims with respect to prosecution of the '780 patent be stricken and dismissed.

16

### 4.    The '595 Patent

Power's Counterclaims provide a reasonable basis to infer that Yang knew of the specific

material information contained in Power's '399 patent, a prior art reference he did not disclose to

the PTO in connection with the prosecution of the '595 patent.  Power alleges that Power's '399

patent was specifically described and distinguished in two of Yang's other patents (the '194 and

'563 patents) that were issued in March and February 2005, shortly before Yang filed the '595

application in November 2005.  (D.I. 144 ¶¶ 94-98 (citing '194 patent, col. 2 line 7; '563 patent,

col. 1 lines 66-67))[5]  This provides a reasonable basis to infer that Yang knew of the materiality

of the '399 patent and failed to disclose it to the PTO with deceptive intent.

However, Power's allegations that Huang engaged in inequitable conduct in the

prosecution of the '595 patent should be stricken and dismissed.  The allegations that Huang

knew of Power's '399 patent, knew it was material, and intended to deceive the PTO by not

disclosing it are not adequate under Rule 9(b) or *Exergen*.  Power alleges that the earlier Yang

'194 and '563 patents were "prosecuted by J.C. Patents," but nowhere does it allege that they

were prosecuted by Huang.  (D.I. 144 ¶ 97)  This is in contrast to Power's allegations regarding,

for example, the '595 patent, which Power expressly alleges "was prosecuted . . . by J.C. Patents,

including at least J.C. Patents' Mr. Huang."  (*Id.* ¶ 96)  No other basis is alleged for Huang

having knowledge of the '399 patent or its materiality.

Finally, Power's Counterclaims do not allege facts showing that, in connection with the

prosecution of the '595 patent, either Yang or Huang knew of the specific material information

_____

[5]Power attached to its Counterclaims a claim chart detailing the materiality of the '399
patent to the '595 patent.  (D.I. 144 Appendix A)

17

contained in the two TinySwitch products cited by the Rahkala article. Power alleges only that the '399 patent (referenced and distinguished in the '194 and '563 patents) discloses *members* of the TinySwitch family of products, a family that includes but is not limited to the two TinySwitch products cited by the Rahkala article. (*See* D.I. 144 ¶ 99.) This allegation does not show that, in connection with the '595 prosecution, Yang or Huang had reason to know of the two particular TinySwitch products that Power alleges were material prior art. Additionally, Power has not alleged how Huang would have known that the two TinySwitch products cited in the Rahkala article (which relate to frequency jitter circuitry) were material to the'595 patent, which Power alleges "essentially" contains circuitry proposing the use of reflected voltage as a means of primary-side control. (D.I. 144 ¶¶ 98-99)

## B. Rule 12(b)(6)

The Counterclaims that I have concluded satisfy *Exergen* and Rule 9(b) – specifically, the Counterclaims against Yang relating to prosecution of the '972 and '595 patents – also satisfy Rule 12(b)(6). That is, taking Power's allegations as true and drawing all reasonable inferences in Power's favor, these Counterclaims state a claim on which relief may be granted.[6]

---

[6]Power's Fifth Affirmative Defense in its Counterclaims alleges that "[Fairchild's] claims against Power Integrations are barred by [Fairchild's] patent misuse." (D.I. 144 ¶ 60) "The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Essentially, Power is arguing that Fairchild is engaged in anti-competitive conduct by asserting invalid patents against it; Power relies for its patent misuse defense on the same "facts and allegations" on which it bases its inequitable conduct allegations. (D.I. 149 at 20) It follows that the inequitable conduct allegations that I have found to be deficient do not provide an adequate predicate for Power's patent misuse defense. On the other hand, I find that the patent misuse defense is adequately pled with respect to the '972 and the '595 patents, given that I have found that the inequitable conduct allegations with respect to Yang are sufficient to remain in the case.

## RECOMMENDED DISPOSITION

For the reasons stated above, I recommend that Fairchild's Motion to Strike and Dismiss be GRANTED IN PART AND DENIED IN PART.

Specifically, I recommend that Fairchild's motion be

A.   GRANTED with respect to:

1.   Power's inequitable conduct counterclaims, affirmative defense of inequitable conduct, and patent misuse defense relating to prosecution of the '780 patent, and

2.   Power's inequitable conduct counterclaims and affirmative defense of inequitable conduct against Huang and Burgujian.

B.   DENIED with respect to:

1.   Power's inequitable conduct counterclaims and affirmative defense of inequitable conduct against Yang relating to prosecution of the '972 and '595 patents, and

2.   Power's patent misuse defense relating to the '972 and '595 patents.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections **of no longer than ten (10) pages within fourteen (14) days after being served with a copy of this Report and Recommendation**.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).  **A party responding to objections may do so within fourteen (14) days after being served with a copy of objections; such response shall not**

**exceed ten (10) pages.  No further briefing shall be permitted with respect to objections without leave of the Court.**

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: December 18, 2009

Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE