IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation, and  SYSTEM
GENERAL CORPORATION, a Taiwanese
corporation,

        Defendants.

C.A. No. 08-309 JJF-LPS

**⟨ REDACTED ⟩**

---

**POWER INTEGRATIONS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO
STRIKE GU-YEON WEI'S SUPPLEMENTAL REPORT ON INFRINGEMENT
AND TO PRECLUDE FAIRCHILD FROM RELYING ON NEW CLAIM
CONSTRUCTION CONTENTIONS**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for Plaintiff
POWER INTEGRATIONS, INC.**

DATED: April 26, 2010

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS .................................................. 2

III.    SUMMARY OF THE ARGUMENT ....................................................................... 3

IV.     CONCISE STATEMENT OF FACTS ..................................................................... 4

V.      ARGUMENT ...................................................................................................... 6

        A.    Exclusion is the Proper Remedy for Fairchild's Delay in Revealing its Belated
              Contentions ........................................................................................................ 6

        B.    Doctrine of Equivalents Arguments Disclosed for the First Time in the Wei
              Supplemental Report Should be Stricken as Untimely ..................................... 8

        C.    Fairchild Should be Precluded from Relying Upon Untimely Claim
              Constructions of New Claim Terms, as well as Belated and Narrow
              Reconstructions of Claims the Court has Already Construed ......................... 12

              1.   Terms for which Fairchild Never Provided Constructions ...................... 13

              2.   Construed Terms Which Fairchild Attempts to Re-construe .................... 18

              3.   Terms Not Explicitly Addressed but Implicitly Resolved by the
                   Court's Order ........................................................................................... 23

VI.     CONCLUSION ................................................................................................. 30

## TABLE OF AUTHORITIES

CASES

*Bonesmo v. The Nemours Found.*,
   253 F. Supp. 2d 801 (D. Del. 2003)............................................................11

*Finch v. Hercules, Inc.*,
   No. Civ. A. 92-251 MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995) ...............7

*Honeywell Int'l., Inc. v. Hamilton Sundstrand Corp.*,
   523 F.3d 1304 (Fed. Cir. 2008).................................................................19

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*,
   289 F. Supp. 2d 493 (D. Del. 2003)...........................................................7

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*,
   488 F.3d 982 (Fed. Cir. 2007)..................................................................8

*Konstantopoulos v. Westvaco Corp.*,
   112 F.3d 710 (3d Cir. 1997).........................................................10, 11, 12

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996) ...................12

*Praxair, Inc. v. ATMI, Inc.*,
   231 F.R.D. 457 (D. Del. 2005), *rev'd in part on other grounds*, 543 F.3d 1306
   (Fed. Cir. 2008)..............................................................................7, 9, 11

*SmithKline Diagnostics, Inc. v. Helena Labs, Corp.*,
   859 F.2d 878 (Fed. Cir. 1988)..................................................................9

*United States v. 68.94 Acres of Land*,
   918 F.2d 389 (3d Cir. 1990).....................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 16(f)................................................................................18

Fed. R. Civ. P. 16(f)(1)(C)........................................................................7

Fed. R. Civ. P. 26..................................................................................6

Fed. R. Civ P. 26(a) ..............................................................................7, 9

Fed. R. Civ. P. 26(a)(2)........................................................................1, 4, 5, 9

Fed. R. Civ. P. 26(a)(2)(B)......................................................................11

Fed. R. Civ. P. 26(a)(2)(B)(i)....................................................................6

Fed. R. Civ. P. 26(a)(2)(C)......................................................................3, 6

ii

Fed. R. Civ. P. 26(e) .................................................................................................................4

Fed. R. Civ. P. 26(e)(1)(A) .......................................................................................................6

Fed. R. Civ. P. 37 ......................................................................................................................7

Fed. R. Civ. P. 37(b)(2)(A)(ii) and (iii) ...................................................................................7

Fed. R. Civ. P. 37(c)(1)..............................................................................................................7

## I.  INTRODUCTION

Plaintiff Power Integrations, Inc. ("Power Integrations") hereby moves the Court to strike the untimely "Supplemental" report from Gu-Yeon Wei, on behalf of Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corp., and System General Corp.'s (collectively, "Fairchild"), and to preclude Fairchild from relying upon new and inconsistent narrowing constructions disclosed for the first time in Dr. Wei's reports, long after the Court's deadlines for such disclosures.

By its present motion, Power Integrations asks that the Court confirm what Power Integrations considers to be self-evident:  that Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Orders are binding upon litigants and must be adhered to.  Fairchild expressly declined to assert infringement under the doctrine of equivalents, an issue on which it bears the burden of proof, in its responses to interrogatories seeking such contentions and in the Opening Expert Report of Dr.  Wei concerning infringement of Fairchild's patents (the "Wei Opening Report").  [Ex. A[1] at ¶¶ 67, 142, and p. 124 n.31.]  Yet, on March 17, 2010, after the parties were to have completed their exchange of expert reports under the Court's scheduling order, Fairchild served Dr. Wei's Supplemental Report on infringement (the "Wei Supplemental Report").  [Ex. B.]  The Wei Supplemental Report purports to "respond" to positions raised in the Rebuttal Expert Report of Power Integrations' expert, Robert Blauschild (the "Blauschild Rebuttal Report"), but the Wei Supplemental report really just advances, for the first time, entirely new infringement claims under the doctrine of equivalents.  [Ex. B at ¶ 10.]  The new positions set forth in the Wei Supplemental Report are untimely, improper, and should be stricken in their entirety.

Power Integrations also asks the Court for a ruling consistent with principles forbidding trial by ambush, and which confirms it is the Court's role, not the litigants', to

---

[1] All exhibit citations refer to the accompanying Declaration of William J. Marsden, Jr., filed contemporaneously herewith, unless noted otherwise.

construe patent claim terms.  First, Dr. Wei's reports purport to rely upon constructions of claim terms never previously disclosed in Fairchild's responses to contention interrogatories, in Fairchild's portion of the parties' Joint Submission to the Court on claim construction, or even in briefing on claim construction.  Fairchild disclosed these new constructions for the first time in Dr. Wei's reports, long after the close of written and fact discovery.

