IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

Plaintiff,

v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation, and SYSTEM
GENERAL CORPORATION, a Taiwanese
corporation,

Defendants.

C.A. No. 08-309 JJF-LPS

**PUBLIC VERSION**

## ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE OPINIONS OF DR. GU-YEON WEI

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew D. Cordo (I.D. #4534)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
acordo@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: May 13, 2010

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A.  Dr. Wei's Supplemental Report Was Appropriate And Timely .......................... 3

        1.  Motions To Strike Are Denied Absent Willful Misconduct ..................... 3

        2.  Power Integrations' Belated Non-Infringement Arguments Made It Necessary To Supplement Dr. Wei's Report ............................................ 4

        3.  Dr. Wei's Supplemental Report Should Not Be Excluded ....................... 5

            a.  The relevant factors favor allowance of the Supplemental Report ..................................................................................... 6

            b.  Power Integrations is not unfairly prejudiced by Dr. Wei's Supplemental Report ................................................................ 7

    B.  Dr. Wei Will Apply The Court's Claim Construction ..................................... 9

        1.  Dr. Wei Can Provide An Opinion On Terms Not Construed By The Court .......................................................................................... 10

            a.  "approximately constant output current below an output voltage threshold" ................................................................. 10

            b.  "a feedback terminal coupled to disable the regulation circuit" ................................................................................. 11

            c.  "the oscillator having a control input for varying the switching frequency" .............................................................. 12

            d.  Claims 22 and 32 of the Yang '972 Patent require a "voltage control loop" "in the primary side" .............................. 13

         2.  Fairchild Does Not Seek To "Re-Construe" Claim Terms ..................... 15

            a.  "the first reference signal is varied in response to the change of the second signal" ..................................................... 15

            b.  "a digital to analog converter" .................................................. 16

            c.  "means… for varying the switching frequency" .......................... 17

III. CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Chase Manhattan Mortgage Corp. v. Advanta Corp.*,
  No. 01-507 (KAJ), 2004 WL. 422681 (D. Del. Mar. 4, 2004) ..................................7

*Finch v. Hercules, Inc.*,
  1995 U.S. Dist. LEXIS 19805 (D. Del. Dec. 22, 1995)........................................8, 9

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
  523 F.3d 1304 (Fed. Cir. 2008)...............................................................................17

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  289 F. Supp. 2d 493 (D. Del. 2003) ..........................................................................9

*Johnston v. IVAC Corp.*,
  885 F.2d 1574 (Fed. Cir. 1989).................................................................................4

*Kemin Foods, L.C. v. Pigmentos Vegetables del Centro S.A. de C.V.*,
  464 F.3d 1339 (Fed. Cir. 2006) ................................................................................8

*LG Display Co., v. AU Optronics Corp.*,
  2010 WL. 1780027 (D. Del. 2010) ..........................................................................17

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994).......................................................................................3

*Praxair, Inc. v. ATMI, Inc.*,
  231 F.R.D. 457 (D. Del. 2005) ......................................................................4, 6, 7, 8

*UCB, Inc. v. KV Pharm. Co.*,
  No. 08-223-JJF, 2010 WL. 809815 (D. Del. Mar. 9, 2010) ......................................5

## FEDERAL STATUTES

35 U.S.C. § 112 ¶ 6....................................................................................................17

Fed. R. Civ. P. 26(a)(2)............................................................................................3, 5

Fed. R. Civ. P. 26(e)(1).................................................................................................6

Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and System General Corporation (collectively, "Fairchild") hereby oppose Power Integrations' Motion to Strike certain of the opinions of Fairchild's expert, Dr. Gu-Yeon Wei ("Dr. Wei"). [D.I. 232]. Since Dr. Wei's opinions are timely, appropriate, and, in all cases, apply the Court's claim construction, Power Integrations, Inc.'s ("PI") motion should be denied.

## I.  **INTRODUCTION.**

Unable to dispute the merits of Fairchild's positions, PI seeks to strike them. PI's Motion is premised on two false assumptions – (i) that Fairchild unfairly delayed in informing PI that PI infringed under the doctrine of equivalents and (ii) that Fairchild's expert does not apply the Court's claim construction. As both of PI's premises are wrong, PI's Motion should be denied.

Fairchild has been clear from the start of the case that it believes PI infringes literally or, should PI deny that, under the doctrine of equivalents. Indeed, Fairchild's infringement contentions – served over a year ago – expressly stated that "to the extent that Plaintiff argues that any element is not literally met, Defendants reserve the right to argue that the element is met under the doctrine of equivalents." Fairchild served an interrogatory specifically asking whether PI disputed infringement. Despite Fairchild's repeated requests, PI did not identify any element it claimed was not literally infringed in its discovery responses. Relying upon PI's interrogatory response, Fairchild's expert timely provided his initial expert report setting forth how PI literally infringed each asserted claim of the Fairchild patents.

After receiving Fairchild's initial expert report, PI's expert later provided a rebuttal report in which he ignored PI's interrogatory responses and advanced his own theory, not disclosed during discovery, that PI did not literally infringe certain elements. In response, Dr. Wei quickly provided a short Supplemental Report indicating how these elements were infringed under the doctrine of equivalents. This report was provided during expert discovery and almost two weeks before Dr. Wei's deposition, during which he was questioned extensively about it.

Having failed to disclose its non-infringement defenses during discovery, PI now seeks to preclude Fairchild's expert from opining that PI infringes under the doctrine of equivalents.

Fundamental fairness, however, dictates that if PI's expert is entitled to ignore PI's discovery responses and advance a new non-infringement theory at the eleventh hour, Fairchild's expert must be permitted to respond to it. Indeed, the hypocrisy of PI's motion is made all the more clear by the fact that PI supplemented its own technical expert report *after* Fairchild completed his deposition and that PI has stated that it will serve yet another expert report shortly.

PI also complains that Dr. Wei may provide opinions contrary the Court's claim construction. This is not the case. Dr. Wei expressly applied the Court's claim construction in formulating all of his opinions – that PI infringed Fairchild's valid claims and that Fairchild did not infringe any valid PI claim. Where no construction has been provided, Dr. Wei properly applied the plain and ordinary meaning of the claim term. If the Court is inclined to construe these previously unconstrued terms, Fairchild respectfully requests notice and an opportunity to provide argument and intrinsic evidence as to their meaning. Power Integrations cannot, however, through a "Motion to Strike" preclude Fairchild's expert from opining on the plain and ordinary meaning of terms that have not been construed.

## II.   <u>ARGUMENT.</u>

In its Motion, PI makes essentially two arguments. First, it seeks to prevent Fairchild from arguing that PI infringes under the doctrine of equivalents. Since Fairchild's doctrine of equivalents arguments were presented in a supplemental expert report served during expert discovery and well in advance of Dr. Wei's deposition – and since any "delay" in providing this opinion was entirely caused by PI's failure to disclose during discovery that it disputed Fairchild's allegations of literal infringement – PI's motion should be denied.

PI also seeks a variety of relief including summary judgment and claim construction to which it is not entitled either procedurally or substantively. Under the guise of a "motion to strike", PI seeks to preclude Fairchild from disputing PI's contentions that it does not infringe and that Fairchild does. PI's motion rests on a fundamentally unsound premise – that the Court should construe or re-construe claim terms and then retroactively apply that new construction to Fairchild. In every case, Fairchild and its expert have applied the Court's existing claim

construction. Were the Court inclined to construe additional claim terms (or, as PI requests, re-construe terms it has already decided), it should not do so through a Motion to Strike but, instead, provide both parties with notice as to which terms will be construed and an opportunity to present claim construction arguments. Thus, PI's "Motion to Strike" should be denied.

### A.   Dr. Wei's Supplemental Report Was Appropriate And Timely.

Early in the case, Fairchild provided discovery demonstrating the manner in which PI literally infringed each asserted claim. Exh. A [Fairchild's Resp. to Rog. No 12]. Fairchild clearly stated that should PI dispute that any element was literally infringed, Fairchild may assert infringement under the doctrine of equivalents. *Id.* Fairchild served an interrogatory specifically calling for PI's non-infringement positions. Exh. B [PI's Resp. to Rog. No. 24]. PI, however, did not provide a substantive response to this interrogatory. *Id.* As a result, neither Fairchild nor its expert were able to respond to PI's non-infringement position before it was disclosed in PI's expert's ***rebuttal*** expert report. Once PI finally provided this discovery, Fairchild and Dr. Wei promptly provided a supplemental report spelling out how the specific elements disputed by PI were infringed under the doctrine of equivalents. This Supplemental Report was provided well in advance of Dr. Wei's deposition and PI questioned Dr. Wei about these opinions at length. Thus, there is absolutely no reason to preclude Dr. Wei's supplemental report.

### 1.   Motions To Strike Are Denied Absent Willful Misconduct.

"[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-792 (3d Cir. 1994). In determining whether to exclude expert testimony, the Court should first consider whether it was disclosed in a written report proving "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2). There is no dispute that Dr. Wei provided a Supplemental Expert Report meeting these requirements.

PI's sole complaint is that the Supplemental Report was untimely. As this Court has noted, "the exclusion of otherwise admissible testimony because of a party's failure to meet a

timing requirement is a harsh measure and should be avoided where possible." *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 462 (D. Del. 2005). The facts in this case do not warrant exclusion.

