**REDACTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a Delaware corporation,

Plaintiff,

v.

FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, and SYSTEM GENERAL CORPORATION, a Taiwanese corporation,

Defendants.

C.A. No. 08-309 JJF-LPS



**POWER INTEGRATIONS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE GU-YEON WEI'S SUPPLEMENTAL REPORT ON INFRINGEMENT AND TO PRECLUDE FAIRCHILD FROM RELYING ON NEW CLAIM CONSTRUCTION CONTENTIONS**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**Attorneys for Plaintiff**
**POWER INTEGRATIONS, INC.**

Dated: May 24, 2010

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Fairchild's Doctrine of Equivalents Arguments Were Untimely .......... 1

1. Fairchild Ignores the Patentee's Burden of Proof .......... 1

2. Fairchild's Excuses Fail .......... 2

3. Though Not Required, Power Integrations Did Give Fairchild Notice That It Did Not Infringe, and Why, Yet Fairchild Still Withheld Its Doctrine of Equivalents Claim .......... 4

4. Fairchild's Delay Has Unfairly Prejudiced Power Integrations .......... 6

B. Fairchild Should Be Precluded from Relying upon Untimely Claim Constructions of New Claim Terms, As Well As Belated and Narrow Reconstructions of Claims the Court Has Already Construed. .......... 7

1. Fairchild Urges the Adoption of "Plain Meaning" Constructions that Would Be Clear Error .......... 8

2. Fairchild Had "Notice and Opportunity" as to the Instant Disputes .......... 9

a. Fairchild waived its chance to dispute the construction for claim 6 of the '270 patent. .......... 9

b. Fairchild similarly waived its opportunity to construe "a feedback terminal coupled to disable the regulation circuit" from the '851 patent. .......... 10

c. Fairchild successfully argued for a broad construction of the '595 patent but now seeks to narrow it. .......... 10

**TABLE OF CONTENTS (cont'd)**

**Page**

d. On "digital to analog converter," Fairchild simply seeks a more favorable claim construction. .......... 11

e. The construction of "the oscillator having a control input" is controlled by the Court's construction of the related digital to analog converter claim element. .......... 12

f. The Court did construe "means . . . for varying the switching frequency" and Fairchild now wants its expert to import the same limitations the Court previously rejected. .......... 12

g. The construction of the "control loop" elements of claims 22 and 32 of the '972 patent is controlled by the Court's construction of the parallel elements in claims 1 and 15. .......... 13

III. CONCLUSION .......... 14

## TABLE OF AUTHORITIES

CASES PAGE

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,
340 F. 3d 1298 (Fed. Cir. 2003)....................6

*CytoLogix Corp. v. Ventana Medical Systems, Inc.*,
424 F.3d 1168 (Fed. Cir. 2005)....................7

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*,
289 F. Supp. 2d 493 (D. Del. 2003),
*aff'd* 488 F.3d 982 (Fed. Cir. 2007)....................2

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
873 F.2d 1422 (Fed. Cir. 1989)....................4

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc),
*aff'd*, 517 U.S. 370 (1996)....................7, 11

*Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*,
362 F. Supp. 2d 526 (D.N.J. 2005)....................5

*Motionless Keyboard Co. v. Microsoft Corp.*,
486 F.3d 1376 (Fed. Cir. 2007)....................1

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir 2008)....................8

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................7, 8, 11

*Praxair, Inc. v. ATMI, Inc.*,
231 F.R.D. 457 (D. Del. 2005),
*rev'd in part on other grounds,* 543 F.3d 1306 (Fed. Cir. 2008)....................3

*Schoell v. Regal Marine Industries, Inc.*,
247 F.3d 1202 (Fed. Cir. 2001)....................1

*UCB, Inc. v. KV. Pharmaceutical Co.*,
No. 08-223-JJF, 2010 WL 809815 (D. Del. Mar. 9, 2010)....................3

# I. INTRODUCTION

In its Answer, Fairchild does little to contest the premise of Power Integrations' Motion, much less justify its untimely new claim construction contentions or "supplemental report" setting forth a doctrine of equivalents infringement claim for the first time after the deadline for serving expert reports. Fairchild does not dispute that its expert had all of the factual information to provide the withheld doctrine of equivalents analysis in his opening report, and Fairchild acknowledges that the constructions it now says are dispositive were not included in Fairchild's list of terms for construction. These concessions confirm the need to prevent Fairchild from engaging in trial by ambush. Power Integrations' motion should be granted.[1]

