IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,    :
                             :
        Plaintiff,        :
                             :
        v.               :     Civ. No. 08-309-LPS
                             :
FAIRCHILD SEMICONDUCTOR   :
INTERNATIONAL, INC.,       :
FAIRCHILD SEMICONDUCTOR   :     Public Version
CORPORATION, and SYSTEM    :     Released October 21, 2010
GENERAL CORPORATION,     :
                             :
       Defendants.     :

## OPINION

William J. Marsden, Jr., Kyle Wagner Compton, FISH & RICHARDSON, P.C., Wilmington, DE; Frank E. Scherkenbach, FISH & RICHARDSON, P.C., Boston, MA; Howard G. Pollack, Michael R. Headley, FISH & RICHARDSON, P.C., Redwood City, CA, Attorneys for Plaintiff.

John G. Day, Lauren E. Maguire, Tiffany Geyer Lydon, ASHBY & GEDDES, Wilmington, DE; Bas de Blank, Diana M. Rutowski, George Hopkins Guy, III, Ulysses Hui, Vicki L. Feeman, ORRICK, HERRINGTON & SUTCLIFFE LLP, Menlo Park, CA, Attorneys for Defendants.

October 5, 2010
Wilmington, Delaware

*Ler P. Nt*

**STARK, U.S. District Judge:**

Pending before the Court are four motions for summary judgment filed by plaintiff Power

Integrations, Inc. ("Power") (D.I. 235, 239, 243, 250); three motions for summary judgment filed

by defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation,

and System General Corporation (collectively, "Fairchild") (D.I. 254, 257, 262); two Daubert

motions filed by Power (D.I. 232, 247); and one Daubert motion filed by Fairchild (D.I. 260).

This Opinion provides the Court's reasoning with respect to resolution of each of these ten

motions.

I.        **Background**

The details of the parties' respective patents-in-suit and the technology claimed by those

patents were set forth in the Court's order on claim construction. (D.I. 212, 337)  It is enough

here to note that Power asserts that Fairchild's accused devices infringe claims of the three Power

patents-in-suit, while Fairchild counters that Power infringes asserted claims of the two Fairchild

patents-in-suit. (D.I. 1, 49, 135, 136)  Both parties further contend that each others' patents are

invalid. (D.I. 1, 49, 135, 136)  This case is related to earlier (and still pending) litigation between

the parties involving alleged infringement of some of the same patents that also are in suit here.

*See Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*, C.A. No. 04-1371-LPS (D.

Del., filed Oct. 20, 2004) (hereinafter "*Fairchild I*").

Oral argument on the instant motions was held on June 17, 2010.  (Mot. Hr'g Tr., June

17, 2010 (D.I. 347), hereinafter "Tr.")  Thereafter, the Court required supplemental briefing on

1

three topics (D.I. 332), which the parties completed on July 22, 2010 (D.I. 335, 336, 338). The parties have also submitted letters regarding the most recent events in the ongoing re-examination of Power's '851 patent by the U.S. Patent and Trademark Office ("PTO"). (D.I. 342, 345)

## II.     Legal Standards

### A.     Summary Judgment

A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some

2

alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment;" a factual dispute is genuine only where "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The *Anderson* Court provides further guidance: "If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial").

### B.     Daubert Motions

Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli*

*R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994). The admissibility of expert testimony is

a question of law governed by Rule 702 of the Federal Rules of Evidence and the Supreme

Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Pursuant to

Rule 702, in order to be admissible, expert testimony must "assist the trier of fact to understand

the evidence or to determine a fact in issue." The Supreme Court has assigned "to the trial judge

the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant

to the task at hand." *Daubert,* 509 U.S. at 597. Thus, expert testimony shall be admitted at trial

only if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product

of reliable principles and methods, and (3) the witness has applied the principles and methods

reliably to the facts of the case." Fed. R. Evid. 702; *see also Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 141 (1999). The Third Circuit has described these requirements as

"three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

Rule 702 embodies a "liberal policy of admissibility." *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal citations omitted). Nonetheless, the burden is placed on the party offering expert testimony to show that it meets all of the standards for admissibility. *See Daubert*, 509 U.S. at 592 n.10; *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). Once that burden is met, a Court must consider additional factors before precluding expert testimony:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (internal quotation marks omitted). The exclusion of important evidence is an "extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli*, 35 F.3d at 791-92 (internal quotation marks omitted).

## III. Power's Motions For Summary Judgment

### A. To Preclude Fairchild From Challenging The Validity Of The '876 And '851 Patents Based On Prior Art Martin, The SMP211, And Wang (D.I. 235)

The *Fairchild I* jury found that Fairchild infringed claim 1 of the '876[1] patent and claim 1

---

[1]U.S. Patent No. 6,249,876. "Frequency Jittering Control For Varying The Switching Frequency Of A Power Supply." (D.I. 302 Ex. B)

of the '851[2] patent and also that the patents were not obvious in light of asserted prior art references. (*Fairchild I*, D.I. 415, 555) Fairchild's post-trial motion seeking judgment as a matter of law that the '876 patent was invalid in view of the Martin[3] prior art reference was denied. (D.I. 690 at 8) Fairchild did not file a similar post-trial motion with respect to the '851 patent. The Court has not yet entered final judgment in *Fairchild I*.

Here, in *Fairchild II*, Fairchild again asserts that the '876 and '851 patents are invalid. Power moves for summary judgment on several of Fairchild's invalidity defenses based on collateral estoppel. For the reasons explained below, Power's motion will be granted in part and denied in part.[4]

### 1. The Parties' Contentions

It is undisputed that the jury in *Fairchild I* determined that claim 1 of the '876 patent was not obvious. (*Fairchild I*, D.I. 555) At trial, Fairchild attempted to demonstrate that claim 1 of '876 patent was obvious in light of Martin by showing that Martin taught or rendered obvious the elements of claim 1, including "frequency jittering" and a counter and DAC that are "coupled." (D.I. 238 Ex. E at 718-19; Ex. F at 1061-67) According to Power, this was the only invalidity theory about which the jury heard evidence in *Fairchild I*; thus, the jury's finding of non-

---

[2]U.S. Patent No. 6,107,851. "Offline Converter With Integrated Softstart And Frequency Jitter." (D.I. 302 Ex. C)

[3]The full citation for the Martin prior art reference is: U.S. Patent No. 4,638,417, "Power-Density Spectrum Controller." (D.I. 302 Ex. D) (hereinafter, "Martin")

[4]Fairchild argues that summary judgment is inappropriate because this Court's claim construction ruling differs materially from its claim construction ruling in *Fairchild I*. (D.I. 302 at 7-9) Power replies that there is no material difference between the claim construction orders entered in the two cases, and, anyway, construing claims presents a question of law. The Court agrees with Power. (D.I. 212 at 44; *see also* D.I. 317 at 11)

obviousness necessarily means that the jury decided that at least one of these two elements of claim 1 – "frequency jittering" or a counter and DAC that are "coupled" to control the oscillator's frequency – were not taught by Martin. Power contends that collateral estoppel (issue preclusion) prevents Fairchild from attempting to persuade another jury to reach a different conclusion about whether Martin renders claim 1 of the '876 patent invalid.

Power takes its issue preclusion argument further. In Power's view, claim 21 of the '876 patent contains elements identical to claim 1: specifically, the "frequency jittering" limitation and the limitation requiring the counter to be "coupled" to the DAC. (D.I. 237 at 10) Thus, Fairchild is also estopped from attempting here to litigate whether claim 21 is invalid due to obviousness in light of Martin.

Power's argument with respect to the '851 patent is similar. The *Fairchild I* jury found claims 1 and 4 of '851 patent were not obvious in light of Martin, the SMP211 device, or the combination thereof. Because the "exact same elements found not to exist in claim 1 of the '851 patent" (which is not asserted in *Fairchild II*) "also appear in claim 11 of the '851 patent" (which is asserted in this case), "Fairchild is also precluded from using Martin or the SMP211 to challenge claim 11." (D.I. 237 at 2) Power also argues that because claims 17 and 18 of the '851 patent depend from claim 11, if claim 11 is not invalid in light of Martin, then claims 17 and 18 are likewise not invalid in light of Martin. (*Id.* at 14)

Power next attempts to prevent Fairchild from asserting that the patents-in-suit are invalid based on the Wang prior art reference.[5] Although Wang was not in front of the *Fairchild I* jury,

---

[5]The full citation for the Wang prior art reference is: Andrew C. Wang and Seth R. Sanders, *Programmed Pulsewidth Modulated Waveforms for Electromagnetic Interference Mitigation in DC-DC Converters*, 8 IEEE Transactions on Power Electronics 596 (October

Power contends that Wang teaches precisely the same relevant elements as Martin. Specifically, with respect to the '876 patent, Power argues that Martin and Wang both disclose the use of a discrete ROM placed between a discrete counter and DAC, as well as the same "frequency modulation" technique. (D.I. 237 at 15) Power adds that even Fairchild's experts have conceded that Martin and Wang contain the same teaching with respect to these limitations. (*Id.* at 14) Hence, Fairchild should be precluded from litigating Wang here as well.

