## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 08-309-LPS |
| | : |
| FAIRCHILD SEMICONDUCTOR | : |
| INTERNATIONAL INC., FAIRCHILD | : |
| SEMICONDUCTOR CORPORATION, and | : |
| SYSTEM GENERAL CORPORATION, | : |
| | : |
| Defendants. | : |

William J. Marsden, Jr., Esq., Joseph B. Warden, Esq., FISH & RICHARDSON, P.C., Wilmington, DE.
Frank E. Scherkenbach, Esq., FISH & RICHARDSON, P.C., Boston, MA.
Howard G. Pollack, Esq., Michael R. Headley, Esq., FISH & RICHARDSON, P.C., Redwood City, CA.

> Attorneys for Plaintiff Power Integrations, Inc.

John G. Day, Esq., Lauren E. Maguire, Esq., Andrew C. Mayo, Esq., ASHBY & GEDDES, Wilmington, DE.
Blair M. Jacobs, Esq., Christina A. Ondrick, Esq., Rose S. Whelan, Esq., McDERMOT WILL & EMERY LLP, Washington, DC.
Terrence P. McMahon, Esq., McDERMOT WILL & EMERY LLP, Menlo Park, CA.
Leigh J. Martinson, Esq., McDERMOT WILL & EMERY LLP, Boston, MA.

> Attorneys for Defendants Fairchild Semiconductor International Inc., Fairchild Semiconductor Corporation, and System General Corporation.

## MEMORANDUM OPINION

March 29, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the parties' post-trial motions. Plaintiff Power Integrations, Inc. ("Power") filed the following post-trial motions: (1) Power's Motion for Judgment as a Matter of Law (JMOL) of Invalidity of the '972 Patent, or for a New Trial (D.I. 613); (2) Power's Motion for JMOL of Non-Infringement of the '972 Patent, or for a New Trial (D.I. 614); (3) Power's Motion for JMOL of Anticipation of the '595 Patent, or for a New Trial (D.I. 615); (4) Power's Motion for JMOL of Infringement of the '605 Patent, or for a New Trial (D.I. 616); (5) Power's Motion for JMOL of Infringement of the '270 Patent, or for a New Trial (D.I. 618); and (6) Power's Motion for JMOL that the '876 Patent is Literally Infringed by the SG5841J-Type Products, or for a New Trial (D.I. 617).

Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and System General Corporation (collectively, "Fairchild") filed the following post-trial motions: (1) Fairchild's Motion for JMOL of Infringement of the '972 Patent, or for a New Trial; (2) Fairchild's Motion for JMOL of Anticipation of the '605 Patent, or for a New Trial; (3) Fairchild's Motion for JMOL of Anticipation of the '270 Patent; (4) Fairchild's Motion for JMOL of Anticipation of the '876 Patent; (5) Fairchild's Motion for JMOL of no Literal Infringement of the '876 Patent, or for a New Trial; (6) Fairchild's Motion for JMOL of No Induced Infringement of the '851 and the '876 Patents, or for a New Trial; and (7) Fairchild's Motion for JMOL of Non-Infringement of the '851 Patent, or for a New Trial (D.I. 619).[1]

---

[1] The parties' inequitable conduct claims are not addressed in this Opinion and will be resolved by the Court in due course.

1

## I. BACKGROUND

Power filed this patent infringement action on May 23, 2008, alleging that Fairchild infringes four patents: United States Patent Nos. 6,249,876 ("the '876 patent"); 6,107,851 ("the '851 patent"); 7,110,270 ("the '270 patent"); and 7,834,605 ("the '605 patent"). (D.I. 1) Fairchild filed a counterclaim, alleging that Power infringes two Fairchild patents: United States Patent Nos. 7,259,972 ("the '972 patent"); and 7,352,595 ("the '595 patent"). (D.I. 49)

After a ten-day trial,[2] the jury returned the following verdict. (D.I. 576) For the '876 patent, the jury found that Fairchild's FAN103-type products literally infringe and that Fairchild's SG5841J-type products infringe under the doctrine of equivalents. The jury also found that Fairchild induced infringement for both the FAN103 and SG5841J products, and that claims 1 and 21 of Power's '876 patent are valid. For the '851 patent, the jury found in favor of Power and against Fairchild with respect to literal infringement, indirect infringement, and validity of the only asserted claim, claim 18. For the '270 patent, the jury found in favor of Fairchild and against Power with respect to literal and indirect infringement of claims 6 and 7. The jury also determined that claims 6 and 7 of the '270 patent are valid. For the '605 patent, the jury found in favor of Fairchild and against Power with respect to literal and indirect infringement of claims 1 and 2. The jury determined that claims 1 and 2 of Power's '605 patent are valid. With respect to Fairchild's patents, the jury found that Power directly infringed claims 6, 7, 18, and 19 of the '972 patent under the doctrine of equivalents, but did not literally infringe those claims and did not induce infringement. The jury also found that claims 6, 7, 18, and 19 of

---

[2]The trial transcript appears in the record as D.I. 593-602. All citations to the trial transcript are in the format "Tr." followed by the page number.

Fairchild's '972 patent are valid. For the '595 patent, the jury found that Power does not infringe claims 17 and 22 either literally or under the doctrine of equivalents. The jury also found that claims 17 and 22 of Fairchild's '595 patent are valid.

The parties completed their extensive briefing of post-trial motions on August 8, 2012.

