IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., FAIRCHILD
SEMICONDUCTOR CORPORATION, and
FAIRCHILD (TAIWAN) CORPORATION,

        Defendants.

C.A. No. 08-309 LPS

**[PROPOSED] JOINT PRETRIAL ORDER**
(Induced Infringement, Willfulness, and Damages)

| Counsel for Plaintiff | Counsel for Defendants |
|---|---|
| Douglas E. McCann (#3852) | John G. Day (#2403) |
| Joseph B. Warden | Andrew C. Mayo (#5207) |
| 222 Delaware Avenue, 17th Floor | ASHBY & GEDDES |
| P.O. Box 1114 | 500 Delaware Avenue, 8th Floor |
| Wilmington, DE 19801 | P.O. Box 1150 |
| 302) 652-5070 | Wilmington, DE 19899 |
| mccann@fr.com; warden@fr.com | 302-654-1888 |
| | jday@ashbygeddes.com; |
| Frank E. Scherkenbach | amayo@ashbygeddes.com; |
| One Marina Park Drive | |
| Boston, MA 02210-1878 | |
| (617) 542-5070 | Erik J. Olson |
| | Colette Reiner Mayer |
| | Pieter S. de Ganon |
| Howard G. Pollack | Stephen Liu |
| Michael R. Headley | MORRISON & FOERSTER LLP |
| 500 Arguello Street, Suite 500 | 755 Page Mill Road |
| Redwood City, CA 94063 | Palo Alto, CA 94304-1018 |
| (650) 839-5070 | |
| | Scott F. Llewellyn |
| | MORRISON & FOERSTER LLP |
| | 4200 Republic Plaza |
| | 370 Seventeenth Street |
| | Denver, CO 80212-5638 |
| | |
| | Esther Kim Chang |
| | Thomas J. Pardini |
| Dated: October 16, 2018 | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| | San Francisco, CA 94105-2482 |

## LIST OF EXHIBITS IN JOINT PRETRIAL ORDER

STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

|  | Joint | -- | Exhibit 1 |
|---|---|---|---|

ISSUES OF FACT THAT REMAIN TO BE LITIGATED AND EXPECTED PROOFS

|  | Power Integrations | -- | Exhibit 2 |
|---|---|---|---|
|  | Defendants | -- | Exhibit 3 |

ISSUES OF LAW THAT REMAIN TO BE LITIGATED

|  | Power Integrations | -- | Exhibit 4 |
|---|---|---|---|
|  | Defendants | -- | Exhibit 5 |

WITNESSES

|  | Power Integrations | -- | Exhibit 6 |
|---|---|---|---|
|  | Defendants | -- | Exhibit 7 |

DEPO/TRIAL DESIGNATIONS

|  | Power Integrations | -- | Exhibit 8 |
|---|---|---|---|
|  | Defendants | -- | Exhibit 9 |

EXHIBITS

|  | Power Integrations | -- | Exhibit 10 |
|---|---|---|---|
|  | Defendants | -- | Exhibit 11 |

**VOLUME II**

MOTIONS *IN LIMINE*

|  | Power Integrations' MIL #1 | -- | Exhibit 12A |
|---|---|---|---|
|  | Power Integrations' MIL #2 | -- | Exhibit 12B |
|  | Power Integrations' MIL #3 | -- | Exhibit 12C |
|  | Defendants' MIL #1 | -- | Exhibit 13A |
|  | Defendants' MIL #2 | -- | Exhibit 13B |
|  | Defendants' MIL #3 | -- | Exhibit 13C |

DISCOVERY DESIGNATIONS

|  | Power Integrations | -- | Exhibit 14 |
|---|---|---|---|
|  | Defendants | -- | Exhibit 15 |

OTHER UNRESOLVED ISSUES

|  | Power Integrations' Statement of Established Facts | -- | Exhibit 16 |
|---|---|---|---|
|  | Defendants' s Statement of Established Facts |  | Exhibit 17 |

# TABLE OF CONTENTS

I.     NATURE OF THE CASE ....................................................................................1

II.    JURISDICTION ...............................................................................................2

III.   FACTS ............................................................................................................3

     A.    Uncontested Facts ...............................................................................3

     B.    Contested Facts ...................................................................................4

IV.   ISSUES OF LAW .............................................................................................4

V.    WITNESSES.....................................................................................................4

     A.    Order of Proof.....................................................................................4

     B.    List of Witnesses Power Integrations Expects to Call ..............................5

     C.    List of Witnesses Defendants Expect to Call...........................................5

     D.    Agreed-Upon Procedures for Live Witnesses............................................5

     E.    Testimony by Designation ........................................................................7

     F.    Impeachment........................................................................................10

     G.    Objections to Expert Testimony ...........................................................10

VI.   EXHIBITS .....................................................................................................11

     A.    Exhibits .............................................................................................11

     B.    Demonstratives .................................................................................13

VII.  DAMAGES....................................................................................................15

VIII. BIFURCATED TRIAL....................................................................................18

IX.   MOTIONS *IN LIMINE* ................................................................................18

X.    OTHER UNRESOLVED EVIDENTIARY ISSUES ........................................18

XI.   DISCOVERY.................................................................................................21

XII.  NUMBER OF JURORS ................................................................................22

XIII. NON-JURY TRIAL.......................................................................................22

XIV.   LENGTH OF TRIAL ............................................................................................22

XV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW ................................23

