

BY CM/ECF

Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

November 19, 2018

**Douglas E. McCann**
Principal
DMcCann@fr.com
302 778 8437 direct

Honorable Leonard P. Stark
Chief Judge
United States District Court
 For the District of Delaware
844 King Street
Wilmington, Delaware 19801

Re:

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., et al.* C.A. No. 08-309 LPS
*Fairchild Semiconductor Corp., v. Power Integrations, Inc.* C.A. No. 12-540 LPS

Dear Chief Judge Stark:

Further to the Court's order, I write on behalf of the parties on the status of these cases.

### I. Schedule

The parties have agreed on the proposed schedule for post-trial motions in civil action 08-309 (the "2008 case") and in civil action 12-540 (the "2012 case"). The parties agree that briefing on the two cases should be conducted at the same time, although in separate briefing. The agreed-upon schedule is as follows:

- Opening Briefs: January 18, 2019
- Opposition Briefs: February 1, 2019
- Reply Briefs: February 22, 2019
- Hearing: Both parties request that oral argument be scheduled at the Court's convenience after the conclusion of briefing.

To make the foregoing schedule possible, the parties agree that the Court should defer entry of judgment following the verdicts until at least December 21, 2018.

fr.com



Honorable Leonard P. Stark
November 19, 2018
Page 2

## II. Proposed Page Limits

*2008 Case.* Given the variety and complexity of the issues to be briefed, the parties jointly request that the Court permit each side in the 2008 case 25 pages for all opening briefs, 25 pages for all answering briefs, and 12 pages for all reply briefs.

*2012 Case.* In the 2012 case, the parties will each use no more than 20 pages for opening briefs, no more than 20 pages for all answering briefs, and no more than 10 pages for all reply briefs.

## III. Contemplated Post-Trial Motions – 2008 Case

Fairchild hereby notifies the Court that it intends to move under Rule 50(b) for judgment as a matter of law on the issues of induced infringement, willfulness with respect to induced infringement, and damages, and for a new trial under Rule 59. The reasons for the motions are summarized further below.

Power Integrations hereby notifies the Court that it intends to seek enhancement of the damages in light of the Jury's finding of willful infringement, attorneys' fees on the ground that the case is exceptional, and for prejudgment and post-judgment interest. Power Integrations will later seek costs at the time provided by D. Del. L.R. 54.1.

Both parties oppose the other party's motions.

## IV. Contemplated Post-trial Motions – 2012 Case

Both parties are evaluating what post-trial motions they will bring and will submit a separate joint status report specific to this question no later than Tuesday, November 27, 2018.

## V. PI's Contemplated Post-Trial Motions – 2008 Case

PI does not understand the Court to have requested substantive argument in this filing and will fully explain its reasons for seeking enhancement, fees based on an exceptional case finding, and interest in its briefs to be filed on the agreed schedule.

Similarly, PI will fully explain its reasons for opposing the motions Fairchild outlines below in its opposition briefs to be filed in accordance with the agreed schedule.

## VI. Fairchild's Contemplated Post-Trial Motions – 2008 Case

### A. Motions for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b)

#### 1. Induced Infringement



Honorable Leonard P. Stark
November 19, 2018
Page 3

Whether as individual instances of induced infringement or as a class, PI failed to present evidence sufficient to support a conclusion that Fairchild induced infringement of the patents-in-suit.

*First*, PI's evidence did not establish actual direct infringement by third parties beyond three specific instances in 2008 involving a power supply bundled with an HP printer, a power supply bundled with an Acer laptop, and a Samsung notebook power supply ordered by Fish & Richardson. (*See* PX-347, PX-351, PX-358.) The calculations of PI's expert, Mr. Barnes, were not an expression of any actual importation of any infringing product. (Trial Tr. at 638:5-21.) PI's remaining evidence reflects solely a guess at how many consumer electronics reach the United States. PI did not identify any correlation between any estimate or quantification and the question of whether, how many, or in what way the products-at-issue entered the United States.

*Second*, PI failed to prove each additional element of induced infringement with respect to either individual instances of direct infringement or any class of alleged third-party direct infringers. Specifically, PI failed to show who the third-party direct infringers were, whether Fairchild knew that those third parties were directly infringing, whether Fairchild intended to cause any downstream acts of third-party direct infringement, whether Fairchild communicated with those third parties (individually or as a class) or how any Fairchild communication or other affirmative act was the actual cause of any actual direct infringement.

To the extent that PI claimed to identify any class at all, it did so only tautologically—the "class" was all third-party direct infringers. Thus, PI failed to show that Fairchild successfully communicated with any more specific class. For example, PI presented evidence that retailers, such as Best Buy or Wal-Mart, directly infringed, but the evidence provides no basis on which to conclude that Fairchild or PI communicated with retailers or had any impact on retailers' behavior. Because PI failed to prove every element of induced infringement, including actual causation, for actual direct infringers—neither on an individual basis nor on a class-wide basis—the Court should grant judgment as a matter of law to Fairchild.

