| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 08-309-LPS |
| | : | |
| FAIRCHILD SEMICONDUCTOR | : | |
| INTERNATIONAL, INC., FAIRCHILD | : | |
| SEMICONDUCTOR CORPORATION and | : | |
| FAIRCHILD (TAIWAN) CORPORATION, | : | |
| | : | |
| Defendants. | : | |

Douglas E. McCann and Joseph B. Warden, FISH & RICHARDSON P.C., Wilmington, DE

Frank E. Scherkenbach, FISH & RICHARDSON P.C., Boston, MA

Howard G. Pollack, Michael R. Headley, and Neil A. Warren, FISH & RICHARDSON P.C., Redwood City, CA

John W. Thornburgh, FISH & RICHARDSON P.C., San Diego, CA

    Attorneys for Plaintiff


John G. Day and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

Erik J. Olson, Colette Reiner Mayer, Pieter Sebastian de Ganon, and Stephen Liu, MORRISON & FOERSTER LLP, Palo Alto, CA

Scott F. Llewellyn, MORRISON & FOERSTER LLP, Denver, CO

Esther Kim Chang and Thomas J. Pardini, MORRISON & FOERSTER LLP, San Francisco, CA

    Attorneys for Defendants

## MEMORANDUM OPINION

July 22, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the parties' post-trial motions. On November 8, 2018, during a five-day jury trial, Plaintiff Power Integrations, Inc. ("PI") and Defendants Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and Fairchild (Taiwan) Corporation (collectively, "Fairchild") each filed Motions for Judgment as a Matter of Law ("JMOL"). (D.I. 1007, 1010) On January 18, 2019, PI filed a Motion for Attorneys' Fees, Enhanced Damages, and Pre- and Post-Judgment Interest (D.I. 1037) while Fairchild filed a Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial or Remittitur (D.I. 1036). PI also filed a Motion to Strike the Declarations of W.H. Huang, Justin Chiang, and Joel Pond. (D.I. 1057) Briefing on all motions was completed by March 29, 2019. (D.I. 1038, 1040, 1043, 1044, 1058, 1059, 1061, 1064, 1065) The Court heard oral argument on April 5, 2019. (D.I. 1068 ("Tr."))[1]

For the reasons stated below, the Court will deny as moot the parties' initial JMOLs, grant in part and deny in part PI's post-trial motion, deny Fairchild's post-trial motion, and deny as moot PI's motion to strike.

## I.    BACKGROUND

The recent trial from which the pending motions arise is just one battle in a long-running war between these parties.[2] This case ("*Fairchild II*") was filed in May 2008 and is the second in this District between these parties. In the first case, C.A. No. 04-1371 ("*Fairchild I*"), Fairchild was found to have willfully infringed PI's U.S. Patent Nos. 6,249,876 (the "'876

---

[1] The trial transcripts (D.I. 1025-29) will be cited as "Trial Tr."

[2] The parties have litigated patent disputes in other forums as well. *See, e.g.*, *Power Integrations, Inc. v. ON Semiconductor Corp.*, Case No. 16-cv-06371-BLF (VKD) (N.D. Cal.).

patent") and 6,107,851 (the "'851 patent"). In the present case, the Court initially bifurcated infringement and validity from willfulness and damages. In April 2012, a jury found that a new set of Fairchild products directly and indirectly infringed the '876 and '851 patents. On appeal, the Federal Circuit remanded for a new trial on inducement due to errors in the inducement jury instruction. The November 2018 trial, then, was a new trial on inducement, as well as the first trial (in this case of *Fairchild II*) on willfulness and damages. The jury found that Fairchild directly and indirectly (by inducement) infringed, that Fairchild's infringement was willful, and that reasonable royalty damages were $24,270.194.20. (D.I. 1014) Judgment was entered on the verdict on December 27, 2018. (D.I. 1023)

## II.    LEGAL STANDARDS

### A.    Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a sparingly invoked remedy," one "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal quotation marks omitted).[3]

To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict

---

[3] Although this is a patent case, the Court must look to the law of the Third Circuit for the procedural standards applicable to motions for judgment as a matter of law or a new trial. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012).

cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *see also Perkin-Elmer Corp.*, 732 F.2d at 893. The Court may not assess the credibility of witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893. Rather, the Court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

## B.  New Trial

Federal Rule of Civil Procedure 59(a) provides in pertinent part, "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows: . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in

federal court." New trials are commonly granted where "the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice," where "newly-discovered evidence exists that would likely alter the outcome of the trial," where "improper conduct by an attorney or the court unfairly influenced the verdict," or where the jury's verdict was "facially inconsistent." *Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584-85 (D. N.J. 1997) (internal citations omitted).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing "district court's grant or denial of a new trial motion" under "abuse of discretion" standard). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law, in that the Court need not view the evidence in the light most favorable to the verdict winner, ordinarily a new trial should only be granted "where a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53.