Second, Dr. Wei's reports depart significantly from the Court's claim constructions. Specifically, Dr. Wei articulates new positions on behalf of Fairchild that seek to narrow terms the Court has already construed by either attempting to add new limitations or reverting to proposed constructions the Court previously rejected.  These new, narrowing constructions apply not only to Power Integrations' patents, in an effort to avoid a clear case of infringement, but *also to Fairchild's own patent claims*, which Dr. Wei narrows in an attempt to avoid clearly invalidating prior art – in some cases, in a way that directly contradicts positions Fairchild took during claim construction.  Fairchild's expert even argues for new, narrower constructions where Fairchild chose not to challenge the Court's Report and Recommendation on Claim Construction.  Fairchild's only argument for attempting to re-construe terms in this matter is the incorrect suggestion that the constructions were not squarely resolved by the Court's Report & Recommendation.  But the Court can (and should) reject Fairchild's transparent efforts to re-construe the claims at this stage to avoid the inevitable result that, as construed by the Court, the few remaining asserted claims in Fairchild's patents are invalid and Fairchild infringes the asserted claims of Power Integrations' patents.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

Power Integrations brought this lawsuit for patent infringement against Fairchild, asserting U.S. Patent Nos. 7,110.270 ("the '270 patent"), 6,249,876 ("the '876 patent"), and 6,107,851 ("the '851 patent") on May 23, 2008 [D.I. 1]. In response, Fairchild asserted

2

counterclaims for patent infringement against Power Integrations based on U.S. Patent Nos.

7,259,972 (the '972 patent), 7,061,780 ("the '780 patent"), and 7,352,595 ("the '595

patent").[2]  [D.I. 49.]  The Court entered the Scheduling Order governing this case on January

29, 2009.  [D.I. 61.]

The parties briefed claim construction issues after the exchange of proposed terms and

constructions under the Court's scheduling order [D.I. 109 (joint submission)], and a

*Markman* hearing was held on September 23, 2009.  The Court requested supplemental claim

construction briefing by Order dated October 9, 2009 [D.I. 164], and that briefing was

completed on October 29, 2009.  The Court thereafter issued a Report and Recommendation

Regarding Claim Construction on December 18, 2009.  [D.I. 212.]  Both parties have filed

objections to certain aspects of the Report and Recommendation.  [D.I. 220, D.I. 221.]

Written discovery closed on October 26, 2009, and fact discovery closed on

November 27, 2009.  [D.I. 61 at ¶ 3(c).]  On February 1, 2010, the parties exchanged opening

expert reports on issues for which they bear the burden of proof.  On March 1, 2010, the

parties exchanged rebuttal expert reports.  On March 16, 2010, Fairchild served a

supplemental expert report on Power Integrations even though there is no provision for such

reports in the Court's scheduling order.  Expert discovery closed on March 31, 2010.  [D.I. 61

at ¶ 3(d).]  This matter is scheduled for trial beginning on October 4, 2010.  [D.I. 61 at ¶ 20.]

## III.    SUMMARY OF THE ARGUMENT

1.    Fairchild's assertions of infringement under the doctrine of equivalents should

be stricken because they were set forth for the first time in the untimely Wei Supplemental

Report, after Power Integrations had already responded to Dr. Wei's opening report.  Rule

26(a)(2)(C) provides that "a party must make [expert report] disclosures at the time and in the

sequence that the court orders."  The Court's Scheduling Order requires that "[f]or the party

---

[2]    Fairchild originally asserted its patent infringement claims against Power Integrations in a
separate lawsuit filed on October 14, 2008, but later dropped that case and asserted its
infringement claims as counterclaims in this lawsuit.

who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before January 31, 2010." [D.I. 61 at ¶ 3(d).] Because Fairchild bears the burden of proof on infringement, Fairchild's disclosure of new theories based on the doctrine of equivalents for the first time in the Wei Supplemental Report on March 16, 2010 was untimely and in violation of the Scheduling Order and the Federal Rules. Further, Fairchild never disclosed contentions under the doctrine of equivalents in its responses to interrogatories and prior to the close of fact discovery, as it was obligated to do pursuant to the Court's scheduling order and Rule 26(e). Fairchild's untimely theories are therefore improper and should be stricken.

2.       Fairchild should be precluded from relying upon new interpretations of claim terms it never previously put at issue, or which are inconsistent with the Court's constructions. The Court's Scheduling Order provided deadlines for disclosures and discovery to ensure that all issues to be tried are known, and to prevent trial by surprise. Fairchild's attempt to rely on constructions disclosed for the first time in its expert reports frustrates the purpose of the Scheduling Order. Fairchild should not be permitted to ambush Power Integrations with new and inconsistent positions that Fairchild never disclosed prior to the completion of fact discovery.

IV.     **CONCISE STATEMENT OF FACTS**

Pursuant to Paragraph 3(c) of the Court's Scheduling Order, and in response to one another's contention interrogatories, the parties exchanged infringement contentions regarding their respective asserted patents on April 20, 2009. [Exs. C-D.] Fairchild's infringement contentions did not disclose any basis for infringement under the doctrine of equivalents, and although Fairchild reserved the right to later argue that unspecified claim elements were met under the doctrine equivalents, it did not supplement its infringement contentions to do so. [Ex. D at 6.]

Pursuant to Paragraph 13 of the Court's Scheduling Order, the parties exchanged lists of claim terms to be construed on July 1, 2009. [Exs. E-G.] On July 15, 2009, the parties filed a Joint Submission of Proposed Claim Terms (the "Joint Submission"), identifying claim terms either party believed required construction and proposing constructions for those terms. [D.I. 109.] Among the claim terms included in the meet and confer leading up to the filing of the Joint Submission, or in the Joint Submission itself, are the following:

- "approximately constant output current" (claim 6 of the '270 patent)
- "a feedback terminal coupled to disable the regulation circuit" (claim 11 of the '851 patent)
- "first reference signal is varied in response to the change of the second signal" (claim 17 and 22 of the '595 patent)
- "a digital to analog converter" (claim 1 of the '876 patent)
- "means ... for varying the switching frequency" (claim 21 of the '876 patent)
- "the oscillator for generating a signal having a switching frequency, the oscillator having a control input for varying the switching frequency" (claims 1 and 21 of the '876 patent)
- The "first feedback signal associated with a [voltage/first] feedback loop" and "second feedback signal associated with a [current/second] control loop in the primary side of the transformer" limitations (claims 22 and 32 of the '972 patent)