### 2.   Power Integrations' Belated Non-Infringement Arguments Made It Necessary To Supplement Dr. Wei's Report.

On April 20, 2009 – over a year ago – Fairchild timely identified how the accused PI devices literally infringed each element of the asserted claims. Exh. A [Fairchild's Resp. to Rog. No 12]. Fairchild specifically stated that "to the extent that Plaintiff argues that any element is not literally met, Defendants reserve the right to argue that the element is met under the doctrine of equivalents." *Id.* Fairchild served an interrogatory seeking PI's non-infringement contentions but PI refused to provide any substantive response:

**REDACTED**

**REDACTED**

Exh. B [PI's Resp. to Rog. No. 24]. PI never supplemented this response or provided discovery concerning its non-infringement contentions.[1]

Thus, prior to Mr. Blauschild's March 1, 2010 rebuttal report, PI did not provide any discovery response or report disputing Fairchild's literal infringement analysis. Consequently, there was no reason for Fairchild to argue infringement under the doctrine of equivalents. In his

---

[1]   In letters, PI's attorneys provided unsworn and unsubstantiated attorney argument concerning PI's alleged infringement. Exhs. C and D. Despite Fairchild's repeated requests, PI did not provide any non-infringement position (or even adopt its attorneys' argument) in response to Fairchild's interrogatories. Exhs. E and F. PI's attorney arguments cannot take the place of or supersede PI's interrogatory response. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorneys' argument is no substitute for evidence.").

Initial Report, Dr. Wei explained how the accused PI products literally infringed the asserted

claims and explained that, should PI dispute literal infringement, he may provide a supplemental

report concerning infringement under the doctrine of equivalents:

### REDACTED

Exh. G [Wei Initial Report, ¶¶ 67 and 142]; *see UCB, Inc. v. KV Pharm. Co.*, No. 08-223-JJF,

2010 WL 809815, at *3 (D. Del. Mar. 9, 2010) (denying motion to strike supplemental expert

report where assertions were consistent with expert's prior statements).

In his *Rebuttal* Report, Mr. Blauschild set forth a non-infringement position that had

never been disclosed in response to Fairchild's interrogatories or discovery requests.  Fairchild

reviewed PI's new contentions and promptly provided a short Supplemental Report in which

Fairchild's expert explained how the disputed claim elements were infringed under the doctrine

of equivalents – exactly as it promised to do.  Exh. H [Wei Supp. Report, ¶ 10].

Consequently, any "delay" in providing infringement contentions under the doctrine of

equivalents is a direct result of PI's refusal to disclose its non-infringement contentions.

### 3.    Dr. Wei's Supplemental Report Should Not Be Excluded.

Dr. Wei's Supplemental Report fully complies with – indeed, was required by – Federal

Rule of Civil Procedure 26, which requires that an expert's report contain "a complete statement

of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P.

26(a)(2).  At the time of Dr. Wei's Initial Report, PI had not responded to discovery seeking any

theory that its products did not literally infringe the patents-in-suit, despite an interrogatory

explicitly seeking its non-infringement contentions.  Thus, Dr. Wei did not anticipate testifying

about infringement under the doctrine of equivalents and his report fully disclosed his opinions.

Once PI argued in Mr. Blauschild's Rebuttal Report that certain elements were not

literally infringed, Dr. Wei considered PI's new arguments and determined that, while he still

believed that PI literally infringed these elements, at a minimum PI infringed under the doctrine of equivalents. Pursuant to Federal Rule of Civil Procedure 26(e)(1), Dr. Wei submitted a Supplemental Report disclosing this new opinion. Pursuant to Federal Rule of Civil Procedure 26(e)(2), this report was provided prior to the parties' pretrial disclosures – indeed, during expert discovery and before Dr. Wei's deposition.[2]  As a result, PI has not been prejudiced.

### a.   The relevant factors favor allowance of the Supplemental Report.

The parties agree on the legal framework for the Court to apply in considering whether to exclude Dr. Wei's Supplemental Report:

> When considering whether to exclude testimony, courts generally look to the following: "The ability of the party to have discovered the witnesses earlier, validity of the excuse offered by the party, willfulness of the party's failure to comply with the court's order, the party's intent to mislead or confuse his adversary, and the importance of the excluded testimony."

*Praxair, Inc*, 231 F.R.D. at 463 (citations omitted) *rev'd in part on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008); *see* Motion, pp. 7-8. These factors are all contrary to PI's motion to strike.

First, Fairchild not only "discovered" but disclosed to PI that its technical expert, Dr. Wei, will testify at trial. Moreover, both Fairchild and Dr. Wei specifically stated that if, contrary to PI's interrogatory responses, PI disputed literal infringement, Dr. Wei may provide testimony concerning the doctrine of equivalents. Exh. G [Wei Initial Report, ¶¶ 67 and 142]. Thus, the first factor favors allowance of this testimony.

Second, any delay in serving the Supplemental Report was entirely a result of Fairchild's reliance on PI's interrogatory response and PI's failure to disclose during discovery that it disputed literal infringement. It was only when PI submitted its *rebuttal* expert report disputing literal infringement that Fairchild had any reason to assert infringement under the doctrine of equivalents. Once PI's expert indicated that, contrary to PI's interrogatory responses, he

---

[2]      The Supplemental Report was not inconsistent with the Court's Scheduling Order. That Order did not preclude supplemental reports or modify the parties' obligation to supplement its experts' reports pursuant to the Federal Rules. Indeed, while the Court properly cautioned that the parties should not supplement their contentions after the "filing [of] a substantive motion for summary judgment on noninfringement," the Court expressly recognized the parties' "ongoing obligation to supplement." D.I. 105 [6/25/09 Hearing Transcript at 15:12-23 and 26:22-30:7].

intended to opine that PI did not literally infringe, Fairchild worked diligently to respond and served the Supplemental Report 16 days later. Thus, the second and third factors ("validity" of Fairchild's excuse and "willfulness" of Fairchild's failure) favor allowance of this testimony.

Third, Fairchild had no "intent to mislead or confuse" PI. Fairchild promptly disclosed its expert's doctrine of equivalents theory barely two weeks after PI disclosed its expert's non-infringement theory. Thus, all of the relevant factors weigh in favor of allowing this testimony.

        **b.**      **Power Integrations is not unfairly prejudiced by Dr. Wei's Supplemental Report.**

Even were the relevant factors to suggest excluding Dr. Wei' Supplemental Report (and, to be clear, they do not), the Court must still consider whether PI has been unfairly prejudiced:

> Based on these considerations, the court must weigh: (1) the prejudice or surprise to the party against whom the excluded witnesses would have testified; (2) the party's ability to cure the prejudice; (3) the extent to which calling an undisclosed witness would disrupt the trial process; and (4) bad faith or willfulness in failing to comply with the court's order.

*Praxair, Inc.*, 231 F.R.D. at 463. Since the Supplemental Report was provided shortly after PI's expert disclosed his non-infringement theory, during expert discovery, and almost two weeks before Dr. Wei's deposition, there is no unfair prejudice to PI.

Expert discovery did not end until March 31, 2010. D.I. 61, ¶ 3(c). Dr. Wei's Supplemental Report was served on March 17, 2010, well in advance of this deadline, and almost two weeks before Dr. Wei's March 28 deposition. During that over 12 hour deposition, PI attorneys fully examined Dr. Wei concerning his supplemental report and the basis for his opinion that PI infringed under the doctrine of equivalents.[3] Thus, PI is not prejudiced by Dr. Wei's Supplemental Report and no additional discovery concerning it is necessary. *See Chase Manhattan Mortgage Corp. v. Advanta Corp.*, No. 01-507 (KAJ), 2004 WL 422681, at *10 (D. Del. Mar. 4, 2004) ("Advanta had ample opportunity to depose both Ms. Smith and Mr. Olasov

---

[3]    While PI has requested to continue Dr. Wei's deposition to examine him further about the invalidity of PI's '851 patent, Dr. Wei's Supplemental Report has no bearing on that topic and his deposition with respect to that report is complete.

about their supplemental reports; and the trial was not set to begin until over seven months after the supplemental reports were submitted.").[4]

The Federal Circuit's decision in *Kemin Foods, L.C. v. Pigmentos Vegetables del Centro S.A. de C.V.* is instructive. 464 F.3d 1339 (Fed. Cir. 2006). In *Kemin*, the district court struck as untimely a supplemental expert report concerning infringement. *Id.* at 1350-1351. The Federal Circuit determined this to be an abuse of discretion since Kemin, the party propounding the supplemental report, had indicated that it may advance an additional infringement theory but was prevented from doing so because PIVEG, the opposing party, failed to provide discovery:

> We see nothing more Kemin could have done to keep claim 5 alive during the pretrial phase of the litigation. Kemin repeatedly advised the court and PIVEG that once it obtained information about PIVEG's process, that information might implicate claim 5…. And as soon as it obtained sufficient information about PIVEG's process, Kemin provided a detailed analysis of its claim 5 infringement contentions. Under these circumstances, we conclude that the magistrate judge should not have granted PIVEG's motion to strike Kemin's supplemental expert report.

*Id.* at 1352. As in *Kemin*, Fairchild did all it could – it informed PI that it would assert infringement under the doctrine of equivalents if PI denied literal infringement, served an interrogatory seeking that information to which PI failed to respond, repeatedly requested that PI disclose any non-infringement defense and, when PI finally did so in its rebuttal expert report, promptly filed a supplemental report asserting infringement under the doctrine of equivalents.

In contrast, the cases cited by PI are inapposite. For instance, in *Praxair* the supplemental report was excluded because it was served just 10 days before motions for summary judgment, "months" after the opposing expert's report that was the justification for supplementation, and the night before the expert's deposition. *Praxair, Inc.*, 231 F.R.D at 463-464. To the contrary, Dr. Wei's Supplemental Report was served March 17 – a month and a half before motions for summary judgment were due, a mere 16 days after Dr. Blauschild's rebuttal report, and nine days before Dr. Wei's deposition. Indeed, there is no dispute that PI deposed Dr. Wei about the Supplemental Report. *See* Motion, p. 11.

---

[4]   While this case is unreported, its reasoning is persuasive.