# II. ARGUMENT

## A. Fairchild's Doctrine of Equivalents Arguments Were Untimely

### 1. Fairchild Ignores the Patentee's Burden of Proof

Fairchild's brief ignores a fundamental tenet in patent litigation: the burden of proof on infringement always rests with the patentee, including the burden on the doctrine of equivalents *See Schoell v. Regal Marine Industries, Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001) ("The doctrine of equivalents is not a talisman that entitles the patentee to a jury trial on the basis of suspicion; it is a limited remedy available in special circumstances, the evidence for which is the responsibility of the proponent."); *see also Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1382-83 (Fed. Cir. 2007). Fairchild does not deny the burden. Nor does it cite any case or rule entitling it to withhold its doctrine of equivalents contentions until after the

---

[1] Because Power Integrations' motions were filed under the local rules in effect prior to recent changes, Fairchild proposed (and Power Integrations agreed) that the parties finish the briefing under the prior page limits. If the Court believes the new rules should apply, Power Integrations can submit a revised and more abbreviated reply brief.

REDACTED

defendant states why it does not infringe. To the contrary, the Court's scheduling order is clear – reports for the party bearing the burden on an issue were due January 31, 2010. Because Fairchild failed to provide any doctrine of equivalents analysis under the schedule the Court established for this case, Fairchild should be precluded from doing so now.

### 2. Fairchild's Excuses Fail

Despite Fairchild's attempts to put the blame on Power Integrations, Fairchild does not point to any new or different product documents, schematics, testimony, or any other factual information to justify the delay in providing a report on doctrine of equivalents.

No doubt this was of strategic benefit to Fairchild, but it isn't the way the exchange of expert reports based on burdens of proof works.

Fairchild now suggests it was Power Integrations' burden to <u>disprove</u> literal infringement before Fairchild was required to provide evidence under the doctrine of equivalents. Specifically, Fairchild attempted to "reserve" its arguments by stating that "to the extent that Plaintiff argues that any element is not literally met, Defendants reserve the right to argue that the element is met under the doctrine of equivalents." [D.I. 281 at 4, 6; D.I. 234 Ex. A at ¶¶ 67 and 142.] Fairchild cannot unilaterally reserve a "right" it never had – the right to ignore the burdens of proof and the Court's Order, because Fairchild preferred instead to see what Power Integrations had to say first. *See Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 289 F. Supp. 2d 493, 499-500 (D. Del. 2003), *aff'd* 488 F.3d 982, 994-95 (Fed. Cir. 2007).

REDACTED

Fairchild relies heavily on the *Praxair* case in arguing that the Wei Supplemental Report should be allowed, but the Court in *Praxair* found otherwise on nearly identical facts. In *Praxair*, the defendants provided a Supplemental Report that was not allowed for under the scheduling order in that case, and the Court excluded the supplemental report, noting "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities. The flouting of discovery deadlines causes substantial harm to the judicial system." *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del. 2005) (internal quotations and citations omitted), *rev'd in part on other grounds,* 543 F.3d 1306 (Fed. Cir. 2008). The *Praxair* Court also rejected the defendants' "no harm, no foul" argument based on the plaintiff's ability to ask questions at the expert's deposition – the same argument Fairchild makes in suggesting that Power Integrations had plenty of time to address Dr. Wei's new theories in the nine days provided between Fairchild's service of the Supplemental Report and Dr. Wei's deposition – noting that "[i]t is not plaintiffs' responsibility to study and analyze an expert report overnight to save defendants' discovery flaw." *Id.*

Fairchild's reliance on this Court's *UCB* decision is similarly misplaced. In *UCB*, a Supplemental Report was allowed because it was "consistent with [the expert's] prior statements." *UCB, Inc. v. KV. Pharmaceutical Co.*, No. 08-223-JJF, 2010 WL 809815, at *3 (D. Del. Mar. 9, 2010). In particular, the report in *UCB* concerned a ratio, disclosed in the patent, that the patentee had already addressed and argued: "Thus, although the precise argument of the ratio of beads in the tested accused product may not have been expressly disclosed, the issue of ratios in the context of non-infringement and indefiniteness has long been known." *Id.* In contrast, Dr. Wei's Supplemental Report does not refine an existing argument. Instead, as Fairchild's own "reservation" of rights reflects, it contains a wholly new opinion regarding

**REDACTED**

infringement under the doctrine of equivalents – a claim that is based on an entirely different legal structure and factual inquiry – and was provided a scant nine days before Wei's deposition.