Finally, Power argues that Fairchild is precluded from trying to prove that the '876 and '851 patents are invalid due to anticipation based on any of the Martin, SMP211, or Wang prior art references. In Power's view, just as this prior art may not be the basis for an obviousness defense in the instant action, neither may they be the basis for an anticipation defense.

Fairchild, of course, disagrees with each of Power's contentions. Fairchild emphasizes that the claims asserted by Power in *Fairchild I* – claim 1 of the '876 patent and claims 1 and 4 of '851 patent – are not asserted here in *Fairchild II*. (D.I. 302 at 3) Here, Power instead asserts claim 21 of the '876 patent and claims 11, 17, and 18 of the '851 patent. Fairchild disputes that these newly-asserted claims have "essentially the same requirements" as the claims previously litigated. (*Id.*) Furthermore, the jury verdict sheet in *Fairchild I* does not specify which claim elements the jury believed were missing from the Martin reference, so it is possible the jury decided than an element unique to one of the claims asserted in *Fairchild I* was missing, rendering the *Fairchild I* finding inapplicable to the instant case.

Turning to Wang, Fairchild cites *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 n.6 (Fed. Cir. 2008), for the proposition that what a prior art reference discloses is a question of

---

1993); *see also* D.I. 302 Ex. E.

fact. Fairchild points out that the Wang article and the Martin prior art "were written at different times by different people at different companies for different purposes to teach different things." (D.I. 302 at 5) Since Fairchild disputes that Martin and Wang are the same, summary judgment should be inappropriate.

Last, with respect to its anticipation defense, Fairchild shows that the *Fairchild I* jury only decided obviousness, not anticipation. Since the Federal Circuit has explained that these are different defenses, and that it is possible for a prior art reference not to support a finding of obviousness yet still support a finding of anticipation, issue preclusion cannot apply. (*Id.* at 2) (citing *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 710 (Fed. Cir. 1983))

### 2.     Collateral Estoppel

Collateral estoppel, or issue preclusion, applies where: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) (internal quotation marks omitted). The parties are in agreement that issue preclusion presents a mixed question of law and fact for the Court to decide. (Tr. at 165, 170) If, resolving factual issues in Fairchild's favor, the four prongs of the issue preclusion test are satisfied, the Court may make the legal conclusion that issue preclusion is appropriate.

### 3.     Obviousness Based On Martin And/Or SMP211

#### a.     '876 patent claim 21

It is undisputed that the *Fairchild I* jury decided that claim 1 of the '876 patent is not obvious in light of Martin. (D.I. 238 Ex. B at 3; *Fairchild I*, D.I. 555) This Court then denied

Fairchild's motion for judgment as a matter of law that claim 1 of the '876 patent was invalid.

(D.I. 238 Ex. C at 8-9; *Fairchild I*, D.I. 690 at 8-9)  The only bases the jury had before it for

reaching such a conclusion were that Martin, because it contained a ROM between the counter

and the DAC, failed to disclose "frequency jittering" and/or a counter "coupled" with a DAC.

(*See* D.I. 237 at 4-5 (summarizing trial testimony); D.I. 238 Ex. C at 8-9)

Claim 21 of the '876 patent contains these same two elements as claim 1 of the '876

patent. (*See* D.I. 237 at 10-11 & nn. 6-7)  Therefore, the issue of whether Martin discloses the

"frequency jittering" and/or counter "coupled" with a DAC limitation of claim 21 of the '876

patent is the same as the claim 1 issue that was actually litigated in *Fairchild I*, a case in which

the jury's determination against Fairchild was essential to a final judgment against Fairchild.[6]

Accordingly, Fairchild is precluded from asserting that claim 21 of the '876 patent is invalid due

to obviousness based on Martin.

### b.   '851 patent claim 11

It is undisputed that the *Fairchild I* jury decided that claims 1 and 4 of the '851 patent are

not obvious in light of Martin and/or the SMP211.  (D.I. 238 Ex. B at 3; *Fairchild I*, D.I. 555)

The only bases the jury had before it for reaching such a conclusion were that Martin and/or the

---

[6]The application of general collateral estoppel rules is based upon the law of the regional Circuit. *See Hartley v. Mentor Corp.*, 869 F.2d 1469, 1471 n.1 (Fed. Cir. 1989).  Under Third Circuit law, "the concept of finality for purposes of collateral estoppel does not require the entry of a final judgment in the sense of being appealable." *Burlington N. R.R.*, 63 F.3d at 1231-33 (internal quotation marks and citations omitted).  Here, the *Fairchild I* denial of Fairchild's post-trial judgment as a matter of law on invalidity is sufficiently final to satisfy the requirements of collateral estoppel. *See also In re Brown*, 951 F.2d 564, 569 (3d Cir.1991) ("[W]e pointed out that finality for purposes of issue preclusion is a more pliant concept than it would be in other contexts.  Finality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.") (internal quotation marks and citations omitted).

SMP211 in combination or individually teach both the "frequency variation" and "oscillator" limitations of claims 1 and 4 of the '851 patent. (*See* D.I. 237 at 11-12 (summarizing trial testimony)) Claim 11 of the '851 patent contains these same two elements as claim 1. (*See* D.I. 237 at 13-14 (excerpting and explaining common elements)) Therefore, the issue of whether Martin and/or the SMP211 discloses the "frequency variation" and/or "oscillator" limitations of claim 11 of the '851 patent is the same as the claim 1 issue actually litigated in *Fairchild I*, a case in which the jury's determination against Fairchild was essential to a final judgment against Fairchild. Accordingly, Fairchild is precluded from asserting that claim 11 of the '851 patent is invalid due to obviousness based on Martin and/or the SMP211.

      c.    **'851 patent claims 17 and 18**

Claims 17 and 18 of the '851 patent depend from claim 11. Hence, they contain the same limitations – including the "frequency variation" and "oscillator" limitations – as claim 11. As already noted, these limitations were found by the jury in *Fairchild I* not to be taught by Martin and/or the SMP211. It follows that, for the same reasons as for claim 11, Fairchild is precluded from asserting that claims 17 and 18 of the '851 patent are invalid due to obviousness based on Martin and/or the SMP211.

      4.    **Obviousness Based On Wang**

Fairchild's own experts have testified that the teaching of the Wang prior art reference is substantially identical to the teaching of the Martin prior art reference with respect to the claim elements at issue here. Specifically, Martin and Wang both contain the ROM, located between the DAC and the counter, that controls frequency change. In the instant action, Fairchild's expert, Dr. Wei, was asked in deposition about the ROM, and responded: "Yes. The Wang

article shows a ROM that's between the counter and the DAC as well. That's Martin." (D.I. 234

Ex. I at 275-76) (emphasis added) Likewise, Fairchild's expert in *Fairchild I*, Dr. Horowitz,

agreed that the circuit disclosed in Wang, like that disclosed in Martin, shows a ROM interposed

between a counter and a DAC. (D.I. 238 Ex. G at 60; *Fairchild I*, D.I. 209 at ¶ 5) Further, Dr.

Wei noted in his supplemental expert report in the instant action that, for the frequency variation

limitation in the '876 patent, "a person of ordinary skill in the art at the time . . . would have

understood that each of the prior art Martin Patent and Wang Article teach the claimed digital

frequency jittering circuit for varying the switching frequency of a power supply." (D.I. 234 Ex.