## II.  LEGAL STANDARDS

### A.  Motion for Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a sparingly invoked remedy," one "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal quotation marks omitted).

To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings."[3] *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888,

---

[3]At trial, both parties properly made motions for judgment as a matter of law, which were taken under advisement. (*See* Tr. at 2258-72)

3

893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.,* 732 F.2d at 893. The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.,* 732 F.2d at 893. Rather, the court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.,* 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Wright & Miller, *Federal Practice & Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

**B.      Motion for a New Trial**

Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

> A new trial may be granted to all or any of the parties and on all or
> part of the issues in an action in which there has been a trial by
> jury, for any of the reasons for which new trials have heretofore
> been granted in actions at law in the courts of the United States.

New trials are commonly granted in the following situations: (1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence exists that would likely alter the outcome of the

4

trial; (3) where improper conduct by an attorney or the court unfairly influenced the verdict; or

(4) where the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations,* 953 F. Supp. 581, 584 (D. N.J. 1997) (citations omitted).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under deferential "abuse of discretion" standard). However, where the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the court need not view the evidence in the light most favorable to the verdict winner – a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53.

## III.    POWER INTEGRATIONS' POST-TRIAL MOTIONS

### A.    Power's Motion for Judgment as a Matter of Law of Invalidity of the '972 Patent, or for a New Trial

Power moves for judgment as a matter of law that claims 6, 7, 18, and 19 of Fairchild's '972 patent are invalid as obvious. (D.I. 625) In the alternative, Power seeks a new trial. The Court will deny the motion.

5

### 1.    Judgment as a Matter of Law

At trial, Power argued that claims 6, 7, 18, and 19 of the '972 patent are invalid as

obvious over the combination of the Majid '242 patent and Power's '876 patent. The jury

disagreed. Power now contends that the jury reached the wrong result. According to Power,

both sides agreed that the combination of the '242 and '876 patents showed every element of the

asserted claims, leaving only two issues in dispute: (1) whether the '242 and '876 patents could

be combined to reach a conclusion of obviousness; and (2) whether secondary considerations

support a conclusion of non-obviousness. (D.I. 635 at 1)  With respect to the first issue, Power

contends that Fairchild's arguments were legally irrelevant and insufficient in view of the

obviousness standard set forth in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).  (D.I.

635 at 6)  According to Power, Fairchild's expert, Dr. Wei, improperly relied on several

"unclaimed elements" to support his arguments. (D.I. 635 at 6)  By contrast, Power contends that

its expert, Dr. Kelley, explained precisely where each element of the claims is found in the prior

art and why Power's proposed combination was appropriate. (D.I. 635 at 6-7)  For secondary

considerations, Power contends that Fairchild failed to link any evidence of long-felt need and

commercial success to the claims of the '972 patent. (D.I. 635 at 7-12)  According to Power,

Fairchild also admitted that the products forming the basis of its commercial success argument

do not practice the '972 patent. (D.I. 635 at 11)

There is substantial evidence to support the jury's verdict. As patents are presumed valid,

Power had the burden to prove invalidity by clear and convincing evidence. *See* 35 U.S.C.

§ 282; *Hewlett-Packard* Co. *v. Bausch & Lomb,* 909 F.2d 1464, 1467 (Fed. Cir. 1990). At trial,

Dr. Wei testified regarding the differences between the claims of the '972 patent and the prior art,

6

the difficulty in making the combination that Power proposed, and the inconsistencies in the testimony offered by Power's expert, Dr. Kelley. (Tr. at 2207-11) In view of the conflicting expert testimony, it was up to the jury "to determine the experts' credibility and weigh the evidence appropriately." *Belden Technologies Inc. v. Superior Essex Communications LP*, 802 F. Supp. 2d 555, 563 (D. Del. 2011); *see also ArcelorMittal France v. AK Steel Corp.*, 811 F. Supp. 2d 960, 967 (D. Del. 2011) ("[T]he jury was free to give whatever weight it felt appropriate to the testimony of the various experts and fact witnesses."). Fairchild also offered evidence of secondary considerations of non-obviousness, which was sufficiently linked to the '972 patent. The jury heard the evidence presented by both sides at trial and found that the asserted claims were valid. Giving Fairchild the benefit of all logical inferences, and resolving all conflicts in the evidence in Fairchild's favor, the Court will deny Plaintiff's motion.

## 2. New Trial

Power contends that a new trial is necessary because: (1) Dr. Wei's testimony went beyond the scope of his expert report; and (2) the verdict is against the great weight of the evidence. (D.I. 635 at 12) For the first issue, Power identifies four purported violations of Rule 26 relating to Dr. Wei's testimony about the difficulty of combining a primary side controller with frequency hopping. Fairchild disagrees that the testimony went beyond the scope and further contends that an evaluation of the merits is not necessary because Power failed to object at trial, thereby waiving the objection. Power responds that an objection was not necessary, because "[a]s explained at the pre-trial conference, the Court does not rule on Rule 26 objections at trial but rather does so in the context of post-trial briefing." (D.I. 635 at 12)

The Court does not agree with Power's interpretation of the Court's procedures for Rule

26 objections. During the pre-trial conference, the Court explained that:

> I don't rule, on objections that expert testimony is beyond the
> scope of the expert report, I don't rule on that during trial. You can
> note that objection and I will indicate that it's noted, but if you
> wish to have a ruling on an objection that expert testimony is
> beyond the scope, then you need to renew that objection in
> post-trial motions, you need to brief it, and I will make a ruling in
> connection with post-trial motions.