XVI.   AMENDMENTS OF THE PLEADINGS ............................................................23

XVII.   ADDITIONAL MATTERS .................................................................................23

      A.    Jury Notes ................................................................................................23

      B.    Handling of Confidential Information at Trial.........................................24

XVIII.  SETTLEMENT ...................................................................................................24

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

## I.      NATURE OF THE CASE

1.       Power Integrations filed this lawsuit on May 23, 2008, alleging, among other things, infringement by Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and Fairchild (Taiwan) Corporation (formerly known as System General Corporation) (collectively, "Defendants") of U.S. Patents Nos. 6,249,876 (the "'876 patent") and 6,107,851 (the "'851 patent").[1]

2.       A first jury trial was held from April 11 to April 27, 2012, on issues of infringement and invalidity.  (D.I. 593-602.)  That trial did not include issues of willfulness or damages, which had been bifurcated.  (D.I. 348.)  That jury found that Defendants directly and indirectly infringed the '876 and '851 patents, in some cases literally and in one case under the doctrine of equivalents. (D.I. 577.) The jury also found that Defendants had not shown the patents were invalid.  (*Id.*)  Following that trial, this Court denied Defendants' renewed motions for judgment as a matter of law.  (D.I. 732.)  This Court also granted Power Integrations' motion for a permanent injunction, which order was later modified. (D.I. 794; 798.)

3.       **[[*Power Integrations' Statement:*** On appeal, the Federal Circuit vacated the verdict of induced infringement, because it held that the jury instruction on inducement misstated the law due to the inclusion of the following sentences:  "However, that infringement need not have been actually caused by the party's actions.  All that is required is that the party took steps to encourage or assist that infringement, regardless of whether the encouragement succeeded, or

---

[1] Power Integrations also alleged infringement of two other patents, and Fairchild, in turn, brought counterclaims for infringement of two of its own patents.  The claims related to those patents are no longer part of this case and, therefore, the issues and procedural history related to those other patents are not discussed herein.

was even received." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1329-32 (Fed. Cir. 2016). The Federal Circuit declined to enter judgment in favor of Fairchild because the court held that there was substantial evidence from which a jury could have found inducement under the correct jury instruction. *Id.* at 1332-35. As a result, the court remanded for a new trial on inducement. *Id.* The court also vacated the grant of a permanent injunction, leaving it to this Court to determine whether a permanent injunction was still appropriate, and suggesting that this Court might wait to do so until after resolution of Fairchild's liability for induced infringement. *Id.* at 1345.**]]**

**[[*Defendants' Statement*:** On appeal, the Federal Circuit vacated the verdict of induced infringement, because it held that the jury instruction misstated the law of induced infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1329-32 (Fed. Cir. 2016). The Federal Circuit declined to enter judgment in favor of Defendants because the court could not conclude that no reasonable jury could have found that Defendants induced infringement of the '851 and '876 patents. *Id.* at 1332-35. As a result, the court remanded for a new trial. *Id.* The court also vacated the grant of a permanent injunction. *Id.* at 1345.**]]**

4.      The issues remaining to be tried in this case are induced infringement, willful infringement, and damages, as raised in the following pleadings:

- Plaintiff's Amended Complaint for Patent Infringement (D.I. 401) and

- Defendants' Answer and Amended Counterclaims to Plaintiffs' Amended Complaint for Patent Infringement (D.I. 404).

## II.    JURISDICTION

5.      This action arises under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq*.

6.      Plaintiff Power Integrations, Inc. is a Delaware corporation having its principal place of business in San Jose, California.

7.      Defendant Fairchild Semiconductor International, Inc. is a Delaware corporation having its principal place of business in Phoenix, Arizona.

8.      Defendant Fairchild Semiconductor Corporation is a Delaware corporation having its principal place of business in Phoenix, Arizona.

9.      Defendant Fairchild (Taiwan) Corporation is incorporated under the laws of Taiwan with its headquarters located in New Taipei City, Taiwan.  Fairchild (Taiwan) Corporation is a wholly-owned subsidiary of Fairchild Semiconductor International, Inc.  When this case was filed, Fairchild (Taiwan) Corporation was known as System General Corporation. On June 26, 2014, its name was changed to Fairchild (Taiwan) Corporation, and the case caption was amended accordingly.  (*See* D.I. 804.)

10.      The jurisdiction of the Court is not disputed.  The Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 1338(a) and 2201(a).  No party disputes personal jurisdiction or venue.