*Third*, PI did not provide evidence sufficient to show any induced infringement after July 1, 2014. During that period, the Court identified in a detailed injunction what Fairchild needed to do to avoid induced infringement. At trial, PI presented no evidence to show a violation of the injunction and no evidence of any collateral activity by Fairchild that circumvented the injunction. To the contrary, all of the evidence PI presented in support of its claim that Fairchild induced third party infringement was dated before July 1, 2014. PI did not produce any evidence of the scope of actual third-party direct infringement after July 1, 2014, let alone any communications, specific affirmative acts, or actual causation by Fairchild after that date.



Honorable Leonard P. Stark
November 19, 2018
Page 4

### B. Willful Infringement

PI did not provide evidence sufficient to prove Fairchild willfully induced infringement of the asserted patents. PI was required to show that Fairchild's conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate," but in any case egregious and atypical of infringement cases. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). It is undisputed that 99.5% of Fairchild's sales were made legally overseas. Fairchild lacked sufficient visibility into or control over the supply chain for the relevant products to know which entities at which step in the supply chain would or would not infringe. Therefore, Fairchild could not have acted willfully with respect to such infringement. The Court should grant judgment as a matter of law of no willful infringement.

### C. Damages

The damages awarded by the jury were not supported by substantial evidence. The jury awarded $24,270,194.20, which is $2,606,356.20 in excess of the $21,663,838 in damages that Mr. Barnes calculated. The trial record provides no alternative calculation to support the jury verdict.

Even as to PI's claim of $21,663,838, PI's damages calculation failed in two critical respects. First, it did not reflect actual infringement. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015). Mr. Barnes' calculation was not in any way an effort to determine how many infringing products actually entered the United States. (Nov. 7, 2018 Trial Tr. at 638:5-21.) Second, Mr. Barnes' royalty was, by his own admission, not apportioned solely to the value of PI's patents. *Ericsson, Inc. v. D-Link Sys., Inc.* requires that a reasonable royalty award be based solely on "the incremental value that the patented invention adds to the end product." 773 F.3d 1201, 1226 (Fed. Cir. 2014). Mr. Barnes' royalty (a) was not limited to the value of the patents' specific implementation of jitter (as compared to jitter more broadly); (b) did not reflect the value of the patented technology to Fairchild for the products-at-issue; and (c) did not represent cost savings from a representative sample sufficient to justify a per-unit royalty for every products-at-issue. (*See* Nov. 7, 2018 Trial Tr. at 659:23-661:13, 662:4-663:4, 663:7-664:5; Nov. 8, 2018 Trial Tr. at 918:22-921:9.) The failure to apportion is underscored by the fact that the damages were three times the actual profitability of the products in suit, even though witnesses attributed at least 85% of customer demand for the products to a separate feature (the "079 technology").

Separately, there is insufficient evidence to support a calculation of damages after July 1, 2014. The determination of any remedy, including money damages, after the issuance of the injunction is a matter for the Court and not the jury. *Spallone v. United States*, 493 U.S. 265, 276, (1990) (noting that "courts have inherent power to enforce compliance with their lawful orders through civil contempt"); *F.T.C. v. Trudeau*, 579 F.3d 754, 775-76 (7th Cir. 2009) ("[C]ivil contempt is an equitable action . . . and litigants have never been entitled to a jury trial for suits in equity").



Honorable Leonard P. Stark
November 19, 2018
Page 5

Moreover, for the reasons stated above, the trial record did not provide evidence sufficient to support a claim of induced infringement after July 1, 2014.

      **D.**      **Motions for New Trial, Under Fed. R. Civ. P. 59**

            **1.**      **The Verdict is Against the Weight of the Evidence and the Damages Verdict is Excessive.**

Fairchild intends to move for a new trial on the ground that the verdict is against the weight of the evidence and that the damages award is excessive in light of all the evidence. The verdict of induced infringement is improper and against the weight of the evidence based on the critical omissions mentioned above and because the verdict and the damages awarded assume, without an evidentiary basis, that every importation of a product into the United States reflected an induced infringement.

The damages are excessive in that they exceed the weight of the evidence, exceed the amount reflected in plaintiffs' damages calculation, exceed the value of the patents (once the contributions of other features are accounted for) and are not based on evidence of actual third party direct infringement. They also improperly include damages for periods after July 1, 2014, for which no separate induced infringement was proven by evidence at trial. Fairchild will seek a new trial or remittitur.

            **2.**      **Preservation of Appellate Rights Arising from Prior Rulings**

Fairchild expects to reserve space in its post-trial briefing to raise certain additional issues to the extent necessary in order to preserve any appellate rights, including (i) the Court's determination that certain facts would be deemed established and the reading of a contested statement to the jury at the start of trial, while excluding other evidence on the topics; (ii) the exclusion of all customer letters from Fairchild to its customers concerning the products in suit, patents in suit, and Fairchild's instructions not to use the products in the United States; (iii) the Court's exclusion of evidence pertinent to Fairchild's good-faith belief of invalidity and non-infringement, including evidence of reexaminations of the patents-in-suit and Fairchild's reliance on opinions of counsel; (iv) the exclusion and rejection of certain language associated with induced infringement and damages from the jury instructions; and (v) the denial of Daubert motions relating to Mr. Barnes' damages opinions.

Respectfully,

/s/ Douglas E. McCann

Douglas E. McCann