### C. Enhanced Damages

When damages resulting from patent infringement are found, "the court ***may*** increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284 (emphasis added). In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016), the Supreme Court explained that § 284 means "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *See also id.* at 1934 ("Section 284 gives district courts discretion in meting out enhanced damages.").

*Halo* further explains that "enhanced damages are generally appropriate under § 284 ***only in egregious*** cases. . . . [Enhanced damages are] ***not*** to be meted out in a ***typical*** patent

infringement case." *Id.* at 1932 (emphasis added). *Halo* continues: "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Id.* "[N]one of this is to say that enhanced damages *must* follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id.* at 1933 (emphasis added). The party seeking enhanced damages has the burden of proving by a preponderance of the evidence that they should be awarded. *See id.* at 1934.

### D.    Attorneys' Fees

In "exceptional" patent cases, a Court may award "reasonable attorney fees" to the "prevailing party." 35 U.S.C. § 285. A case is "exceptional" under § 285 if it is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Ultimately, the Court must make a discretionary decision based on the totality of circumstances, which may include factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 & n.6. A party moving for attorneys' fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Id.* at 1758.

## III.    DISCUSSION

### A.    Fairchild's Motion to Set Aside the Inducement Verdict and for a New Trial on Inducement

Fairchild seeks judgment as a matter of law that it is not liable for induced infringement or, alternatively, a new trial on induced infringement.  As explained below, Fairchild has failed to show that the jury was presented with insufficient evidence from which to reasonably find liability, that the jury's verdict was against the clear weight of the evidence, or that a new trial must be granted to prevent a miscarriage of justice.  Accordingly, the Court will deny Fairchild's motion.

### 1.    Law of the Case Does Not Preclude the Motion

As an initial matter, the Court concludes that Fairchild's motion is not barred by law of the case doctrine.  The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  The Court previously denied Fairchild's JMOL after the first trial (*see* D.I. 731 at 25-26), which the Federal Circuit affirmed, but the Federal Circuit also remanded for a new trial on induced infringement due to an erroneous jury instruction. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332, 1335 (Fed. Cir. 2016).  Under these circumstances, the Court must consider the sufficiency of the evidence as it was presented to the second (properly-instructed) jury, which includes some new evidence as to the scope of induced infringement (for reasons including that the second trial, unlike the first, also addressed damages). (*See* D.I. 1061 at 4)  Further, as PI concedes (*see* Tr. at 44), the order denying summary judgment of no inducement in connection with the second trial does not preclude the Court from considering a JMOL on the same issue.

Although law of the case does not apply, it is nonetheless true (as will be evident from the discussion below) that the Federal Circuit's 2016 opinion in this case is highly instructive, particularly given the significant evidentiary overlap between the first and second trials.

### 2. The Evidence Presented Supports the Full Scope of the Verdict

Fairchild argues that JMOL or a new trial is appropriate because there is insufficient evidence to establish all elements of induced infringement as to any class of direct infringers.[4] Fairchild's argument is based on several grounds: (1) PI failed to measure actual importation, (2) PI failed to identify Fairchild's successful communications to any actual importers, (3) PI failed to show that Fairchild caused any importation, and (4) PI failed to show inducement after June 30, 2014. Below, the Court addresses, and rejects, each of Fairchild's contentions.[5]