On July 22, 2009, the Court issued an order requiring that the parties narrow the list of disputed claim terms to be argued at the *Markman* hearing. [D.I. 110.] Thereafter, the parties filed briefs on the narrowed list and the Court heard argument. The Court issued its Report and Recommendation on Claim Construction on December 18, 2009 [D.I. 212.][3]

Pursuant to the Court's Scheduling Order, for "the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before January 31, 2010." [D.I. 61 at ¶ 3(d).] On February 1, 2010 (the first business day after January 31, 2010 – a Sunday), Power Integrations served the Opening Expert Report of Robert Blauschild on Infringement of Power Integrations' Patents (the "Blauschild Opening Report")—an issue as to which Power Integrations bears the burden of

---

[3]   Both parties have filed objections to the Report and Recommendation on Claim Construction. [D.I. 220-223.]

proof—and Fairchild served the Wei Opening Report on infringement of the SG patents—an issue as to which Fairchild bears the burden of proof. The Wei Opening Report expressly declined to address the doctrine of equivalents—also an issue as to which Fairchild bears the burden of proof. [Ex. A at ¶¶ 67, 142, and p. 124 n.31.]

Further pursuant to the Court's Scheduling Order, "[t]he supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before February 28, 2010." On March 1, 2010 (first business day after February 28, 2010 – a Sunday), Fairchild served its expert's Rebuttal Report on non-infringement (the "Wei Rebuttal Report"), and Power Integrations served the Blauschild Rebuttal Report.

On March 16, 2010, ten days before the scheduled deposition of Dr. Wei, Fairchild served the Wei Supplemental Report. The Court's Scheduling Order does not provide for submission of supplemental expert reports. Power Integrations deposed Dr. Wei as scheduled on March 26, 2010. Pursuant to Paragraph 3(d) of the Court's Scheduling Order, expert discovery closed on March 31, 2010. [D.I. 61.]

## V.    ARGUMENT

### A.    Exclusion is the Proper Remedy for Fairchild's Delay in Revealing its Belated Contentions

The Federal Rules of Civil Procedure require that parties make specified disclosures and supplements to disclosures in specified manners. Rule 26(a)(2)(B)(i) requires that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them," while Rule 26(a)(2)(C) requires that "a party must make these disclosures at the time and in the sequence that the court orders." Fed. R. Civ. P. 26. Rule 26(e)(1)(A) requires that "any party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete." *Id.*

The consequences of failing to disclose or supplement disclosures are addressed in Rule 37(c)(1), which states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. Sanctions for failing to make required disclosures include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence," or "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(ii) and (iii). These same sanctions are authorized by Rule 16(f)(1)(C) for a party's failure to obey a scheduling order.

As this Court has observed before, "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities . . . [a]ccordingly, the flouting of discovery deadlines causes substantial harm to the judicial system." *Finch v. Hercules, Inc.*, No. Civ. A. 92-251 MMS, 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995). (internal citations omitted). Courts are authorized to exclude untimely evidence as a sanction for failure to comply with scheduling orders. *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990). *See also Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 289 F. Supp. 2d 493, 499-500 (D. Del. 2003) (excluding expert testimony on infringement under the doctrine of equivalents because no such analysis was contained in the expert's opening report).

Courts generally look to the following factors in considering whether to exclude testimony: the party's ability to have disclosed the testimony earlier, the excuse offered by the party failing to comply with the court's order, the willfulness of the party's failure to comply with the court's order, the disobedient party's intent to mislead or confuse his adversary, and the importance of the testimony. *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005), *rev'd in part on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008) (internal quotations and citations omitted). Based on these considerations, courts weigh "(1) the

7

prejudice or surprise in fact of the party against whom the excluded evidence would have

been submitted;  (2) the ability of that party to cure the prejudice;  (3) the extent to which

waiver of discovery deadline would disrupt the orderly and efficient trial of the case or of

other cases in the court, and (4) bad faith or willfulness in failing to comply with the district

court's order." *Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 994-

95 (Fed. Cir. 2007) (applying Third Circuit law and finding no abuse of discretion in

exclusion of expert testimony not contained in opening expert report).

**B.     Doctrine of Equivalents Arguments Disclosed for the First Time in the
        Wei Supplemental Report Should be Stricken as Untimely**

The Scheduling Order that the Court entered in this case on January 29, 2009 provides

the following schedule for the disclosure of expert testimony:

> For the party who has the initial burden of proof on the subject matter, the
> initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before
> January 31, 2010.  The supplemental disclosure to contradict or rebut
> evidence on the same matter identified by another party is due on or before
> February 28, 2010.

[D.I. 61 at ¶ 3(d).]  As the party bearing the burden of proof, Fairchild was obligated under

the Court's Scheduling Order to disclose all of its positions on infringement of its asserted

patents on or before January 31, 2010.  Fairchild expressly declined to assert infringement

under the doctrine of equivalents in the Wei Opening Report.  [Ex. A at ¶¶ 67, 142, and p.

124 n.31.][4]  On March 17, 2010, Fairchild served the Wei Supplemental Report on

infringement, purporting to "respond" to positions raised in the Rebuttal Expert Report of

Robert Blauschild regarding alleged infringement of Fairchild's asserted patents, but in fact

advancing entirely new infringement arguments under the doctrine of equivalents.  [Ex. B at ¶

10.]

---

[4] Power Integrations' expert Robert Blauschild, by contrast, provided his analysis of
infringement under the doctrine of equivalents in his Opening Expert Report on Infringement
of Power Integrations' patents.  [*See, e.g.,* Ex. H at 26-28.]