PI also relies upon *Finch v. Hercules, Inc.*, No. 92-251 MMS, 1995 U.S. Dist. LEXIS 19805 (D. Del. Dec. 22, 1995).  Far from supporting PI's position, however, that case recognizes "that unreasonable adherence to [scheduling] such deadlines, without regard to whether a party was justified for its actions, runs counter to the dominant interest in the trial process, *i.e.*, ascertaining the truth." *Finch*, 1995 U.S. Dist. LEXIS 19805, at * 29.  In *Finch*, the Court excluded testimony from a witness not properly disclosed in response to an interrogatory since the case was on the "eve of trial." *Id.* at *21-*27 and *30.  While this case may provide a basis to prevent PI's expert from deviating from the non-infringement position set forth in PI's interrogatory responses, it does not support the exclusion of Dr. Wei's Supplemental Report since Dr. Wei and the subject of his testimony (that, for any element PI contends was not literally infringed, PI infringed under the doctrine of equivalents) were both disclosed.

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 289 F. Supp. 2d 493 (D. Del. 2003) is similarly unavailing.  In that case, the Court precluded an expert from testifying at trial on an issue not disclosed in any of his reports and that he testified he had not considered during his deposition. *Honeywell*, 289 F. Supp. 2d at 499.  Here, Dr. Wei has fully disclosed his opinion in a supplemental report and was deposed about it.

PI's efforts to strike Dr. Wei's timely supplemental report are particularly ironic given that PI, itself, supplemented its technical expert's report ***after*** the close of expert discovery and ***after*** Fairchild deposed him.  Exh. I.  Moreover, PI has stated that it intends to serve an expert report on willfulness – an issue for which it indisputably bears the burden of proof – at some undisclosed future date "in the near term." *See* D.I. 248, p. 7, n. 4.  PI cannot have it both ways.  Either, PI should be held to its interrogatory response and precluded from disputing literal infringement (in which case, Dr. Wei's Supplemental Report is irrelevant and can be withdrawn) or PI will be permitted to present a non-infringement defense in its rebuttal expert report that was not disclosed during discovery (in which case, Dr. Wei should be permitted to respond to it).

**B.**     **Dr. Wei Will Apply The Court's Claim Construction.**

Dr. Wei made clear in his expert reports and deposition that he will apply the Court's claim construction in all of his opinions.  Dr. Wei will not provide testimony on any opinions contrary to this claim construction.  Thus, PI's motion to strike Dr. Wei's opinions based on PI's mistaken belief that Dr. Wei may contradict the Court is misguided and should be denied.

**1.**     **Dr. Wei Can Provide An Opinion On Terms Not Construed By The Court.**

It is impossible and unnecessary for the Court to construe every single word from every single asserted claim.  Instead, parties and their experts apply the plain and ordinary meaning of terms not construed by the Court.  This is exactly what Dr. Wei has done.  Recognizing that applying the plain and ordinary meaning of the claims is problematic for PI, PI seeks to preclude Fairchild from presenting any defense.  Since there is no legal or factual support for PI's motion, is should be denied.

**a.**     **"approximately constant output current below an output voltage threshold".**

The term "an approximately constant output current below an output voltage threshold" appears in claim 6 of the '270 Patent.  During claim construction Fairchild stated that "the majority of claim terms [including this one] would be readily understood by one of ordinary skill in the art and should be accorded their plain and ordinary meaning."  Exh. J.  Thus, Fairchild's position is that this term means exactly what it says – that the output current must be approximately constant below an output voltage threshold.  Given the Court's limitation on the number of terms to be construed, neither PI nor Fairchild selected this element for construction (*see* D.I. 112) and it was not construed by the Court.

In his Expert Report, Dr. Wei applied the plain and ordinary meaning of this claim term, exactly as Fairchild had proposed to PI.  Exh. G [Wei Initial Report, ¶ 472   **REDACTED**

**REDACTED**

. As Dr. Wei expressly noted in his report, this plain and ordinary meaning is not inconsistent with the fact that the claim is indefinite

**REDACTED**

**REDACTED**   *See* Exh. G [Wei Initial Report, p. 101, n. 28].

PI now argues that had it understood that this term would be given its plain and ordinary meaning, PI "could have investigated the theory when it flew to Taiwan and deposed numerous Fairchild employees." Motion, p. 16.  These depositions occurred in December 2009 – five months *after* Fairchild explained that the "the majority of claim terms [including this one] would be readily understood by one of ordinary skill in the art and should be accorded their plain and ordinary meaning." Exh. J.[5]  While testimony of Fairchild's engineers is extrinsic evidence entitled to little weight as to the construction of terms of PI's patents, PI had a full opportunity to question these individuals on this issue.

The plain and ordinary meaning that Dr. Wei ascribes to this element is neither new nor inconsistent with Fairchild's previous positions and there is no basis to strike Dr. Wei's testimony that the accused devices do not infringe.

     **b.**    <u>**"a feedback terminal coupled to disable the regulation circuit".**</u>

This element appears in claim 11 of the '851 Patent.  Once again, Fairchild believes that this term should be given its plain and ordinary meaning.  *See* Exh. J.  As set forth in Dr. Wei's report,

**REDACTED**

Exh. N

[Wei Rebuttal Noninfringement Report, ¶¶ 60-61].  The "regulation circuit" is expressly defined in claim 11 as comprising the claimed "switch", "oscillator", "frequency variation circuit", and "drive circuit".  D.I. 1, Exh. 1 ['851 Patent, claim 11].  Thus, the plain and ordinary meaning of

---

[5]    PI complains that Fairchild did not state, once again, that this term should be given its plain and ordinary meaning in Fairchild's interrogatory responses. Motion, p. 15.  PI's interrogatories, however, never sought Fairchild's claim construction.

the term is that the feedback terminal be capable of disabling the switch, oscillator, frequency variation circuit, and drive circuit.

PI claims that it proposed a construction for this "feedback" term that Fairchild did not dispute, so that "[i]n light of Fairchild's silence, there appeared to be no dispute, and the term was not even included in the Joint Submission to the Court." Motion, p. 17. PI's argument is, at best, disingenuous.

Pursuant to the Court's schedule, on July 1, 2009 the parties exchanged terms that they believed may require construction. While PI did indeed identify the "feedback" element as one such term, Fairchild did not (signaling that the term should be given its plain and ordinary meaning). *Compare* Exhs. J and K. Then, two business days later and before Fairchild could respond to PI's proposed construction with a specific construction of its own for this element, *PI voluntarily withdrew the "feedback" element from consideration:*

> As we discussed, it appears that we may be in agreement that the Court need not construe several of the terms initially listed in our exchanges, and *we [Power Integrations] suggest dropping proposed constructions for terms [including]... "a feedback terminal coupled to disable the regulation circuit"* to streamline the issues for the Court.

Exh. L (emphasis added). Since Fairchild believed that this term did not require construction and should be given it plain and ordinary meaning, Fairchild did not oppose PI's request to remove the "feedback" term from the parties' Joint Submission of claim terms. Fairchild made clear, however, that this did not mean that Fairchild agreed with PI's proposed construction, just that the parties agreed the term need not be construed at this time. *See* Exh. M.

The Court should not credit PI's attempt to spin its own decision to withdraw its construction of the "feedback" element into an argument that Fairchild "waived" its defense on this claim element. The only reasonable conclusion to be drawn from this exchange is that while PI initially believed that the "feedback" terminal required construction, PI changed its mind once Fairchild indicated that the term should be given its plain and ordinary meaning.

c.   **"the oscillator having a control input for varying the switching frequency".**

The term "oscillator having a control input for varying the switching frequency" appears in both claims 1 and 21 of the '876 Patent. The parties disputed its meaning and included it in the list of terms to be construed by the Court. In that Joint Submission, Fairchild clearly proposed its construction – "the oscillator has an input that receives a signal that causes the oscillator to change frequency" – as well as the intrinsic evidence supporting this construction. *See* D.I. 109, p. 10.

When the Court limited the number of terms it would construe, neither Fairchild nor PI selected this term so it was not construed. PI now argues that Fairchild should be precluded from arguing that the asserted claims are not infringed because the accused Fairchild devices do not include an "oscillator having a control input."

Because the accused devices do not include an oscillator with a control input that receives a signal causing the oscillator to change frequency, PI now argues for a broader construction of this claim term. This is, in essence, a claim construction dispute: whether or not the claimed control input receives a signal. While Fairchild would welcome the opportunity to address the appropriate construction should the Court now wish to construe this term, the Court should reject PI's effort to preclude Fairchild from presenting an infringement defense.

PI argues that the Court "implicitly" construed this term when it construed the separate "digital to analog converter" element of claim 1 of the '876 Patent. PI has absolutely no legal support for its novel "implicit" construction argument and Fairchild does not believe that the Court intended to construe a term upon which the parties were precluded from providing argument and evidence. PI's suggestion that the construction of "digital to analog converter" necessarily results in the construction of the "oscillator" element is directly contrary to the parties' agreement in their Joint Submission that both terms needed to be separately construed.

Finally, the Court's determination that "the term 'digital to analog converter'… as used in claim 1 of the '876 patent does not require construction" has no bearing on the construction of "the oscillator having a control input". The issue with respect to digital to analog converter

construction was whether the output was ***proportional*** to the input. *See* D.I 212, pp. 37-39. The

parties did not brief – and the Court did not consider –the oscillator or its control input.

> ### d. Claims 22 and 32 of the Yang '972 Patent require a "voltage control loop" "in the primary side".

During claim construction, the Court considered whether claims 1 and 15 of the Yang

'972 Patent, which do not expressly claim primary side control, should be construed to require

primary side control because, as Fairchild argued, that was the point of the '972 Patent. D.I. 212,

pp. 15-21. The Court determined that claims 1 and 15 "do not contain a primary side limitation."