Fairchild's suggestion that its equivalents claim is an extension of its literal infringement case is legally and factually incorrect. As a legal matter, "evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989). Equally as important, as a factual matter, Fairchild did not provide any prior testimony or evidence regarding the doctrine of equivalents, and Power Integrations could not develop such evidence itself because it had no notice of Fairchild's contentions. Indeed, in its opening expert report Fairchild abandoned most of the literal infringement theories it raised during discovery, dropping an entire patent and the majority of its claims and instead setting forth new theories of infringement.[2] Therefore, Fairchild's cited case law compels the exclusion of the Supplemental Report.

3. **Though Not Required, Power Integrations Did Give Fairchild Notice That It Did Not Infringe, and Why, Yet Fairchild Still Withheld Its Doctrine of Equivalents Claim**

Although Power Integrations had no obligation to point out the flaws in Fairchild's claims, Fairchild is also incorrect that Power Integrations improperly "withheld" its defense of non-infringement. As an initial matter, Power Integrations gave Fairchild notice of non-infringement in its Answer to Fairchild's counterclaim. [D.I. 50 at 7, 10-11.] Power Integrations then pointed out that Fairchild had not set forth any prima facie case for infringement when responding to Fairchild's premature contention discovery. [D.I. 281 Ex. B at 17-18.]

---

2 Fairchild's abandonment of its prior theories of literal infringement and adoption of entirely new infringement contentions for the first time in Dr. Wei's opening report are one of the many reasons that Power Integrations is entitled to summary judgment of non-infringement, as set forth in further detail in Power Integrations' opening brief in support of its motion for summary judgment of non-infringement of the Yang '595 patent. [D.I. 245 at 10-15.]

REDACTED

While repeatedly criticizing Power Integrations for not laying out its non-infringement contentions in a discovery response [D.I. 281 at 3-9], Fairchild admits – in a footnote – the critical fact: Power Integrations provided several letters, with citations to evidence, detailing why Fairchild's claims of infringement were baseless. [D.I. 281 at 4 n.1.] Fairchild argues that this notice was insufficient because it was merely "attorney argument" [*id.*], but Fairchild's legal citation on this point is inapposite. Power Integrations' detailed letters were correct and persuasive enough that, in response, Fairchild dropped an entire patent, and substantially narrowed and modified its *literal infringement* contentions when it served Dr. Wei's opening report. [*See* D.I. 245 at 10-15.] Therefore, at best, the primary excuse Fairchild offers is form over substance. It knew exactly what Power Integrations' non-infringement positions were, yet still failed to provide its doctrine of equivalents contentions in its opening report.

Recognizing the problem, Fairchild tries to blame Power Integrations but, in doing so, Fairchild mischaracterizes Power Integrations' position in responding to discovery. Rather than "concede" it had no basis to argue non-infringement, or "failing to respond," Power Integrations objected because Fairchild's request attempted to reverse the burden of proof and require Power Integrations to first disprove infringement before Fairchild even made out a prima facie case. [D.I. 281 Ex. B at 17-18.] Not only does Fairchild's position stand the burdens of proof on their head but, as explained above, Power Integrations' reluctance was well-founded because, at every turn, when Power Integrations explained the baseless nature of Fairchild's claims, Fairchild changed its tune. *See Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 362 F. Supp. 2d 526, 559 (D.N.J. 2005) (finding patentee's failure to provide opening expert report with analysis of doctrine of equivalents infringement justified striking later attempts to supplement

REDACTED

and rejecting patentee's argument that defendants were to blame for refusing to provide non-infringement contention interrogatory responses in view of the patentee's the burden of proof).

### 4. Fairchild's Delay Has Unfairly Prejudiced Power Integrations

Fairchild's delay substantially and unfairly prejudiced Power Integrations. Discovery proceeded for ten months with no equivalents contentions from Fairchild. To argue that Power Integrations was not prejudiced, Fairchild points to the *nine days* between Dr. Wei's Supplemental Report and his deposition, but it is absurd to assert this is adequate time to "fully prepare" to respond to new infringement contentions and depose a competing party's expert,[3] especially when there has been no fact discovery on the point.

Indeed, Fairchild does not dispute Power Integrations lost the opportunity to explore the factual underpinnings of Fairchild's claim of equivalence. "Infringement under the doctrine of equivalents frequently turns on questions of fact, such as whether the allegedly infringing device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention." *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F. 3d 1298, 1313 (Fed. Cir. 2003). As an example of such a fact question, Dr. Wei states in his Supplemental Report,

---

3 At the very least, Power Integrations' expert would need to be permitted to provide a responsive report on the doctrine of equivalents if the Court were to allow Fairchild to proceed on the new theories set forth in Dr. Wei's Supplemental Report.