A at ¶ 245 (internal quotation marks omitted); *see also* D.I. 234 Ex. A at ¶¶ 239, 243 (using

identical language to describe the techniques for changing the frequency for both the Martin and

Wang references))

By comparison, Fairchild has identified no record evidence to support the view that Wang

and Martin are materially different. Moreover, Fairchild conflates issue preclusion and summary

judgment when it argues that Wang has not been "actually litigated." While the Wang reference

itself has not been litigated (it was not before the jury in *Fairchild I*), the Martin reference was

indisputably "actually litigated." The question on this motion for summary judgment, therefore,

is whether Wang and Martin teach the same limitations. This is a question of fact, but the record

reveals no genuine dispute that Wang and Martin disclose substantially identical teachings with

respect to the specific limitations in question for the '851 and '876 patents.

Accordingly, summary judgment will be granted to Power with respect to the Wang

reference. Fairchild will be precluded from asserting Wang as a basis for invalidating the '876 or

'851 patents due to obviousness.

11

### 5.   Anticipation

The Federal Circuit has stated: "While it is commonly understood that prior art references that anticipate a claim will usually render that claim obvious, it is not necessarily true that a verdict of nonobviousness forecloses anticipation.  The tests for anticipation and obviousness are different." *Cohesive Techonologies, Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008); *see also Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107-08 (Fed. Cir. 2003) ("Succinctly put, the various unenforceability and invalidity defenses that may be raised by a defendant – inequitable conduct, the several forms of anticipation and loss of right under § 102, and obviousness under § 103 – require different elements of proof."); *Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed. Cir. 1984) ("[T]hough anticipation is the epitome of obviousness, [they] are separate and distinct concepts."); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1563 (Fed. Cir. 1993) (verdict of nonobviousness was not inconsistent with verdict of anticipation by prior public use, despite "legal homily" that anticipation is epitome of obviousness).

The *Fairchild I* jury was not asked to render a verdict with respect to Fairchild's anticipation defense; nor was this Court asked to reach such a judgment.  Therefore, Fairchild's anticipation defenses were not "actually litigated" and issue preclusion does not apply.[7]  Power's

---

[7]Power asserts that Fairchild developed its anticipation defenses prior to trial in *Fairchild I* and then made "strategic decisions" not to present these defenses at trial.  (D.I. 237 at 4-5 nn. 2-3; D.I. 317 at 10 n.6)  This is not sufficient to render anticipation – which, as noted, has different requirements than obviousness – "actually litigated."  *See Adolph Coors Co. v. Commissioner*, 519 F.2d 1280, 1283 (10th Cir. 1975) ("To obtain the protection afforded by the doctrine of collateral estoppel an issue must have been raised, litigated and actually adjudged on the merits in the first proceeding.  Here, the overhead issue was raised but, because it was abandoned by the IRS, was not judicially determined.  Under these circumstances collateral estoppel cannot apply."); *see generally* 18 James W. Moore et. al., *Moore's Federal Practice* § 132.03 (2)(e) (3d ed. 1997).

motion with respect to anticipation will be denied.[8]

### B.   Cross Motions For Summary Judgment Of Infringement Or Non-Infringement Of Claims 6-9 Of Power's '270 Patent (D.I. 239, 257)

Power moves for summary judgment that Fairchild's accused products infringe claims 6-9 of the '270 patent.[9]   (D.I. 239)   At the same time, Fairchild cross-moves for summary judgment that its accused products do not infringe any of the asserted claims of the '270 patent.   (D.I. 257)   The Court finds that genuine disputes of material fact preclude granting summary judgment to either party with respect to infringement.   Thus, both motions will be denied.

The '270 patent relates to circuits in a voltage regulator for limiting the maximum output current to keep it constant.   Claim 6 reads:

> A power supply regulator, comprising:
>
> a comparator having first and second inputs and an output, the first input of the comparator to sense a voltage developed by a switch, during an on time of the switch, the second input of the comparator coupled to receive a current limit threshold signal to increase during the on time of the switch; and
>
> a control circuit to generate a control signal in response to the output of the comparator, the control signal to be coupled to a control terminal

---

[8]Fairchild requests that if the Court determines that there are no genuine disputes of material fact, it be given the opportunity to submit further briefing explaining why Power's motion must be denied as a matter of law.   (D.I. 302 at 1, 9)   The Scheduling Order in this case indicated that if the Court decided no factual disputes existed, "an answering brief and reply will be ordered."   (D.I. 61 at ¶ 11)   However, the Court has determined that further briefing on Power's motion is not necessary.   Fairchild's Counterstatement of material, disputed facts is actually a brief in opposition.   The Counterstatement is nine pages long, and while Fairchild purports to highlight only genuine *factual* disputes, much of the brief is devoted to *legal* issues.   Moreover, the Court heard oral argument on the motion.   (Tr. at 125-56)

[9]U.S. Patent No. 7,110,270.   "Method and Apparatus for Maintaining a Constant Load Current with Line Voltage in a Switch Mode Power Supply."   (D.I. 258 Ex. B)

of the switch to control switching of the switch to provide a power
supply to have an output characteristic having an approximately
constant output current below an output threshold voltage, the
variable current limit threshold signal to vary between a first level
and a second level during a time when the switch is to be on in
response to the control signal

('270 patent, col. 6 lines 47-63)  Claims 7-9 depend from claim 6.

Fairchild's accused products, for example the SG5841J, include a "saw limiter" circuit,
which Power claims – and Fairchild denies – practices all of claims 6-9 of the '270 patent.  The
parties agree that the crux of their dispute turns on the meaning of the term "an approximately
constant output current below an output threshold voltage," which is contained in claim 6.  (*See*
D.I. 282 at 1; D.I. 303 at 1)  Resolution of this motion requires the Court first to consider the
meaning of this term.

Power argues that "an approximately constant output current below an output threshold
range" should be construed as "an output current that remains substantially constant with changes
in input line voltage." (D.I. 282 at 2; D.I. 336 at 5)  Power further contends that it is too late for
Fairchild to seek an alternative construction of this term because, when the parties met and
conferred to identify disputed claim terms, Fairchild took the position that this term was
indefinite, and did not seek its own construction.  Now Fairchild's expert, Dr. Wei, proposes a
construction of the term, but, Power argues, Fairchild should not be heard on this point.

Fairchild responds that it never waived the opportunity to propose a construction of the
"approximately constant output current" term.  Rather, Fairchild did not believe the term required
special construction since its plain meaning to one of ordinary skill in the art was clear.  Fairchild
now advocates what it characterizes as the "plain and ordinary" meaning of the disputed term:

"the output current is approximately constant below an output threshold voltage." (D.I. 335 at 4) This is essentially the same construction employed by Fairchild's expert, Dr. Wei. (D.I. 258 at 4-5; *see also* D.I. 234 Ex. A at ¶¶ 470-76; D.I. 233 at 12)

Following the June 17, 2010 hearing, the Court determined that it was necessary to construe the disputed "approximately constant output current" claim term. The Court does not agree with Power that, under the circumstances, Fairchild should be found to have waived its right to propose a construction of this term.[10] Consequently, the Court ordered and received supplemental briefing from the parties on the proper construction of this term. (D.I. 332, 335, 336, 338)

Claim construction is a question of law for the Court to decide. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996). While there is no "magic formula or catechism" in construing terms, the Court may exercise discretion in determining the appropriate weight to give to the evidence before it. *See Phillips v. AWH Corp.*, 415 F. 3d 1303, 1324 (Fed. Cir. 2005).

The Court concludes that Power's proposed construction – that the term "approximately constant output current," as used in claim 6 and its dependent claims, means "output current that remains substantially constant with changes in input line voltage" – is correct, as it comports best with the patent's specification and claims. The specification of the '270 patent repeatedly discloses that the claimed circuit acts to keep the output current substantially constant with

---

[10]Fairchild's account of the timing of the claim construction process is persuasive here. Considering that neither party proposed that this term should be included on the list of ten terms that the Court originally allowed, the Court agrees that Fairchild did not waive its opportunity to present its proposed construction.

respect to changes in line voltage. ('270 patent, col. 2 lines 42-27; *id.* at col. 3 lines 34-37; *id.* at col. 5 lines 47-52) Likewise, the Abstract, Summary, and Detailed Description of the '270 patent each state that output (or load) current is maintained at a constant with respect to input (or line) voltage. ('270 patent, col. 1 lines 1-4, 57-59; *id.* at col. 2 lines 42-45) Figure 1 of the patent also depicts a circuit structure for maintaining constant current with varying input line voltage.