(D.I. 561 at 52) It appears both parties understood that an objection must be made at trial to be

preserved, since both parties raised such objections at trial. (*See* Tr. at 1615 ("MR. POLLACK:

Objection, your Honor. That is beyond the scope. He never provided such opinions before in

this case."), Tr. at 1636 ("MR. McMAHON: Objection your Honor. This is expert testimony.

It's not disclosed, Rule 26.")) The Court further explained its procedures several times during

trial. (*See, e.g.*, Tr. at 1175-76, 1547)

The Court is not persuaded by Power's contention that the offending testimony "came as

a complete surprise." (D.I. 708 at 7) Dr. Wei was asked to explain the basis for his non-

obviousness opinion and he did so. There is no reason Power could not have objected to the

testimony. Without an objection at trial, there was no opportunity for Fairchild to attempt to cure

any prejudice, including by withdrawing the purportedly offending testimony. In these

circumstances, the Court finds that Power waived its objection.

The Court also disagrees with Power's contention that the jury's finding of non-

obviousness was against the great weight of the evidence. To the contrary, as discussed above,

the verdict is supported by substantial evidence. For these reasons, the Court will deny Power's

request for a new trial.

8

### B. Power's Motion for Judgment as a Matter of Law of Non-Infringement of the '972 Patent, or for a New Trial

Power seeks judgment as a matter of law that: (1) Fairchild failed to prove direct

infringement of the '972 patent; and (2) Fairchild failed to prove infringement under the doctrine

of equivalents. In the alternative, Power seeks a new trial. The Court will deny Power's motion.

### 1. Direct Infringement

"In order to prove direct infringement, a patentee must either point to specific instances of

direct infringement or show that the accused device necessarily infringes the patent in suit."

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Power

contends that it cannot directly infringe any claim of the '972 patent because its accused

LinkSwitch-II product does not include the claimed "transformer" element, and because Fairchild

failed to present legally sufficient evidence to show that the accused LinkSwitch-II product

"necessarily infringes." (D.I. 620 at 2)

The Court finds that Fairchild has offered substantial evidence to support a direct

infringement verdict. For instance, Fairchild's expert presented testimony describing the

presence of a transformer in power supplies that incorporate the accused LinkSwitch-II product.

(Tr. at 2094-2100) Power does not dispute that its products are regularly incorporated into power

supplies that include transformers. (D.I. 620 at 4) Fairchild has also offered circumstantial

evidence in support of its direct infringement theory, including Power's application notes

containing detailed instructions for incorporating the accused product into power supplies (DX-

374), as well as testimony from witnesses suggesting that Power designs fully integrated power

supplies for customers and seeks to sell its products in the U.S. market (Tr. at 648-63). Even if

this testimony was general in nature, as Power contends, the jury was free to draw reasonable

9

inferences from the evidence presented. Given the totality of the evidence, and resolving all evidentiary conflicts in Fairchild's favor, a reasonable jury could find that Power directly infringed the '972 patent.[4]

## 2. Doctrine of Equivalents

Power moves for judgment as a matter of law that the '972 patent is not infringed under the doctrine of equivalents because: (1) the verdict violates the "all elements" rule by vitiating an element of the claim; and (2) Fairchild failed to provide "particularized testimony and linking argument . . . with respect to the function, way, result test." (D.I. 620 at 14)

Power contends that Fairchild's arguments at trial vitiated the requirement that the "first feedback signal" must be distinct from the "second feedback signal." (D.I. 620 at 8) The dispute at trial centered on whether the accused products have a distinct "second feedback signal." The jury returned a verdict of no literal infringement, but found that Power infringed under the doctrine of equivalents. According to Power, the no literal infringement verdict required the jury to agree that the accused product does not have a distinct second feedback signal. From this, Power concludes that the jury must have improperly equated two non-distinct signals to find infringement under the doctrine of equivalents. According to Power, this conclusion is legally incorrect – "two signals are either distinct, or they are not." (D.I. 620 at 10)

The Court does not agree that the verdict is legally erroneous. At trial, Power's expert, Dr. Kelly, offered two separate reasons for non-infringement: (1) that the current signal identified by Dr. Wei as the "second feedback signal" is not actually a "feedback" signal (Tr. at 2145); and

---

[4]Additionally, although the jury did not know it, Fairchild and the Court reasonably believed that Power did not contest the presence of a transformer, for reasons explained in Fairchild's brief. (D.I. 671 at 3-14)

10

(2) that the two signals identified by Dr. Wei are not "distinct" (Tr. at 2153-54). Given these separate arguments, the jury's doctrine of equivalents verdict does not necessarily vitiate any element of the claim. The jury may have agreed with one, but not both, of Dr. Kelley's opinions in reaching its verdict. The jury likewise could have concluded that Fairchild failed to carry its burden for literal infringement, but satisfied the burden for the doctrine of equivalents.

The Court also finds that substantial evidence supports the jury's doctrine of equivalents verdict. Dr. Wei offered extensive testimony regarding the structure and function of the accused devices, explaining his reasoning for both literal infringement and infringement under the doctrine of equivalents. (Tr. at 2084-88, 2139-41) Dr. Wei was not required to "re-start his testimony at square one when transitioning [from literal infringement] to a doctrine of equivalents analysis." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007). An expert may explicitly or implicitly incorporate his earlier testimony into the DOE analysis. *See id.* In view of the complexity of the technology, the Court finds linking arguments by both Fairchild's expert and counsel in closing to have been appropriate. Power's motion will be denied.