III.    **FACTS**

A.      **Uncontested Facts**

11.      The facts stated in Exhibit 1 are not disputed or have been agreed to or stipulated to by the parties.  The parties agree that footnotes in Exhibit 1 will not be read to the jury.  Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court and will be charged for the time used to do so.

12.      **[[*Power Integrations' Statement*:**  Any party, with prior notice to all other parties,  may also mark and introduce as an exhibit at trial a clean copy of the uncontested facts

that omits the footnotes that contain the parties' respective positions on various uncontested facts.**]]**

**[[*Defendants' Statement:*** The list of uncontested facts (Exhibit 1) is not properly the type of document that should be admitted as a trial exhibit. This document was not included in either party's exhibit list. Rather, these statements become part of the evidentiary record by being read into evidence.**]]**

### B.    Contested Facts

13.    Power Integrations' statement of issues of fact that remain to be litigated is attached as Exhibit 2.

14.    Defendants' statement of issues of fact that remain to be litigated is attached as Exhibit 3.

## IV.    ISSUES OF LAW

15.    Power Integrations' statement of issues of law that remain to be litigated is attached as Exhibit 4.

16.    Defendants' statement of issues of law that remain to be litigated is attached as Exhibit 5.

## V.    WITNESSES

### A.    Order of Proof

17.    The parties agree that the presentation of evidence will follow the burden of proof at trial, as follows:

- Opening Statements by Power Integrations followed by Defendants;

- Power Integrations' case-in-chief on induced infringement, willful infringement, and damages;

- Defendants' responsive case on induced infringement, willful infringement, and damages;

4

- Power Integrations' rebuttal on induced infringement, willful infringement, and damages; and

- Closing arguments by Power Integrations followed by Defendants, followed by Power Integrations' rebuttal closing.

**B.     List of Witnesses Power Integrations Expects to Call**

18.     Power Integrations' list of witnesses, including whether those witnesses will be called live at trial or introduced by designation, is attached hereto as Exhibit 6.  For Power Integrations' expert witnesses, Exhibit 6 contains a brief statement of anticipated subject matter.

**C.     List of Witnesses Defendants Expect to Call**

19.     Defendants' list of fact witnesses, including whether those witnesses will be called live at trial or introduced by designation, is attached hereto as Exhibit 7.  For Defendants' expert witnesses, Exhibit 7 contains a brief statement of anticipated subject matter.

**D.     Agreed-Upon Procedures for Live Witnesses**

20.     Any witness not listed in Exhibits 6-7 will be precluded from testifying absent good cause.

21.     With the exception of expert witnesses and a corporate representative for each party, the parties agree that witnesses should be prevented from hearing the testimony of other witnesses pursuant to Federal Rules of Evidence 615.  Counsel for the parties shall notify one another by e-mail of their corporate representative no less than two days before the first day of trial—i.e., by Saturday, November 3, 2018.[2]

---

[2] Unless otherwise stated, notices or notifications pursuant to this order shall be provided no later than 6 pm Eastern Time on the dates stated and will be sufficient if provided by e-mail to a list including all the attorneys that have appeared in the action or a service e-mail address provided by the party.

22.     No party shall be required to present live testimony from any witness on its list of live witnesses.

23.     Each party will provide the other with a final a list of witnesses it intends to call live at the trial by 10 am Eastern on November 1, to provide the parties with sufficient time to provide designations of prior testimony for any witness originally identified as live but no longer on the final witness list. Once a party has identified a witness on its final list, if the party later elects not to call that witness, it must make that witness available to be called by the other party, if the other party so chooses.

[[*Power Integrations' Statement*:  Once a party has identified a witness on its final list, if the party later elects not to call that witness, the other party may also elect to designate deposition testimony for the witness.]]

[[*Defendants' Statement*:  Once a party has identified a witness on its final list, if the party later elects not to call that witness and that witness is available to be called live by the other party, the other party may not designate or present prior testimony of that witness, except as provided in Paragraph 27.

24.     [[*Power Integrations' Statement*:  Each party will provide the other party with a list, in order of presentation, of witnesses it intends to call live on direct examination by 7:00 p.m. two nights before those witnesses are intended to testify in Court. (For example, if a party intends to call a witness on Wednesday, that party shall disclose that witness's name to the opposing party no later than 7:00 p.m. on Monday.) This list must also include those witnesses who are to be called by designation (whose designations will have been previously disclosed pursuant to the procedures described below), so as to disclose the order in which any witnesses called by designation shall appear. Each party shall be bound to call the witnesses identified in

its list in the order and manner (i.e., live or by designation) identified, except by agreement of the parties or for good cause shown. ]]

**[[*Defendants' Statement:*** Beginning two days before trial, each party will provide the other party with notice, in expected order of presentation, of the next seven witnesses it intends to call live or by designation of prior testimony by 7:00 p.m. and in any event, each party shall provide the other party with at least two days' notice of any witness that it intends to call live. Nothing in the foregoing relieves a party of the obligations and exchanges discussed below regarding designated prior testimony.]]