---

[4] The parties dispute whether a finding of inducement requires that the infringer induce direct infringement or may, instead, be predicated on an induced infringer inducing indirect infringement. The statute, 35 U.S.C. § 271(b), creates liability for anyone who "actively induces infringement" without specifying what type of infringement must be induced. Accordingly, the Court agrees with PI that "[i]f Fairchild induces one party [i.e., a class of ODMs] to induce another party [i.e., a class of OEMs] to import [infringing products], that is sufficient." (D.I. 1043 at 12 n.4) Contrary to Fairchild's view (*see, e.g.*, D.I. 1038 at 12-13), the Federal Circuit's decision in *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001), does not reject PI's position, as that case merely stated that "[i]nducement only occurs if the party being induced directly infringes the patent," and PI acknowledges that it must show that some party was ultimately induced to directly infringe. PI's theory, which is the same as the theory it advanced in the first trial, is also not inconsistent with the Federal Circuit's decision in this very case. *See Power Integrations*, 843 F.3d at 1331 (inducement requires that "defendants' actions led to direct infringement"); *id.* ("The inducement may be proven via circumstantial evidence."); *id.* at 1335 (deeming as sufficient "circumstantial evidence of inducement . . . directed to a class of direct infringers . . . without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe"). *But see Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d 388, 393 (D. Conn. 2006) (holding that one "can be liable for active inducement only if it induced direct infringement," not contributory infringement).

[5] The Court's instructions to the jury on the elements of induced infringement can be found at D.I. 1011 at 22-27. The Court finds that PI has presented sufficient evidence on each of these elements to sustain the jury verdict in favor PI.

First, the Court finds that PI presented sufficient evidence from which a reasonable jury could have found an importation rate of around 30 to 33 percent. Three witnesses provided testimony that would reasonably support such a finding: Balu Balakrishnan (President and CEO of Power Integrations), Guarang Shah (Senior Vice President of Power Systems at Fairchild), and Ben Sutherland (Vice President of Worldwide Sales at Power Integrations). (*See* Trial Tr. at 299-300, 309, 325)[6] Indeed, the Court already ruled before trial that it would be reasonable for the jury to credit this evidence, on which PI's damages expert, Mr. Barnes, relied, noting that "some degree of estimation is fair game for the experts." (D.I. 967 (Oct. 5, 2018 Tr.) at 97)

Second, the Court finds that PI presented sufficient evidence of Fairchild's affirmative acts directed toward a class of direct infringers. As the Federal Circuit has already held in this case, "circumstantial evidence of inducement . . . directed to a class of direct infringers . . . without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe" can be sufficient. *Power Integrations*, 843 F.3d at 1335. In fact, in reviewing what occurred at the first trial, the Federal Circuit held that it was reasonable for the jury to conclude that "Fairchild took affirmative acts to induce third parties to import its products into the United States." *Id.* at 1333. The Federal Circuit provided several examples of such "affirmative acts," *see id.* at 1333-34, and concluded that while "none of this evidence can be

---

[6] Fairchild argues that the testimony regarding importation rates is unreliable because it largely concerns the consumer electronics market as a whole. (*See* D.I. 1038 at 9) The Court disagrees. As the evidence showed that the infringing circuits were incorporated into power supplies for a large variety of consumer electronics (*see* Trial Tr. at 160, 162, 213), it was reasonable for the jury to consider the U.S. importation rate for the consumer electronics market as a whole. That the Federal Circuit found unreliable more targeted sources in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1372-74 (Fed. Cir. 2013), is not dispositive, because the data involved there was specific to U.S. importation of Samsung phones and there was "no way to distinguish between infringing and noninfringing chargers, and [the] assumption that all chargers incorporated an infringing power circuit was speculation."

directly linked to . . . representative acts of direct infringement, it was sufficient to allow the jury to find that Fairchild had induced its customers (including HP, Acer, and Samsung) to infringe as a class. This is all that we require." *Id.* at 1335.

All of the same evidence that had been presented at the first trial – and found to be sufficient by the Federal Circuit – was also presented at the 2018 trial. (*See* D.I. 1043 at 10; *see also, e.g.*, Trial Tr. at 532 (Fairchild's Lam testifying: "In fact, it is our intention, we want to sell globally so there will be products coming into the United States of America."); PX-350-51; PX-374; PX-739 at 384-85; Trial Tr. at 330 (showing Fairchild helped customers meet U.S. standards); PX-084A (Fairchild providing indemnity to customers for sales in U.S.)) Additional evidence of affirmative acts by Fairchild was also presented at the second trial. (*See, e.g.*, Trial Tr. at 473-87) (Dr. Kelley discussing Fairchild's datasheets, evaluation boards, and compliance with U.S. energy standards) It follows that the jury's implicit finding that Fairchild induced a class of importers to import the accused products into the United States is supported by substantial evidence. Additionally, the jury instructions properly referred more broadly to "affirmative acts" (*see id.* at 1333) – rather than more narrowly, "successful communications" – toward the direct infringers.