The new positions set forth in the Wei Supplemental Report are untimely, improper, unjustified, and should be stricken for failing to comply with the Court's Scheduling Order. This Court's opinion in *Praxair* is probative. In that case, the defendants filed a supplemental report which contained new theories that were not contained in the expert's opening report in contravention of the Court's Scheduling Order, which did not provide for supplemental reports. 231 F.R.D. at 463. The supplemental report was served such that the plaintiffs had no opportunity to conduct rebuttal discovery. *Id.*

The Court excluded the supplemental expert report, noting that while prejudice to the plaintiff could be cured by allowing plaintiffs additional expert discovery, this would disrupt the trial process. *Id.* The Court rejected the defendants' argument that the plaintiffs should have been able to question the expert regarding his supplemental report during deposition, noting that "it is not plaintiffs' responsibility to study and analyze an expert report overnight to save defendants' discovery flaw." *Id.* at 464. The Court found no substantial justification for defendants' disclosure of new theories in a supplemental report that was not permitted under the Court's Scheduling Order. *Id.*

The same reasoning applies here. As in *Praxair*, the Scheduling Order in this case does not provide for supplemental expert reports. Instead, the Scheduling Order explicitly requires that "[f]or the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before January 31, 2010." [D.I. 61 at ¶ 3(d).] There can be no dispute that Fairchild bears the burden of proof on infringement of its own patents. *See, e.g., SmithKline Diagnostics, Inc. v. Helena Labs, Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (noting that the patent owner has the burden of proving infringement). Federal Rule 26(a)(2) requires that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Thus, Fairchild was required under the Court's Scheduling Order—and in accordance with Rule

**REDACTED**

26(a)—to set forth its positions on infringement, including infringement under the doctrine of

equivalents, in its opening expert report.  Fairchild did not do so.

Notably, Fairchild intentionally refused to disclose its positions regarding

infringement under the doctrine of equivalents on or before January 31, 2010, and explicitly

indicated that intent in its expert's opening report.  [*See* Ex. A at ¶¶ 67, 142, and p. 124 n.31.]

Fairchild withheld its positions regarding infringement under the doctrine of equivalents until

March 17, 2010, when it served the Wei Supplemental Report, long after the close of fact

discovery on November 27, 2009, and less than ten days before Dr. Wei's scheduled

deposition.  *Compare Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 721 (3d Cir. 1997)

(affirming exclusion of expert testimony where "[i]t seems clear that trial counsel was, at

best, attempting to gain a tactical advantage by delaying notification of [opposing party] until

the last possible date that could plausibly be claimed as the date on which the final decision

about calling [untimely disclosed expert] had been made.").

As reflected in Dr. Wei's opening and supplemental reports concerning infringement,

Fairchild and Dr. Wei had all of the necessary materials for Dr. Wei to render an opinion

regarding infringement under the doctrine of equivalents at the time he provided his opening

report.  Dr. Wei ███████████████████████████████████████████████████████

and he does not point to any new or different product documentation or schematics received

from Power Integrations since serving his opening report in an effort to justify his

supplementation.  Instead, Dr. Wei's only stated basis for holding back his opinion that

Power Integrations infringes under the doctrine of equivalents was █████████████████

████████████████████████████████ ██ ████████████ This is not a

legitimate excuse; if parties were permitted to strategically delay expert disclosures in this

manner, no one would ever "go first," and the resulting stalemate would grind patent

litigation in this District to a halt.  It would also encourage gamesmanship and the filing of

still further supplemental reports by the aggrieved party. This is inappropriate, and is why the Court's scheduling order and the relevant rules prohibit it.

Fairchild's late disclosure, 110 days after the close of fact discovery and less than ten days before Dr. Wei's scheduled deposition, was obviously prejudicial to Power Integrations. *Compare Praxair*, 231 F.R.D. at 464 (disclosure of new invalidity positions in supplemental expert report ten days before summary judgment motions due prejudiced plaintiff). Instead of being able to explore Fairchild's theories regarding infringement by equivalents during fact discovery, Power Integrations was only able to prepare for and depose Fairchild's witnesses to respond to what Fairchild disclosed during fact discovery, which did not include any analysis under the doctrine of equivalents. Indeed, Fairchild has compounded this prejudice by unilaterally imposing unreasonable time limits on Power Integrations' deposition of Dr. Wei and, to this point, refusing to cooperate with the completion of Dr. Wei's deposition.[5] [*See* Ex. J.]

In any event, Power Integrations is not required to depose Dr. Wei to develop what his opinion is or the reasons for it. *See* Fed. R. Civ. P. 26(a)(2)(B). *See also Bonesmo v. The Nemours Found.*, 253 F. Supp. 2d 801, 811 (D. Del. 2003). Although Power Integrations has attempted to mitigate the prejudice caused by Fairchild's untimely disclosure of its positions regarding infringement under the doctrine of equivalents, it is not Power Integrations' obligation to do so. The Third Circuit, in *Konstantopoulos*, rejected the argument that a prejudiced party could have "cured" its own prejudice resulting from untimely disclosure, observing that even if the prejudiced party "by means of sufficient last-minute scrambling, could have managed to prepare to meet [the untimely disclosed expert's] testimony . . . [the disobedient party] would have gained a valuable tactical advantage by requiring [the

---

[5] Further deposition time with Dr. Wei would not cure the prejudice from Fairchild's untimely disclosure of its theory of infringement under the doctrine of equivalents; Power Integrations simply needs that time to finish questioning Dr. Wei on materials that were disclosed in his timely-served reports.

prejudiced party] to focus its litigation resources on these efforts." 112 F.3d at 721.

Fairchild's behavior in raising new infringement theories well after the close of fact

discovery and so close to the dispositive motions deadline,[6] in a five patent case, then

unilaterally imposing unreasonable time limits on Power Integrations' deposition of Dr. Wei

and refusing to cooperate with the completion of Dr. Wei's deposition, is even more

egregious than the behavior found sufficient to warrant exclusion in *Konstantopoulos*.

Accordingly, the Wei Supplemental Report should be stricken.

### C.   Fairchild Should be Precluded from Relying Upon Untimely Claim Constructions of New Claim Terms, as well as Belated and Narrow Reconstructions of Claims the Court has Already Construed

Paragraph 13 of the Court's Scheduling Order required that the parties exchange

claim terms that they believed required construction, and the proposed constructions, on July

1, 2009.  The parties thereafter were required to, and did, submit a Joint Claim Construction

Chart, including disputed claim terms, the parties' proposed constructions, and intrinsic

evidence supporting the parties' proposed constructions, on July 15, 2009.  Fairchild, through

the submission of Dr. Wei's reports, now purports to construe claim terms for which it never

provided constructions before.  Fairchild also attempts to re-construe claim terms in ways that

are inconsistent with the Court's claim constructions [D.I. 212], even though claim

construction is a matter of law to be determined exclusively by the Court, *Markman v.

Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370

(1996), and a party is not at liberty to depart from the Court's constructions.