*Id.*, p. 16. Based on the Court's claim construction Fairchild withdrew its assertion of claims 1

and 15 and they are not the subject of Dr. Wei's expert reports.

In its Motion to Strike, PI now improperly seeks to extend the Court's decision that

claims 1 and 15 are not limited to primary side control and read that limitation into claims 22 and

32, which were not construed by the Court. PI's argument is directly contrary to the Court's

decision. The Court expressly declined to limit claims 1 and 15 to primary side control precisely

because claims 22 and 32 require primary side control:

> As an initial matter, it is of ***crucial importance*** that the claims in dispute [1 and 15] do not contain any language expressly limiting their scope to primary-side control. Claims 1 and 15 do not contain primary-side limitation language, ***whereas other independent claims in the '972 patent do.*** *See* '972 patent, ***claims 22 and 32.***

D.I. 212, pp. 16-17 (emphasis added). As the Court recognized, "some of the independent

claims [claims 22 and 32] do have explicit primary-side limitations...." D.I. 212, p. 17 (original

emphasis). Indeed, claims 22 and 32 require "a controller to generate the switching signal in

response to [i] a first feedback signal associated with a voltage control loop and [ii] a second

feedback signal associated with a current control loop." D.I. 49, Exh. A ['972 Patent, claims 22;

*see also* claim 32.]. By their plain language, the claims require the voltage and current control

loops to be "in the primary-side of the transformer." *Id.*

PI was free to seek construction of terms from claims 22 and 32 but elected not to do so.

PI's failure to seek this construction cannot preclude Fairchild from arguing that PI infringes.[6]

---

[6]    PI argues that "by choosing to seek construction of only claims 1 and 15 (only to drop its

The Court also determined that the claimed second feedback signal is "distinct from the first feedback signal". D.I. 212, p. 43. Dr. Wei has expressly applied this construction in his Reports. *See e.g.* Exh. G [Wei Initial Report, ¶58 ("For purposes of this report, I used the claim construction adopted by the magistrate judge"); *see also* p. 12]. Thus, there is no basis to strike his opinions that PI's devices infringe under the Court's claims construction.

The same cannot be said for PI's position. PI argues that the fact that the two feedback *signals* are distinct means that the Court necessarily determined that "the *control loops* to which they are related" are also distinct. Motion, p. 27. This simply does not follow – distinct signals can travel over the same circuit elements just like distinct cars can drive down the same road. PI had every opportunity to argue that the entire control loops (and not just the signals) must be distinct but did not do so and the Court did not so construe any of the claims.

### 2.     Fairchild Does Not Seek To "Re-Construe" Claim Terms.

To be absolutely clear, neither Fairchild nor its experts "re-construe" any of the terms previously construed by the Court. Both Fairchild and Dr. Wei have, at all times, applied the Court's claim construction. Thus, PI's Motion to Strike should be denied.

#### a.     "the first reference signal is varied in response to the change of the second signal".

The term "the first reference signal is varied in response to the change of the second signal" appears in claim 17 of the Yang '595 Patent. The Court considered the meaning of this term and concluded that it did not require construction. D.I. 212, p. 44. PI now argues that the Court's determination that the phrase should be given its plain and ordinary meaning precludes Fairchild and its expert from disputing that the claim is invalid.

---

infringement allegations later), while simultaneously refusing to allow separate construction of the control loop limitations, Fairchild essentially hid this issue from the Court". Motion, p. 29. This is simply not the case. Fairchild sought construction of claims 1 and 15 because there was a dispositive dispute as to the meaning of those claims. Nothing prevented PI from likewise seeking construction of claims 22 and 32 if PI chose. The fact that Fairchild withdrew its own claims after the Court disagreed with Fairchild's proposed construction highlights Fairchild's good faith. Had Fairchild intended to "hide" from the Court, it would have sought construction of terms that would not be dispositive to its own claims.

Specifically, PI argues that because the Court determined that "the term 'the first reference signal is varied in response to the change of the second signal' as used in claim 17 of the '595 patent does not require construction" (D.I. 212, p. 44) necessarily means that one of ordinary skill in the art would understand that the entirety of claim 17 does not require cable compensation, notwithstanding the clear and undisputed teachings of the specification of the '595 patent.  PI, however, did not propose – and the Court did not consider – this argument during claim construction.  While Fairchild will submit additional argument and intrinsic evidence should the Court wish to reconsider its construction, the opinion of Fairchild and its expert are entirely consistent with the term's current construction.

In his Expert Reports, Dr. Wei expressly applied the Court's claim construction.  *See e.g.* Exh. G [Wei Initial Report, ¶58 ("For purposes of this report, I used the claim construction adopted by the magistrate judge"); *see also* p. 12 setting forth Court's construction].  Given the teachings of the '595 Patent, Dr. Wei opined that the plain and ordinary meaning of this term is that the first reference signal is varied to compensate for changes in the voltage drop across the cable.  Consistent with how one of ordinary skill in the art would understand this term, Dr. Wei opined that the accused PI devices infringed **REDACTED**

**REDACTED**          while the prior art does not invalidate the claim

**REDACTED**                                                     Exhs.

G [Wei Initial Report, ¶ 154] and P [Wei Rebuttal Invalidity Report, ¶ 169].

While PI can dispute whether the accused devices or prior art meet the plain and ordinary meaning of this claim term (a dispute of fact for the jury to decide), it cannot simply preclude Fairchild from presenting this evidence.  Thus, PI's Motion to Strike should be denied.

### b.    "a digital to analog converter".

The term "digital to analog converter" (or "DAC") appears in claim 1 of the '876 Patent.  During claim construction, Fairchild argued that the claimed DAC generates an output proportional (or essentially proportional) to the input, as PI had previously agreed.  D.I. 212, pp. 36-37.  PI, however, recanted its earlier agreed-to construction and "urge[d] the Court not to

construe this term." *Id.*, p. 36. The Court accepted PI's new argument that the DAC's output need not be proportional and, with that understanding, held that the term "does not require construction." *Id.* pp. 38 and 44.

Fairchild and Dr. Wei have applied the Court's claim construction. Dr. Wei's opinion is expressly based on the fact that the output of the claimed DAC need not be proportional to the input and that the term should be given its plain and ordinary meaning. *See e.g.* Exh. G [Wei Initial Report, ¶ 229. PI does not suggest that Dr. Wei is attempting to read in the "proportional" restriction that the Court rejected.

The dispute is, thus, whether the accused products incorporate a DAC, as that term would have been understood by one of ordinary skill. PI complains that the jury cannot be trusted with this issue. Motion, p. 21. Resolving such factual questions, however, is precisely the role of the jury. *See LG Display Co., v. AU Optronics Corp.*, 2010 WL 1780027 at *15 (D. Del. 2010). It is improper for PI to ask the Court to usurp the jury's prerogative and, essentially, grant summary judgment to PI though its Motion to Strike.[7]

### c. "means... for varying the switching frequency".

The Court determined that the "means... for varying the switching frequency" in claim 21 of the '876 Patent is a means-plus-function element. Fairchild and its expert will apply the Court's claim construction. Indeed, Dr. Wei quotes this construction in his rebuttal expert report when he disagrees with Mr. Blauschild's contention that Fairchild infringes this term. Exh. N [Wei Rebuttal Noninfringement Report, ¶¶ 31 and 32].

---

[7]    PI's entire argument rests on its assumption that the Court "implicitly recognized" that the DAC does not require an output signal. Motion, p. 21. This "implicit" argument concedes that the Court did not ***actually*** rule on this issue because whether or not the DAC requires an output signal was not the dispute. Indeed, to the extent that the Court could have been considered to rule on this issue, it rejected PI's argument when it declined to adopt PI's alternative proposed construction that a DAC is merely "a device that converts a digital input into an analog output." *See* D.I. 212, pp. 36-37. Since the Court adopted PI's proposed claim construction, PI is estopped from now seeking a different construction that would expand the term to include devices that neither receive nor generate signals. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315 (Fed. Cir. 2008). Were the Court to be inclined to readdress claim construction, Fairchild respectfully requests the opportunity to present intrinsic evidence showing that the claimed DAC outputs an analog signal.

As a means-plus-function element, the term is limited to the corresponding structures disclosed in the specification of the '876 Patent, and equivalents thereto.  35 U.S.C. § 112 ¶ 6. As the Court recognized, "Fairchild and Power agree that the structure corresponding to 'one or more current sources' is the digital to analog converter (DAC) 150."  D.I. 212, p. 40 (citations omitted).  While the Court determined that the claimed means was not limited to the specific embodiment of DAC 150 shown in the '876 patent, the Court "agree[d] with Fairchild that the DAC cannot be implemented though means lacking *current sources* (such as embodiments using only voltage sources or capacitors), because the claim expressly limits itself to means having one or more current sources."  D.I., 212, p. 41, n. 12.

The Court determined "that the structure corresponding to the counter means of claim 21 must contain at least four bits...."  D.I. 212, p. 43.  Since the counter is coupled to the claimed current sources as shown in Figure 1 of the '876 Patent, there are at least four current sources in the claimed "means... for varying the switching frequency".  D.I. 1, Exh. B ['876 Patent].

Dr. Wei applied the Court's construction and, based on that construction, opined that the accused devices do not infringe because they do not include DACs that use multiple current sources (indeed, any current sources).  Dr. Wei's understanding of this claim term is consistent with not only the Court's claim construction but also *PI's own expert,* who opined that the accused Fairchild devices infringe because      **REDACTED**

     **REDACTED**       Exh. O [Blauschild Infringement Report, p. 29].  While Mr. Blauschild is mistaken about the operation of the accused products (which do not infringe), even he recognizes that the Court's construction requires multiple current sources.