REDACTED

If Dr. Wei's Supplemental Report is allowed, Power Integrations will be prejudiced at trial when it must rebut his position without the benefit of any fact discovery.

**B. Fairchild Should Be Precluded from Relying upon Untimely Claim Constructions of New Claim Terms, As Well As Belated and Narrow Reconstructions of Claims the Court Has Already Construed.**

By its own admission, Fairchild wants to argue to the Jury what a person of ordinary skill in the art considers to be the "plain meaning" of the claim language. [*See, e.g.*, D.I. 281 at 2, 10-11, 14, 16.] That is claim construction, at least where the meaning is disputed, and thus is an inquiry for the Court alone. "When legal 'experts' offer their conflicting views of how the patent should be construed, or where the legal expert's view of how the patent should be construed conflicts with the patent document itself, such conflict does not create a question of fact nor can the expert opinion bind the court or relieve the court of its obligation to construe the claims according to the tenor of the patent." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation."). It would be erroneous, and certainly confusing for the jurors, to let Fairchild argue the meaning of the claims to the Jury under the guise of expert opinion about infringement. *See CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("[T]he parties also presented expert witnesses who testified before the jury regarding claim construction, and counsel argued conflicting claim constructions to the jury. This was improper.").

4 Indeed, as Fairchild is well-aware, Power Integrations has obtained a number of patents on its technologies for reducing the required number of pins in a power supply controller.

REDACTED

This is not a situation where the construction of a disputed term is not "necessary" because the plain, *English-language* meaning of that term, *i.e.* how a *layperson* would understand its definition, is the same as how it would be understood by a person of skill in the art, and so needs no further clarification or expert testimony. *Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir 2008) (finding error and vacating verdict where district court declined to construe term with "ordinary" meaning and the parties thereafter argued claim scope to the Jury). Nor is it a case where Fairchild seeks to have its expert explain his undisputed understanding of a particular technical term of art, outside the context of the surrounding claim language. Because Fairchild instead seeks to argue disputed contentions about what claim language means – language Fairchild did not ask the Court to address during the claim construction process – the Court should grant Power Integrations' motion.[5]

### 1. Fairchild Urges the Adoption of "Plain Meaning" Constructions that Would Be Clear Error

Fairchild wants to argue "plain meaning" in two ways that are contrary to the Court's claim construction process. In some instances, Fairchild wants to argue points where it alone

---

5 Far from being "afraid" of Fairchild's belated (and incorrect) constructions, Power Integrations has filed motions explaining how, even if considered on their merits, these constructions are erroneous. [D.I. 243-46 ('595 patent invalidity and non-infringement); D.I. 239-42 ('270 patent infringement).] But the weakness of Fairchild's new constructions is beside the point; they are untimely, the delay is unexcused, and the prejudice is apparent from the fact that Power Integrations was forced to bring, and the Court is now forced to deal with, multiple motions necessitated solely by Fairchild's disregard of the Court's procedures. And it is possible the Court will deny summary judgment. It is the prejudice of proceeding to trial without benefit of discovery on these belated theories that matters.

REDACTED

[redacted]

knew there was a dispute about the alleged "plain meaning" to a person of skill in the art and yet hid these disputes from Power Integrations and the Court. For other terms, Fairchild seeks to use "plain meaning" to <u>add</u> limitations and narrow the claims in ways not stated in the language itself or the Court's construction of that language. Both approaches conflate the Court's duty to construe the claims with an expert's role in applying those constructions, and both are improper.

### 2. Fairchild Had "Notice and Opportunity" as to the Instant Disputes

Fairchild's brief requests "notice and the opportunity to submit intrinsic evidence" regarding the new disputes [D.I. 281 at 19], but Fairchild <u>had</u> notice and opportunity to argue for particular constructions. Instead, Fairchild *hid the dispute as to these terms.* This is classic waiver, for obvious strategic reasons – namely, avoiding summary judgment and getting to the Jury – and the Court should not reward it.