Additionally, while Fairchild is correct that Figure 5 of the '270 patent shows a "region" in which the output current will be approximately constant, claim 6 only requires that the current be constant at a given output voltage below a certain "output threshold voltage" ('270 patent, col. 6 lines 58-60), not that it must remain constant for *any and all* variations in voltage. Furthermore, as Power contends, Figure 5 depicts merely one embodiment of the '270 patent's claimed invention. Fairchild's proposed construction would improperly read out one of the '270 patent's preferred embodiments; i.e., the embodiment disclosed in Figure 1. (D.I. 241 at 16)[11]

Having adopted Power's proposed construction of the disputed claim term, the Court finds there remain genuine disputes of material fact. While Power opines that Fairchild's

---

[11]As Fairchild observes, Power has filed a pending continuation application to the '270 patent, application number 12,581,054 (the "'054 application"). (D.I. 335 at 6-8; *see also* D.I. 338 at 3-4) The '054 application contains independent claim 11, which uses the same disputed "approximately constant output current" term, and adds dependent claim 12, which uses the same language Power proposes here for the proper construction for "approximately constant output current." To Fairchild, this demonstrates that the construction proposed by Power is not correct; otherwise, claim 12 of the '054 patent application would be redundant of its claim 11. The Court does not agree. Rather, it is persuaded by Power that claim 12 of the '054 application discloses that the approximately constant output current must remain "substantially constant at *all* line voltages" (D.I. 316 Ex. A at 17) (emphasis added), while claim 6 of the '270 patent only requires that the current be constant at a given output voltage below a certain "output threshold voltage" ('270 patent, col. 6 lines 58-60). (*See also* D.I. 336 at 6 ("Power Integrations is not seeking to limit claim 6 [of the '270 patent] to the identical 'all line voltages' language in the '054 application."))

accused products infringe, Fairchild disagrees, even applying Power's proposed (and now the Court's actual) construction. (*Compare* D.I. 303 at 2, D.I. 234 Ex. K at ¶ 91 *with* D.I. 318 at 2) At bottom, there is a factual dispute as to whether a 23% total variance of output current with changes in input line voltage is or is not "substantially constant." (*See generally* D.I. 234 Ex. H at ¶¶ 99, 102; D.I. 283 Ex. A at 290-91 (Power's Blauschild opining that total variance of 20% – i.e., plus or minus 10% – is substantially constant)) Accordingly, the parties' cross-motions for summary judgment relating to infringement will be denied

### C. Non-Infringement And Invalidity Of The Remaining Asserted Claims Of The Yang '595 Patent (D.I. 243)

In its counterclaims, Fairchild asserts that Power's accused products infringe, *inter alia*, Fairchild's '595 patent.[12] Power contends that its accused products do not infringe. Further, Power contends that the '595 patent is invalid. Power seeks summary judgment with respect to both non-infringement and invalidity of the '595 patent. The Court finds that genuine disputes of material fact preclude summary judgment on either ground.

#### 1. Infringement

Power argues that Fairchild has abandoned the theory of infringement it initially pressed in this action, in favor of a belated, post-discovery, drastically different theory, which Fairchild only first revealed in the opening report of its expert, Dr. Wei. Power further complains that Dr. Wei did not present a theory of infringement under the doctrine of equivalents until his supplemental report, even though he admitted he had all the information necessary to have done

---

[12] U.S. Patent No. 7,352,595. "Primary-Side Controlled Switching Regulator" (D.I. 305 Ex. I)

so at the time he wrote his initial report.[13]  Fairchild says very little to defend the timing of the revelation of its infringement theories.  Fairchild essentially limits its defense to an assertion that it and its expert diligently refined their positions based on information revealed through discovery.

The Court will not grant Power summary judgment due to the purportedly untimely nature of Fairchild's disclosure of its infringement position.  Under the circumstances – in which two sophisticated, well-represented parties are battling one another over multiple patents, and multiple products, in both this action and the simultaneously pending *Fairchild I* – the Court discerns no persuasive basis for depriving Fairchild of the opportunity to proceed with its now-disclosed infringement theories.  The Court does not find that Power will be unduly or unfairly prejudiced as a result.

Turning to the merits, Power insists that Fairchild's expert, Dr. Wei, has failed to demonstrate that the accused products have a "current signal," as required by the "second circuit" limitation in asserted claims 17 and 22.  In support of this proposition, Power points to Dr. Wei's deposition testimony, in which Dr. Wei testified that "a current signal is <u>represented</u> by the digital code S1-S14." (D.I. 245 at 17) (emphasis added)  Moreover, according to Power, Dr. Wei's belated infringement by equivalents theory is flawed because it fails to account for the "all elements rule" and the "prosecution history estoppel" doctrine.  (*Id.* at 20-21)  In response, Fairchild identifies six factual disputes it claims are material and preclude summary judgment. (D.I. 305 at 7-12)

---

[13]This is the same issue addressed by Power's Motion to Strike Wei's Supplemental Report (D.I. 232), which the Court will deny (*see infra*).

The Court agrees with Fairchild that genuine disputes of material fact are present and necessitate resolution by trial. Dr. Wei's opening and supplemental reports provide a basis from which a reasonable factfinder could conclude that Power's accused products infringe the '595 patent, literally and by the doctrine of equivalents. For example, Dr. Wei specifically states in his opening report that digital code S1-S14 represents the primary-side switching current of the transformer, and thus is the claimed "current signal." (D.I.305 Ex. D at ¶ 150) A reasonable factfinder could credit Dr. Wei's opinion and reach a verdict of infringement.

Power contends that "an expert's unsupported conclusion on the ultimate issue of infringement cannot alone create a genuine issue of material fact." (D.I. 245 at 16) For this proposition Power relies on *Intellectual Science and Technology, Inc. v. Sony Electronics Inc.*, 589 F.3d 1179, 1183-84 (Fed. Cir. 2009). The problem with the expert report at issue in *Intellectual Science* was that it failed to provide the factual bases for the expert's rationale, and failed to identify specifically which structural elements in the accused products practiced the limitations of the asserted patent claims. *See id.* at 1185-87. Here, by contrast, Dr. Wei's reports provide sufficient explanation from which a reasonable fact finder would know which structural elements are alleged to infringe. (D.I. 305 Ex. D at 28-31) In these circumstances, summary judgment of non-infringement is not appropriate. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (noting that explanation that demonstrated specific structural elements that practiced specific claims would have provided basis for factfinder to agree with expert and, therefore, would have defeated summary judgment).

19

### 2.   **Invalidity**

Power asserts that the '595 patent is invalid as anticipated. Anticipation requires that a single prior art reference disclose all of the limitations of the claim in dispute. *See, e.g., Zenith Elec. Corp. v. PDI Comm. Sys. Inc*, 522 F.3d 1348, 1363; *see also* 35 U.S.C. §102 (2006).

Here, Power argues that the report by its expert, Blauschild, makes out a prima facie argument that the Philips TEA1401T datasheet anticipates the asserted claims. Under Power's view, the only real issue that Fairchild raises about the TEA1401T datasheet is one of claim construction – whether the limitation "in order to compensate for voltage drop across a cable" should be read into the first reference signal because, according to Fairchild, that is "what the patent is about." (D.I. 245 at 26) Power argues that since this is a legal claim construction issue, and one that Fairchild waived by not raising it during the claim construction process, invalidity is ripe for summary determination by the Court. (*Id.*)

Fairchild responds by identifying two material facts that are in dispute: whether the prior art TEA1401T discloses a "first reference signal," and whether the TEA1401T discloses "voltage compensation." (D.I. 305 at 4-5) The two experts, Power's Blauschild and Fairchild's Wei, disagree about whether the compensation block of the TEA 1401T meets the first reference signal limitation contained in the '595 patent. (*Compare* D.I. 305 Ex. A at ¶ 17 *with* D.I. 305 Ex. B at ¶ 169)

The Court agrees with Fairchild. Whether the TEA1401T datasheet teaches each element of the claims, as construed by the Court, is a question of fact for the jury. *See Digital Control Inc. v. The Charles Machine Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006); *Innogenetics,* 512 F.3d at 1378 n.6. Resolution of these disputes by summary judgment would not, under the

20

circumstances, be appropriate.