### 3. New Trial

Power argues, in the alternative, that a new trial is warranted because: (1) Fairchild was awarded a verdict without any evidence of direct infringement; and (2) Fairchild provided only a single conclusory statement on the doctrine of equivalents issue. As discussed above, there was substantial evidence to support Fairchild's claims of direct infringement and infringement under the doctrine of equivalents. Therefore, the Court will deny Power's motion.

11

## C. Power's Motion for Judgment as a Matter of Law of Anticipation of the '595 Patent, or for a New Trial

Power seeks judgment as a matter of law that the asserted claims of the '595 patent are invalid because: (1) the evidence of anticipation was undisputed; and (2) Fairchild's rebuttal evidence conflicted with the Court's claim construction order. (D.I. 637) Alternatively, Power seeks a new trial. The Court will deny Power's motion.

### 1. Judgment as a Matter of Law

Anticipation requires that a single prior art reference disclose all of the limitations of the claim in dispute. *See Zenith Elec. Corp. v. PDI Comm. Sys. Inc*, 522 F.3d 1348, 1363 (Fed. Cir. 2008); *see also* 35 U.S.C. § 102. Power's anticipation argument is based on a single prior art reference: the Phillips TEA1401T Datasheet. While Power contends that the evidence of anticipation was "undisputed" (D.I. 637 at 2), this is not so. The parties' experts offered complex and conflicting testimony as to whether the $R_{OUT}$ compensation block of the TEA1401T Datasheet met the "first reference signal" limitation of the '595 patent. (*Compare* Tr. at 2186 *with* Tr. at 2212-13) After hearing the testimony, it was for the jury to evaluate the experts' credibility, weigh the evidence, and render a decision. Viewing the evidence in the light most favorable Fairchild, the Court concludes it must deny Power's motion.

Power also contends that Fairchild violated the Court's claim construction Order (D.I. 212) by reading into the patent an unstated "cable compensation" limitation. According to Power, the jury improperly relied on this argument to reach its verdict. Fairchild responds that it simply offered an explanation of how one of ordinary skill in the art would understand the "first reference signal" limitation, since the Court had previously ruled that this phrase "does not require construction" and should be given its plain and ordinary meaning. (D.I. 672 at 8-11) The

12

Court agrees with Fairchild. When this issue came up at summary judgment, the Court stated

that "Power will be entitled to cross-examine and otherwise challenge Wei's opinion at trial."

(D.I. 348 at 38-39) Power had its chance to cross-examine Dr. Wei at trial. Power also did not

object to Dr. Wei's testimony as being inconsistent with the Court's claim construction. (*See*

*generally* D.I. 516 at 36) (Court stating at pre-trial conference that if there were objections to

testimony as being inconsistent with the Court's claim construction, "we'll have to deal with that

as it comes up during the trial") For these reasons the Court will deny Power's motion for

judgment as a matter of law.

### 2. New Trial

Power's request for a new trial will also be denied. Power had the burden to prove

invalidity by clear and convincing evidence. *See Hewlett-Packard,* 909 F.2d at 1467. The

parties' experts offered conflicting testimony, and the jury arrived at a verdict supported by the

evidence. The Court does not agree that Fairchild offered improper claim construction

arguments at trial. Therefore, a new trial is not warranted.

### D. Power's Motion for Judgment as a Matter of Law of Infringement of the '605 Patent, or for a New Trial

Power moves for judgment as a matter of law that Fairchild directly infringes the '605

patent and that Fairchild has induced infringement of the '605 patent. In the alternative, Power

seeks a new trial.

With respect to direct infringement, the Court will grant Power's motion for judgment as

a matter of law. Fairchild admitted that it did "not present[] evidence of a defense with regard to

direct infringement." (Tr. at 2269) In the absence of such evidence, no reasonable jury could

have returned a verdict on this issue in Fairchild's favor.

13

However, the Court will deny Power's motion with respect to induced infringement.

Power contends that the inducement verdict was the result of Fairchild's improper trial tactics.

After review of the record, the Court finds that its curative instruction was sufficient to eliminate

any unfair prejudice. Thus, despite Fairchild's improper argument, judgment as a matter of law

is not warranted. Power had the burden to prove inducement at trial and failed to carry that

burden. The Court may not re-weigh the evidence. The Court will also deny Power's request for

a new trial, for essentially the same reasons.

## E.     Power's Motion for Judgment as a Matter of Law of Infringement of the '270 Patent, or for a New Trial

### 1.      Judgment as a Matter of Law

Power seeks judgment as a matter of law that Fairchild infringes the '270 patent. The

parties agree that there was only one infringement dispute at trial: whether the output current of

the accused products remained "substantially constant" with changes in input line voltage. (D.I.

633 at 3) According to Power, the evidence offered at trial on this issue was undisputed,

including Fairchild's own Datasheets and internal testing, as well as the testimony of Power's

expert. (D.I. 633 at 2-3) Power contends that the jury could only have reached its non-

infringement verdict by relying on: (1) Fairchild's improper and prejudicial claim construction

arguments; and (2) arguments minimizing the importance non-representative products.