### E.     Testimony by Designation

25.     Power Integrations' preliminary list of designations of prior testimony is attached hereto as Exhibit 8.

26.     Defendants' preliminary list of designations of prior testimony is attached hereto as Exhibit 9.

27.     The parties agree that objections, counter designations, and counter-counter designations will be exchanged only as part of the disclosure procedure for final designations, as set forth in Paragraph 28.

28.     **[[*Defendants' Statement:*** No party shall present the prior testimony of a witness who is available to testify at the trial unless the witness was:  (1) an officer, director, or managing agent of the opposing party or (2) the testimony reflected the designated testimony, under Federal Rule of Civil Procedure 30(b)(6), of the opposing party and was not the subject of an objection that the testimony was beyond the scope of the notice under Federal Rule of Civil Procedure 30(b)(6).**]]**

29.     **[[*Power Integrations' Statement:*** The parties presently have a dispute about the availability of one witness—Frank Lum—who Power Integrations may have testify by

7

designation. That issue has been presented to the Court as part of the parties' motions *in limine*, and should be resolved on those papers.]]

30.     Each party will provide the other with a list of final designations of prior testimony (from the previously designated testimony) that it intends to introduce by 6:00 p.m. three days before the date on which designations are intended to be used in court and a statement of the manner in which the prior testimony should be presented (i.e., video versus read deposition transcripts).  (For example, witnesses to be called by designation on Wednesday must be disclosed by 6:00 p.m. the preceding Sunday, along with their proposed testimony.)  The other side must identify any objections to the designated testimony, any counter designations, no later than 5:00 pm two days before the date on which the designations are intended to be used in court.  The originally designating party may identify any objections or counter-counter designations by 7:00 pm that day.  All designations (but not counter designations or counter-counter designations) must have been included in Exhibits 8 and 9.  The parties shall then meet and confer as to any objections and counter-designations no later than 9:00 p.m. that day.  Any unresolved objections will be submitted to the Court in a joint submission by 8:30 a.m. the next morning—i.e., one day before the date on which the designations are intended to be used in court.  The joint submission shall include:  (i) a copy of the entire proposed testimony of the witness at issue, clearly highlighting the designations and (ii) a cover letter identifying the pending objections, as well as a brief indication (no more than one sentence per objection) of the basis for objection and the offering party's response to the objection.  Either side my withdraw a designation at any time, particularly as the Court may resolve disputes about designated testimony on the day on which it is to be read or played. The parties will work together in good faith to ensure that both sides can adjust designations or counter-designations accordingly.]]

Failure to comply with these procedures, absent an agreement by the parties or approval of the Court, will result in waiver of the use of the testimony or waiver of objection to the use of the testimony.

31.     **[[*Defendants' Statement*:**  When identifying any counter designations to designated testimony two days before the date on which the designations are intended to be used in Court, the other side may also include an objection to the manner in which the testimony shall be presented.  When the parties meet and confer regarding any objections to designated testimony, the parties must also meet and confer regarding any disagreement regarding the manner in which testimony should be presented.  Any unresolved objections will be submitted to the Court in a joint submission by 8:30 a.m. the next morning**]]**

32.     **[[*Power Integrations' Statement*:**  The manner of using counter-designations at trial shall be in the same manner (video versus read deposition transcripts) as that used for the designation sought to be rebutted, such that all designations, counter-designations, and rebuttal designations will be played or read to the jury, as the case may be, as one consecutive segment in the order the testimony appears in the transcript.  The party who initially proposes to offer testimony by designation shall choose the method of offering the testimony, whether by read-in or by video.  If a party offers video testimony, that party shall be responsible for including video portions of counter-designated testimony that is designated as described in this section.  If a party does not offer video testimony, that party need not offer video of the other party's counter-designations.**]]**

33.     By 6:00 pm of the day on which the designation is played, the party who initially proposes the use of the deposition testimony will provide the Court with a joint statement accounting of the time for each party's designations based on the parties' proportional share of

lines of testimony for read-in testimony and by actual time for video testimony so that the Court may accurately charge time to the designating parties.

34.     For those witnesses whose prior deposition or trial testimony will be read or played to the jury, the parties shall be permitted to make brief transition statements to introduce the witnesses and their role in the litigation.  However, counsel shall not be permitted to argue or comment on the evidence during transition statements.

35.     The parties have not identified or included designations for some witnesses that the other party has previously represented will be testifying live.  Should either party subsequently choose not to call a witness that it had previously identified as testifying live, the parties agree that the witness may then be called by designation.  The parties further agree that for any such witness, the designating party will provide a list of final designations of prior testimony that it intends to introduce by 6:00 p.m. three days before the date on which designations are intended to be used in Court and a statement of the manner in which the prior testimony should be presented (i.e., video versus read deposition transcripts).