Third, Fairchild's argument that PI failed to show that Fairchild *caused* approximately 269 million acts of importation is without merit, because, as already stated, it was not necessary for PI to directly link each affirmative act to direct infringement. Rather, PI was permitted to present, and the jury was permitted to rely on, circumstantial evidence of affirmative acts directed to a class of direct infringers, resulting in direct infringement.

Finally, on the record before the jury, it was reasonable for the jury to conclude that Fairchild's affirmative acts had a lasting effect beyond June 30, 2014, particularly as the majority

of evidence of inducement focused on the design stage – which occurs before any product is sold but has persisting impacts. (*See* Tr. at 51-52)

Accordingly, the Court concludes that neither JMOL nor a new trial on induced infringement is warranted.

**B.** **Fairchild's Motion for a New Trial on Damages or for Remittitur**

Fairchild argues that the jury's damages award is against the great weight of the evidence and, in the alternative, should be remitted. It is true that the jury awarded damages greater than the amount asked for by PI and its expert, Mr. Barnes – which was $21,663,838. (Trial Tr. at 635) Nonetheless, the jury's award of $24,270,194.20 is supported by the evidence, including evidence from which the jury may have found an importation rate as high as 33 percent and a royalty rate as high as 20 cents; if both were found, the damages would substantially exceed the amount the jury awarded.[7] (*See* D.I. 1043 at 18) As long as the jury chose a damages amount that is "within the range encompassed by the record as a whole," as it did here, it should be upheld. *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 519 (Fed. Cir. 1995); *see also Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991) (holding that factfinder "is not limited to selecting one or the other of the specific royalty figures urged by counsel as reasonable," as "the determination of a reasonable royalty must be based upon the entirety of the evidence").

Additionally, as addressed by the Court previously, Mr. Barnes did apportion for the patented and unpatented features. (*See* D.I. 967 (Oct. 5, 2018) Tr. at 98; D.I. 1043 at 16-18) The jury's verdict demonstrates that the jury reasonably resolved the material issues of fact.

---

[7] As PI concedes, the record does not support an importation rate of 34 percent or higher. (*See* Tr. at 47)

Fairchild also argues that the damages award should be remitted by 10.4 percent for sales occurring after the June 30, 2014 injunction, at which point Fairchild sent letters to its customers notifying them of the injunction. Although the Court excluded those customer letters from evidence, prior to trial the Court envisioned "scenarios" in which even if Fairchild was complying with the injunction, it "could nonetheless have possibly taken other actions that a reasonable jury might find constitute, for instance, inducement to infringe." (D.I. 967 (Oct. 5, 2018 Tr.) at 99) It is undisputed that the parties did not present any direct evidence regarding Fairchild's actions after June 30, 2014, other than evidence of Fairchild's ongoing overseas sales. (*See* D.I. 1043 at 14; D.I. 1061 at 10)[8] The jury did, of course, hear evidence that Fairchild had undertaken affirmative acts (that might have induced infringement) during the design phase of the accused products, which long predated June 30, 2014, and the impact of which was still being felt with every sale or import thereafter, including after June 30, 2014. That Fairchild later told downstream entities not to import into the United States does not negate Fairchild's affirmative acts during the design stage that ultimately led to direct infringement after June 30, 2014. Accordingly, the Court finds that remittitur is not appropriate.