All of Fairchild's new constructions seek to narrow the scope of the claims – narrow

Power Integrations' claims to avoid infringement, and narrow its own claims to avoid

invalidity.  Fairchild's "new" contentions even seek to narrow claims that the Court has

---

[6] In view of Fairchild's complete failure to establish a prima facie case for literal infringement of its Yang '595 patent, Power Integrations intends to bring a motion for summary judgment that the remaining asserted claims of this patent are not infringed.

already decided <u>not</u> to narrow in this manner.  All of the terms at issue in this motion were included in the parties' initial exchange of claim terms to be construed, and they fall into three categories based on subsequent events:  1) terms for which Power Integrations provided a construction but Fairchild never provided constructions in reply; 2) terms argued to and construed by the Court, but which Fairchild is now attempting to "re-construe" in a manner that is more narrow than the Court's construction; and 3) terms raised in the parties' exchange and implicitly resolved by the Court's construction, but which Fairchild now suggests are not controlled by the Court's order.  Fairchild should be precluded from belatedly construing claims for which it never previously sought construction, and from arguing that terms encompassed within the Court's constructions should be construed in a manner that is inconsistent with those constructions.

### 1.   Terms for which Fairchild Never Provided Constructions

#### a.   "approximately constant output current"

The phrase "an output characteristic having an approximately constant output current below an output threshold voltage" appears in independent claim 6 of Power Integrations' '270 patent.  Power Integrations proposed in the parties' Joint Submission that construction of the term "approximately constant output current" would be helpful, and suggested that the term be construed to mean "output current that remains substantially constant with changes in input line voltage."  [D.I. 109 at 1-2.]  Power Integrations had previously disclosed the same position in its infringement contentions, [Ex. C at Exhibit E], and Power Integrations' expert, Robert Blauschild, applied this construction in his Opening Expert Report on infringement. [Ex. H at ¶¶ 82-95 and pp. 60-61.]

Fairchild did not provide a responsive construction in the parties' Joint Submission or at any time during the claim construction process.  Instead, Fairchild argued only that the claim element allegedly "is indefinite and not amenable to construction as one of ordinary

**REDACTED**

skill in the art would not understand the range or how 'approximately' constant the output current must be to satisfy this claim element." [D.I. 109 at 1.] Yet, contrary to this assertion, Fairchild disclosed an entirely new construction for the first time on February 1, 2010, when it served Dr. Wei's Opening Expert Report. ██████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

[*id.* at ¶ 472], but that argument is antithetical to Fairchild's only previously disclosed position – that the phrase could **not** be construed, because one of ordinary skill in the art could not even understand the meaning of a component term.  [D.I. 109 at 1.]  Because Fairchild failed to disclose Dr. Wei's proposed construction during the claim construction process, Fairchild waived the ability to make a new argument now.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████¶
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

**REDACTED**



In other words, Dr. Wei understands the term just well enough to assert that the claims containing it are invalid and not infringed.

By waiting until February 1, 2010 to disclose its entirely new construction of "approximately constant output current" via service of Dr. Wei's Opening Report, Fairchild has unfairly prejudiced Power Integrations. Power Integrations first disclosed its position regarding the claim on April 20, 2009, through service of its infringement contentions. [Ex. C at Exhibit E.] Fairchild took no position with respect to construction of that term in its invalidity contentions. [Ex. L at Exhibit B.] In the parties' Joint Submission, Fairchild merely stated that the term was not amenable to construction, and cited no intrinsic evidence bearing on the term's meaning. [D.I. 109 at 1.] By the time Fairchild ultimately disclosed its construction of that term in the Wei Opening Report, fact discovery had long been closed—

Had Power Integrations been on notice earlier of Fairchild's new contention, it could have challenged the contention during discovery, developed contrary evidence, and asked the Court to resolve the dispute.

REDACTED

The Court's Scheduling Order unambiguously set forth the schedule and the means by which the parties were to disclose their positions on claim construction in this litigation. [D.I. 61 at ¶¶ 13-14.] Fairchild did not disclose the construction of "approximately constant output current" it now purports to rely upon as required under the Court's Scheduling Order, or at any time prior to service of Dr. Wei's Opening Report. Had Fairchild disclosed its position as required, Power Integrations could have asked the Court to resolve this dispute during the claim construction proceedings, and Power Integrations also could have investigated the theory when it flew to Taiwan and deposed numerous Fairchild employees. In addition, Power Integrations could have developed evidence of ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████ Instead, Fairchild concealed its positions, effectively circumventing the procedures that the Court established for the investigation and resolution of these sorts of disputes. Power Integrations has been unfairly prejudiced by Fairchild's "litigation by ambush" in this manner, and Fairchild should be precluded from now relying upon this previously-undisclosed construction.[7]

Because Fairchild's arguments regarding the "approximately constant output current" limitation in claim 6 of Power Integrations '270 patent were not disclosed during discovery and are inconsistent with the position Fairchild took during discovery and claim construction, the Court should prevent Fairchild from now asserting the new construction Fairchild advanced for the first time in its expert's reports.

### b. "a feedback terminal coupled to disable the regulation circuit"

The phrase "a feedback terminal coupled to disable the regulation circuit" appears in independent claim 11 of Power Integrations' '851 patent. In its infringement contentions,

---

[7] Because Dr. Wei's belated construction (1) should be precluded, (2) is wrong, and (3) is the sole basis for his opinion that the accused products do not infringe, Power Integrations intends to bring a motion for summary judgment that the '270 patent is infringed.

**REDACTED**



Dr. Wei acknowledges that Power Integrations provided its construction in its

infringement contentions and explicitly states that he "assume[s] that prior to trial the Court

will construe this term." [*Id.* at ¶ 61.] He also admits that if Power Integrations' construction

---

[8] Although the Court should not address the merits of this argument because it was waived, it is worth noting that, as with other belated constructions, Dr. Wei admits▆▆▆▆▆▆▆▆▆▆▆

[9] Dr. Wei also asserts ▆▆▆▆▆▆▆▆▆▆▆

**REDACTED**

██████████████████████████████████████

███████████████████ Here again, by waiting until the service of Dr. Wei's Opening Report to disclose for the first time its construction of the term "a feedback circuit coupled to disable the regulation circuit," Fairchild has effectively circumvented the procedure set forth in the Court's Scheduling Order for resolving claim construction disputes and has unfairly prejudiced Power Integrations. Fairchild's untimely disclosure is improper, its present position was waived, and Fairchild should be precluded from relying upon its eleventh hour claim construction pursuant to Rule 16(f).