Thus, contrary to PI's motion, Dr. Wei has not offered a "new construction" or deviated from the Court's claim construction.  Dr. Wei, Mr. Blauschild, and the Court all recognize that the claimed "means... for varying the switching frequency" require multiple *"current sources."* D.I. 212, p. 41, n. 12 (original emphasis).  It is PI's attorneys who, contrary to their own expert

and previously proposed construction, now seek to broaden the claim to encompass Fairchild's non-infringing devices.[8] PI's Motion to Strike should be denied.

**III.   CONCLUSION.**

For the foregoing reasons, Fairchild respectfully requests that the Court deny PI's Motion to Strike.  Were the Court inclined to consider additional claim construction arguments as PI proposes, Fairchild respectfully requests notice and the opportunity to submit intrinsic evidence as to what those construction should be.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Caroline Hong (I.D. #5189)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
chong@ashby-geddes.com

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  May 13, 2010

*Attorneys for Defendants*
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., FAIRCHILD
SEMICONDUCTOR CORPORATION, and
SYSTEM GENERAL CORPORATION

---

[8]    PI's attorneys also argue that "because the Court's construction includes the limitation that the corresponding structure for the claimed means include a digital-to-analog converter", any possible digital to analog converter would infringe.  Motion, pp. 22-23.  As the Court noted, however, "the scope of a claim in means-plus-function format is generally more narrow than for claims that are not in this format."  D.I. 212, p. 39-40.  Thus, the means-plus-function element does not cover all possible digital to analog converters but, instead, only those disclosed in the specification of the '876 Patent and equivalents thereto.

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# EXHIBIT D

# REDACTED

# EXHIBIT E

# REDACTED

# EXHIBIT F

# REDACTED

# EXHIBIT G

# REDACTED

# EXHIBIT H

# REDACTED

# EXHIBIT I

# REDACTED

# EXHIBIT J

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Howard G. Pollack
650 839-5007

Email
pollack@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

**VIA E-MAIL & U.S. MAIL**
**HIGHLY CONFIDENTIAL**

April 9, 2010

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:  *Power Integrations v. Fairchild II*
     USDC-D. Del. - C.A. No. 08-309 JJF-LPS

Dear Bas:

I am writing to follow up regarding an issue that came up during Mr. Blauschild's deposition, specifically your line of questions regarding Fairchild's infringement of PI's '851 patent and the identification of the various Fairchild/SG products that utilize the PULSE signal alone or PULSE and the output of comparator I84 to implement maximum duty cycle. This is also discussed at pages 44-45 of Mr. Blauschild's opening expert report. As explained during Mr. Blauschild's deposition, the identification of the parts that implement each design can easily be derived from the detailed infringement charts in Mr. Blauschild's opening expert report and the information included in his appendix cross reference. However, in light of your questioning, we wanted to follow up with you to ensure that there is no perceived ambiguity on this issue. The attached document list, prepared by Mr. Blauschild, sets out which of the accused parts fall into each category.

Please let me know whether you have any additional questions regarding this issue.

Sincerely,

Howard G. Pollack

Encl.

50707913.doc

Identification of Accused SG parts implementation of $DC_{MAX}$ signal with regard to infringement of the asserted claims of Power Integrations' '851 patent

| $DC_{MAX}$ with PULSE signal or output of comparator "I84" (SG5841J representative) | $DC_{MAX}$ with "PULSE" signal only (SG6842J representative) |
|---|---|
| SG5841J | AS1000 |
| FAN6751 | FAN100 |
| FSBH0170 | FAN102 |
| FSBH0270 | FAN400A |
| FSBH0370 | FAN400C |
| FSBH0F70 | FAN6747 |
| LTA703S | FSEZ1016 |
| LTA704S | FSEZ1016A |
| LTA705S | FSEZ1116 |
| LTA805 | FSEZ1216 |
| LTA809FA | FSEZ1216B |
| LTA810FA | FSEZ1217 |
| LTA811FA | FSEZ2007 |
| PO168MY | FSEZ2016 |
| PO268MY | FSEZ2037 |
| PO368MY | LTA504SG |
| SG5842/A/J/JA | LTA504SJ |
| SG6741 | SG5851/A |
| SG6741A | SG6842J |
| SG6742 | SG6846 |
| SG6742A | SG6846A/B |
| SG6742HL/HR/ML/MR | SG6846C/G |
| SG6742AMR_ML | SG68501 |
| FAN6752 | SG68502/A/B |
| FAN6753 | SG6859 |
|  | SG6859A |
|  | SG6860 |
|  | SGP100 |
|  | SGP400 |
|  | SGP101 |

* Fairchild has not produced schematics for the DAP024, FAN6754, FAN6861, FAN6862, or FAN6862R/L, but the datasheets indicate that at least the PULSE signal from the oscillator is present in these parts.

Dated: _APRIL 9, 2010_

_Robt Blauschild_
Robert Blauschild


ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025-1015

tel +1-650-614-7400
fax +1-650-614-7401
WWW.ORRICK.COM

July 1, 2009

*VIA EMAIL*

Michael R. Headley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

Bas de Blank
(650) 614-7343
bdeblank@orrick.com

       Re:   <u>Power Integrations v. Fairchild Semiconductor et al.</u>

Dear Michael:

In its April 20, 2009 Second Supplemental Response to Interrogatory No. 1, Power Integrations asserted claims 1 and 21 of the '876 Patent, claims 1, 4, 11, and 16-18 of the '851 Patent, and claims 6-9 of the '270 Patent. Notwithstanding this identification, Power Integrations has voluntarily cancelled claims 1 and 11 and voluntarily amended claims 16 and 17 of the '851 Patent. Power Integrations has likewise voluntarily amended claim 1 of the '876 Patent. Despite this, Power Integrations has demanded that the Court issue an advisory opinion as to the construction of the terms of these cancelled and amended claims.

Power Integrations is on notice that its actions demonstrate its bad faith. Power Integrations cannot have the requisite good faith to allege infringement of a valid claim given Power Integrations' voluntary decision to cancel and amend the claims. Fairchild will seek all appropriate sanctions – including attorneys' fees – at the appropriate time.

Notwithstanding Fairchild's objections to Power Integrations' misconduct, Fairchild will continue to abide by the Court's January 29, 2009 Scheduling Order. Pursuant to ¶ 13, Fairchild hereby lists those claim term(s)/phrase(s) that need construction and Fairchild's proposed claim construction. We wish to be perfectly clear, however, that Fairchild does not believe any construction of a cancelled claim is appropriate and that construction of an amended claim could only potentially be appropriate after the reexamination certificate issues.

Fairchild believes that the majority of claim terms would be readily understood by one of ordinary skill in the art and should be accorded their plain and ordinary meaning. Fairchild reserves its right to supplement or amend this identification as necessary, however, should additional discovery or information provided by Power Integrations indicate that additional terms are in dispute or for other reasons.

Sincerely,

Bas de Blank

cc:    William J. Marsden, Jr.
       Howard G. Pollack

Encl.

OHS West:260686520.2

| Term | Fairchild's Claim Construction Positions |
|---|---|
| frequency jittering | This term appears in claim 1 of the '876 Patent, which Power Integrations has voluntarily amended during reexamination. The Court should not offer an advisory opinion as to the meaning of the amended claim and should not construe the amended claim unless and until the reexamination certificate issues.<br><br>Notwithstanding Power Integrations' voluntary amendment, should the Court choose to construe original claim 1 of the '876 Patent, Fairchild proposes the following construction:<br><br>No construction is necessary or appropriate since this term appears only in the preamble of original claim 1 and the preamble is not a limitation. |
| Coupled | This term appears in claim 11 of the '851 Patent, which Power Integrations has voluntarily cancelled and claims 17 of the '851 Patent and claim 1 of the '876 Patent, which Power Integrations has voluntarily amended during reexamination. The Court should not offer an advisory opinion as to the meaning of the cancelled and amended claim and should not construe the amended claim unless and until the reexamination certificate issues.<br><br>Notwithstanding Power Integrations' voluntary cancellation and amendments, should the Court choose to construe the original claims, Fairchild proposes the following construction:<br><br>Two circuits are coupled when they are connected directly or indirectly (*e.g.* through a ROM) such that voltage, current, or control signals pass from one to the other. |
| A digital to analog converter coupled to the control input for varying the switching frequency | This term appears in claim 1 of the '876 Patent, which Power Integrations has voluntarily amended during reexamination. The Court should not offer an advisory opinion as to the meaning of the amended claim and should not construe the amended claim unless and until the reexamination certificate issues.<br><br>Notwithstanding Power Integrations' voluntary amendment, should the Court choose to construe original claim 1 of the '876 Patent, Fairchild proposes the following construction:<br><br>A circuit that receives one or more digital signals and provides to the control input of the oscillator an analog signal that is proportional to the digital signal and that causes the frequency of the oscillator to vary. |
| The oscillator having a control input for varying the switching frequency | This term appears in claim 1 of the '876 Patent, which Power Integrations has voluntarily amended during reexamination. The Court should not offer an advisory opinion as to the meaning of the amended claim and should not construe the amended claim unless and until the reexamination certificate issues. |