#### a. Fairchild waived its chance to dispute the construction for claim 6 of the '270 patent.

During claim construction, Fairchild said the disputed phrase in the '270 patent was indefinite. [*See* D.I. 109 at 1.] Now, months after claim construction and fact discovery have concluded, Fairchild instead argues for a "plain meaning" of the term that is neither plain nor consistent with Fairchild's prior contention. Before Fairchild served its expert reports, only Fairchild knew that its alleged "plain meaning" argument (1) dealt with Fairchild's contention regarding how a person of skill in the art would allegedly understand the phrase; (2) was in direct conflict with Power Integrations' proposed construction; and (3) requires Fairchild's expert to argue the alleged import of <u>intrinsic evidence</u>. To allow Fairchild to change its contention now in its expert reports would render the whole claim construction process meaningless.

**REDACTED**

**b. Fairchild similarly waived its opportunity to construe "a feedback terminal coupled to disable the regulation circuit" from the '851 patent.**

Power Integrations proposed a construction for this term, and Fairchild did not propose any competing construction. [D.I. 234 Ex. E, G.] Now, Fairchild's expert argues non-infringement on the basis of a "plain meaning" of this term that is again *in direct conflict* with Power Integrations' timely proposal – a construction that was also clearly included and relied upon in PI's infringement contentions. [D.I. 234 Ex. C at Exhibit D at 2.] Because Fairchild knew there was a dispute and it hid that dispute by not challenging Power Integrations' proposed construction at the proper time, it again should be found to have waived the arguments.[6]

**c. Fairchild successfully argued for a broad construction of the '595 patent but now seeks to narrow it.**

Fairchild repeatedly argues that its expert is "applying the Court's constructions" and that its contentions are "consistent" with those constructions, but these self-serving statements do not change the fact that Fairchild's new positions seek to reargue claim construction. Fairchild's efforts in this regard on the '595 patent are particularly egregious. Fairchild argued for a broad construction and won when the Court declined Power Integrations' narrower construction in favor of the term's English-language lay meaning. Now, Fairchild wants to add a limitation that the first reference signal must change **for a particular purpose** – a requirement clearly not stated in the claim language itself – in an effort to avoid the clear anticipation by the prior art.[7]

---

6 Fairchild's briefing mischaracterizes the parties' exchanges and discussions with respect to this term. [D.I. 281 at 12.] Because Fairchild's spin is not dispositive, it does not bear a detailed response, but one thing is clear about the exchanges – had Fairchild identified its expert's current "plain meaning" theory at the required time, Power Integrations could and would have raised the issue for construction.

7 It seems unlikely to Power Integrations that the Court had Fairchild's "plain meaning" in mind when it determined that the claim phrase required no explicit construction.

REDACTED

To the extent Fairchild argues that it "always" believed this to be the "plain meaning," Fairchild clearly hid that view from Power Integrations and the Court. Having prevailed over Power Integrations' proposed narrower construction, Fairchild should be found to have waived any new proposed limitations, especially limitations that narrow the claim in a manner that conflicts with Fairchild's prior arguments and the Court's construction. [*See* D.I. 245 at 27-29.]

**d. On "digital to analog converter," Fairchild simply seeks a more favorable claim construction.**

The term "digital to analog converter" was contested during claim construction, and Fairchild had notice and a full and fair opportunity to argue its side. Fairchild's proposal included limitations on the type of input and output, including that the output be a signal, as well as the proportionality of the signal. [D.I. 109 at 12-14.] The Court rejected Fairchild's proposed construction and declared that the plain, English-language meaning of the words should control.

The plain English-language meaning of these words says nothing about the digital input or analog output of the converter being a voltage or current signal, but Fairchild now argues that "the dispute is, thus, whether the accused products incorporate a DAC, *as that term would have been understood by one of ordinary skill.*" [D.I. 281 at 17 (emphasis added).] As explained above, if persons of ordinary skill dispute the meaning of a term, that is an issue to be vetted in claim construction. *Markman*, 52 F.3d at 983; *Phillips*, 415 F.3d at 1313. Fairchild should not be permitted to re-argue an understanding of the claim that directly conflicts with the Court's decision that "digital to analog converter" needs no further explanation.[8]

8 But rather than concede the undisputed fact and reserve its claim construction arguments for appeal – which is common in patent cases – Fairchild seeks to reargue construction in the guise of expert opinion, which this Court should not allow.

**REDACTED**

e. **The construction of "the oscillator having a control input" is controlled by the Court's construction of the related digital to analog converter claim element.**

Although the Court did not construe the term "the oscillator having a control input," the relevant issues were raised and decided in the context of related terms. Specifically, the Court rejected Fairchild's proposal that "digital to analog converter" requires an output "signal." [D.I. 212 at 37-38.] Fairchild now argues for a construction of "control input" that would require the oscillator (to which the DAC is coupled) to receive a voltage or current *signal*, but this would render the Court's refusal to adopt Fairchild's construction of DAC meaningless. Because the Court's construction of "digital to analog converter" does not require "signals" as input or output, that construction controls the meaning of the related "control input" limitation, and Fairchild's effort to argue a contrary "plain meaning" construction to the Jury must be precluded.