**D.**   **Motion For Summary Judgment That SG's '972**
**Patent Is Unenforceable Due To Inequitable Conduct (D.I. 250)**

Power asserts that Fairchild's '972[14] patent is unenforceable due to inequitable conduct

committed during the patent's prosecution by its inventor, Ta-yung "Tom" Yang. (*See generally*

D.I. 211) In order to establish a prima facie case of inequitable conduct, a party must prove that

the patentee (i) failed to disclose or affirmatively misrepresented material information to the PTO

(ii) with the intent to deceive the PTO. *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,

537 F.3d 1357, 1365 (Fed. Cir. 2008); *see also* 37 C.F.R. § 1.56 (2004).

According to Power, two Power patents, the '876 and '366, were material and not

cumulative prior art to Fairchild's '972 patent, yet the Power patents were not disclosed to the

PTO. (D.I. 252 at 14) Power claims that none of the prior art that Fairchild disclosed in the '972

application contained a frequency hopping limitation. Even after Yang's initial application was

rejected and he amended it to include a "frequency hopping" limitation, he still failed to disclose

the Power patents, despite admitting to knowing about them.

In Power's view, Yang's intent to deceive is evident from the lack of credibility of his

explanation that he failed to disclose the Power patents because he believed his '972 patent was

limited to "primary side" control, making the prior Power patents immaterial. (*Id.* at 18) Yang,

who is not a patent attorney, admitted that he often does not read the "details" of his patent

applications. Power cites case law suggesting that ignorance of the legal significance of claims

---

[14]U.S. Patent No. 7,259,972. "Primary-Side-Control Power Converter Having a
Switching Controller Using Frequency Hopping and Voltage and Current Loops." (D.I. 253 Ex.
E)

does not excuse a failure to disclose material information. (*Id.* at 19)  Moreover, to Power, it is inconsistent for Yang to assert that he does not know the legal significance of the claim language he used while "in the same breath" state that he thought his patent was limited to the primary side. (*Id.*)  Finally, Power argues that Yang's pattern of disclosing the Power patents in connection with some but not all of his pending applications demonstrates his intent to deceive. In this regard, Power points out that Yang used a different law firm, Finnegan Henderson, to prosecute the '972 patent, rather than the J.C. Patents firm, which prosecuted previous Yang patents in which the Power patents were disclosed. (*Id.* at 24)

In response, Fairchild identifies material disputes of fact it insists preclude summary judgment. Fundamentally, Fairchild contends that the Court will have to weigh all the evidence, including its assessment of Yang's credibility, in evaluating Power's inequitable conduct claim. Fairchild disputes the materiality of the prior art Power patents, mostly on the basis that "frequency hopping" was well known in the art and, therefore, cumulative. Fairchild also insists that Yang's explanation that he believed his '972 patent was limited to "primary side control," rendering the Power patents immaterial, is plausible. (D.I. 304 at 4, 7)

Turning to intent, Fairchild points out that while Yang was a co-inventor on two prior patent applications that did disclose Power patents, he was the sole inventor on the '972 patent. It may be that the co-inventors on the other Yang patents were responsible for disclosing the Power patents; the failure to disclose those patents in the '972 prosecution may be due to the absence of the co-inventors. (*Id.* at 5)  Fairchild disputes whether Yang even knew of the Power patents. Fairchild also notes that Yang did not determine which law firm to use to prosecute each of his patent applications, making the switch to Finnegan irrelevant to an analysis of Yang's

22

intent.  Again, Fairchild emphasizes that resolution of the inequitable conduct defense turns on Yang's credibility, so the Court should not resolve the merits of this defense without observing Yang testify.

Taking the evidence in the light most favorable to Fairchild, as the non-moving party, the Court concludes that there is a genuine dispute both as to the materiality of the Power patents and as to Yang's intent in not disclosing that prior art.  *See Paragon Podiatry Lab, Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) (holding that inequitable conduct claims are resolved by judge in judge's discretion, but not on summary judgment if there is genuine dispute over materiality or intent elements).  Power argues that Yang's pattern of disclosing the Power patents in some prosecutions but not in others compels an "inference of intent."  The Court agrees that this is one reasonable inference, but others include that Yang's co-inventors on the earlier applications were responsible for disclosing the Power patents, or that Yang forgot about Power patents with which he was previously familiar.  In fact, Mr. Yang testified that he was only aware of four Power patents that were involved in on-going litigation elsewhere, not the specific patents that Power now alleges Mr. Yang intentionally did not disclose during his prosecution of the '972 patent.  (*See, e.g.*, D.I. 304 Ex. E at 117-18)

Inequitable conduct defenses are tried to the Court, not a jury.  *See General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994) ("The disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature."); *Paragon Podiatry*, 984 F.2d at 1190.  Here, the Court must observe Yang testify in person and make a credibility determination in order to evaluate his intent.

Power further characterizes its motion as presenting the following question: whether

Yang, "who admits he does not know the current legal standard, [can] withhold known, clearly material prior art from the PTO and his attorneys with no contemporaneous evidence of any reason for having done so and after the fact, during litigation, insulate himself from an inequitable conduct finding solely on the basis of a professed good-faith and yet mistaken understanding of the law?" (Tr. at 178-79) Power argues that allowing this issue to go to trial will induce inventors to "cultivate ignorance." (D.I. 321 at 13) The Court disagrees. After seeing all the evidence, including Yang's testimony, the Court may yet find that Yang did engage in inequitable conduct. The Court's ruling today is only that there are genuine disputes of material fact that preclude reaching any conclusion on the merits based on the current record.

Accordingly, the Court will deny Power's motion for summary judgment with respect to its defense of invalidity of Fairchild's '972 patent due to inequitable conduct.[15]

## IV.    Fairchild's Motions For Summary Judgment

### A.    No Willful Infringement Of Power's '876 And '851 Patents (D.I. 254)

In *Fairchild I*, Fairchild was found to have willfully infringed claim 1 of the '876 patent and claims 1 and 4 of the '851 patents. (*Fairchild I*, D.I. 415, 555, 750) In the instant action, Power asserts that Fairchild willfully infringes claims 1 and 21 of the '876 patent and claims 11, 17, and 18 of the '851 patent. (D.I. 255 at 2) Under the Federal Circuit's decision in *In re*

---

[15]Fairchild asks that the Court consider declining to reach the inequitable conduct issue at this time, because the Federal Circuit now has before it a case it will soon hear *en banc* that may address the legal standards applicable to a showing of inequitable conduct. *See Therasense, Inc. v. Becton, Dickinson & Co.*, Fed. Cir. No. 2008-1151 (slip op. April 26, 2010, granting motion for rehearing en banc). The Court has concluded it is more appropriate, under the circumstances of this case, to apply the law as it exists today, and deny Power's motion.

*Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), for Fairchild to be found liable for willful infringement, Power must prove by clear and convincing evidence that: (i) Fairchild acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and (ii) that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to Fairchild.

Fairchild moves for summary judgment of no willful infringement of the Power '876 and '851 patents, largely due to events that have occurred during the reexaminations of both of these patents. Fairchild contends that even if it infringed the '876 and '851 patents, its infringement cannot, as a matter of law, have been objectively reckless, given how poorly Power's patents are faring before the PTO in reexamination. Fairchild relies on cases suggesting that if the PTO grants reexamination of a patent, the PTO's finding of "substantial new questions" precludes a showing by the patentee of objective recklessness (and, therefore, of willfulness). *See, e.g., Pivonka v. Cent. Garden & Pet Co.*, 2008 U.S. Dist. LEXIS 12022, at *6 (D. Colo. Feb. 19, 2008); *Lucent Techs., Inc. v. Gateway, Inc.*, 2007 U.S. Dist. LEXIS 95934, at *22 (S.D. Cal. Oct. 30, 2007). Fairchild argues that when the PTO grants reexamination of a patent, this determination itself is evidence that the case presents a "close call" on validity, making a finding of willful infringement unavailable. (D.I. 255 at 8-10) It follows, in Fairchild's view, that the further along the reexamination process goes, the more evidence there is that the accused infringer was not "objectively reckless" in infringing the patent. (*Id.* at 11)

Here, according to Fairchild, the PTO's reexamination of Power's '876 and '851 patents demonstrate that Fairchild has a strong argument that these patents are not valid. Fairchild maintains that Power had to amend claim 1 of the '876 patent and, even after amendment, the

PTO rejected the claim as anticipated by three prior art references. (*Id.* at 12)  While Power has

appealed the amended version of claim 1 to the Board of Patent Appeals and Interferences, it has

not appealed the original version of claim 1, which gives rise to, in Fairchild's view, an

"irrebuttable presumption" that the original claim was flawed." (*Id.*) (relying on *Bloom Eng'g*

*Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997))  Since asserted claim 21 of the

'876 patent contains the same elements as those involved in the PTO's reexamination of claim 1

of the '876, Fairchild argues it cannot have been objectively reckless with respect to claim 21

either.  Similarly, with respect to the '851 patent, Power cancelled claim 11 and amended claim

17, in response to the PTO's initial rejection of those claims.  Claim 18 contains the same

operative elements as these two claims.  Therefore, Fairchild has a strong invalidity position and,

hence, its conduct cannot be objectively reckless.