Turning first to Power's claim construction contentions,[5] the jury was tasked with

determining whether the output current was "substantially constant." At trial, Dr. Wei opined

that one of ordinary skill in the art would understand the phrase "substantially constant" to

require less than plus or minus 10% variation in output current. (Tr. at 1311-12) Power had an

_____

[5]Power raised a similar objection at trial, which the Court denied. (Tr. at 1311-12)

14

opportunity to cross-examine Dr. Wei and to explore the basis for his opinion. (Tr. at 1367-73) Power's expert testified that the amount of current variation is context dependent but, in his experience, 15% variation was more typical in similar devices. (Tr. at 1096) It was for the jury to evaluate the experts' competing testimony and assign it the weight the jury deemed appropriate. There is no basis for the Court to overturn the jury's verdict.

Power also urges the Court to reverse the verdict based on Fairchild's arguments with respect to non-representative products. According to Power, Fairchild's arguments were improper because "the basis for selecting a representative part was the fact that *all of the parts are substantially identical* relative to the infringement analysis." (D.I. 709 at 1) (emphasis added) However, as stated in Power's own brief, the evidence showed that the accused products had different variations in output current (*e.g.*, SG6741 at +/- 7.7%, SGP400 at +/- 5.22%, and SG6859 at +/- 2.3%). (D.I. 633 at 5-6) Because the accused products have different output current variation, they are not necessarily "substantially identical" in all respects. The parties' verdict sheet expressly asked the jury to determine infringement with respect to the representative SG5841J product. (D.I. 576 at 2) Each party was free to present and highlight the evidence most favorable to its case and allow the opposing party to attempt to bring out any weaknesses in the evidence through its opposing presentation. The jury was free to accept or reject the testimony of each witness in whole or in part. The Court finds that the evidence presented was sufficient to support the jury's non-infringement verdict.[6]

---

[6]The Court will also deny Power's request for judgment as a matter of law on inducement. Power was required to prove inducement on a patent-by-patent basis.

15

### 2.    New Trial

In the alternative, Power seeks a new trial. The basis for this request is the same as

Power's request for judgment as a matter of law, as well as the reasons articulated in Power's

motion with respect to infringement of the '605 patent (D.I. 616). For the reasons stated above,

the Court will deny this motion.

## F.    Power's Motion for Judgment as a Matter of Law that the '876 patent is Literally Infringed by the SG5841J-Type Products, or for a New Trial

Power moves for judgment as a matter of law that claims 1 and 21 of the '876 patent are

literally infringed by the SG5841J controller. In the alternative, Power requests a new trial on

literal infringement. The Court will deny this motion.

### 1.    Judgment as a Matter of Law

Power accused two representative Fairchild products of infringement: the SG5841J

controller and the FAN103 controller. The jury returned a verdict of literal infringement for the

FAN103 controller and infringement under the doctrine of equivalents for the SG5841J

controller. (D.I. 576 at 3) Power believes that the jury should also have found literal

infringement for the SG5841J controller and asks the Court to grant judgment as a matter of law

to this effect.

At trial, Power presented substantial evidence that both the SG5841J and the FAN103

controllers infringe claims 1 and 21 literally and under the doctrine of equivalents. This evidence

includes testimony from Dr. Kelley (Tr. 965-97), circuit schematics (PX-375, PX-379),

Datasheets (PX-374), and scholarly articles explaining the function of certain components (PX-

266, PX-267, PX-269). In response, Fairchild argued that both representative controllers were

missing the claimed "oscillator having a control input for varying the switching frequency."

16

According to Fairchild, the COSC signal identified by Power as corresponding to the claimed "control *input*" is actually an *output*. Fairchild presented substantial evidence to support this non-infringement theory, including the testimony of Dr. Wei (Tr. at 1258-70), circuit schematics identifying the COSC signal with an "output" symbol (DX-059, DX-1189), and the testimony of Mr. Yang, the inventor of the accused products, who testified that "the COSC signal is never an input into the oscillator block" (Tr. at 1187).

While the infringement issues were similar for the two accused products, Power had the burden to prove infringement by a preponderance of the evidence on a product-by-product basis. Both sides presented complex, detailed, and substantial evidence in support of their respective positions, resulting in a genuine factual dispute for the jury. The jury is presumed to have considered all of the evidence, assessed the credibility of the competing experts, and given the evidence whatever weight the jury felt it deserved. In doing so, the jury was free to ignore all or any part of the evidence presented by each party. The Court may not re-weigh the evidence. Power's motion will be denied.

### 2. New Trial

Power contends that it is entitled to a new trial because Dr. Wei's trial testimony went beyond the scope of his expert report. In addition, Power contends that the jury's verdict with respect to the SG5841J controller is against the great weight of the evidence. (D.I. 639 at 9-14) After review of the parties' arguments and expert reports, the Court concludes that Power has not demonstrated that a new trial is warranted. In his report, Dr. Wei specifically identified the COSC signal as an "output," distinguishing this signal from a claimed "input." (Def. Ex. W at ¶ 17) At trial, Dr. Wei's testimony was "consistent with the report and . . . a reasonable synthesis

17

and/or elaboration of the opinions contained in the . . . report." *Power Integrations, Inc. v.*
*Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008).

Further, as explained above, the jury's verdict was not against the great weight of the
evidence. Both sides offered substantial evidence to support their respective positions. Power's
request for a new trial will be denied.