### F.     Impeachment

36.     The parties agree that any exhibit or prior testimony used only for purposes of impeachment need not be disclosed on the list of exhibits or deposition designations contained in this pretrial order.

### G.     Objections to Expert Testimony

37.     The parties continue to meet and confer and discuss a stipulation in an effort to resolve the issues with respect to the expert testimony raised in the *Daubert* motions addressed to Arthur Kelley and Jacob Baker.  The parties will submit a separate statement to the Court on this issue before the pretrial conference.

38.     The Court will rule at trial on objections to expert testimony as beyond the scope of prior expert disclosures.

39.     **[[*Power Integrations' Statement*:**  The party losing on any objection shall be charged for all time spent on the objection.**]]**

**[[*Defendants' Statement*:**  Defendants leave it to the Court's discretion to charge time for objections as it deems appropriate and consistent with the Court's normal procedure.**]]**

## VI.     EXHIBITS

### A.     Exhibits

40.     Power Integrations' list of pre-marked exhibits to be offered at trial is attached hereto as Exhibit 10.

41.     Defendants' list of pre-marked exhibits to be offered at trial is attached hereto as Exhibit 11.

42.     Exhibits 10-11 contain the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such objections, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown.  A party may offer any exhibit appearing on either party's exhibit list, either in direct examination of its own witness or cross-examination of an adverse witness.

43.     No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit.  At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number. Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits to the jury without requesting to do so.

44.     A party will identify exhibits to be used in connection with direct examination by 6:00 p.m. the day before their intended use, and objections will be provided no later than 8:00 p.m. the day before their intended use.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the stand.

[[*Power Integrations' Statement*:  Failure to comply with these procedures, absent agreement by the parties or approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.]]

[[*Defendants' Statement*:  The parties shall seek to bring objections in good faith to the attention of the Court before testimony begins.  Nonetheless, parties may make objections during the testimony of the witness or when an exhibit it introduced.]]

45.     Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness and moved into evidence as provided above.

46.     Legible photocopies of United States patents and the content of PTO file histories may be offered and received in evidence in lieu of certified copies thereof.  The parties stipulate that, as to patents previously identified, the dates of filing and issuance shall be deemed to be shown on the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

47.     Legible photocopies of printed publications (with agreed upon English translations thereof) may be offered and received in evidence in lieu of originals thereof.

48.     The parties stipulate that a duplicate of any document or photograph may be marked for identification, and, if otherwise admissible, offered and received into evidence with

the same force and effect as the original, subject to any and all objections as could be made to the original, and on condition that the original of any such duplicate, if within the custody or control of a party, be available for inspection at the trial upon reasonable notice.  The parties agree that, where available, a party may request that the opposing party use a color copy of an exhibit by giving notice of and a copy of the color exhibit to the opposing party by 8:00 pm the day before its intended use.

49.     The parties agree that documents produced during the discovery phase by the parties or from third parties under subpoena during the discovery phase of this litigation and identified in Exhibits 10-11 to this Order are presumed *prima facie* genuine and authentic. Nothing, however, shall prohibit a party from offering evidence to rebut the presumption.  To the extent a document appearing in Exhibits 10-11 was not produced during discovery, there is no presumption that such document is genuine and authentic.

50.     Any documents or deposition or portion thereof, not specifically identified herein or offered into evidence, may still be used at trial for purposes of impeachment or rehabilitation, if otherwise competent for such purposes.

51.     On or before the first day of trial, each party will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list corresponding to their respective final exhibit lists.

**B.     Demonstratives**

52.     The parties will exchange demonstratives and a list of exhibits that it intends to use in its opening statements by 8:00 p.m. two nights before opening statements.  The parties will provide any objections to such demonstratives or exhibits by 12:00 p.m. (noon) on the day before opening statements.  The parties shall meet and confer over objections no later than 4:00 pm the day before opening statements and provide any revisions to demonstratives or the

13

proposed exhibit list based on the meet and confer no later than 8:00 pm the night before opening statements.

53.     Demonstratives to be used on direct examination will be exchanged pursuant to the procedures set forth below.  These provisions do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.

54.     A party will provide demonstrative exhibits to be used in connection with direct examination by 6:00 p.m. the day before their intended use, and objections will be provided not later than 8:00 p.m. the night before their intended use.  If any of the demonstratives changes after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

55.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF or other electronic form labeled with the exhibit or demonstrative number.  Any demonstrative that includes an animation, flash file, or similar moving image shall be exchanged in a manner sufficient to permit the party to see the moving images.  Exchange of large boards is not required, and these demonstrative exhibits may be exchanged in 8½" x 11" format with the PDF/electronic exhibits being exchanged at that same time.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony, and which contain no additional markings, commentary, or alterations, are not required to be provided to the other side in advance of their use.