## C. Fairchild's Motion to Set Aside the Willful Infringement Verdict

Fairchild's JMOL as to the willfulness verdict generally repeats the same arguments it made as to the inducement verdict. Fairchild's arguments as to its control over and visibility into the supply chain implicate factual questions that were for the jury to resolve; the jury's implicit findings are supported by substantial evidence. (*See, e.g.*, Trial Tr. at 265-66, 305-08, 395-97,

---

[8] Fairchild did not present rebuttal evidence specific to that period because the parties agreed that they would not present evidence of the injunction. (*See* D.I. 967 (Oct. 5, 2018) Tr. at 37, 43)

407, 428-29, 437, 512, 532, 577-78, 583, 738, 740; PD-223; PX-113; PX-137-38; PX-374; PX-739; PX-997; PX-1025)[9]

More generally, the jury was instructed to consider the following factors in connection with willfulness: (1) whether Fairchild acted consistently with the standards of behavior for its industry, (2) whether Fairchild reasonably believed it did not infringe, (3) whether Fairchild made a good-faith effort to avoid infringement, (4) whether Fairchild tried to cover up its infringement, and (5) whether Fairchild intentionally copied PI's products. (*See* Trial Tr. at 1084-85) Substantial evidence supports the jury's implicit finding on each of these factors. As there is sufficient evidence that Fairchild intended for its products to enter the United States knowing that its products infringe, the Court will deny Fairchild's JMOL as to willfulness.[10]

### D. PI's Motion for Enhanced Damages

PI argues that it should be awarded treble damages because "this is likely the worst case of patent infringement that the Court will ever see." (D.I. 1040 at 12) The Court does not agree.[11]

---

[9] Certain evidence relating to advice of counsel and subjective belief in defenses was excluded by pretrial rulings. (*See* D.I. 984 at 1-3)

[10] Fairchild also raises its prior objections to the Court's pretrial rulings and jury instructions. (*See* D.I. 1038 at 24-25) Those objections were already ruled on and are preserved for appeal.

[11] As PI correctly observes (*see, e.g.*, Tr. at 94), in *Fairchild I* the Court awarded double damages for willful infringement. This decision was reached under the pre-*Halo* standard, meaning that PI persuaded the Court by clear and convincing evidence that Fairchild's infringement was not only subjectively willful but also that Fairchild's infringement was objectively reckless. PI suggests that an award of enhanced damages based on yet another finding of willful infringement of the same patents should be almost automatic, given this history and the lower burden of proof now applicable. Plainly, the Court is not persuaded by this logic, principally because every case is different, and the evidence in *Fairchild I* was far stronger for PI than it is here. For instance, in *Fairchild I*, there was evidence of "industrial stalking" and "detailed reverse engineering efforts" that led to "blatant[] copying" of PI's products, establishing that Fairchild made "little or no effort to ensure that their products did not infringe." (*See* C.A. No. 04-1371 D.I. 795 at 13-14, 20) (citing D.I. 750 at 4, 8-11) Here, as will

12

As a preliminary matter, the Court will address the record it is considering for purposes of

evaluating enhancement. In determining whether damages should be enhanced, the Court will

principally apply the "*Read* factors."[12] The Federal Circuit has noted, "*Read* itself implicitly

endorses th[e] practice [of considering evidence that was not available to the jury] by including

several factors that a jury is not in the best position to assess." *Advanced Cardiovascular Sys.,

Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1311 (Fed. Cir. 2001). Such factors include litigation

conduct and tactics of counsel, closeness of the case, the defendant's size and financial

condition, and other factors related to "'a fair allocation of the burdens of litigation as between

winner and loser.'" *Id.* (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178,

184 (Fed. Cir. 1994)); *see also Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 697

(D. Del. 2017). While juries often consider factual evidence related to copying, good faith

belief, duration of infringement, and motivation for harm (i.e., facts about the manner of the

defendant's infringement), it is appropriate for courts to consider the manner in which the parties

and counsel litigated the case. The role of the jury in determining willfulness and the role of the

judge in determining enhancement of damages are distinct. "Certainly a judge cannot substitute

his or her factual determination for a jury's willfulness finding." *Advanced Cardiovascular*, 265

F.3d at 1310; *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("[T]he

factual components of the willfulness question should be resolved by the jury."). However, in

---

be further explained below, similar evidence of blatant copying, lack of good faith belief in
noninfringement, and motivation for harm is substantially lacking.

[12] The *Read* factors include: (1) whether the infringer deliberately copied, (2) whether the
infringer had a good-faith belief in noninfringement or invalidity, (3) the infringer's behavior as
a party to the litigation, (4) the infringer's size and financial condition, (5) closeness of the case,
(6) duration of the infringer's misconduct, (7) remedial action by the infringer, (8) the infringer's
motivation for harm, and (9) whether the infringer attempted to conceal its misconduct. *See
Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).

assessing whether enhancement is appropriate, the Court may consider whether there was evidence of ***egregious*** conduct (e.g., egregious copying versus less offensive copying) and may also consider how one-sided or relatively balanced the evidence was on a disputed issue. *See, e.g., Amsted*, 24 F.3d at 184 (contemplating court will consider "closeness of the case" as part of its discretionary enhancement decision).