### 2.   Construed Terms Which Fairchild Attempts to Re-construe

#### a.   "the first reference signal is varied in response to the change of the second signal"

The phrase "the first reference signal is varied in response to the change of the second signal" appears in claim 17 of the Yang '595 patent. Dr. Wei now argues in his Rebuttal Report on Invalidity that the claim requires █████████████████████████ ████████████████████████████████████████ ████████████████████

Unlike the claim terms discussed previously, this phrase *was* addressed during the claim construction process. Fairchild (and Dr. Wei) argued that the term was broad by its plain meaning, encompassing *any change* of a second signal that results in *any change* of a first signal, and thus that no further construction was necessary. [D.I 122 at 15-17.] Power Integrations argued for a narrower construction, specifying that the term be limited to changes in analog values of signals (as opposed to digital signals). [D.I. 118 at 18-20.] Neither Fairchild, in its proposed construction and briefing on the issue, nor Dr. Wei, in his declaration submitted in support of Fairchild's proposed construction, asserted that the claim required the first reference signal to vary *to accomplish some specific purpose* not recited in

REDACTED

the claim language.  Indeed, the Court ultimately ruled in Fairchild's favor on this term and declined to provide an express construction, finding that the **broader** "plain meaning" understanding was proper.  [D.I. 212 at 27-28.][10]

Although Fairchild successfully convinced the Court that the term encompasses <u>any</u> change of a second signal resulting in <u>any</u> change of a first signal, Dr. Wei now departs from that broad construction in response to Power Integrations' invalidity challenge.  Dr. Wei argues that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ Because Fairchild never raised this "understanding" of the claim during claim construction, and because it is in fact directly contrary to the arguments Fairchild and Dr. Wei successfully advanced at that time, Fairchild should be estopped and precluded from asserting this narrower construction now.[11] *Honeywell Int'l., Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315 (Fed. Cir. 2008) ("Judicial estoppel applies when a party takes a later position that is inconsistent with a former position in the same dispute, on which the party had been successful and had prevailed based on the former position." (internal quotations and citation omitted)).

**b.**     **"a digital to analog converter"**

---

[10] At the time Fairchild and Dr. Wei made these claim construction arguments, they understood that Power Integrations believed the claim was anticipated by the prior art TEA1401T because it was disclosed in an invalidity claim chart in Power Integrations' contention responses.  [Ex. N at 6; *id.* at Exhibit D.]

[11] ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ Accordingly, if Court's construction is applied, there is no dispute and Power Integrations is entitled to summary judgment that the claims are invalid as anticipated.  Power Integrations plans to bring a substantive motion on this issue.

REDACTED

The phrase "a digital to analog converter" ("DAC") appears in claim 1 of Power Integrations' '876 patent. The parties, through the exchange of terms and proposed constructions while preparing the Joint Submission of Claim Terms, each provided a competing construction of the term DAC—Fairchild's proposed construction requiring a "proportional" "signal" output, and Power Integrations' not including those limitations. [D.I. 109 at 12-14.] Fairchild proposed the term be construed in the July 21, 2009 joint letter to the Court addressing the parties' disputed claim terms. [D.I. 111 at 3.] The Court initially identified the term as one it would construe [D.I. 112 at 2], and after considering the parties' positions and arguments, the Court rejected Fairchild's effort to narrow the plain meaning of the term. [D.I. 212 at 36-39.] Notably, Fairchild did not challenge the Court's construction of the term DAC when it filed objections to the Report and Recommendation on Claim Construction. [*See* D.I. 221.]

Notwithstanding the Court's conclusion that the term "DAC" does not require further narrowing, a determination Fairchild failed to challenge, the Wei Rebuttal Report



The Court has already rejected Fairchild's suggestion to narrowly construe the term DAC to include limitations not recited in the actual language of the claim [D.I. 212 at 36-39], and there is no basis now to reopen that debate.

**REDACTED**

As the Court implicitly recognized in rejecting Fairchild's proposed construction, nothing in the plain language of claim 1 of Power Integrations' '876 patent or the words "digital to analog converter" requires or even suggests ███████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ Accordingly, the Court should again preclude Fairchild from selectively importing what amounts to some of the narrowing limitations it argued for but lost on previously.

Fairchild's non-infringement position with respect to claim 1 of Power Integrations' '876 patent is that ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████ ████████████████████████████████████ ████████████████████████

Power Integrations submits that the Court can and should rule on this issue as a matter of law based on its prior construction. Because the Court already concluded that DAC need not be further narrowed in the manner Fairchild now suggests, the trial on infringement of claim 1 of the '876 patent is likely to consist of Dr. Wei ██████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ Mr. Blauschild would then have to argue his contrary view of what a DAC means, even though the Court has ruled that term requires no construction. The Jurors would be left to decide for themselves what a "digital to analog converter" means to a person of skill in the art and then decide whether the accused structure fits within that meaning. But claim construction is an issue for the Court, and the Court has already decided the construction of DAC adverse to Fairchild's present attempt to re-construe the claim, a

**REDACTED**

decision Fairchild chose not to challenge. 

c.   "means ... for varying the switching frequency"

The phrase "means ... for varying the switching frequency" appears in claim 21 of '876 patent, as part of the term "means coupled to the control input for varying the switching frequency, including: one or more current sources . . . and a counter." The "means ... for varying the switching frequency" element was disputed and briefed during claim construction. The Court construed the term as "a means plus function term, with a function of 'varying the switching frequency of the oscillator,' and a structure of a digital-to-analog converter and a counter having at least four bits." [D.I. 212 at 44-45.] Notwithstanding the Court's construction, the Wei Rebuttal Report attempts to re-construe the 'means' element of this term as requiring

Fairchild should be precluded from relying upon this new construction. The Court has already construed this term,

Power Integrations notes that even if the Court agrees and precludes Dr. Wei from testifying that the underlying issue of the proper construction of the term DAC (discussed in the previous

REDACTED

section) also applies to this claim term, because the Court's construction includes the limitation that the corresponding structure for the claimed means include a digital-to-analog converter. Power Integrations respectfully submits that this provides further reason for the Court to rule now as a matter of claim construction that a DAC is not so limited as Fairchild now suggests.