| Term | Fairchild's Claim Construction Positions |
|---|---|
| | This term also appears in claim 21 of the '876 Patent.  Fairchild proposes the following construction of the term as used in that claim:<br><br>The oscillator has an input that receives a signal that causes the oscillator to change frequency. |
| Means coupled to the control input for varying the switching frequency, including: one or more current sources coupled to the control input; and a counter coupled to the output of the oscillator and to the one or more current sources. | This term appears in claim 21 of the '876 Patent.  Fairchild proposes the following construction of the term as used in that claim:<br><br>This means-plus-function element should be construed to mean a structure that provides the functionality of varying the switching frequency.  This means-plus-function element is limited to the structure disclosed in the '876 patent, and equivalents thereof.  The only such structures disclosed are four binary weighted current sources and a seven bit counter shown in Figure 1 and the corresponding portions of the specification describing this structure and equivalents thereof. |
| frequency variation signal | This term appears in claims 1 and 11 of the '851 Patent, both of which Power Integrations has voluntarily cancelled.  This term also appears in claims 16 of the '851 Patent, which Power Integrations has voluntarily amended during reexamination.  The Court should not offer an advisory opinion as to the meaning of the cancelled and amended claim and should not construe the amended claim unless and until the reexamination certificate issues.<br><br>Notwithstanding Power Integrations' voluntary cancellations and amendments, should the Court choose to construe the original claims, Fairchild proposes the following construction:<br><br>A signal that causes the frequency of the oscillation signal to vary. |
| said oscillation signal varying within said frequency range | This term appears in claims 1 and 11 of the '851 Patent, both of which Power Integrations has voluntarily cancelled during reexamination.  The Court should not offer an advisory opinion as to the meaning of the cancelled claims and should not construe the amended claim unless and until the reexamination certificate issues.<br><br>Notwithstanding Power Integrations' voluntary cancellations, should the Court choose to construe the original claims, Fairchild proposes the following construction:<br><br>An oscillation signal that changes between two or more distinct frequencies. |
| soft start circuit | This term appears in claim 4 of the '851 Patent.  Fairchild proposes the following construction:<br><br>A circuit that generates a soft start signal. |
| approximately constant | This term appears in claim 6 of the '270 Patent.  This term is indefinite |

| Term | Fairchild's Claim Construction Positions |
|---|---|
| output current | and not amendable to construction as one of ordinary skill in the art would not understand how "approximately" constant the output current must be to satisfy this claim element. |
| oscillator to generate a sawtooth waveform | This term appears in claim 7 of the '270 Patent. Fairchild proposes the following construction:<br><br>An oscillating circuit that generates a repeating ramp signal. |
| a controller to generate the switching signal and to control the switching signal in response to a first feedback signal associated with a voltage control loop and a second feedback signal associated with a current control loop; | This term appears in claim 1 of the '972 Patent. Fairchild proposes the following construction:<br><br>Control circuitry that generates a switching signal and controls the switching signal using feedback signals associated with voltage and current control loops to control the output voltage and the output current at the primary-side without the need of an optical-coupler or a secondary-side regulator. |
| the controller generates the first feedback signal by sampling a voltage from the auxiliary winding of the transformer and a discharge time of the transformer. | This term appears in claim 6 of the '972 Patent. Fairchild proposes the following construction:<br><br>The controller generates the first feedback signal by sampling a voltage from the auxiliary winding of the transformer when the transformer is discharging. |
| the controller generates the second feedback signal by sampling of the sensed current from the sense circuit and the discharge time of the transformer. | This term appears in claim 8 of the '972 Patent. Fairchild proposes the following construction:<br><br>The controller generates the second feedback signal by sampling the sensed current from the sense circuit when the transformer is discharging. |
| a controller to generate the switching signal and to control the switching signal in response to a first feedback signal by sampling a voltage signal and a discharge-time associated with | This term appears in claim 11 of the '972 Patent. Fairchild proposes the following construction:<br><br>Control circuitry that generates a switching signal and controls the switching signal using a feedback signal generated by sampling a voltage signal when the switching signal is off and the transformer is discharging to control the output voltage at the primary-side without the need of an optical-coupler or a secondary-side regulator. |

| Term | Fairchild's Claim Construction Positions |
|---|---|
| the transformer during an off time of the switching signal | |
| the controller generates the switching signal in response to a first feedback signal associated with a voltage control loop and a second feedback signal associated with a current control loop. | This term appears in claim 14 of the '972 Patent.  Fairchild proposes the following construction:<br><br>Control circuitry that generates a switching signal using feedback signals associated with voltage and current control loops to control the output voltage and the output current at the primary-side without the need of an optical-coupler or a secondary-side regulator. |
| controlling a switching signal to regulate the connection of the electrical power to output terminals in response to a first feedback signal associated with a voltage control loop and a second feedback signal associated with a current control loop; | This term appears in claim 15 of the '972 Patent.  Fairchild proposes the following construction:<br><br>Controlling a switching signal using feedback signals associated with voltage and current control loops to control the output voltage and the output current at the primary-side without the need of an optical-coupler or a secondary-side regulator. |
| generating the first feedback signal by sampling a voltage from an auxiliary winding of the transformer and a discharge time of the transformer. | This term appears in claim 18 of the '972 Patent.  Fairchild proposes the following construction:<br><br>generating the first feedback signal by sampling a voltage from an auxiliary winding of the transformer when the transformer is discharging. |
| generating the second feedback signal by sampling of sensed current and the discharge time of the transformer. | This term appears in claim 20 of the '972 Patent.  Fairchild proposes the following construction:<br><br>generating the second feedback signal by sampling of sensed current when the transformer is discharging. |
| a controller to generate the switching signal in response to a first feedback signal associated with a | This term appears in claim 22 of the '972 Patent.  Fairchild proposes the following construction:<br><br>Control circuitry to generate the switching signal using feedback signals associated with voltage and current control loops in the primary-side of the transformer. |

| Term | Fairchild's Claim Construction Positions |
|---|---|
| voltage control loop and a second feedback signal associated with a current control loop in the primary-side of the transformer; | |
| a controller coupled to the transformer, the controller to provide a switching signal to the switch for regulating output power for the power converter, and to control the switching signal based on a first feedback signal associated with a first control loop and a second feedback signal associated with a second control loop in the primary-side of the power converter; | This term appears in claim 32 of the '972 Patent. Fairchild proposes the following construction:<br><br>Control circuitry coupled to the transformer to provide a switching signal for regulating output power for the power converter and to control the switching signal based on feedback signals associated with voltage and current control loops in the primary-side of the transformer. |
| the controller generates the first feedback signal and a discharge-time signal by sampling of a voltage associated with the transformer and a discharge-time of the transformer during an off time the switching signal. | This term appears in claim 35 of the '972 Patent. Fairchild proposes the following construction:<br><br>The controller generates the first feedback signal and a discharge-time signal by sampling a voltage associated with both the transformer and a discharge-time of the transformer, when the switching signal is off. |
| a controller, coupled to said transformer to generate a first feedback signal and a discharge-time signal by multi-sampling a voltage signal and a discharge time of said transformer during an off-time of said | This term appears in claim 1 of the '780 Patent. Fairchild proposes the following construction:<br><br>Control circuitry coupled to the transformer to generate a first feedback signal and a discharge-time signal by multi-sampling a voltage signal when the switching signal is off and the transformer is discharging. |

| Term | Fairchild's Claim Construction Positions |
| --- | --- |
| switching signal | |
| a controller coupled to said transformer to generate a first feedback signal by multi-sampling a voltage signal and a discharge time of said transformer during an off-time of said switching signal | This term appears in claim 13 of the '780 Patent. Fairchild proposes the following construction:<br><br>Control circuitry coupled to said transformer to generate a first feedback signal by multi-sampling a voltage signal when the switching signal is off and the transformer is discharging. |

# EXHIBIT K

**de Blank, Bas**

| | |
|---|---|
| **From:** | Michael Headley [Headley@fr.com] |
| **Sent:** | Wednesday, July 01, 2009 3:51 PM |
| **To:** | de Blank, Bas |
| **Cc:** | VanderZanden, Brian |
| **Subject:** | Re: PI/FCS II: PI proposed terms & constructions |
| **Attachments:** | PI Patents.pdf; SG Patents.pdf; PI Patents.doc; SG Patents.doc |

Bas,

Per our call, attached please find PDFs with our proposed claim terms and constructions, along with Word versions of the documents for ease of use.

Please let me know if you have any trouble with the files.

Thanks.

Michael

Michael R. Headley
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063-1526
(650) 839-5139 (direct)
(650) 839-5071 (fax)
*******************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*******************************************************

<<PI Patents.pdf>> <<SG Patents.pdf>> <<PI Patents.doc>> <<SG Patents.doc>>

*******************************************************
This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized use or disclosure is
prohibited. If you are not the intended recipient, please contact the sender by reply
email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication
(including any attachments) is not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter
addressed herein.(FR08-i203d)
*******************************************************

**PI/Fairchild II – '270, '876, and '851 patents**
**PI proposed constructions**

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 1 | "sense a voltage developed by a switch" | '270:6 | "sense a voltage which is proportional to the current flowing through the switch" |
| 2 | "on time" | '270:6 | "the portion of the switching cycle during which current flows through the switch" |
| 3 | "current limit threshold" | '270:6 | "the threshold at which a current limit circuit limits the switch current" |
| 4 | "output threshold voltage" | '270:6 | "an approximately constant output voltage at which the output is regulated" |
| 5 | "variable current limit threshold"<br><br>"to increase during the on time of the switch"<br><br>"to vary between a first level and a second level during a time when the switch is to be on" | '270:6<br>'270:7 | "a current limit threshold that varies as recited in the claim"<br><br>In the claim, the particular variation is recited as "to increase during the on time of the switch" and "to vary between a first level and a second level during a time when the switch is to be on", and these phrases should be construed in accordance with their plain, English-language meaning. |
| 6 | "oscillator" | '270:7 | The plain meaning of oscillator is "a device that generates at least one oscillating signal of a desired frequency." |
| 7 | "frequency jittering" | '876:1<br>'876:21 | "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference" [*PI-Fairchild I* Claim Construction Order, DI 232] |
| 8 | "coupled" | '876:1<br>'876:21 | "Two circuits are coupled when they are connected such that voltage, current or control signals pass from one to another." [*PI-Fairchild I* Claim Construction Order, DI 232] |