Fairchild is correct when it admits, at least with regard to this limitation, that the issue is "a claim construction dispute." [D.I. 281 at 13.] Fairchild's effort to base an allegedly dispositive non-infringement argument on a claim construction issue shows that Fairchild had a duty to select this term for construction. Rather than allow Fairchild to argue claim construction positions to the Jury through its expert, the issue must be decided by the Court. However, the Court should not reward Fairchild's ambush when Fairchild knew it intended to make a dispositive non-infringement argument long before and did not press the term for construction, instead of strategically wasting the limited number of terms the Court would construe by asking the Court to address redundant terms in claims 1 and 15 of the '972 patent separately.

f. **The Court did construe "means . . . for varying the switching frequency" and Fairchild now wants its expert to import the same limitations the Court previously rejected.**

The Court construed the term "means . . . for varying the switching frequency," but the Court rejected Fairchild's argument that the term required a particular DAC structure having

REDACTED

[redacted]

exactly four binary-weighted current sources. [*See* D.I. 212 at 41.] Now, Fairchild directly contradicts that construction and advocates a do-over. The Court's construction includes a DAC, but the Court declined to require any particular, narrower structure in the context of claim 1 or 21. Fairchild's present argument seeks to read in almost the exact same structural limitations to the DAC portion of the "means" clause, in direct contradiction to the Court's construction of "DAC" as having a plain English meaning and requiring no further construction. Fairchild's argument also conflicts with the claim language expressly reciting "one or more current sources." Although the Court properly refused to accept Fairchild's argument that the means required a structure including a DAC with "exactly four binary weighted current sources," Fairchild now argues that the claimed means require "at least four current sources." [D.I. 281 at 18.] Power Integrations is at a loss to understand how Fairchild can argue that its expert is "applying the Court's construction" when making this non-infringement argument.

Fairchild also incorrectly suggests that Power Integrations' expert's theory of infringement supports Fairchild's construction [redacted] This is wrong, both as a matter of patent law and common sense. [redacted]

g. **The construction of the "control loop" elements of claims 22 and 32 of the '972 patent is controlled by the Court's construction of the parallel elements in claims 1 and 15.**

Although the Court did not construe the disputed control loop limitations in claims 22 and 32, they too involve issues that were raised and decided, and the Court's construction of related terms should control. Power Integrations repeatedly suggested during claim construction that all of the "control loop" elements be construed together to ensure consistency, but Fairchild

REDACTED

refused. [D.I. 109 at 57-67; D.I. 211 at 2.] Because Fairchild knew at the time it would rely on this construction to try to avoid the anticipatory prior art in Power Integrations' invalidity contentions, yet chose to not seek a construction, it should not now be allowed to raise the issue.

Further, because Fairchild's present argument conflicts with the Court's construction of related claim elements, it must be rejected on its merits. The Court construed the control loop limitations of claims 1 and 15 as not having a primary-side requirement. The rationale behind the Court's construction was that a "primary-side" limitation should not be imported from the specification to a claim element that did not expressly include such limiting language. [D.I. 212 at 16-21.] The Court's construction also recognized there were two control loops recited – a first and a second – and that these control loops produced distinct feedback signals. [*Id.* at 43-44.]

Claims 22 and 32 also each recite, with very similar language, two control loops and two feedback signals. While the claims do include express language related to primary side, that language is only associated with the current control loop element; the primary side language is not associated with both control loops. Indeed, Fairchild can only make its argument by selectively quoting pieces of the claim language, tacitly admitting that the straight-forward grammatical parsing of the claim is fatal. Because Fairchild's argument just rehashes its rejected effort to import "primary side" limitations into claim elements that do not include such limitations, the Court's decision in that context should control.

## III. CONCLUSION

Fairchild has not justified its delayed disclosure of new contentions in its expert reports; Power Integrations' motion to strike should be granted.

REDACTED

[REDACTED]

Dated: May 24, 2010

FISH & RICHARDSON P.C.

By: [signature]

William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
Email: marsden@fr.com
kcompton@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

ATTORNEYS FOR PLAINTIFF
**POWER INTEGRATIONS, INC.**