     Power responds by identifying genuine disputes as to the following material facts:

Fairchild's knowledge of Power's patents before the litigation commenced; Fairchild's reverse-

engineering of Power's patents; Fairchild's continual infringement of Power's patents despite

two jury verdicts and an injunction in *Fairchild I*; and Fairchild's lack of any meaningful non-

infringement position with respect to the '876 patent, other than one that sounds in an untimely

claim construction issue. (D.I. 284 at 4-5)  Power also argues that adopting Fairchild's view

would mean that any reexamination proceeding would act as a *per se* bar to a patentee recovering

for willful infringement. (*Id.* at 1)  Because reexaminations are granted with such frequency, this

would encourage all accused infringers automatically to seek reexamination, effectively

eliminating the availability of enhanced damage recoveries for patent holders whose patents are

willfully infringed.  Power also observes that, in making a willful infringement finding, the

factfinder is required to use a "totality of the circumstances" analysis, so the sole fact of a reexamination (in whatever stage) cannot itself be determinative. (*Id.* at 2)

Power also challenges Fairchild's characterization of the reexamination proceedings – which, Power emphasizes, do not even involve the same claims that are asserted against Fairchild here (claim 21 of the '876 patent and claim 18 of the '851 patent). Power argues that it has not "cancelled" claims 1 and 11 of the '851 patent; instead, Power rewrote them as claims 19 and 20, at the request of the PTO. (*Id.* at 3, 6; *see also* D.I. 342) Moreover, Power insists it has made no substantive changes to any of the patent claims undergoing reexamination. Indeed, Power argues that the PTO has now accepted the amended version of claim 11 of the '851 patent, contained as claim 20, that merely incorporates the Court's prior construction of "frequency variation signal." (D.I. 342) Moreover, the reexamination proceedings are ongoing and will not be final until after all appeals are completed.

Most importantly, Power explains that the standard by which the PTO conducts a reexamination is not the same as the standard used in litigation regarding the validity of a patent. *See, e.g., In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008) ("PTO examination procedures have distinctly different standards, parties, purposes, and outcomes compared to civil litigation."); *Ethicon v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988) ("The two forums [district court and the PTO] take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions."). For this reason, courts routinely refuse to permit evidence of reexamination proceedings to be introduced before a jury, fearing that it will confuse the jury and unfairly prejudice one side or the other. *See, e.g., Cordis Corp. v. Boston Scientific Corp.*, 2010 WL 331792, at *3 (D. Del. Jan 28, 2010) ("Consequently, I am very

27

uncomfortable with characterizing administrative and court decisions as 'objective evidence' for presentation to a jury. As recognized by counsel, a jury is going to give such evidence great weight, even when the procedural and substantive bases for most such decisions will not be apparent to the jury."); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 2009 WL 3822694, at *2 (S.D. Cal. Nov. 13, 2009) (excluding evidence of reexamination proceedings under FRE 403 as substantially outweighed by danger of unfair prejudice).

The Court is persuaded by Power and the authorities it cites that there is a substantial risk of confusion and unfair prejudice if a jury deciding issues of infringement and validity is presented with the full record of the ongoing reexamination proceedings. However, this case is noteworthy in that: the reexamination proceedings here are far advanced and have not gone entirely well for the patentee; these parties know one another, and each others' patent portfolios, very well; and these parties have been engaged in patent litigation against one another for many years. In these circumstances, it would be unfair to Fairchild to make a determination that it acted willfully – that is, despite an objectively high likelihood that its actions constituted infringement of a *valid* patent – without even considering the possibility that the PTO may, in the end, invalidate one or more of Power's asserted patent claims.

Balancing these competing concerns, the Court has decided to exercise its discretion to sever the issue of willful infringement for a separate trial. *See* Fed. R. Civ. Proc. 42(b); *see also Ciena Corp. v. Corvis Corp.,* 210 F.R.D. 519, 521 (D. Del. 2002) ("Under Rule 42(b) a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. . . . Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice, conserve judicial

28

resources, and enhance juror comprehension of the issues presented in the case.") (internal quotation marks omitted); *Allergan Inc. v. Pharmacia Corp.*, 2002 WL 1268047, at *1 n.1 (D. Del. May 17, 2002). If Power prevails at the initial trial, by proving infringement of a valid claim of the '876 or '851 patents, the Court will hold a separate trial on whether Fairchild's infringement was willful. Evidence of the pending reexaminations may be admissible at the willfulness trial, although the Court is not today making any decisions on admissibility.

Accordingly, Fairchild's motion for summary judgment of no willful infringement will be denied without prejudice. Fairchild may renew its motion following trial on infringement and validity and prior to the separate trial on willfulness.

## B.   Limitation Of Damages (D.I. 262)

Fairchild argues that Power's damages should be limited in three respects: 1) Power may not recover "worldwide" damages, as the vast majority of Fairchild's accused products have no connection to the U.S. market; 2) Power may not recover pre-complaint damages, as Power failed to mark or to provide constructive or actual notice of its patents, as required by 35 U.S.C. § 287; and 3) Power may not recover damages based on "lost profits," because Power cannot establish that Fairchild's alleged infringement was the "but for" cause of Power's lost sales. Naturally, Power disputes each of Fairchild's assertions.

Pursuant to Federal Rule of Civil Procedure 42(b), the Court will sever issues of damages for a separate trial, to follow trial on infringement and validity. Given that this case involves three Power patents and two Fairchild patents, at least eighteen asserted claims, three families of accused devices, and several infringement and invalidity theories for each patent-in-suit, trial of infringement (not to mention validity) will already present a complex task for the jury.

29

Considering also that Power and Fairchild have been litigating against one another in this District for seven years, and that *Fairchild I* remains pending in this Court, the additional delay imposed as a result of the Court's separation of the damages issue will not be unduly prejudicial to either party. There is also the possibility that the outcome at the first trial may make it unnecessary to try damages. Considering the Court's scarce judicial resources, on the whole the Court concludes that separation of damages is appropriate. *See Ciena*, 210 F.R.D. at 521.

Accordingly, the Court will deny Fairchild's motion without prejudice. Fairchild may renew its motion to limit damages after trial of infringement and validity and prior to the separate trial on damages.

### V.    **Daubert Motions**

#### A.    **Power's Motion To Strike Wei's Supplemental Expert Report (D.I. 232)**

Power moves to strike the Supplemental Expert Report of Fairchild's expert, Dr. Wei. (D.I. 234 Ex. B (hereinafter "Wei's Supplemental Report")) Power asserts two grounds. First, Power contends that Wei's Supplemental Report contains an untimely articulation of Fairchild's theory that Power infringes Fairchild's '595 and '972 patents under the doctrine of equivalents. Second, Power contends that Wei's Supplemental Report departs significantly from the Court's claim construction order in this case. The Court addresses each of these arguments in turn.

#### 1.    **Fairchild's Theory of Infringement by Equivalents**

On November 7, 2008, Fairchild filed its counterclaims, asserting that Power infringed Fairchild's '972, '595, and '780 patents. (D.I. 49 at ¶¶ 9-23) On November 19, 2008, Power answered Fairchild's counterclaims, including by denying that it infringed Fairchild's asserted

patents. (D.I. 50 at ¶¶ 9-23, 43, 60, 66, 72)

On January 29, 2009, the Court entered a Scheduling Order. (D.I. 61)  Among the

pertinent provisions of the Scheduling Order is ¶ 3.c:

> The Court encourages the parties to serve and respond to contention interrogatories early
> in the case.  Accordingly, on or before April 20, 2009 the parties will respond to
> contention interrogatories regarding infringement contentions, and will no longer contend
> that it is premature to respond to such contention interrogatories.  On or before May 20,
> 2009 the parties will respond to contention interrogatories regarding invalidity
> contentions, and will no longer contend that it is premature to respond to such contention
> interrogatories.  These deadlines regarding contention interrogatories are not final.