## IV.   FAIRCHILD'S POST-TRIAL MOTIONS

### A.   Fairchild's Motion for Judgment as a Matter of Law of Infringement of the '972 Patent, or a New Trial

Fairchild seeks judgment as a matter of law that: (1) Power literally infringes the '972
patent; and (2) Power has induced infringement of the '972 patent. In the alternative, Fairchild
seeks a new trial. The Court will deny this motion.

#### 1.   Judgment as a Matter of Law

Fairchild contends that the jury erroneously returned a verdict of no literal infringement
for claims 6, 7, 18, and 19 of the '972 patent. (D.I. 624 at 7)  At trial, only one issue was in
dispute: whether the accused products include a "second feedback signal." Fairchild contends
that its expert, Dr. Wei, identified a second feedback signal in the accused products – the
"I_reduce" signal. Fairchild devotes a large portion of its motion to arguing that Power's rebuttal
evidence was "irrelevant," "misleading," and "designed to confuse the jury." (D.I. 624 at 8-15)
None of these arguments is persuasive. Ultimately, Fairchild is simply rearguing the
infringement theory it presented at trial, which the jury was free to reject.

Power presented substantial evidence to support a verdict of no literal infringement,
including: (1) evidence that the I_reduce signal is not a feedback signal; and (2) that the accused
product does not include two "distinct" feedback signals. (Tr. at 2145-56)  Power also relied on

18

the testimony of Fairchild's inventor, Mr. Yang. (D.I. 665 at 9-10) The fact that Fairchild disagrees with this evidence does not make it "irrelevant." The jury was free to give whatever weight it felt appropriate to the testimony of the parties' experts and fact witnesses. Giving Power the benefit of all logical inferences that could be drawn from the evidence presented, and resolving all evidentiary conflicts in Power's favor, the Court declines to disrupt the jury's verdict and will deny Fairchild's motion.

With respect to inducement, Fairchild contends that no reasonable jury could have found that Power did not induce infringement of the '972 patent. "To prove inducement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (internal quotation marks omitted). The jury found that Power directly infringed, but did not induce infringement.[7] (D.I. 583 at 2) Thus, the question before the Court is whether Power knowingly induced infringement and possessed specific intent to do so. On these issues Fairchild concedes that its evidence is largely circumstantial. It was up to the jury to evaluate the weight to be attributed to this circumstantial evidence and to decide whether to draw the inferences Fairchild sought. Moreover, Power presented defenses of non-infringement and invalidity for the '972 patent (D.I. 665 at 12-16), from which the jury may have determined that Power had no specific intent to infringe. Accordingly, the Court will deny Fairchild's motion.

---

[7]The Court has addressed Power's post-trial arguments with respect to the direct infringement verdict in connection with Power's post-trial motion on this issue (D.I. 614).

## 2. New Trial

Fairchild seeks a new trial with respect to literal and induced infringement based on the jury's verdict being "against the weight of the evidence." (D.I. 624 at 22) Because the Court has found that the jury's verdict is supported by substantial evidence, the Court will deny Fairchild's motion for a new trial.

## B. Fairchild's Motion for Judgment as a Matter of Law of Anticipation of the '605 Patent, or a New Trial

Fairchild moves for judgment as a matter of law that the '605 patent is anticipated by two prior art references: (1) the Maige reference (U.S. Pat. No. 4,763,238); and (2) the White reference (U.S. Pat. No. 4,293,902). In the alternative, Fairchild requests a new trial. The Court will deny this motion.

## 1. Judgment as a Matter of Law

With respect to Maige, the only pre-trial dispute was whether the "variable current limit threshold" increases during the "on time" of the switch. (D.I. 623 at 5) According to Fairchild, Power's expert conceded this point at trial, requiring judgment in Fairchild's favor. The Court disagrees. The jury's verdict is supported by substantial evidence, including Dr. Kelley's testimony that the threshold in Maige is *fixed* during the on time of the switch, and is *not increasing* as required by the claims. (Tr. at 1732-34) Dr. Kelley also showed the jury several demonstratives to help explain his conclusions. While Fairchild now characterizes these demonstratives as "incomplete, misleading, and wrong" (D.I. 623 at 7), Fairchild had an opportunity to cross-examine Dr. Kelley on these issues at trial and to present rebuttal testimony. It was up to the jury to evaluate the competing experts' credibility and to determine the weight to be accorded to their testimony. The Court finds no basis to overturn the jury's verdict.

20

As for the White reference, the dispute was whether White disclosed a "current limit

threshold that *increases* during the on time of the switch." (D.I. 623 at 10, D.I. 667 at 7-8)

(emphasis added) Fairchild's expert opined that White satisfied this limitation; Power's expert

disagreed. According to Power's Dr. Kelley, the current limit threshold *decreased* during the on

time of the switch. (Tr. at 1735-37) The jury was free to resolve this dispute in Power's favor

and/or to disbelieve Fairchild's evidence. Either way, the jury could conclude that Fairchild

failed to meet its burden to prove invalidity by clear and convincing evidence. The Court may

not re-weigh the evidence and, accordingly, will deny Fairchild's motion.

### 2. New Trial

The Court will also deny Fairchild's request for a new trial. As explained above, the

jury's verdict was supported by substantial evidence. Additionally, the Court does not agree with

Fairchild that Power's arguments were improper or unfairly influenced the jury.