56.     If good-faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand.  Failure to comply with these

procedures, absent an agreement by the parties or approval by the Court, will result in waiver of

the use of a demonstrative or waiver of objection to the demonstrative.  Nothing in the foregoing

is a waiver of any objection to the testimony of a witness in connection with the demonstrative.

## VII.   DAMAGES

57.     At trial, Power Integrations will seek damages in the form of a reasonable royalty

pursuant to 35 U.S.C. § 284, as set forth in its expert reports, as compensation for Defendants'

past infringement, including induced infringement, and any continuing and future infringement

of the patents-in-suit up until the date judgment is entered.  To the extent this Court does not

issue a permanent injunction, Power Integrations will also seek an ongoing royalty for any future

infringement after the date judgment is entered.  Power Integrations will further seek enhanced

damages under 35 U.S.C. § 284 for Defendants' willful infringement, a post-trial accounting of

damages, an award of prejudgment and post-judgment interest, an award of attorneys' fees

pursuant to 35 U.S.C. § 285, and interests, costs, and disbursements as justified under

35 U.S.C. § 284 and/or Federal Rule of Civil Procedure 54.  Defendants agree that Power

Integrations may seek a reasonable royalty at trial.  Defendants disagree with respect to all the

remaining elements of damages or relief identified above.

58.     **[[*Power Integrations' Statement:*** In light of the Court's October 4, 2018

Memorandum Order in the related *Fairchild I* litigation (C.A. No. 04-1371-LPS), recognizing

that "the Supreme Court's *WesternGeco II* decision implicitly overruled the Federal Circuit's

*Power Integrations* opinion," Power Integrations intends to seek damages on worldwide sales as

disclosed in its expert's (Mr. Barnes') report. PI objects to Fairchild's argument below regarding

worldwide damages on the grounds that it is yet another untimely *Daubert* motion and also was

first added 39 minutes prior to the filing of this pretrial order, leaving PI no meaningful

opportunity to respond.  If the Court entertains the objection, PI respectfully requests an

opportunity to respond in writing before the Court rules.**]]**

**[[*Defendants' Statement:*** Power Integrations can only seek damages in the form of a

reasonable royalty where Defendants or third parties directly infringed in the United States.  PI

disclaimed all other forms of damages pursuant to 35 U.S.C. § 284.

On the day prior to the filing of this statement and three weeks before trial, Power

Integrations added a single sentence to this pretrial statement, stating its intent "to seek damages

on worldwide sales" in hopes of nearly tripling its damages claim from $22.5 million to more

than $70 million.  This is improper and inconsistent with PI's prior conduct.

It is legally improper because PI is seeking a royalty on overseas sales that cannot

directly infringe a U.S. patent.  "The royalty base for reasonable royalty damages cannot include

activities that do not constitute patent infringement, as patent damages are limited to those

'adequate to compensate for the infringement.' 35 U.S.C. § 284."  *AstraZeneca AB v. Apotex

Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015).

PI's recent shift is also inconsistent with PI's disclosures in discovery.  PI's CEO,

testifying as a Rule 30(b)(6) witness, stated under oath, "We were not going after" damages for

Fairchild "products that are made overseas, sold to someone overseas, used overseas and end up

overseas."  (6/21/2018 Dep. of Balu Balakrishnan at 511:10-16.)  "We are only asking for

damages of products that come back to the U.S."  (*Id.* at 511:17-23.)  PI's interrogatory

responses, including for a request specifically directed to any contention that  PI should receive

"a worldwide reasonable royalty,"  repeatedly refer to "evidence of infringement *in the United

States*," "direct infringement *in the U.S.* with sales of consumer electronics products,"

"importation of Fairchild's" products, and calculating damages "based on an importation rate."

(PI 6/8/2018 Resp. to Suppl. Interrog. No. 1 at 4, 8-9.)  Mr. Barnes opined that, to calculate the "royalty base," the parties would "estimate the percentage of Fairchild's Infringing Products that are imported into or sold in the U.S." and he prepared his calculation, stated in the text of his report, based on a "geographic breakdown of sales that would have occurred in the U.S." (Barnes Rep. at ¶¶ 85-86.)  PI now relies on an after-thought disclosure, contained in a footnote, of what would happen if Mr. Barnes' royalty rate "were applied to worldwide sales of Infringing Products" that Barnes provided "at the request of counsel."  (Barnes Report at ¶ 50, fn. 255.) Throughout discovery, however, PI and Barnes have consistently limited damages to product imported into the United States.