Given the jury instructions in this case (*see, e.g.*, Trial Tr. at 1084-85), the jury was asked to consider *Read* factors 1 (copying), 2 (good faith belief), and 9 (concealment). The Court will accept the jury's implicit findings for PI on these factors, but will (as appropriate) also consider other record evidence on these and the remaining *Read* factors.[13]

*Copying.* At trial, it was undisputed that: Fairchild was aware of both asserted patents by no later than 2002, System General was aware of both patents by 2004, System General first sold the accused product by the end of 2005, and Fairchild acquired System General in early 2007, about a year before this case was filed. (*See id.* at 212-13) Evidence was presented that within six months of this suit being filed, four technical people at System General met and discussed the '876 patent. (*Id.* at 427-28) At trial and in connection with its motion, PI emphasized W.H. Huang's deposition testimony that he did not design a particular circuit "for avoiding infringement of the patent." (*Id.* at 428) Huang further testified that that particular circuit was initially designed to avoid a patent, but it was later learned that the design around was "insufficient to be a design around to avoid infringement of [the] '876 patent." (*Id.* at 437) Mr. Huang also testified that Fairchild did not mass produce its design-around products. (*Id.* at 429)

---

[13] While Fairchild submitted declarations in support of its opposition to enhancement (D.I. 1045, 1046, 1049), the Court need not consider them as it finds that even without those declarations (which arguably cite new evidence and contradict the Court's prior orders), enhancement is not appropriate. Accordingly, PI's motion to strike the declarations (D.I. 1057) will be denied as moot.

Since the jury considered copying as part of its willfulness finding, the Court presumes that the jury found some amount of deliberate copying by System General. But the Court does not view the record here as one-sided or as demonstrating egregious copying. Fairchild presented substantial evidence that System General independently designed the circuits at issue and that Fairchild acquired System General primarily for its investment in innovative and independent research and development, in addition to its established location in Asia. (*See* D.I. 1044 at 7, 9; Trial Tr. at 734-35)[14] While it was undisputed that a Korean business unit of Fairchild reverse-engineered PI's products and copied one of the asserted patents prior to 2004 (Trial Tr. at 211-12), it was also true, as Fairchild argued, that this copying involved "different engineers at a different company in a different country at a different time using a different circuit involving different products." (Tr. at 105)

PI argued at trial and with its motion that the schematics for both parties' products are visually similar (*see* D.I. 1040 at 6; Tr. at 74), but such similarity is weak evidence, at best, of copying. In the art of semiconductors and power supply chips, it is likely that as long as the litigation is nonfrivolous, the accused product will look visually similar to the claimed invention.

Overall, the copying factor weighs in favor of enhancement.

---

[14] PI also argues that the timing of Fairchild's acquisition of System General – a month or two after a jury in *Fairchild I* found Fairchild to have willfully infringed the same two patents – demonstrates that Fairchild acquired System General for the purpose of replacing its infringing products from *Fairchild I* with new products that it knew also infringed. (*See* Tr. at 70-71) As evidence of prior litigations was excluded from trial, this argument was not presented to the jury. It is, then, for the Court to assess in connection with its discretionary enhancement decision. Having done so, and fully respecting the jury's finding that copying occurred, the Court finds that no additional weight in favor of enhancement arises from Fairchild's acquisition of System General as the record before the Court contains no persuasive evidence that the acquisition was motivated by an intent to infringe. To the contrary, the evidence (from Mr. Chiang, Fairchild's Executive Vice President and General Manager of the Power Conversion, Industrial, and Automotive division (*see* Trial Tr. at 734-35)) was that Fairchild wanted to acquire System General for its location in Taiwan and its innovative technology.

*Good faith belief.* Although Fairchild encourages the Court to consider Fairchild's reliance on its litigation defenses, including with respect to reexaminations, this evidence was not produced during discovery (even though it was available to Fairchild) and, so, was excluded from trial. (*See* D.I. 984 at 1-3) The Court is not considering this evidence in connection with its evaluation of the good faith belief factor.