### 3. Terms Not Explicitly Addressed but Implicitly Resolved by the Court's Order

#### a. "the oscillator having a control input"

The term "the oscillator having a control input" appears in claims 1 and 21 of Power Integrations' '876 patent. The parties provided competing constructions of this term in the Joint Submission of Proposed Claim Terms. [D.I. 109 at 10-12.] Fairchild's proposed construction required that the term be limited to a control input that receives "signals," while Power Integrations' construction did not include the "signals" limitation. Power Integrations had previously provided infringement contentions based on this position [Ex. C at Exhibit C pp. 1-2, 4-5], yet Fairchild did not request that the Court construe this term. [D.I. 111.]

As the Court will recognize, this issue is directly related to the digital to analog converter issue addressed above, because the DAC is coupled to the control input of the oscillator. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Because Fairchild had the opportunity to identify and argue this narrow construction to the Court during claim construction proceedings but chose not to do so, Fairchild should be precluded from now arguing that ████████████

████████████████████████████████████████

██████████████████

**REDACTED**



More broadly, Fairchild's present asserted construction of "control input" ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is another attempt to avoid the Court's construction of

DAC. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

To the extent the Court considers the issue on its merits, Fairchild should also be

precluded from relying upon its narrow construction of "control input" because it is incorrect

as a matter of claim construction. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fairchild should not be permitted to read such

limitations into either claim term.

**b.** **Whether claims 22 and 32 of the Yang '972 patent require a "voltage control loop" "in the primary side"**

Having asserted that claims 1 and 15 of the Yang '972 patent were limited to

"primary side control" – and having lost on that issue – Fairchild now seeks to resurrect the

same issue with proposed constructions of similar elements in claims 22 and 32.  Claims 1,

14, 15, 22, and 32 of the '972 patent each recite "control loop" elements.  Claims 1, 14, 15,

and 22 each recite both a "voltage control loop" and a "current control loop," while claim 32

recites a "first control loop" and a "second control loop." Claims 22 and 32 further expressly specify that the recited *current control loop/second control loop* is "in the primary side." The context and scope of these limitations was raised in the context of the parties' claim construction submissions, but Fairchild now attempts to avoid the consequences of its loss at that stage.

Power Integrations pointed out during the original exchange between the parties that all five claims identified above contain similar language – noting that the "first feedback signal" limitations were distinct and should be construed independently of the "second feedback signal" limitations – and also took the position that the limitations should be construed consistently across all five claims in which they appeared. [D.I. 109 at 57-67.] Fairchild rejected these suggestions and instead proposed separate constructions for each claim, but in doing so Fairchild parsed the claims to include the entire "controller" limitation, in an attempt to ignore the distinctions between the recitations (noted above) of the two control loops. In response to the Court's order to limit the terms for construction, and despite Power Integrations again suggesting that all five claims could be treated together given the nearly identical language in each, Fairchild selected only the terms "a controller to generate the switching signal and to control the switching signal in response to a first feedback signal associated with a voltage control loop and a second feedback signal associated with a current control loop" from claim 1 and "controlling a switching signal to regulate the connection of the electrical power to output terminals in response to a first feedback signal associated with a voltage control loop and a second feedback signal associated with a current control loop" from claim 15 of the '972 patent. [D.I. 111 at 3.][12]

---

[12] Power Integrations objected to Fairchild's request to construe the redundant terms in claims 1 and 15 separately as a deliberate waste of the Court's resources [D.I. 111 at 2], and after Fairchild essentially joined them in its own briefing, the Court ultimately treated at least these two claims together in its Report and Recommendation. [D.I. 212 at 15-21.]

Although claims 1 and 15 do not contain any language related to "primary side" limitations, Fairchild argued that those terms should be construed as limited to primary side applications, proposing to include the additional language "at the primary-side without the need of an optical coupler or a secondary-side regulator" as modifying both recited control loops. [D.I. 122 at 5-9.] Fairchild also proposed that the recited "first feedback signal associated with a voltage control loop and a second feedback signal associated with a current control loop" be collapsed into "feedback signals associated with voltage and current control loops." [*Id.*] Power Integrations responded that Fairchild's proposed constructions improperly merged the two control loops together, blurring their distinct nature, which is why Power Integrations had proposed from the outset to construe them independently of one another. Power Integrations also pointed out that Fairchild's proposed primary side limitations were improper, noting that there was no language at all in claims 1 and 15 that related to any primary side limitation. In addition to explaining that there was nothing in the intrinsic evidence that compelled the limitation of primary side control be imputed in all the claims, Power Integrations also pointed out that importing Fairchild's proposed limitations into claims 1 and 15 contrasted with other claims, specifically claims 22 and 32, that did expressly recite primary side language in connection with the "current control loop." [D.I. 138 at 9.]

The Court rejected Fairchild's position and construed the parallel elements of both claims 1 and 15 to lack a primary side limitation. [D.I. 212 at 15-21.] The Court explicitly cited and relied in part upon the "primary-side limitation language" in claims 22 and 32 of the '972 patent in rejecting Fairchild's proposed constructions of claims 1 and 15. [*Id.* at 16-17.] Importantly, the Court also construed the two recited feedback signals associated with the different control loops in claims 1 and 15 to be separate and distinct. [*Id.* at 21-22.] As it stated from the outset, Power Integrations believes the Court's construction should apply

**REDACTED**

consistently to all the claims having substantially the same limitations. When so applied, the conclusion is clear: the two feedback signals – and the control loops to which they are related – are distinct in claims 22 and 32 just as they are in claims 1 and 15, and no primary side limitations can be imputed to claim elements not including express language so limiting them.

The result is that the "first feedback signal associated with a voltage control loop" in claims 22 and 32 is **not** limited to primary side control. The plain language of claims 22 and 32 requires only that the "current control loop" and the "second control loop," respectively, be "in the primary-side of the transformer." Thus, Fairchild's new assertion████████████ ████████████████████████████████████████████ ██████████████████████████ is a re-tread of its already-rejected argument made in the context of claims 1 and 15. [Ex. M at ¶¶ 139 and 153.][13] Like the proposed Fairchild constructions the Court rejected for claims 1 and 15, Fairchild's new constructions of claims 22 and 32 again attempt to read "primary side" limitations into the claims broadly, even for claim elements that do not explicitly include such limitations.