**PI/Fairchild II – '270, '876, and '851 patents**
**PI proposed constructions**

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 9 | "oscillator for generating a signal having a switching frequency, the oscillator having a control input for varying the switching frequency" | '876:1 '876:21 | "a device that generates at least one oscillating signal having a switching frequency, where the switching frequency of the generated signal can be varied using a control input of the oscillator" |
| 10 | "digital to analog converter" | '876:1 | Plain meaning – requires no construction.<br><br>If this term is construed, it should be construed as "a device that converts a digital input into an analog output." |
| 11 | "means coupled to the control input for varying the switching frequency…" | '876:21 | The use of the phrase "means" indicates that this is a means-plus-function claim limitation.<br><br>The function is "varying the switching frequency of the oscillator."<br><br>The corresponding structure described in the '876 patent is a DAC with one or more current sources coupled to the oscillator control input, or other equivalent structures. [*See* Fig. 1; Fig. 6; 2:56-3:22; 3:30-37; 4:62-5:55; and 8:29-33] |
| 12 | "current source" | '876:21 | Plain meaning is "a device or circuit that provides or sinks a current of a defined value." |
| 13 | "frequency variation signal" | '851:1 '851:11 | "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal within a predetermined frequency range" [*PI-Fairchild I* Claim Construction Order, DI 232] |
| 14 | "frequency variation circuit" | '851:1 '851:11 | "a structure that provides the frequency variation signal" [*PI-Fairchild I* Claim Construction Order, DI 232] |

2

PI/Fairchild II – '270, '876, and '851 patents
PI proposed constructions

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 15 | "oscillator" | '851:1 '851:11 | The plain meaning of oscillator is "a device that generates at least one oscillating signal, e.g., the "oscillation signal," of a desired frequency." |
| 16 | "maximum duty cycle signal" | '851:1 '851:11 | The plain meaning of "maximum duty cycle signal" is a signal that limits the maximum "on-time" of a switch, thereby limiting the maximum duty cycle. |
| 17 | "soft start circuit" | '851:4 | The term "soft start circuit" is a means-plus function element. The function of the soft start circuit is construed in accordance with the plain meaning of the claim setting forth such soft start circuit functions.<br><br>The corresponding structures related to the 'soft start circuit' are shown in Figures 3, 6, and 9 of the '851 patent and described in the specification of the '851 patent at 5:66-6:9; 6:25-7:8; 11:31-41; 11:64-12:2 (which correspond to Figures 3, 6, and 9 of the '366 patent and the specification of the '366 patent at 6:7-17, 6:35-7:18; 11:40-50 and 12:5-10). [*PI-Fairchild I* Claim Construction Order, DI 232] |
| 18 | "a feedback terminal coupled to disable the regulation circuit" | '851:11 | The feedback signal received at the feedback terminal is used either to terminate a switching cycle, or to inhibit a switching cycle in order to regulate the output. |
| 19 | "current limit circuit" | '851:18 | Plain meaning – requires no construction.<br><br>If this term is construed, it should be construed as "a circuit that provides a signal to discontinue the drive signal when the current received at the first terminal is above a threshold level." |

3

**PROPOSED TERMS AND CONSTRUCTIONS FOR SG PATENTS**
**7,259,972; 7,061,780; and 7,352,595**

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 1 | "multi-sampling a voltage signal…during an off-time of said switching signal" | '780:1 '780:13 | "Sampling a voltage signal two or more times during the off-time of a single switching cycle." |
| 2 | "multi sampling…a discharge time…during an off-time of said switching signal" | '780:1 '780:13 | The claim lacks written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of multi-sampling a discharge time.<br><br>To the extent it can be construed, this limitation should be construed as "sampling a discharge time of the transformer two or more times during the off-time of a single switching cycle." |
| 3 | "generate a first feedback signal and a discharge-time signal by multi-sampling a voltage signal and a discharge-time of said transformer during an off-time of said switching signal" | '780:1 | The claim lacks written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of multi-sampling a discharge time.<br><br>To the extent it can be construed, this limitation should be construed as requiring that "the first feedback signal and the discharge-time signal must be generated by sampling both a voltage signal and a discharge time, each two or more times during the off-time of a single switching cycle." |
| 4 | "generate a first feedback signal by multi-sampling a voltage signal and a discharge time of said transformer during an off-time of said switching signal" | '780:13 | The claim lacks written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of generating a feedback signal by sampling both a voltage and a discharge time, or of sampling a discharge time at all.<br><br>To the extent it can be construed, this limitation should be construed as requiring that "the first feedback signal must be generated by sampling both a voltage signal and a discharge time, each two or more times during the off-time of a single switching cycle." *See also* "first waveform detector" below. |

1

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 5 | "generates the first feedback signal by sampling a voltage … and a discharge time of the transformer" | '972:6 '972:18 | The claim lacks written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of generating a feedback signal by sampling both a discharge time and a voltage, or of sampling a discharge time at all.<br><br>To the extent it can be construed, this limitation should be construed as requiring that "the first feedback signal must be generated by sampling both a voltage signal and a discharge time of the transformer." |
| 6 | "generates the first feedback signal and a discharge-time signal by sampling of a voltage associated with the transformer and a discharge-time of the transformer" | '972:35 | The claim lacks written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of generating a feedback signal by sampling both a discharge time and a voltage, or of sampling a discharge time at all.<br><br>To the extent it can be construed, this limitation should be construed as requiring that "the first feedback signal and the discharge-time signal must be generated by sampling both a voltage signal and a discharge time of the transformer." |
| 7 | "control the switching signal in response to a first feedback signal by sampling a voltage signal and a discharge-time associated with the transformer" | '972:11 | The claim lacks written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of controlling the switching signal in response to a first feedback signal by sampling both a discharge time and a voltage, or of sampling a discharge time at all.<br><br>To the extent it can be construed, this limitation should be construed as requiring that "the switching must be controlled by sampling both a voltage signal and a discharge time of the transformer." |
| 8 | "discharge time signal" | '780:1 '780:13 '972:24 '972:35 | "A digital signal that indicates by its state when the transformer is discharging during each switching cycle." |

2

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 9 | "first waveform detector" | '780:13 | "First waveform detector" should be construed as a means plus function limitation and be interpreted to perform the function of generating the first feedback signal as recited in the claim limitation and to cover the corresponding disclosure in the specification of the "voltage-waveform detector 100" and equivalent structures. [*See* '780 patent at Figs. 3 and 4; 4:43-46; 6:47-8:67] |
| 10 | "first waveform detector to generate a first feedback signal and a discharge-time signal of the transformer" | '972:24 | "First waveform detector" should be construed as a means plus function limitation and be interpreted to perform the function of generating the first feedback signal and the discharge-time signal as recited in the claim limitation and to cover the corresponding disclosure in the specification of the "voltage-waveform detector" and equivalent structures. [*See* '972 patent at Figs. 3 and 4, 5:1-6; 7:23-10:3] |
| 11 | "generate a second feedback signal in response to said discharge-time signal and a current signal of said transformer" | '780:1 | "Generate a second feedback signal by integrating a current signal of the transformer over the discharge-time." |
| 12 | "generates the second feedback signal by sampling of the sensed current… and the discharge time" | '972:8 '972:20 | The claim lack written description, is indefinite, and/or is not enabled because there is no disclosure in the specification of sampling a discharge time or generating a second feedback signal by sampling both a discharge time and a current.<br><br>To the extent it can be construed, this limitation should be construed as requiring that "the second feedback signal must be generated by sampling both the sensed current signal and a discharge time of the transformer." |
| 13 | "generates the second feedback signal in response to the discharge-time signal and sensed current" | '972:36 | "Generate a second feedback signal by integrating the sensed current over the discharge-time." |

3

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 14 | "second waveform detector" | '972:24 | "Second waveform detector should be construed as a means plus function limitation and be interpreted to perform the function of generating a current waveform signal and to cover the corresponding disclosure in the specification of "current-waveform detector" and equivalent structures. [*See* '972 patent at Figs. 3 and 6, 5:17-34, 11:22-38] |
| 15 | "a sense device, which is coupled to said transformer for sensing current or/and voltage of said transformer" | '780:1 | There is no disclosure in the written description of a single "sense device" that can sense current and voltage and so a construction that is so broad as to encompass such a device would be unsupported. Further, construing the claim to encompass a device for sensing current **or** voltage would be indefinite in view of the disclosure of the specification and the remaining recited elements of the claim. [*See* Fig. 1 and 3:10-11, 4:10-24 and 4:26-31]<br><br>To the extent this claim element can be construed, it should be construed as "a device coupled to the transformer and capable of sensing current of the transformer." |
| 16 | "switching signal having a minimum on-time once said switching signal is enabled, which further ensures a minimum value of said discharge time for multi-sampling said voltage signal" | '780:12 | "The switching signal having a minimum duration for the on-time to allow the transformer to be sufficiently charged such that the discharge time in each cycle is long enough to allow for multi-sampling of the voltage signal." |
| 17 | "the switching signal has a minimum on-time once the switching signal is enabled in order to ensure a minimum value of the discharge- time for sampling the voltage signal" | '972:33 | The term is indefinite because of a lack of antecedent basis for "the discharge time."<br><br>To the extent it can be understood, it should be construed as "the switching signal having a minimum duration for the on-time to allow the transformer to be sufficiently charged such that the discharge time in each cycle is long enough to allow for sampling of the voltage signal." |