Also pertinent is ¶ 3.d:

> Disclosure of Expert Testimony.  For the party who has the initial burden of proof on the
> subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on
> or before January 31, 2010.  The supplemental disclosure to contradict or rebut evidence
> on the same matter identified by another party is due on or before February 28, 2010.  All
> expert discovery, including expert depositions, [shall] be completed by March 31, 2010.[16]

The Scheduling Order neither expressly permitted nor prohibited the filing of additional expert

reports, including a "rebuttal" report from a party on an issue on which it has the burden of proof.

Consistent with the Scheduling Order, on April 20, 2009 both parties served one another

with infringement contentions regarding their respective asserted patents. (D.I. 233 at 4; D.I. 234

Exs. C & D)  At this time, Fairchild did not disclose a basis for infringement under the doctrine

of equivalents, although Fairchild did put Power on notice that it might do so in the future. (D.I.

234 Ex. A at ¶¶ 67, 142; *see also* D.I. 281 Ex. A at 6)  There is no dispute that Fairchild bears the

---

[16]Trial was scheduled for October 4, 2010. (D.I. 61 at ¶ 20)  Subsequently, due in part to
the retirement of U.S. District Judge Joseph J. Farnan, Jr., this trial date was vacated. (D.I. 332)
No new trial date has been set.

burden of proof on the issue of infringement of the Fairchild patents under the doctrine of equivalents.

In July 2009, both parties complained about the adequacy of each other's responses to contention interrogatories. (D.I. 96, 99, 100, 101) The Court held a teleconference and denied both parties' requests to compel production of more detailed responses. (D.I. 105 at 26-27) At no point prior to service of Wei's Supplemental Report did Fairchild serve Power with supplemental interrogatory responses disclosing the basis for Fairchild's contention that Power infringes under the doctrine of equivalents.[17]

On February 1, 2010, Fairchild served the opening expert report of Wei. (D.I. 233 at 5-6; D.I. 234 Ex. A ("Wei's Opening Report")) Consistent with the approach Fairchild had taken in connection with its infringement contentions, Wei's Opening Report declined to address the doctrine of equivalents, but made clear that Wei would opine that Power's accused devices infringe under that doctrine if he eventually decided he needed to address the issue. (D.I. 281 at 4; D.I. 234 Ex. A at ¶¶ 67, 142 and p. 124 n.31) On March 1, 2010 (the first business day after the Scheduling Order's deadline of February 28, 2010), Power served the rebuttal expert report of Blauschild, responding to Wei's opinion of infringement. (D.I. 233 at 6) On March 16, 2010, Fairchild served Wei's Supplemental Report, which, unlike Wei's Opening Report, articulated a theory of infringement under the doctrine of equivalents. (*Id.*; D.I. 234 Ex. B)

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that an expert's report contain "a

---

[17]To the extent Power is arguing that Fairchild failed to disclose its doctrine of equivalents contentions in response to Power's interrogatories during discovery (D.I. 233 at 4), the Court rejects this argument as a basis for striking Wei's Supplemental Report. During discovery, the Court denied Power's request to compel further responses to Power's contention interrogatories. (D.I. 105)

complete statement of all opinions the witness will express and the basis and reasons for them."

Further, Rule 26(a)(2)(C) provides that "a party must make these [expert] disclosures at the time

and in the sequence that the court orders." Parties are always under an obligation to supplement

their contentions, including supplementing expert reports, when it becomes necessary to do so.

*See* Fed. R. Civ. Proc. 26(e)(1)(A) ("[A]ny party who has . . . responded to an interrogatory . . .

must supplement or correct its disclosure or response . . . in a timely manner if the party learns

that in some material respect the disclosure or response is incomplete."); *see also* D.I. 105 at 27

(Court reminding parties "of their ongoing obligation to supplement, in particular, contention

interrogatories"). Parties may not use their obligation to supplement as an excuse to violate the

clear terms of a Scheduling Order, unilaterally buying themselves additional time to make

disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a

case.

Pursuant to Rule 37(c)(1), the Court has the power to exclude evidence as a sanction for a

party's failure to comply with its obligations under the rules, including the specific deadlines and

obligations imposed by a scheduling order. Exclusion of "critical evidence," such as an expert

report on infringement, is an "extreme sanction, not normally to be imposed absent a showing of

willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re

Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks

omitted); *see also Dow Chem. Co. v. Nova Chems. Corp.*, No. 05-737-JJF, 2010 U.S. Dist.

LEXIS 50101, at *4 (D. Del. May 20, 2010).

Whether to strike the portion of Wei's Supplemental Report finally disclosing Fairchild's

theory of infringement by the doctrine of equivalents presents a close call. The factors favoring

striking include: Fairchild has the burden of proof on infringement, including under the doctrine

of equivalents, and the combination of the Scheduling Order and Rule 26(a)(2) make clear that

Fairchild should have disclosed the bases of its equivalents theory no later than Wei's Opening

Report; Fairchild knew at the time it served Wei's Opening Report that Power was disputing that

it literally infringed Fairchild's asserted patent claims; and, at the time he was preparing his

opening report, Wei already had all the materials he needed to reach his opinion – and articulate

the bases for it – that Power infringed under the doctrine of equivalents (D.I. 234 Ex. I at 16-17,

30-31).  By contrast, the factors disfavoring striking include: Power knew at least since Fairchild

served its responses to contention interrogatories in April 2009 that Fairchild was likely going to

attempt to prove infringement under the doctrine of equivalents; and courts' general reluctance to

strike crucial evidence from a case, as reflected in the stringent burden a party seeking such

exclusion must meet, particularly when relief short of such exclusion may alleviate any unfair

prejudice to the party seeking exclusion.

The Court concludes that the appropriate exercise of its discretion, under all the

circumstances, is to deny the motion to strike, but to permit Power (if it has not already done

so)[18] to prepare and serve an additional rebuttal expert report, solely devoted to Fairchild's theory

of infringement under the doctrine of equivalents.  The Scheduling Order always contemplated

that depositions of experts would be completed within 31 days after service of the rebuttal expert

reports.  (D.I. 61 ¶ 3.d)  Fairchild's belated disclosure of the bases for its doctrine of equivalents

theory reduced this 31-day period to just 15 days before Wei's deposition (March 17-31) – which

---

[18]It is not clear to the Court from the record whether Power has already served a report in
response to Wei's Supplemental Report.  (*See* D.I. 293 at 6 n.3)

is significant but not, in the context of this case, monumental.  Additionally, the Court is unpersuaded by Power's rhetoric that Fairchild is engaging in "trial by ambush."  (D.I. 233 at 1) Power has long been on notice that Fairchild was asserting infringement by doctrine of equivalents, could have taken discovery with respect to this theory of infringement, and obtained full disclosure of Fairchild's contentions on this theory prior to the conclusion of expert discovery, in sufficient time remaining to permit Wei to be deposed on all of his opinions.  There is, at present, no trial date in this case.  Plainly, once this case does get to trial, Power will have no reasonable basis to assert it is surprised by Fairchild's doctrine of equivalents analysis.

The parties shall meet and confer and provide the Court with their proposal(s) for a modification of the Scheduling Order consistent with this ruling.  Power's motion to strike the portions of Wei's Supplemental Report regarding infringement by the doctrine of equivalents will be denied.[19]

## 2.    Wei's Handling Of Claim Construction Issues

Pursuant to the Scheduling Order, the parties submitted a Joint Claim Construction Chart identifying the claim terms that the parties agreed required construction by the Court.  (D.I. 109) The Court then received claim construction briefing, held a *Markman* hearing, and issued a Report & Recommendation regarding the proper construction of ten disputed claim terms. (D.I.118, 122, 138, 140, 174, 184, 212)  Both parties objected to portions of the Report &

---

[19]Both parties direct the Court to *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457 (D. Del. 2005), *rev'd in part on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).  In evaluating whether to exclude testimony because of the timing of its disclosure, the Court should evaluate whether the non-disclosing party had all of the necessary information to be able to make timely disclosure, the validity of the party's excuse, any intent to mislead or thwart the party's adversary, and any willful misconduct.  (*Id.*)  The Court has considered these factors in its analysis.