### C. Fairchild's Motion for Judgment as a Matter of Law of Anticipation of the '270 Patent

Fairchild seeks judgment as a matter of law that the '270 patent is anticipated by the

TDA16822 Datasheet. According to Fairchild, its expert presented extensive testimony matching

each claim limitation to the disclosure of the TDA16822 Datasheet. (Tr. at 1328-35) Power's

response, in Fairchild's view, was "nothing more than unsupported conclusory statements." (D.I.

627 at 1) After careful review of the record, and taking into consideration Fairchild's burden to

prove invalidity by clear and convincing evidence, the Court will deny Fairchild's motion.

Power's Dr. Kelley explained the differences, in his view, between the claims and the TDA16822

Datasheet, as well as why he believes Dr. Wei's testimony did not prove anticipation. (Tr. at

1723-26) It was up to the jury to determine which expert to believe and to resolve the factual

21

dispute. That Fairchild continues to disagree with Dr. Kelley's opinion does not provide a sufficient basis to grant judgment as a matter of law.

## D. Fairchild's Motion for Judgment as a Matter of Law of Anticipation of the '876 Patent

Fairchild moves for judgment as a matter of law that the '876 patent is invalid as anticipated by the Martin and Wang references. Fairchild's motion does not distinguish between the technical disclosure of these two references, so the Court will address them together. Fairchild contends that only two claim elements were in dispute: (1) the "frequency jittering" element; and (2) the "coupling" element. (D.I. 622 at 1)

With respect to frequency jitter, the Court construed this term to mean "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference." (D.I. 212 at 33-36) Fairchild contends that Power conceded the presence of this limitation through the testimony of Mr. Balakrishnan and Dr. Kelley. (D.I. 622 at 4-5) According to Fairchild, Mr. Balakrishnan admitted that the average frequency ($F_{AVE}$) is the same as the target frequency and Dr. Kelley confirmed that one could calculate an average frequency from the table provided in Wang. In Fairchild's view, the combination of these two admissions is all that is necessary to meet the "frequency jitter" limitation.

Power disagrees. According to Power, Dr. Kelley testified that the "express goal of [Martin and Wang is] to *avoid* having a target frequency," an important feature for military applications. (Tr. at 1710) Specifically, Martin and Wang are designed to achieve "random frequency variation" in order to avoid producing a signature or fingerprint that can be used to identify a particular source. (Tr. at 1709-10) Dr. Kelley also explained that, despite the fact that one *could* calculate an average frequency from the data table in Wang, doing so would not satisfy

22

the claim limitation. (Tr. at 1782)

The Court agrees with Power. The claim does not simply require calculating an "average/target frequency," it requires using that target frequency to "*vary[] the switching frequency* of a switch mode power supply about a target frequency *in order to reduce electromagnetic interference*." Calculating an average frequency after the fact does not teach one of skill in the art how to vary the switching frequency, and does not produce the desired result of reducing electromagnetic interference.

With respect to "coupling," Fairchild relies on the Court's claim construction, which defined two circuits as coupled "when they are connected such that voltage, current or control signal pass from one to another." (C.A. No. 04-1371-LPS, D.I. 231 at 21) While this construction does not preclude an indirect connection, it also cannot be stretched so as to render the "coupled" term completely meaningless. There is no dispute that the prior art does not show a direct connection; the elements-in-dispute are connected through a EPROM circuit. The question for the jury was whether this indirect connection satisfies the "coupled" limitation. The Court finds that substantial evidence supports the jury's verdict that it does not. In this regard, Power offered the testimony of Dr. Kelley, who testified that the "control signals are intentionally scrambled up inside the EPROM so that they don't go through" and that the "output [of the EPROM] has no relation to the input." (Tr. at 1713-15) The jury was free to consider this evidence, weigh the experts' credibility, and render a decision.

With respect to claim 21, Power raises two additional arguments. According to Power, the prior art fails to disclose: (1) one or more current sources; and (2) a structure equivalent to the "means" element of claim 21. (D.I. at 4-7) The Court need not address the factual dispute

23

between the parties with respect to these two arguments because the jury has rendered a verdict supported by substantial evidence.

## E.    Fairchild's Motion for Judgment as a Matter of Law of no Literal Infringement of the '876 Patent, or a New Trial

Fairchild moves for judgment as a matter of law that its SG5841J and FAN103 controllers do not infringe the '876 patent. As explained above with respect to Power's Motion for Judgment as a Matter of Law that the '876 Patent is Literally Infringed by the SG5841J-Type Products (D.I. 617), the Court finds that the jury's verdict is supported by substantial evidence. Thus, the Court will deny Fairchild's motion.

In the alternative, Fairchild seeks a new trial because: (1) the verdict is facially inconsistent; and (2) the verdict is against the great weight of the evidence. (D.I. 625 at 12-13) The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem.*, 449 U.S. at 36. Having reviewed the evidence presented, the Court does not believe that the verdict is "facially inconsistent." Power had the burden to prove infringement and presented evidence of literal infringement and infringement under the doctrine of equivalents with respect to both products. The jury had to resolve the infringement question on a product-by-product basis. The jury was free to reject some or all of the evidence presented by the parties. The jury was free to find that Power failed to carry its burden to prove literal infringement for the SG5841J controller, but met its burden with respect to the doctrine of equivalents. The verdict was not against the great weight of the evidence. Fairchild's motion will be denied.

24

### F.    Fairchild's Motion for Judgment as a Matter of Law of No Induced Infringement, or for a New Trial

Fairchild moves for judgment as a matter of law that it did not induce infringement of the

'851 and '876 patents. Alternatively, Fairchild seeks a new trial on inducement. The Court will

deny this motion.