Finally, PI's position is inconsistent with events in this and the 2004 case.  In February, Defendants proposed a stay to await a Supreme Court decision in *WesternGeco*.  PI opposed and wrote, "the Fairchild I case is in a significantly different position from the case at hand. The *Fairchild I* case is specifically implicated in the *WesternGeco* briefing; the present case is not, and it involves different experts, different facts and different proofs."  (D.I. 857 at 1.)  In *Fairchild I*, PI sought a stay, sought overseas profits and asked the Court to certify the issue to the Federal Circuit to resolve the issue.  On October 4, 2018, the Court certified the issue and stated: "Rather than try this case based on this Court's conclusion on implicit overruling - and risking, if wrong, two additional trials instead of just one more - it would materially advance the conclusion of this litigation to ask the Federal Circuit to tell us if, in light of *WesternGeco II*, the trial should be limited to U.S. damages or should, instead, consider worldwide damages." Without a motion, without prior disclosure and without requesting certification, PI is now "risking, if wrong, two additional trials instead of just one more" in the present case.  It would be

fundamentally unfair for the Court to permit PI to change fundamentally the nature and scope of this trial on the basis of a single sentence inserted three weeks before trial.  **]]**

## VIII.  BIFURCATED TRIAL

59.     This case was bifurcated.  This trial will address issues of induced infringement, willfulness and damages.

## IX.  MOTIONS *IN LIMINE*

60.     The briefing for Power Integrations' motion *in limine* No. 1 is attached as Exhibit 12A.  The briefing for Power Integrations' motion *in limine* No. 2 is attached as Exhibit 12B.  The briefing for Power Integrations' motion *in limine* No. 3 is attached as Exhibit 12C.

61.     The briefing for Defendants' motion *in limine* No. 1 is attached as Exhibit 13A. The briefing for Defendants' motion *in limine* No. 2 is attached as Exhibit 13B.  The briefing for Defendants' motion *in limine* No. 3 is attached as Exhibit 13C.

## X.  OTHER UNRESOLVED EVIDENTIARY ISSUES

62.     **[[*Power Integrations' Statement*:**  Power Integrations seeks to have this Court read to the jury the previously established facts listed in Exhibit 16. These are a subset of the facts included in Power Integrations' motion for summary judgment (D.I. 913), which after further meet and confer the parties were unable to agree to include in the joint statement of undisputed facts.

63.     Power Integrations also seeks to have the Court resolve in advance of trial whether evidence related to the reexaminations of certain claims of the patents-in-suit is admissible.

64.     Power Integrations believes that Defendants' list of additional unresolved evidentiary issues is an improper attempt to exceed the Court's limitations on *Daubert* motions

or motions *in limine*.  Other than issues timely identified in each side's three motions *in limine* or issues that the Court invited the parties to address in the pretrial order (such as the remaining disputes about the facts in Power Integrations' motion for summary judgment (*see* Oct. 5 Hearing Tr. At 95:24-96:3) and the admissibility of the reexaminations (*id.* at 106:3-17)), Power Integrations believes that the Court should not consider any other evidentiary issues in the context of the pretrial order.**]]**

**[[*Defendants' Statement*:**  Defendants object to the inclusion of any statement of "established" facts by either party and believe that such a statement is an improper vehicle by which to introduce evidence.  Defendants believe that Power Integrations' statement in Exhibit 16 is inappropriate and should not be read to the jury.  Indeed, the Court acknowledged that some of Power Integrations' proposed facts were "argumentative" and "slanted."  (10/5/18 Hr'g Tr. at 95.)  To the extent that the Court allows this procedure, Defendants provide a counter statement of established facts, with citations to the record.

Separately and pursuant to the Court's practice in the pretrial order, Defendants' respectfully identify the following additional issues for potential resolution by the Court to help streamline the issues for trial.

(a)     Whether evidence of ON Semiconductors' or Fairchild's market capitalization, revenues, or profits are admissible in light of the hypothetical negotiation with the much smaller System General Corporation.

(b)     Whether and to what degree evidence about sales or marketing efforts for products other than the products in suit are admissible, in light of the Court's prior grant of a motion *in limine* from the prior trial (Dkts. 516-33, 561 at 35:16-19).

(c)     Whether percipient witnesses employed by Power Integrations are entitled to testify regarding Defendants' purported state of mind and what caused third parties to import or sell any Fairchild product in the United States during the damages period.

(d)     Whether a party can sponsor the testimony of a witness, who was a Rule 30(b)(6) designee of the sponsoring party, on topics for which the witness lacked personal knowledge sufficient to serve as foundation for testimony.

(e)     Whether Fairchild's operations in Korea from before 2006 are relevant to any contested issue at trial.

(f)     Whether any legal opinion or order entered by this Court or the Federal Circuit is evidence that could be admitted at trial (including whether and the circumstances under which the parties will be permitted to refer to the Court's injunction in this case, which was vacated by the Federal Circuit).

(g)     Whether Power Integrations has waived its ability to seek damages based on worldwide sales, given its prior representations; and

(g)     Whether the "Federal Judicial Center Introduction to the Patent System" video should be played as part of the Court's preliminary jury instructions.

(h)     The scope of testimony that Dr. Kelley and Dr. Baker can give in light of the statements and concessions made by Power Integrations in response to Defendants' *Daubert* motions.