PI again points to Mr. Huang's testimony that System General knew it could not avoid infringement. (*See* Tr. at 73-74) Fairchild argues that it demonstrated a good faith belief in no induced infringement (which is 99.5 percent of the case) due to its lack of visibility into and control over its downstream supply chain. (*See id.* at 105-06) While visibility and control are not formal elements of inducement, they may be circumstantially relevant to intent. While there is fact and expert testimony regarding the mostly overseas nature of Fairchild's business, there is also evidence that Fairchild intended for its products to reach the United States. (*See* Trial Tr. at 532, 687, 691, 726, 734, 789-92) Given the jury's verdict, the Court concludes that this factor weighs in favor of enhancement.

*Litigation conduct.* This factor is neutral and, therefore, does not favor enhancement. Both parties have heavily litigated this case over the last 11 years, have properly preserved arguments and issues for appeal, and have never been sanctioned for misconduct. Changing counsel and experts during a litigation of this duration (as Fairchild has done) is not unusual. PI has not persuaded the Court that Fairchild prolonged the litigation knowing it had no real defense.

*Size and financial condition.* As Fairchild is a large, financially successful company, this factor does not disfavor enhanced damages against Fairchild. This factor is neutral.

*Closeness of the case.*  As the Federal Circuit has already stated, "Power Integrations'

claim for induced infringement was a close call."  *Power Integrations*, 843 F.3d at 1332 ("[T]he

evidentiary record permits more than one reasonable finding on induced infringement.").  This

statement is equally applicable to the evidence presented in the second trial, which was

substantially similar to what had been presented at the first trial.  As inducement was 99.5% of

the case, Fairchild's decision not to appeal the direct infringement judgment after the first trial

does not make this case, overall, anything other than a close case.  The Court does not agree with

PI that the invalidity issues in this case were not close.  In the Court's view, this case, overall, is

a close case, on which either side could have prevailed.  This factor, then, strongly disfavors

enhancement of damages.

*Duration of infringement.*  As the infringing conduct lasted a decade, from when the suit

was filed in 2008 through 2018, this factor favors enhancement.

*Remedial actions.*  Pursuant to the Court's June 30, 2014 Order (D.I. 794), Fairchild sent

letters to its customers informing them of a permanent injunction and that Fairchild's infringing

products are not to be sent to the United States.  The customer letters were excluded from trial

for other reasons,[15] and the jury was not asked to consider remedial actions.  In assessing

whether damages should be enhanced, the Court may consider this evidence.  *See generally*

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1376 (Fed. Cir. 2010) ("The

decision as to enhancement of damages is informed by the totality of the circumstances.")

(internal quotation marks omitted).

---

[15] As previously ordered, since "Fairchild chose during discovery not to disclose its reliance on advice of counsel," its customer letters were excluded as unfairly prejudicial to PI, because "the record lacks linking evidence that would allow a reasonable factfinder to find that Fairchild subjectively believed in its defenses (and, therefore, subjectively believed what it was telling its customers)."  (D.I. 984 at 2-3)

While parties are, of course, obligated to comply with a Court order, including an injunction, nonetheless Fairchild's compliance causes this factor to disfavor enhancement of damages.[16] This is true for reasons including that Fairchild continued to comply with the injunction even after it was vacated following the appeal from the first trial. *See Power Integrations*, 843 F.3d at 1345. Additionally, Fairchild investigated the possibility of designing around the patents, although it never did mass produce any design-around products. (*See* Trial Tr. at 429) While Fairchild never stopped selling the accused products, those products were only infringing in the United States, and there is no evidence that Fairchild continued post-injunction to sell the accused products directly to the United States. Of course, the inducement had already occurred (in part) at the design stage of the accused products.

Overall, the Court concludes that this factor is neutral.

*Motivation for harm.* This factor disfavors enhancement. The parties have been engaging in fierce, lawful, competition for more than a decade. While PI has won the majority of the parties' litigations – in this Court and others – the abundance and length of the parties' hotly-contested, nonfrivolous cases persuades that Court that neither side has an illegitimate motivation to harm the other. Nor has any evidence been presented that persuades the Court that Fairchild's willful infringement of the '876 or '851 patents was motivated by an intent to harm PI, as opposed to a desire to beat PI in the market based on fair competition.