Fairchild's new constructions are also akin to its rejected construction of the term "feedback signals" as recited in claims 1 and 15, as they attempt to conflate claim elements that, by the plain language of the claims, are distinct. Claims 1 and 15 unambiguously recite "a first feedback signal associated with a voltage control loop" and a distinct "second feedback signal associated with a current control loop." The Court correctly rejected Fairchild's proposed construction that removed the clear distinction made between the two feedback signals as improper. [D.I. 212 at 21-22.] Claims 22 and 32 also unambiguously

---

[13] Dr. Wei attempts to rely on the Court's citation to claims 22 and 32 of the '972 patent in the Report and Recommendation as suggesting that the Court has concluded that the voltage control loop of the claims is limited to being on the primary side. This is simply wrong. As explained above, both Power Integrations and the Court referred to "primary side language" in those claims, and Power Integrations expressly referred to that language as applying to the current control loop, not the voltage control loop.

recite "a voltage/first control loop" and a distinct "current/second control loop in the primary-side of the transformer." Thus, Fairchild's proposed constructions, which seek to remove the distinction made between the two control loops for claims 22 and 32, present nothing more than another attempt by Fairchild to reargue its rejected "primary side" position in an effort to avoid the clear import of the Court's adverse ruling. Because Fairchild's new constructions parallel constructions that the Court has already rejected, Fairchild should be precluded from relying upon them.

Moreover, Fairchild should be precluded from relying upon these constructions because, to the extent Fairchild all along intended to make such arguments, they were hidden from both Power Integrations and the Court amid Fairchild's choosing to address the same claim limitations in claims 1 and 15 as "separate" terms for construction during the *Markman* phase of the case. Power Integrations raised the issue – both prior to and during the claim construction process – of whether only the recited current/second control loop, or both the current/second control loop and the voltage/first control loop, were required to be on the primary side. First, in its invalidity contentions served on May 20, 2009, Power Integrations asserted that certain prior art (specifically Power Integrations' '366 patent and Fairchild's own FSD210 product) anticipated claims 22 and 32 of the '972 patent and identified in this art current control loops in the primary side, and voltage control loops that use secondary-side components, implicitly asserting that those claims only require the current/second control loop on the primary side, and not both control loops.[14] [Ex. N at 7; *id.* at Exhibits F and G.] Then, during claim construction, Power Integrations repeatedly and consistently took the position that the two control loop limitations in each claim were distinct and should be separately construed to ensure those distinctions were not lost. Power Integrations also

---

[14] Blauschild's Opening Report on invalidity repeats the same contentions regarding the prior art (Fairchild's FSD210 product and Power Integrations' '366 patent), the same implicit position regarding the construction of claims 22 and 32 of the '972 patent, and more particularly refers to the requirement that the current control loop would control the current on the primary side. [Ex. O at Exhibit B pp. 11-20.]

argued in its claim construction briefing that not only were the control loop limitations

distinct, but that claims 22 and 32 of the '972 patent explicitly included language directed

specifically to only "primary-side <u>current-control loop</u>" limitations." [D.I. 138 at 9.]

Fairchild ignored Power Integrations' prior statements that all of the claims should be

treated consistently. [D.I. 109 at 60-66; D.I. 111 at 2.] During the claim construction

proceedings, Fairchild also never made any express counter-argument or attempt to rebut

Power Integrations' assertion that the phrase "in the primary side" was only used in the

claims to modify the current control loop limitations. Instead, even though Fairchild asserted

claims 1, 14, 15, 22, and 32 against Power Integrations, Fairchild only asked the court to

construe the control loop language in claims 1 and 15. Notably, after the Court construed the

limitations as Fairchild had selected them in claims 1 and 15 against Fairchild – consistent

with Fairchild's representation at the claim construction hearing that a construction lacking

primary side limitations would create "serious" validity problems [Ex. P (*Markman* Tr.

9/23/2009) at 32:3-24] – Fairchild *dropped its contentions as to those claims*. Fairchild,

however, continued to assert claims 22 and 32. By choosing to seek construction of only

claims 1 and 15 (only to drop its infringement allegations later), while simultaneously

refusing to allow separate construction of the control loop limitations, Fairchild essentially

hid this issue from the Court. The Court should reject Fairchild's efforts to test its "primary-

side" argument on a subset of these related claims and while trying to "reserve" the position

that the others are also generally limited to primary side control.

Even if Fairchild's failure to raise the issue earlier was inadvertent, Fairchild should

also be precluded from relying upon this new construction because permitting it to do so now

would unfairly prejudice Power Integrations. If Fairchild had sought construction of the

"primary side" limitation with respect to claims 22 and 32, as it did with claims 1 and 15,

Power Integrations and the Court could have addressed the construction Fairchild now seeks

to rely upon at that time.  Because Fairchild chose to frame the issues as it did, it should be found to have waived and be precluded from re-arguing the position under the guise of a "new" claim construction issue now.

## VI.    CONCLUSION

Fairchild's untimely disclosure of previously-undisclosed positions on infringement under the doctrine of equivalents and previously-undisclosed claim constructions are improper under both the Court's Scheduling Order and the Federal Rules, and unfairly prejudicial to Power Integrations.  Accordingly, the Court should strike Dr. Wei's Supplemental Report and preclude Fairchild from relying upon its new, previously-undisclosed claim constructions.


Dated:  April 26, 2010                         FISH & RICHARDSON P.C.

                                               By: */s/ William J. Marsden, Jr.*
                                                   William J. Marsden, Jr. (#2247)
                                                   Kyle Wagner Compton (#4693)
                                                   222 Delaware Avenue, 17th Floor
                                                   P.O. Box 1114
                                                   Wilmington, DE 19899-1114
                                                   Telephone: (302) 652-5070
                                                   Email:  marsden@fr.com

                                                   Frank E. Scherkenbach
                                                   225 Franklin Street
                                                   Boston, MA 02110-2804
                                                   Telephone: (617) 542-5070
                                                   Facsimile:  (617) 542-8906

                                                   Howard G. Pollack
                                                   Michael R. Headley
                                                   500 Arguello Street, Suite 500
                                                   Redwood City, CA 94063
                                                   Telephone: (650) 839-5070

                                               ATTORNEYS FOR PLAINTIFF
                                               POWER INTEGRATIONS, INC.

50710478.doc

30