4

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 18 | "the switching signal has a minimum on-time when the switching signal is enabled, which further ensuring a minimum value of the discharge time for multi-sampling the reflected signal" | '595:21 '595:26 | This claim is indefinite because of a lack of antecedent basis for "the discharge time for multi-sampling."<br><br>To the extent it can be understood, it should be construed as "the switching signal having a minimum duration for the on-time to allow the transformer to be sufficiently charged such that the discharge time in each cycle is long enough to allow for multi-sampling of the reflected signal." |
| 19 | "a first feedback signal associated with a voltage control loop" | '972:1 '972:14 '972:15 '972:22 | "A feedback signal derived by measuring a signal representative of an output voltage of the power converter." |
| 20 | "a second feedback signal associated with a current control loop"[in a primary-side of the transformer]" | '972:1 '972:14 '972:15 '972:22 | "A feedback signal, distinct from the first feedback signal, derived by measuring a signal representative of a current in the switch."<br><br>"in a primary side of the transformer" in claim 22 means "the switch is on the input side of the power converter." |
| 21 | "a first feedback signal associated with a first feedback loop" | '972:32 | "A feedback signal derived by measuring a signal representative of an output of the power converter." |
| 22 | "second feedback signal associated with a second control loop in the primary-side of the power converter" | '972:32 | "A feedback signal, distinct from the first feedback signal, derived from measuring a different signal which is both representative of the output of the power converter and generated on the primary-side of the converter." |
| 23 | "a pattern generator to generate a digital pattern" | '972:1 '972:11 '972:22 '972:32 | "A circuit that generates a sequence of digital words." |
| 24 | "frequency-hopping" | '972:1 '972:11 '972:15 '972:22 '972:32 | "Varying the switching frequency of a power converter in discrete steps in order to reduce EMI." |

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 25 | "allow the switching frequency to hop from frequency to frequency according to a digital pattern" | '972:12 | "Varying the switching frequency of a power converter in discrete steps in response to a sequence of digital words in order to reduce EMI." |
| 26 | "error amplifier" | '972:24 | "A circuit that amplifies the difference between an input signal and a reference signal." |
| 27 | "integrator" | '972:24 | "A circuit that produces a signal by summing another signal over a period of time." |
| 28 | "programmable capacitor" | '972:26 | "A capacitance comprised of two or more switchable capacitors connected in parallel." |
| 29 | "The power converter of claim 3 wherein the current control loop controls an average value of a secondary-side current in the power converter" | '972:4 | "The same current control loop controls both the peak current in the transformer and an average value of an output current in the power converter." |
| 30 | "a second circuit, producing a second signal in response to a current signal" | '595:16 | "A second circuit producing a second signal by integrating a current signal with a timing signal that represents the discharge time of the transformer." |
| 31 | "a second circuit, producing a second signal by measuring a current signal, wherein the current signal is correlated to the output current of the switching regulator" | '595:22 '595:27 | "A second circuit producing a second signal by integrating a current signal with a timing signal that represents the discharge time of the transformer." |
| 32 | "second feedback circuit, generating a second feedback signal in response to the second signal" | '595:16 | The plain meaning of "generating … in response to" requires that "the second feedback signal be distinct from the second signal and be determined from the second signal." |
| 33 | "first reference signal is varied in response to the change of the second signal" | '595:17 | "The analog value of the first reference signal is increased in response to the increase of the analog value of the second signal." |
| 34 | "the reference signal is varied in response to the second signal" | '595:22 | "The analog value of the reference signal is increased in response to the increase of the analog value of the second signal." |
| 35 | "the first signal is varied in response to the second signal" | '595:27 | "The analog value of the first signal is increased in response to the increase of the analog value of the second signal." |

| # | Term | Claims | Proposed Construction |
|---|------|--------|----------------------|
| 36 | "sense terminal, for connecting the second circuit to a current-sense device for receiving the current signal" | '595:18 | "A sense pin of a power control circuit, for connecting to an external current-sense device." |
| 37 | "output terminal, for generating the switching signal for switching the transformer via the switching device" | '595:18 | "An output pin of a power control circuit, for connecting to an external switching device." |
| 38 | "a first-compensation terminal, for the frequency compensation of the first feedback circuit" | '595:18 | "A first-compensation pin of a power control circuit, for connecting to an external frequency compensation circuit for the first feedback circuit." |
| 39 | "a second-compensation terminal, for the frequency compensation of the second feedback circuit" | '595:18 | "A second-compensation pin of a power control circuit, for connecting to an external frequency compensation circuit for the second feedback circuit." |
| 40 | "frequency compensation" | '595:18 '972:23 | "Compensating for excessive phase shift in a feedback loop by reducing the loop gain of a circuit at high frequencies to prevent the excessive phase shift from causing oscillation." |
| 41 | "capacitor, coupled to the charge current for producing the second signal in response to the timing signal" | '595:25 | "capacitor" should be construed to have its plain meaning.<br><br>"the timing signal" lacks antecedent basis and renders the claim indefinite but, if construed, should mean "a signal representing the discharge time of the transformer." |

# EXHIBIT L

**From:** Michael Headley [mailto:Headley@fr.com]
**Sent:** Monday, July 06, 2009 4:54 PM
**To:** de Blank, Bas
**Subject:** Re: PI/FCS II - claim construction

Bas,

I understand from our discussion today that Fairchild is not in a position to provide any proposed
constructions for the majority of the terms in the asserted SG patents, but that you nevertheless intend to
reserve your right to propose constructions at a later date.  Proposed constructions were due last week,
though, and Fairchild's delay is prejudicing our ability to meet and confer to address the issues in
advance of the deadline to file the joint claim construction proposals.  Accordingly, we reiterate our
request that you provide proposed constructions as soon as possible and reserve the right to respond
once you have done so.

Per our discussion, I have attached a joint chart on the SG patents reflecting PI's efforts to reduce the
number of terms by grouping the issues and agreeing to Fairchild's proposed form for some of the term
phrases you believed should be construed where we were close to each other on the initial exchange of
terms.

I have also attached an updated chart reflecting the terms to be construed for the asserted PI patents,
including a proposal to clarify the issue re term 6a ("sawtooth waveform" appears to be the real issue),
the update we discussed for our recitation of the scope of term 11, and a proposed revision to what is
being construed in term 14a per our discussion.  As we also discussed, it appears that we may be in
agreement that the Court need not construe several of the terms initially listed in our exchanges, and we
suggest dropping proposed constructions for terms 1 ("on time"). 2 ("current threshold limit"), 12 ("current
source"), 16 ("maximum duty cycle signal"), and 18 ("a feedback terminal coupled to disable the
regulation circuit") to streamline the issues for the Court.  Please let us know if you are in agreement or if
you have any questions with respect to these claim terms so that we can revise the joint chart
accordingly.

I look forward to your response.

Sincerely,
Michael

<<SG Patents Terms-Constructions combined.pdf>> <<SG Patents Terms-Constructions
combined.doc>> <<PI Patents Terms-Constructions combined2.doc>>

tomorrow afternoon to at least agree on the list of the terms in the SG patents for construction.

In any event, I will call you in your office at 1:30 per our discussion last week.

Thanks.

Michael

Michael R. Headley
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063-1526
(650) 839-5139 (direct)
(650) 839-5071 (fax)
*******************************************************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
*******************************************************************************************************

<< File: PI Patents Terms-Constructions combined.doc >>

*******************************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. (FR08-i203d)
*******************************************************************************************************

5/13/2010

# EXHIBIT M

**From:**       de Blank, Bas
**Sent:**       Friday, July 10, 2009 4:34 PM
**To:**         'Michael Headley'; Howard Pollack
**Cc:**         FSC_SG_POWI OHS ALL
**Subject:**    Fairchild's construction and support for POWI patent terms

**Attachments:** PI Patent Terms -- Fairchild Support.pdf; PI Patent Terms -- Fairchild Support.doc

Dear Michael,

   Attached are Fairchild's proposed constructions and support for the terms from the three POWI patents. I had intended to send you a redline but, unfortunately, in the process of creating the PDF, the redlines were removed and I only have the non-redline version. I apologize for the inconvenience.

   While the changes to the document can be best determined by comparing to the previous version you circulated, for the most part the changes are (i) the added constructions for the terms you proposed, (ii) support for our proposed constructions, (iii) formatting changes (such as switching to legal size paper, identifying the claims in which the terms appear in the same column as the term, etc. For now, I made the Fairchild column much wider so you can more easily see our proposed constructions and support. Obviously, I would expect that in the final version both columns will be the same size), and (iv) some minor changes to some of the earlier constructions Fairchild proposed. I accepted the changes that you had in your earlier redline and did not make any changes to the POWI column.

   Based on the Court's order staying the case with respect to the previously litigated 106 Fairchild devices, I removed references to those claims that are not asserted against the SG products. This resulted in the removal of the "soft start circuit" claim term, since that claim (claim 4 of the '851 patent) is not asserted against any SG device.

   Based on our discussions, I also removed term 6a (what you had reduced to "sawtooth waveform", since we are construing "oscillator" in term 6) and term 10a ("A digital to analog converter coupled to the control input for varying the switching frequency" since we are construing "digital to analog converter" in term 10). As before, neither party is agreeing that the other party's proposed construction for these terms is correct. We are simply agreeing that these terms need not be construed at this time. This reduces to 16 the number of terms to be construed.

   I had hoped that we would be able to exchange the proposed constructions and support for the terms in the SG patents today, too. Unfortunately, we will not be able to do so, in part because it is the weekend in Taiwan. We expect to have those for you on Monday. If you wish not to provide your proposed constructions and support for those SG terms until Monday, that would be fine.

   Please let me know if you have any questions.

Bas



ORRICK

**BAS DE BLANK**
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 MARSH ROAD
MENLO PARK, CA 94025-1015

*tel* 650-614-7343
*fax* 650-614-7401
bdeblank@orrick.com

www.orrick.com

# EXHIBIT N

# REDACTED

# EXHIBIT O

# REDACTED

# EXHIBIT P

# REDACTED