Recommendation. (D.I. 220, 221, 222, 223) On July 20, 2010, the Court adopted the Report & Recommendation without modification. (D.I. 337)

Wei's Supplemental Report expresses opinions that, in Power's view, are inconsistent with the Court's claim construction. Specifically, Power argues that portions of Wei's Supplemental Report must be stricken for the following reasons: (i) Wei purports to construe claim terms for which Fairchild never provided proposed constructions; (ii) Wei "re-construes" claim terms that the Court already construed; and (iii) Wei purports to construe claim terms that the Court "implicitly" already construed. The Court addresses each of Power's contentions in turn.[20]

**a.   Terms for which Fairchild never proposed constructions**

**i)   "approximately constant output current"**

Following the motions hearing in June 2010, the Court ordered supplemental briefing, including on the parties' proposed constructions of the term "approximately constant output current." (D.I. 332) Earlier in this Opinion, in conjunction with Power's motion for summary judgment of infringement by Fairchild of claims 6-9 of the '270 patent, the Court found it necessary to construe this claim term. (*See supra* 3(B) (discussing cross-motions for summary judgment of infringement and invalidity of '270 patent)) Accordingly, there is no basis to strike the portions of Wei's Supplemental Report that, in Power's view, purport to construe this claim term or which otherwise relate to this claim term. Power's motion to strike will be denied in this respect.

---

[20]The law governing claim construction is set out in the Court's Report & Recommendation. (D.I. 212 at 9-11)

ii)    "a feedback terminal coupled
to disable the regulation circuit"

The Court ordered supplemental briefing on the proper construction of this claim term.

(D.I. 332) The parties provided this briefing. (D.I. 335, 336, 338) As the Court will now

construe this disputed claim term, there is no basis to strike the portions of Wei's Supplemental

Report that, in Power's view, purport to construe it or that otherwise relate to this term.

Fairchild argues that the phrase "feedback terminal coupled to disable the regulation

circuit," which appears in claim 11 of Power's '851 patent, must be construed according to its

plain and ordinary meaning. In Fairchild's view, this means that "the feedback terminal must be

capable of disabling the entire regulation circuit." (D.I. 335 at 8) Dr. Wei agrees. (D.I. 234 Ex.

K at ¶ 60) Fairchild notes that claim 11 includes a "regulation circuit *comprising*" various

elements, including a "frequency variation circuit," an "oscillator," and a "drive circuit." (D.I.

335 at 8) (emphasis added) "In the patent claim context the term 'comprising' is well understood

to mean 'including but not limited to.'" *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356,

1360 (Fed. Cir. 2007). Thus, in Fairchild's view, if the feedback terminal disables the

"regulation circuit," and the regulation circuit includes but is not limited to a "frequency

variation circuit," an "oscillator," and a "drive circuit," it follows that "to disable the regulation

circuit" requires being "capable of disabling the entire regulation circuit." Fairchild finds

confirmation of its reading of the disputed claim term in the specification, which discloses a

preferred embodiment that operates by having a feedback terminal disable the entire regulation

circuit. ('851 patent, col. 10 lines 15-19, 50-53; *id.* Fig. 8)

Power, by contrast, proposes that this claim term should be construed to mean "the

37

feedback signal received at the feedback terminal is used either to terminate a switching cycle, or to inhibit a switching cycle in order to regulate the output." (D.I. 233 at 17; D.I. 234 Ex. E at 3) Power notes that the only element in claim 11 of the '851 patent that is expressly conditioned on the regulation circuit being "not disabled" is the drive circuit. (D.I. 336 at 8; *see also* '851 patent, col. 13 lines 41-43 ("a drive circuit that provides said drive signal when said maximum duty cycle signal is in said first state and said regulation circuit is not disabled")) In Power's view, Fairchild's construction would exclude all of the embodiments disclosed in the specification. (D.I. 336 at 8)

Having reviewed the '851 patent, the parties' supplemental briefs, and the materials referred to in the briefs, the Court adopts Power's proposed construction. There is no disclosure in the '851 patent, including in its specification, of the feedback signal being used to turn off the oscillator or the frequency variation circuit. It appears that Fairchild's proposed "plain meaning" would render the claimed invention unworkable. (*See* D.I. 336 at 9) It also appears that Fairchild's construction would read out of the patent every embodiment of the invention disclosed in the patent.

Thus, the Court construes the phrase "feedback terminal coupled to disable the regulation circuit," as used in claim 11 of the '851 patent, to mean "the feedback signal received at the feedback terminal is used either to terminate a switching cycle, or to inhibit a switching cycle in order to regulate the output."

b. **Terms Wei purportedly attempts to "re-construe"**

Power argues that there are three terms this Court has already construed that Wei's Supplemental Report improperly attempts to "re-construe." The terms are: (i) "the first reference

signal is varied in response to the change of the second signal," as used in claim 17 of the'595

patent; (ii) "a digital to analog converter," as used in claim 1 of the '876 patent; and (iii) "means

. . . for varying the switching frequency," as used in claim 21 of the '876 patent. There is no

question that the Court has construed each of these terms. (D.I. 212 at 43-44; D.I. 337 (adopting

R&R)) In doing so, the Court complied with its obligation, as a matter of law, to determine the

proper meaning of disputed claim terms. *See Markman v. Westview Instruments, Inc.*, 517 U.S.

370 (1996). Parties, their experts, and their attorneys are not permitted at trial to reargue claim

construction or to take positions that are inconsistent with the Court's construction. *See*

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).

While a claim construction ruling is always an important stage in patent infringement

litigation, it is not automatically dispositive. Wei attests that in forming his opinions he relied on

the Court's construction of the disputed claim terms. This includes the Court's constructions on

the three terms Power now accuses Wei of "re-construing." (*See, e.g.,* D.I. 281 Ex. G at ¶¶ 58,

222, 229; *see also* D.I. 281 Ex. N at ¶¶ 31-32) The Court finds no basis to reject Wei's

representation. Power will be entitled to cross-examine and otherwise challenge Wei's opinion

at trial.

In essence, Power's position is that Wei should have agreed with Power's own expert,

Blauschild, that, under the Court's construction, Power should prevail in this case. The Court

does not agree. Thus, the Court will not strike the portions of Wei's Supplemental Report in

which Power believes Wei has "re-construed" the Court's claim construction.

### c.      **Terms this Court "implicitly" construed**

Power asserts that Wei's Supplemental Report improperly relies on constructions of

39

disputed claim terms that are inconsistent with the constructions that were "implicitly" adopted by this Court in its *Markman* rulings. The two terms Power insists were "implicitly" construed are: "the oscillator having a control input," as used in claims 1 and 21 of Power's '876 patent; and "voltage control loop . . . in the primary side," as used in claims 22 and 32 of Fairchild's '972 patent.

The Court did not "implicitly" construe the claim terms identified by Power. Instead, the Court precisely construed those – and only those – claim terms as described in the Report & Recommendation. (D.I. 212 at 43-45) (adopted by D.I. 337) The implications of the Court's constructions are matters on which the parties' experts may opine, and may disagree.

The Court recognizes its obligation to construe all disputed claim terms (which are material to asserted claims) by the time it instructs the jury. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). To the extent one or both parties believe that additional claim terms still need to be construed, they shall provide their proposed constructions, and support for them, in the proposed pretrial order. The Court finds no basis for striking the portions of Wei's Supplemental Report relating to terms that Power contends have already been "implicitly" construed by the Court.

**B.      Power's Motion To Strike Improper Expert Testimony On Willfulness (D.I. 247)**

Power moves to exclude the expert testimony of Fairchild's Stephen Marcus, an attorney who has prepared a report relating to the reexamination proceedings and their impact, if any, on Power's claim of willful infringement. As has already been explained, the Court will be severing

the issue of willfulness for a separate trial to follow trial on infringement and invalidity. Accordingly, the Court will deny Power's motion to strike without prejudice to Power's opportunity to renew its motion prior to the separate trial on willfulness.

### C. Fairchild's Motion To Preclude Expert Testimony On Damages (D.I. 260)

Fairchild moves to preclude the testimony of Power's damages expert, Richard Troxel. As has already been explained, the Court will be severing the issue of damages for a separate trial to follow trial on infringement and invalidity. Accordingly, the Court will deny Fairchild's motion to strike without prejudice to Fairchild's opportunity to renew its motion prior to the separate trial on damages.

## VI.   CONCLUSION

The Court will enter an Order consistent with the rulings described above on each of the pending motions.