### 1.    Judgment as a Matter of Law

As explained above, inducement requires the patentee to prove direct infringement and

"that the alleged infringer knowingly induced infringement and possessed specific intent to

encourage another's infringement." *i4i Ltd.*, 598 F.3d at 851 (internal quotation marks omitted).

According to Fairchild, Power failed to offer sufficient evidence that Fairchild: (1) knew its

accused products were sold and imported in the United States; and (2) intended to cause or

encourage any infringing acts by others in the United States. (D.I. 626 at 8)

With respect to knowledge, Fairchild contends that it manufactures the accused products

outside the United States and simply "does not know, on a product-by-product basis, where its

accused controller products are going to end up." (D.I. 626 at 1)  With respect to intent, Fairchild

insists there was no evidence that it "encouraged the importation of the accused products into the

United States by third parties." (D.I. 626 at 8)

The Court finds that the jury's verdict is supported by substantial evidence. For example,

Power offered documentary evidence and testimony that a reasonable jury could rely on to find

that Fairchild specifically targeted the U.S. market, designed products for sale in the U.S. market,

and encouraged U.S. customers to purchase those products. (Tr. at 1866-79)  Liability for active

inducement may be found where evidence "shows statements or actions directed to promoting

infringement." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008).

25

Power offered such evidence at trial. While different conclusions could have been drawn from the evidence, the Court may not re-weigh the evidence.

### 2. New Trial

Fairchild contends that the Court's jury instructions were erroneous because they did not require the jury to determine inducement on a "customer-by-customer" basis. (D.I. 626 at 14) According to Fairchild, had the jury been instructed to make such a finding, the jury would have reached a different verdict. Fairchild seeks a new trial on this basis. The Court will deny this motion as Fairchild's concern was adequately addressed by requiring the jury to find infringement on a claim-by-claim and product-by-product basis, as well as the detailed inducement instructions provided by the Court.

### G. Fairchild's Motion for Judgment as a Matter of Law of Non-Infringement of the '851 Patent, or for a New Trial

Fairchild moves for judgment as a matter of law that the '851 patent is not literally infringed. Alternatively, Fairchild seeks a new trial. The Court will deny this motion.

### 1. Judgment as a Matter of Law

The infringement dispute at trial focused on a single element of the '851 patent, an "oscillator further providing a maximum duty cycle signal comprising a first state and a second state." (D.I. 628 at 2) For purposes of trial, the parties focused on two representative products: (1) the SG6842J products; and (2) the SG5841J products. For the SG6842J products, Power identified the PULSE signal as corresponding to the "maximum duty cycle signal." For the SG5841J products, Power offered two alternative infringement theories. The first theory is the same as for the SG6842J products, i.e., that the PULSE signal is the "maximum duty cycle signal." Alternatively, Power argued that the output of the comparator I84 is a "maximum duty

26

cycle signal." (D.I. 628 at 4-5) Fairchild contends that both theories were flawed.

Fairchild's first argument invokes the principles of claim construction. According to Fairchild, the '851 patent shows both a "clock" signal and a "maximum duty cycle" signal. From this disclosure, Fairchild concludes that the claims require these two signals to be separate. (D.I. 628 at 7) Because the PULSE signal of the accused products is a clock signal, Fairchild contends that it cannot literally satisfy the "maximum duty cycle signal" claim limitation.

The Court does not agree that this is an issue of claim construction. Neither party sought to construe the "maximum duty cycle signal" limitation at any point in this case. The jury was asked to resolve a factual dispute: whether the PULSE signal in the accused products is a "maximum duty cycle signal comprising a first state and a second state." The question now before the Court is whether Power presented evidence at trial that can reasonably support the jury's verdict. The Court finds that Power did so. Power presented Datasheets (PX-376, PX-377, PX-381), circuit schematics (PX-379, PX-382), and testimony from its expert to explain the operation of the accused devices and, in particular, that the PULSE signal operates to limit the maximum duty cycle in the respective circuits (Tr. at 949-57).

As for Power's alternative infringement theory, Fairchild's motion simply reargues the non-infringement theory it presented at trial. At trial, both parties agreed that the claim requires the maximum duty cycle signal to be provided by the oscillator. Both parties also agreed that the output of the comparator I84 of the SG5841J products is a "maximum duty cycle signal." The dispute focused on whether the comparator I84 is part of the oscillator or part of the PWM block. (D.I. 628 at 13) Power contends that it is part of the oscillator (Tr. at 958-59); Fairchild contends that it is part of the PWM block (Tr. at 1252-54). The jury heard from both experts on this issue

27

and resolved the factual dispute in Power's favor.  Giving Power the benefit of all logical

inferences, and resolving all conflicts in the evidence in Power's favor, the Court will deny

Fairchild's motion.

### 2.    New Trial

Fairchild seeks a new trial on the basis of purported "misrepresentations" of scope with

respect to the maximum duty cycle signal claim limitation.  (D.I. 628 at 14)  As discussed above,

the Court does not view this to be a claim construction issue.  The Court also does not agree that

Dr. Kelley misrepresented the scope of the claims.  Because substantial evidence supports the

jury's verdict, the Court will deny Fairchild's request for a new trial.

## VI.    CONCLUSION

An Order consistent with this Memorandum Opinion will be entered.