(i)     Whether Cliff Walker's testimony in response to the Court's order for a deposition on the License between Power Integration Inc. and Power Integrations Limited should be treated as a Rule 30(b)(6) testimony and limit Power Integrations' witnesses, whom Defendants were not able to depose regarding the late produced documents.]]

## XI.    DISCOVERY

65.    **[[*Power Integrations' Statement*:**   Power Integrations still seeks completion of discovery from Fairchild related to its customer communications, which Fairchild has not completed. Power Integrations has identified outstanding issues regarding that discovery, and awaits Fairchild's response.**]]**

**[[*Defendants' Statement*:**   On August 14, 2018, the Court ordered Power Integrations to "produce certain documents relating to ownership and licenses to the patents-in-suit, as well as a witness to testify about these documents."  (Dkt. 892.)  PI produced Cliff Walker, but Mr. Walker was unprepared and failed to provide answers on simple issues known in advance of the deposition.  He did not read the documents to refresh his recollection of them. (9/12/2018 Walker Dep. at 134:1-8)  He had last looked at them *six* years ago.  (*Id.* at 183:12-184:10.)  He spent slightly less than an hour in total in preparation for the deposition.  (*Id.* at 133:11-19.)  Thus, he was able to offer little more than repetition of what was stated on the face of the documents themselves (*e.g.*, *id.* at 139:16-20, 147:22-148:14, 149:16-19, 151:23-152:3, 173:19-174:5).  Given this late stage of the proceedings and the closeness of trial, Defendants request—in lieu of additional discovery—that the Court preclude PI's witnesses from presenting evidence on these documents beyond what Mr. Walker provided at his deposition.**]]**

66.    Power Integrations' preliminary list of designations of discovery responses to be read into evidence is attached hereto as Exhibit 14.

67.    Defendants' preliminary list of designations of discovery responses to be read into evidence is attached hereto as Exhibit 15.

68.    The parties reserve the right to move into evidence any discovery designation listed in Exhibits 14 or 15.

69.     Although the parties have not included separate objections to the other party's discovery designations, the parties stand on the objections made in the documents themselves.

70.     The parties will continue to meet and confer in an effort to address and narrow their respective designations of prior testimony, including objections, and will file updated lists with the Court.

## XII.   NUMBER OF JURORS

71.     There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers and addressing any challenges for cause, and concluding back in the courtroom with peremptory strikes.

## XIII.   NON-JURY TRIAL

72.     There are no non-jury issues to be tried.

## XIV.   LENGTH OF TRIAL

73.     The trial will be timed.  Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing arguments, its arguments on any motions for judgment as a matter of law, and all sides' arguments on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

74.     The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

75.     The Court has allocated 5 court days for this trial; this includes the time needed to select the jury.  The time will be split equally between the two sides as determined by the Court.

## XV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

76.     The parties will make motions for judgment as a matter of law ("JMOL") orally at a subsequent break at the close of all evidence out of the presence of the jurors.  The Court can then decide, based on the motions presented orally, whether to entertain argument or further briefing.  In the alternative, and as a means to save time at trial, the parties may, at that time, submit a written statement of no more than five (5) pages, stating the grounds on which they are moving under Rule 50(a) and rely in part or in whole on the written submission.  The parties also agree that any renewed JMOL motions will be addressed in connection with the schedule for post-trial briefing to be set by the Court.

## XVI.   AMENDMENTS OF THE PLEADINGS

77.     Neither party intends to seek an amendment to the pleadings at this time.

## XVII.   ADDITIONAL MATTERS

### A.   Jury Notes

78.     The parties agree that the jurors be permitted to take handwritten notes during the presentations of the parties and that jurors be permitted to bring these notebooks and handwritten notes into the deliberation room.  The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their notes) and that the notebooks be collected and destroyed after the verdict without review.  No later 4 p.m. Eastern on Thursday, November 1, 2018, the parties shall submit to the Court copies of a proposed juror notebook, which shall contain copies of the patents-in-suit, a tab for the preliminary jury instructions, a section for juror notes, and any other materials that the parties can jointly agree should be included.  During trial, the parties shall provide to the jury photographs of the witnesses who appear live as they appeared on the first day in which they testified.

### B.      Handling of Confidential Information at Trial

79.      The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed.  If a party makes such a request, subject to the Court's approval and for good cause shown, the courtroom shall be cleared of those individuals not qualified under the Protective Order entered in this case, except that each party's corporate representative may remain in the courtroom throughout the entirety of trial.

## XVIII. SETTLEMENT

80.      The parties have engaged in a good-faith effort to explore the resolution of the controversy by settlement, but have been unable to reach any agreement that would resolve this matter.  In particular, the parties have discussed resolution of their overall disputes both through business principals and through counsel.  Most recently, in August 2018, the parties agreed to again have high-level (i.e., CEO to CEO) discussions, and counsel are drafting a confidentiality agreement to facilitate those discussions.


**IT IS HEREBY ORDERED** that this order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.


DATED:  _____


_____
UNITED STATES DISTRICT JUDGE


24