*Concealment.* Neither party presented any evidence of concealment to the jury. While the parties dispute the implications of Fairchild's post-injunction conduct, the Court concludes

---

[16] Although Fairchild had some noncompliance with an injunction in *Fairchild I*, the Court found that it was not enough to warrant a finding of contempt. (C.A. No. 04-1371 D.I. 871)

that none of it shows concealment.  The Court is not persuaded by PI's contention that Fairchild

submitted false declarations.  This factor disfavors enhancement.

Having assessed each of the *Read* factors, and giving each appropriate weight under the

particular circumstances presented here, the Court concludes that an award of enhanced damages

is not warranted.  Only three factors favor enhancement: copying, good faith belief, and duration

of infringement.  The evidence supporting these three factors is not overwhelming or one-sided,

nor does it demonstrate egregious misconduct by Fairchild.  Other factors, including those that

were not considered by the jury, either disfavor enhancement – strongly, as for closeness of the

case, and more weakly as for motivation to harm and concealment – or are neutral (litigation

conduct, size and financial condition, remedial actions).  On balance, the factors do not favor

enhancing damages.

In sum, while the jury found willful infringement, that finding does not mandate that

damages be enhanced; rather, it gives the Court discretion to determine whether, considering all

the factors, to enhance damages.  *See, e.g.*, *Read*, 970 F.2d at 826; *Idenix*, 271 F. Supp. 3d at 698

& 699 n.7.  Here, PI has failed to show that Fairchild's conduct was egregious in any way.  For

this reason and all the others stated above, PI's motion for treble damages will be denied.

### E.       PI's Motion for Attorneys' Fees

There is no dispute that PI is the prevailing party.  Therefore, the issue presented is

whether this case is exceptional.  Although this case certainly stands out from others as one of

four cases in this Court involving the same parties, as one that has been pending for 11 years, and

as one that has gone to trial multiple times, it does ***not*** stand out as unreasonably litigated or as

involving a party with a substantively weak litigating position.  Instead, it seems to be one front

in a multi-front war between fierce marketplace competitors, each legitimately (albeit at times

frustratingly) using the U.S. court system to enforce its property rights (and to defend against

accusations of misuse of the other's intellectual property). Accordingly, PI has not shown that this case is "exceptional" within the meaning of Section 285. PI's request for attorneys' fees will be denied.

### F. PI's Motion for Pre- and Post-judgment Interest

PI seeks an award of prejudgment interest pursuant to 35 U.S.C. § 284. "[P]rejudgment interest should normally be awarded in patent cases to provide patent owners with complete compensation." *Idenix*, 271 F. Supp. 3d at 705 (internal quotation marks omitted). The Court will award PI prejudgment interest to be calculated at the prime rate, compounded quarterly, from the date of the first infringement through the date of judgment, pursuant to the common practice of this Court. *See, e.g., Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 363-64 (D. Del. 2018); *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 627-28 (D. Del. 2018); *Idenix*, 271 F. Supp. 3d at 705; *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 783 (D. Del. 2015). Although Fairchild recognizes this is the Court's common practice, Fairchild requests that the Court use the lower Treasury bill rate, because the jury's award was "grossly excessive" and PI allowed the case to go on for so long. (*See* D.I. 1044 at 23-24) However, as stated above, the Court has found that the jury's damages award is not unreasonable but, instead, is supported by the evidence; nor has PI's litigation conduct, including the degree to which PI is responsible for the age of this case, been unreasonable. These conclusions – in conjunction with the fact that Fairchild does not contest PI's calculation – lead to the conclusion that PI will be awarded $7,103,155.96 in prejudgment interest.

The parties have agreed to resolve, at a later date, their dispute regarding post-judgment interest. (*See* D.I. 1040 at 17; D.I. 1044 at 24) Therefore, the Court need not consider that issue.

## IV. CONCLUSION

For the reasons stated above, the Court will deny as moot the parties' initial JMOLs (D.I. 1007, 1010), deny Fairchild's post-trial motion (D.I. 1036), grant in part and deny in part PI's post-trial motion (D.I. 1037), and deny as moot PI's motion to strike. An appropriate Order follows.